UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

BRUCE J. TROMBLEY and
RYAN SUKASKAS on behalf of
themselves and all others similarly
situated,

    Plaintiffs,

v.

BANK OF AMERICA
CORPORATION

    Defendant

)
)
)
)
)
)
)
)
)
)
)
)
)

C. A. NO. 08-456

CLASS ACTION

## AMENDED CLASS ACTION COMPLAINT

Plaintiffs, Bruce J. Trombley and Ryan Sukaskas (hereafter "Plaintiffs"), bring this action individually and on behalf of a nationwide class of persons similarly situated against Bank of America ("Defendant" or "BOA") for alleged violations of the Truth-in-Lending Act, 15 U.S.C. § 1601 ("TILA") and its implementing Federal Reserve Board Regulation, 12 C.F.R. part 226 ("Regulation") and for Breach of Contract. Plaintiffs seek damages and equitable relief on their own behalf and on behalf of all others similarly situated. Plaintiffs allege the following upon personal knowledge as to their own acts, and upon information and belief based on the investigation conducted by Plaintiffs' Counsel, as to all other matters:

## NATURE OF THIS ACTION

1. Plaintiffs bring this action as a class action suit on their own behalf and on behalf of a nationwide class of persons similarly situated against Defendant to redress Defendant's failure to properly post payments and credit those payments without the imposition of additional fees and charges to Plaintiffs' credit card accounts on the date Defendant actually received such payments. As a result of Defendant's wrongful actions in failing to properly credit timely

tendered payments to customer credit card accounts, Defendant has received millions of dollars by assessing Plaintiffs and the putative Class finance charges, including, but not limited to late fees, and other fees and charges in violation of TILA, its Regulations and in Breach of its Contracts.

2. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332 (a) and 1332 (d), because the amount in controversy exceeds $5 million exclusive of interests and costs, and more than two-thirds of the members of the putative Class are citizens of states different from that of Defendant.

3. Venue for this action properly lies in this District pursuant to 28 U.S.C. § 1332 as the named Plaintiffs reside in this District and Defendant solicited consumers and issued credit cards in this District and has engaged in the business in this District

## JURISDICTION AND VENUE

## PARTIES

4. Plaintiff, Bruce J. Trombley resides in the Town of Warren, in the State of Rhode Island and maintains a credit card account with the Defendant.

5. Plaintiff, Ryan Sukaskas, resides in the Town of Johnston, in the state of Rhode Island and maintains a credit card account with the Defendant.

6. Defendant, Bank of America Corporation, is a corporation that is incorporated in the state of Delaware and has headquarters in the state of North Carolina and is one of the world's largest financial institutions. On October 20, 2006, Bank of America, National Association (USA), a subsidiary of Bank of America Corporation, merged with and into FIA. Bank of America operates its banking activities primarily under two charters: Bank of America, N.A. and FIA Card Services, N.A. (the surviving entity of the MBNA America Bank N.A. and the Bank of

2

America, N.A. (USA) merger). FIA and Bank of America, N.A. share many of the same directors and officers. Bank of America is currently the parent holding company of FIA and MBNA Marketing. The acquisition of MBNA made Bank of America a leading credit card issuer both domestically and abroad. The combined Bank of America Card Services organization, including the former MBNA, covers more than 55 million U.S. accounts and over $140 billion in outstanding loan balances.

## FACTUAL ALLEGATIONS

7. Defendant is in the business of soliciting, issuing and servicing consumer and business credit card accounts. Upon information and belief, Defendant also purchases and/or services credit card accounts opened by other banks.

8. On a monthly basis, Defendant issues credit card account statements and forwards them to its credit cardholders. According to Defendant's Cardholder Agreement, on these monthly account statements to its credit cardholders, Defendant designates a due date by which the cardholder must make a minimum payment or the cardholder will be assessed a late fee and/or additional finance charges.

9. Defendant's Cardholder Agreement does not include any provisions that inform the cardholder that Defendant will not credit payments on the date Defendant receives the payment from the cardholder without the imposition of additional fees and charges.

10. Plaintiff, Bruce J. Trombley has a credit card with Defendant and has received a monthly statement indicating a specific due date. Plaintiff received his October 2007 statement with a statement closing date of October 2, 2007 that indicated a minimum payment of $248.00 was due by Saturday, October 27, 2007.

11. On Saturday, October 27, 2007, at 11:44 am, Plaintiff, Bruce J. Trombley, made a payment of $250.00 in person at the Swansea, Massachusetts bank branch of Bank of America, and Bank of America accepted this payment.

