```
              UNITED STATES DISTRICT COURT FOR THE
                    DISTRICT OF RHODE ISLAND
```

Bruce J. Trombley
and Ryan Sukaskas

    v.                                        Civil No. 08-cv-456-JD

Bank of America Corp.


                                   O R D E R

Bruce J. Trombley and Ryan Sukaskas brought a putative class action, alleging that the Bank of America Corporation ("BAC") breached its credit card agreement with them and violated the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, et seq., and Regulation Z, codified at 12 C.F.R. § 226.  The plaintiffs also sought a declaratory judgment that the credit card agreements are unconscionable.  The parties stipulated to the dismissal of the declaratory judgment claim without prejudice, and the court previously dismissed the claims for breach of the terms of the contract and for a TILA violation based on failing to credit the plaintiffs' timely payments on the day they were tendered without imposing fees and charges.  Two claims remain, upon which BAC now moves for judgment on the pleadings: a claim for violation of the implied covenant of good faith and fair dealing and a claim for a

TILA violation based on failing to disclose "that the 'minimum payment' amount does not include all fees that [BAC] imposes."[1]

## Standard of Review

"After the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  A motion for judgment on the pleadings is decided under the same standard as a motion to dismiss.  Remexcel Managerial Consultants, Inc. v. Arlequin, 583 F.3d 45, 49 n.3 (1st Cir. 2009).  "[T]o survive a . . . motion for judgment on the pleadings . . ., the complaint must plead facts that raise a right to relief above the speculative level."  Citibank Global Mkts., Inc. v. Rodríguez Santana, 573 F.3d 17, 23 (1st Cir. 2009).  In deciding the motion, the court must "view the facts contained in the pleadings in the light most favorable to the party opposing the motion--here, the plaintiff--and draw all reasonable inferences in the plaintiff's favor."  Curran v. Cousins, 509 F.3d 36, 43 (1st Cir. 2007) (citation omitted). "The court may supplement the facts contained in the pleadings by considering documents fairly incorporated therein and facts

---

[1] BAC also requested that the court take judicial notice that FIA Card Services, N.A., is a nationally chartered bank, and the plaintiffs did not oppose the request.  The request is granted.

2

susceptible to judicial notice." R.G. Financial Corp. v. Vergara-Nuñez, 446 F.3d 178, 182 (1st Cir. 2006) (quotation marks omitted). The court "may consider documents the authenticity of which are not disputed by the parties; documents central to plaintiffs' claim; and documents sufficiently referred to in the complaint." Curran, 509 F.3d at 44 (internal quotation marks and alterations omitted).[2]

## Background

The facts are gleaned from the amended complaint and the portions of the plaintiffs' credit card agreements and account statements before the court. Trombley and Sukaskas each have a BAC credit card. In October, 2007, Trombley made a payment in person at a BAC branch on the date the payment was due. BAC did not credit the payment on that date, imposed a late fee of $39.00, and cancelled his promotional interest rate. Sukaskas

---

[2]BAC stated that its motion was based on its filings in support of its motion for judgment on the pleadings, its request for judicial notice, and the pleadings and affidavits already before the court. As discussed in the December 23, 2009, order addressing BAC's motion to dismiss, the plaintiffs' credit card agreements and account statements are documents whose authenticity is not disputed, and they are central to the plaintiffs' claims. They will, therefore, be considered for purposes of deciding BAC's motion for judgment on the pleadings. The content of the affidavits of Nancy Miller, Denise Augustin, and Stephanie Hamilton, as distinguished from the undisputed exhibits to the affidavits, will not be considered.

attempted to make an online payment in November, 2007, but was informed that BAC would not credit the payment on that day because it was the due date. To avoid paying late, he paid by telephone. BAC imposed a telephone payment fee of $15.00.

## Discussion

After the dismissal of some of the plaintiffs' claims, two remain. The plaintiffs claim that BAC violated section 1637(b)(9) of TILA,[3] which requires BAC to disclose the date by which payment must be made to avoid additional finance and other charges. Specifically, the plaintiffs allege in the complaint that BAC failed "to disclose that the 'minimum payment' amount does not include all fees that [BAC] imposes."[4] The plaintiffs

---

[3] In their complaint, the plaintiffs allege that BAC violated both section 1637(b)(9) and Regulation Z, 12 C.F.R. § 226.7. The plaintiffs do not cite any particular portion of section 226.7, a regulation with many subsections, some of which may be applicable and some of which, such as rules affecting home-equity plans, clearly are not. The court cannot discern which portion of the regulation is allegedly applicable, and the plaintiffs address only TILA in their objection. Therefore, the claim is construed as alleging a violation of TILA only.