12. Plaintiff received his November 2007 credit card statement with a closing date of November 2, 2007 that indicated a late fee of $39.00 was imposed and due by November 27, 2007 despite the fact that Defendant actually received the payment due by October 27, 2007, on October 27, 2007.

13. In addition, the November credit card statement indicated that since Defendant did not receive the October 27, 2007 payment by the due date, Plaintiff's promotional interest rate would no longer be available.

14. Plaintiff, Ryan Sukaskas, has a credit card with Defendant and received a monthly statement indicating a specific due date. On the specific due date, November 24, 2007, Plaintiff attempted to make the required payment via Defendant's web-site. However Defendant's web-site would not process Plaintiff's payment on November 24, 2007 because it was the due date.

15. Defendant did accept payment on November 24, 2007 when the Plaintiff paid by phone incurring a $15 pay-by-phone fee. Plaintiff received a December 2007 statement with a statement closing date of December 5, 2007 that had imposed a $15.00 pay by phone fee for the Plaintiff's November 24, 2007 payment.

## CLASS ACTION ALLEGATIONS

16. Plaintiffs bring this action on behalf of themselves and as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of a Class (the "Class") as defined as follows:

> All persons who reside in the United States and who hold or have held credit card accounts issued and/or serviced by Defendant, and who have timely tendered credit card payments to Defendant on or before the due date set by

4

Defendant and have had late fees, other fees, charges and/or additional finance charges imposed by Defendant.

Excluded from the Class are Defendants and any person, firm, trust, corporation or other entity related to or affiliated with Defendant.

17. **Numerosity.**   The Class is so numerous and dispersed nationwide that joinder of all members is impracticable. Upon information and belief, the Class numbers in the hundreds of thousands if not millions. The exact number of Class members is unknown, but can be determined from Defendant's computerized and other records. Plaintiff reasonably estimates and believes that there are thousands of persons in the Class.

18. **Commonality.**   There are numerous and substantial questions of law and fact common to all of the members of the Class and that predominate over individual issues. The members of the Class were and continue to be subjected to the same practices of the Defendant. The common questions raised by Plaintiffs' claims include:

   a.   whether Defendant breached its Cardholder Agreement when it established policies and procedures and the course of conduct for charging late fees, other fees, charges and/or additional finance charges for payments on accounts received on the due date;

   b.   whether Defendant violated TILA when it established policies and procedures and the course of conduct for charging late fees, other fees, charges and/or additional finance charges for payments on accounts received on the due date;

   c.   whether Defendant intentionally or negligently concealed the late fee provisions, policies and procedures as they applied to the due date on cardholders' payments;

   d.   whether Plaintiffs and the Class have been damaged, and, if so, what is the appropriate relief as to each member of the Class;

5

e. whether the Class is entitled to injunctive relief or other equitable relief against Defendant;

19. **Typicality.** Plaintiffs' claims are typical of those of the Class. Defendant issued credit cards and established policies and procedures relating to cardholders which contained virtually identical procedures. Thus, Plaintiffs and all Class members have suffered identical or similar damages as a result of the issuance and use of Defendant's credit card and the breaches of contract and violations of TILA. By engaging in such course of conduct, Defendant has profited from the charging of late fees, other fees, charges and/or additional finance charges for payments on accounts received on the due date.

20. **Adequacy.** Plaintiffs have no interest adverse to those of the members of the Class. Plaintiffs will fairly and adequately protect the interests of the Class and have retained competent counsel experienced in the prosecution of class action and complex litigation.

21. **Superiority.** A class action is superior to other available methods for the fair adjudication of this litigation, since individual joinder of the Class is impracticable. Even if individual Class members were able to afford individual litigation, it would be unduly burdensome to the Courts in which the individual litigation would proceed. Defendant has subjected the entire Class to the same breach of contract and the same violation of TILA. Accordingly, class certification is appropriate under Rule 23 because common issues of law and fact regarding Defendant's uniform breach of contract and violation of TILA predominate over individual issues, and class certification is a superior method of resolving these claims. The Defendant has acted and continues to act in a manner that is generally applicable to all members of the Class making final injunctive relief appropriate.

6

## FIRST COUNT
### (Breach of Contract)

22. Plaintiffs hereby incorporate by reference the allegations contained in all of the preceding paragraphs of this complaint.

23. Defendant's Cardholder Agreement, which governs Defendant's credit card accounts with Plaintiffs is a contract and, as a contract, implies the duty of good faith and fair dealing.

24. Defendant has willfully failed to timely post Plaintiffs' and the Class members' payments without the imposition of additional fees and charges on the day Defendant actually receives such payments. Defendant has taken actions that are willfully designed to increase the amount of finance charges, late fees, and other charges Plaintiffs must pay.