[4] In their objection to the motion for judgment on the pleadings, the plaintiffs rephrase their argument, stating that BAC violated TILA by "fail[ing] to disclose to Plaintiffs that the minimum payment amount required by [BAC] did not include the fees that [BAC] imposes when payments are tendered at a branch office," and failing to "disclose that those customers who sign up for the online payment service will not be permitted to make

also argue that BAC breached the duty of good faith and fair dealing, implied in the credit card agreements, by waiting to credit payments made on the due date in order to impose late fees and other charges.

BAC contends that the cited provisions of TILA and Regulation Z do not address minimum payments or any specific disclosures with regard to minimum payment amounts, and that BAC therefore did not violate those provisions. BAC also argues that the plaintiffs' good faith and fair dealing claim must fail because it is a state law that is preempted by provisions of the National Bank Act ("NBA") and regulations of the Office of the Comptroller of the Currency ("OCC").

The plaintiffs object, arguing that TILA is supposed to be construed liberally and that the requirements regarding payment due dates can plausibly be read to encompass a requirement to disclose fees that will be imposed if the cardholder makes his payments on the due date at a branch office or over the phone. The plaintiffs also contend that their state law claim is not preempted by the OCC regulations, and that state law must apply because the credit card agreements provide that the contracts will be governed by state law. In the alternative, if the court

---

such a payment on the due date and will therefore be compelled to find another method of payment on the due date."

finds that the OCC regulations preempt their state law claim, the plaintiffs argue that the regulations are unlawful.

A.  TILA Claim

Section 1637(b)(9) of TILA states that the creditor "shall transmit to the obligor, for each billing cycle at the end of which there is an outstanding balance in that account or with respect to which a finance charge is imposed, a statement setting forth . . . [t]he date by which[,] or the period (if any) within which, payment must be made to avoid additional finance charges."

It is unclear exactly what the plaintiffs allege. The complaint alleges that BAC failed to disclose that the "minimum payment" does not include all the fees BAC imposes. If the plaintiffs intended to argue that BAC was required to explain that making only the "minimum payment" listed on the statement would result in interest or late fees being added to the account, this claim fails for two reasons. Both plaintiffs allegedly paid their balance in full, not just the "minimum payment." Moreover, a separate section of TILA requires the creditor to explain the consequences of making only the "minimum payment,"[5] so 1637(b)(9)

---

[5]Section 1637(b)(11)(A) requires that each statement recite the following: "Minimum Payment Warning: Making only the minimum payment will increase the amount of interest you pay and the time it takes to repay your balance.", or [a] similar statement."

cannot be construed to mean the same thing. "[N]o construction should be adopted which would render statutory words or phrases meaningless, redundant, or superfluous." Zimmerman v. Cambridge Credit Counseling Corp., 409 F.3d 473, 476 (1st Cir. 2005) (internal quotation marks and citation omitted).

If the plaintiffs intended to argue that section 1637(b)(9) requires BAC to explain on each billing statement that the minimum payment amount does not include fees or charges that might be imposed on a subsequent bill for attempting to pay in person at a branch office or over the phone, that argument also fails. Section 1637(b)(9) relates only to stating the date by which payment must be made to avoid finance charges. It does not require the creditor to state anything about what types of fees or charges might be added in the future.

Not only does the language not even hint at the requirement plaintiffs are suggesting, but such a requirement would not make sense. As the court noted in Van Slyke v. Capital One Bank, No. C 07-671 WHA, 2007 WL 2385108, at *5 (N.D. Cal. Aug. 17, 2007), "the chances of any particular cardholder making a late payment [or attempting to pay at a branch location or by phone] at any time are unknown." Even if BAC "knows ahead of time that it will impose monetary penalties for payments made on the due date at a branch and that it will not accept online payments made on the

due date," as the plaintiffs argue, BAC cannot know ahead of time which cardholder will be subject to those penalties.[6] Section 1637(b)(9) does not require prescience or even that a creditor warn a cardholder about the consequences of failing to make full payment in a manner such that it will be credited by the due date. The section requires notice of <u>when</u> payment must be made, not <u>how</u> it must be made.