25. Defendant breached its duty to the Plaintiffs and Class by establishing policies and procedures and engaging in a course of conduct contrary to the Cardholder Agreement when it established due dates for Cardholder payments and then failed to properly credit timely tendered payments without the imposition of additional fees and charges.

26. Defendant knowingly and intentionally breached the Cardholder Agreement by charging late fees and/or additional fees or charges to the Plaintiffs and Class for timely tendered credit card payments which violated and were contrary to the terms and conditions in the Cardholder Agreement.

27. By reason of the foregoing Breach of Contract, Plaintiffs and the Class have been irreparably harmed, have suffered damages, and are entitled to recover all damages as a result of the actions of Defendant and are also entitled to equitable relief.

7

## SECOND COUNT
### (For Violations of the Truth-in-Lending Act, 15 U.S.C. §§1601, et seq. And Regulation Z, 12 C.F.R. §226)

28. Plaintiff hereby incorporates by reference the allegations contained in all of the preceding paragraphs of this Complaint.

29. Defendant was and is a credit provider subject to the disclosure requirements set forth in TILA. Congress enacted the TILA "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. §1601(a).

30. Congress delegated authority for the implementation of the TILA to the Federal Reserve Board ("Board"). 15 U.S.C. §1604. The Board promulgated Regulation Z, which is the TILA's implementing regulation. 12 C.F.R. §226 (2007).

31. Under the TILA and Regulation Z, Defendant is a "creditor" with respect to each "open-end credit plan" by which it has issued "credit cards" to Plaintiffs and the Class, also known as "cardholders" or obligators. See 15 U.S.C. §1602(f), (i), (k) and (m); 12 C.F.R. §226.2(a)(8), (15), (17) and (20) (2007).

32. The Board's Regulation Z promulgated under the Consumer Protection Act of 1968, as amended, mandates prompt crediting of payments as of the date of receipt. Section 226.10 of Regulation Z states in relevant part:

   (a) General Rule. A creditor shall credit a payment to the consumer's account as of the date of receipt, except when a delay in crediting does not result in a finance or other Charge or except as provided in paragraph (b) of this section.

   (b) Specific requirements for payment. If a creditor specifies, on or with the periodic statement, requirements for the consumer to follow in making payments, but accepts a payment that does not conform to the requirements, the creditor shall credit the payment within 5 days of receipt.

8

(c) Adjustments of account. If a creditor fails to credit a payment, as required by paragraphs (a) and (b) of this section, in time to avoid the imposition of finance or other charges, the creditor shall adjust the consumer's account during the next billing cycle.

33. Regulation Z has the full force of law just as TILA. Therefore, violations of Regulation Z give rise to civil liability.

34. TILA Official Staff Commentary to Regulation Z §226.10(a).states that open-end creditors and credit card issuers are "required to credit payments as of the date of receipt." The "date of receipt" is the date that the payment instrument or other means of completing the payment reaches the creditor.

35. The TILA and Regulation Z require a credit card issuer to disclose the date by which payment must be made to avoid additional finance and other charges. See 15 U.S.C. §1637(b)(9); 12 C.F.R. §226.7 (2007). Defendant's failure to disclose that the "minimum payment" amount does not include all fees that Defendant imposes, is a violation of the TILA. See 15 U.S.C. §1637(b)(9).

36. The TILA and Regulation Z require a credit card issuer to disclose the true cost of credit.

37. Defendant has knowingly and intentionally violated TILA and its Regulation when it established due dates for Cardholder payments and then failed to properly credit Plaintiffs' and the Class members' timely tendered payments without the imposition of additional fees and charges on the day Defendant actually received such payments.

38. As a result of Defendant's violations of the TILA and Regulation Z, Defendant is liable to Plaintiffs and the Class, who seek damages, declaratory and injunctive relief in connection with Defendant's illegal practices.

9

## THIRD COUNT
### (Declaration of Contractual Unconscionability)

39. Plaintiffs hereby incorporate by reference the allegations contained in all of the preceding paragraphs of this Complaint.

40. As part of Defendant's scheme to evade its lawful obligations, it implemented a plan to try to increase the likelihood that it could escape accountability for its illegal actions by including in its form cardholder contracts several provisions intended to limit the legal remedies available to borrowers who might wish to challenge the legality of Defendant's practices.

41. In accordance with this plan, all Defendant's cardholder agreements during the relevant time period contain provisions that purport to:

   (a) require borrowers to waive their right to a jury trial;

   (b) require borrowers to waive their right to serve as a representative, as a private attorney general, or in any other representative capacity, and/or to participate as a member of a class of claimants, in any lawsuit filed against Defendant;

   (c) claim to make the contracts governed by Delaware law;

   (d) require borrowers to waive their right to bring any actions in the courts and, instead, to arbitrate any legal dispute with an arbitration service named by Defendant, the National Arbitration Forum ("NAF"); and

   (e) require borrowers to waive their rights to the rules of civil procedure and evidence.