By its terms, section 1637(b)(9) requires the creditor to state the date by which payment must be made to avoid finance charges. The plaintiffs state in their amended complaint that, on their monthly statements, "[BAC] designates a due date by which the cardholder must make a minimum payment or the cardholder will be assessed a late fee and/or additional finance charges." Moreover, the account statements attached to the affidavit of Denise Augustin each bear payment due dates and the amounts of the payments due.[7] Therefore, BAC complied with the

---

[6]Additionally, section 1637(b)(9) refers only to dates after which <u>finance charges</u> will be imposed. Under 12 C.F.R. § 226.4(c)(2), "charges for actual unanticipated late payment . . . or for delinquency, default, or a similar occurrence" are explicitly excluded from the definition of "finance charge." Therefore, section 1637(b)(9) cannot be read to require BAC to state that late fees may be imposed if payment is made at a branch location. See <u>Van Slyke</u>, 2007 WL 2385108, at *5.

[7]With respect to some statements, these dates and amounts are redacted.

letter of section 1637(b)(9). The plaintiffs' claim under TILA is dismissed.

B.  Duty of Good Faith & Fair Dealing Claim

The plaintiffs' remaining claim is that BAC violated the duty of good faith and fair dealing by failing to post the plaintiffs' payments on the day they were received, without imposing additional fees or charges.[8] The plaintiffs argue that, although the credit card agreements gave BAC discretion to delay crediting certain payments made on the due date, BAC abused that discretion, violating the covenant of good faith and fair dealing which, under Delaware law, is implied in every contract.

1.  General Preemption Principles

The Supremacy Clause of the U.S. Constitution makes federal laws the supreme law of the land, such that, in some cases, a federal law may preempt a state law. U.S. Const. art. VI, cl. 2. There are three types of preemption: "Congress can expressly

---

[8]In their objection, the plaintiffs state that they "do not challenge [BAC]'s electronic payment processing system." Sukaskas attempted to pay via the electronic system but the system would not process his payment that day. Therefore, his argument appears to be analogous to Trombley's: BAC is obligated to credit payments made on the date they are tendered, regardless of whether they are tendered in person or online.

9

preempt state law by explicit statutory language" ("express preemption"), "Congress can enact a regulatory scheme so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it" ("field preemption"), or "federal law may be in irreconcilable conflict with state law" ("conflict preemption").[9]  SPGGC, LLC v. Ayotte, 488 F.3d 525, 530 (1st Cir. 2007) (internal quotation marks and citations omitted).  "Federal statutes and the regulations adopted thereunder have equal preemptive effect."  Id.

   2.   Preemption in the NBA

The NBA gives national banking associations, such as FIA Card Services, N.A.,[10] "the power . . . [t]o exercise . . ., subject to law, all such incidental powers as shall be necessary to carry on the business of banking."  12 U.S.C. § 24 Seventh.  The Supreme Court has "interpreted grants of both enumerated and incidental 'powers' to national banks as grants of authority not normally limited by, but rather ordinarily preempting, contrary state law."  Watters v. Wachovia Bank, N.A., 550 U.S. 1, 12

---

   [9]A fourth type of preemption, "complete preemption," relates to federal subject-matter jurisdiction.

   [10]FIA Card Services, N.A., is a national banking association into which BAC merged in 2006.

(2007) (internal quotation marks, citations, and alteration omitted). National banks, however, are "subject to state laws of general application in their daily business to the extent such laws do not conflict with the letter or the general purposes of the NBA." Id. at 11.

The NBA also provides that "the Comptroller of the Currency is authorized to prescribe rules and regulations to carry out the responsibility of the office," which includes "the execution of all laws passed by Congress relating to the issue and regulation of a national currency." 12 U.S.C. §§ 1, 93a. Pursuant to that authority, the OCC promulgated regulations regarding whether, and to what extent, state laws are preempted. Specifically, "[e]xcept where made applicable by Federal law, state laws that obstruct, impair, or condition a national bank's ability to fully exercise its Federally authorized non-real estate lending powers are not applicable to national banks." 12 C.F.R. § 7.4008(d)(1) (2007). Section 7.4008(d)(2) provides that "a national bank may make non-real estate loans without regard to state law limitations concerning: (iv) The terms of credit, including the schedule for repayment of principal and interest, . . . [and] payments due."