42. These provisions are procedurally unconscionable in that Defendant's cardholder contracts are essentially adhesion contracts. The contracts are presented on a "take it or leave it"

10

basis, and borrowers lack the bargaining power to negotiate any material changes to the terms imposed by Defendant.

43. The above-listed contract provisions are substantively unconscionable in that they function, as a practical matter, as exculpatory clauses that insulate Defendant from legal accountability and deny Class members access to reasonable and appropriate remedies.

44. It would not be economically feasible for a BOA customer to raise the claims raised in this case via an individual action. Given the costs of pursuing such a case, a class action is the only realistic means for wronged customers to receive legal redress. Thus, by precluding the use of the device of class actions, Defendant is effectively insulating and immunizing itself from liability.

45. It would be unfair to require aggrieved customers of BOA to arbitrate their claims against the Defendant with NAF in that, among other things:

(a) NAF is not a neutral provider of alternative dispute resolution services.

On the contrary, it is a secretive, for-profit company that depends financially on pleasing the corporate clients it serves and that implicitly promises its clients an arbitration that is essentially rigged to favor the client.

(b) NAF employs a unique method for selecting an arbitrator that, as a practical matter, gives the director of NAF the power to select the arbitrator he wants, without the consent of the consumer litigant.

(c) In contrast to other arbitration providers, the pool of NAF arbitrators tends to be creditor lawyers, not neutrals. Through the power over selection exerted by the NAF director, any arbitrator who, by chance, were to rule in favor of a consumer litigant would be denied any future selection by NAF.

(d) NAF employs a unique "loser pays" rule which shifts attorneys fees and costs to a losing consumer.

(e) NAF rules uniquely limit allowable discovery to an amount "commensurate with the value of the claim."

(f) NAF rules not only prohibit class actions, they prohibit any joinder of claims unless the creditor agrees to the joinder. Thus, even if several hundred BOA customers were to join together in a non-class action proceeding, NAF rules would enable BOA to avoid such an action.

46. Because the contractual clauses that preclude class actions, impose Delaware law and require the use of NAF as a legal forum for any disputes are procedurally and substantively unconscionable, Plaintiffs are entitled to a declaratory judgment that these provisions are unenforceable because they violate Rhode Island law and public policy.

## JURY TRIAL DEMAND

Plaintiffs, on behalf of themselves and the Class, hereby demand a trial by jury on issues triable at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek judgment in favor of themselves and the Class for the following relief:

(a) An order certifying the proposed Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiffs and their counsel to represent the Class;

(b) A finding that Defendant is liable under each of the above alleged counts;

(c) Ordering restitution of late fees, other fees, charges and/or additional finance charges;

(d) Awarding Plaintiffs and the Class actual damages, statutory damages and punitive damages;

(e) Entering a declaratory judgment that the clauses in the Plaintiffs' and Class members' cardholder agreements that preclude class actions, that require the borrower to reimburse Defendant for arbitration fees and costs, or require the use of NAF as a legal forum for any disputes, are procedurally and substantively unconscionable, and therefore void and unenforceable;

(f) Awarding Plaintiffs and the Class their costs and disbursements incurred in connection with this action, including reasonable attorney fees, expert witness fees and other fees and costs;

(g) Awarding Plaintiffs and the Class pre-judgment and post-judgment interest;

(h) Awarding Plaintiffs' attorney fees under the Common Fund Doctrine and any other applicable law;

(i) Granting such other and further relief as the Court deems necessary, just and proper.

Dated: January 23, 2009

Respectfully submitted,

By: /s/ Peter N. Wasylyk
**LAW OFFICES OF PETER N. WASYLYK**
Peter N. Wasylyk
1307 Chalkstone Avenue
Providence, Rhode Island 02908
Telephone: (401) 831-7730
Facsimile: (401) 861-6064
E-Mail: pnwlaw@aol.com

13

**ADDITIONAL COUNSEL:**

**DONOVAN SEARLES, LLC**
Michael D. Donovan
David A. Searles
1845 Walnut Street, Suite 1100
Philadelphia, PA 19103
Telephone: (215) 732-6067
Facsimile: (215) 732-8060

**LAW OFFICE OF ANDREW KIERSTEAD**
Andrew S. Kierstead
1001 SW 5th Avenue, Suite 1100
Portland, Oregon 97204
Tel: (508) 224-6246
Fax: (508) 224-4356