Certain state laws are excepted, however. State laws regarding contracts are not preempted, so long as they "are not

11

inconsistent with the non-real estate lending powers of national banks and apply to national banks to the extent that they only incidentally affect the exercise of national banks' non-real estate lending powers." 12 C.F.R. § 7.4008(e)(1). Section 7.4008, therefore, requires an analysis of whether the state law at issue falls within the specifically enumerated areas in subsections (d)(2) or (e), and if not, whether the law violates the general preemption principle set forth in subsection (d). See Davis v. Chase Bank U.S.A., N.A., 650 F. Supp. 2d 1073, 1085 (C.D. Cal. 2009).

    3.   Section 7.4008 and the Duty of Good Faith and Fair Dealing

The good faith and fair dealing laws on which the plaintiffs base their claim do not fall within the express language of 12 C.F.R. § 7.4008(d)(2)(iv) that BAC cited in its motion. The language does not expressly preempt generally applicable laws about performing one's contracts in good faith. Rather, subsection (d)(2)(iv) focuses on specific terms that are explicit in a lending contract, such as the schedule for repayment, the balance, the payments due, and minimum payments. The language targets specific terms, not general good faith requirements. Cf. Davis, 650 F. Supp. 2d at 1085 (general false advertising laws do

12

not fall within section 7.4008(d)(2)). Good faith and fair dealing laws do not dictate particular terms of credit, but merely require that a creditor comply with the terms of its contracts in the same way that any other contracting party must, that is, by refraining from exercising its contractual discretion in an underhanded, arbitrary, or unreasonable way. See, e.g. Dunlap v. State Farm Fire & Cas. Co., 878 A.2d 434, 442 (Del. 2005); PAMI-LEMB I Inc. v. EMB-NHC, LLC, 857 A.2d 998, 1016 (Del. Ch. 2004).

The good faith and fair dealing laws do fall within section 7.4008(e)(1). They are contract laws that are consistent with national banks' lending powers and only incidentally affect the exercise of those powers. The state laws "do[] not seek to force [BAC] to set its contracts in a certain way, but rather merely to adhere to the contracts it does create," nor do they "fall within the fundamental purposes of the broad national banking preemption." Davis, 650 F. Supp. 2d at 1086 (emphasis in original).

This case is most analogous to In re Checking Acct. Overdraft Litigation, --- F. Supp. 2d. ----, 2010 WL 841305 (S.D. Fla. Mar. 11, 2010), and Gutierrez v. Wells Fargo Bank N.A., 622 F. Supp. 2d 946 (N.D. Cal. 2009). As in those cases, the plaintiffs here are not challenging BAC's fundamental right to

13

charge certain fees, set payment due dates, or decide the terms upon which they will extend credit. Rather, the plaintiffs are attacking BAC's manipulation of the discretion BAC has under its contracts to delay crediting certain payments. As in In re Checking Acct. Overdraft Litigation, BAC has the right to charge fees, but it is not authorized "to ignore general contract . . . law." 2010 WL 841305, at *7. "These are state laws of general application that do not vitiate the purposes of the NBA, and banks could comply with both the NBA, OCC regulations[,] and state laws if they refrained from engaged in the criticized . . . procedures." Id. at *8.

The state laws upon which plaintiffs base their claim that BAC violated the duty of good faith and fair dealing are not preempted and the claim will not be dismissed.

## Conclusion

For the foregoing reasons, BAC's motion for judgment on the pleadings (doc. no. 51) is granted as to the remaining TILA claim and denied as to the good faith and fair dealing claim. The stay

14

in this case, imposed on February 16, 2010, is lifted. The clerk of court shall schedule the initial scheduling conference. <u>See</u> RI LR Cv 16.

SO ORDERED.

/s/ Joseph A. DiClerico, Jr.
Joseph A. DiClerico, Jr.
United States District Judge

June 2, 2010

cc: Peter N. Wasylyk, Esquire
David A. Searles, Esquire
Michael J. Quirk, Esquire
David J. Fioccola, Esquire
David Michael Marquez, Esquire
Mark P. Ladner, Esquire
Robert G. Flanders, Jr., Esquire