UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF RHODE ISLAND

Bruce J. Trombley, et al.

    v.                        Civil No. 08-cv-456-JD

Bank of America Corporation

O R D E R

The plaintiffs, Bruce J. Trombley and Ryan Sukaskas, sued Bank of America Corporation ("BAC"), on their own behalf and on behalf of a putative class, alleging, inter alia, breach of the implied covenant of good faith and fair dealing.[1] The parties have reached a settlement, and the plaintiffs have filed an unopposed motion for preliminary approval of their settlement agreement, which includes a request for certification of a settlement class. The plaintiffs also filed a copy of their proposed settlement agreement, with a proposed claim form, proposed notice of the settlement, a proposed preliminary approval order, and a proposed final order and judgment.

---

[1] Trombley and Sukaskas also alleged breach of contract, violation of the Truth in Lending Act, and that their credit card agreements were unconscionable. The parties stipulated to the dismissal of the unconscionability claim without prejudice. The court previously granted motions in favor of BAC on the breach of contract and Truth in Lending Act claims.

Background

Trombley and Sukaskas each had a BAC credit card. They allege that Trombley made a payment in person at a BAC branch on the date the payment was due, but BAC did not credit the payment on that date, imposed a late fee, and cancelled his promotional interest rate. Sukaskas attempted to make an online payment for his credit card balance but was informed that BAC would not credit the payment on that day because it was the due date. To avoid paying late, he paid by telephone, and BAC imposed a telephone payment fee of $15.00. They further allege that BAC has imposed similar fees and charges on the putative class members for timely-tendered payments.

Trombley and Sukaskas filed this case as a putative class action on November 24, 2008. The parties initially litigated whether the claims were subject to arbitration, until BAC withdrew its motion for arbitration. Following the court's decisions on BAC's motion to dismiss and motion for judgment on the pleadings, the remaining claim in this case is that BAC violated the duty of good faith and fair dealing by failing to post the plaintiffs' and the putative class members' payments on the day they were received, without imposing additional fees or charges. The plaintiffs argue that BAC abused the discretion provided in their credit card agreements to delay crediting

2

certain payments made on the due date in violation of the implied covenant of good faith and fair dealing.

The parties entered a Settlement Agreement that is dated June 27, 2011. For purposes of settlement, the parties have agreed to the following definition of the settlement class:

> all Persons who, at any time between August 1, 2006 and February 22, 2010: (x) had a credit card account with FIA[2] and (y) made a Qualifying Payment in connection with that account (I) in person at a Bank of America banking center; (ii) by phone using Bank of America's pay-by-phone service; or (iii) electronically using Bank of America's online banking services; and (z) who incurred a late payment fee, finance charge, or other fees, penalties or charges, in connection with the timing of such payment that was not waived or refunded.

Settlement Agreement § 2(bb). "Qualifying Payment" for purposes of the settlement class means:

> payment by a FIA cardholder on a FIA credit account where the payment is (x) equal to or in excess of the minimum payment due for the monthly billing cycle in which it is made (y) not determined by Defendant to be deficient for non-sufficient funds; and (z) made, or alleged by the cardholder to be made, on or before the same day as the "Payment Due Date" or other deadline stated in the operative cardholder agreement, cardholder statement or other disclosure to the cardholder.

Settlement Agreement § 2(u).

---

[2]FIA Card Services, N.A. is the successor-in-interest to Bank of America, N.A. and is a wholly-owned subsidiary of BAC. Settlement Agreement, § 1, Recitals.

Under the terms of the Agreement, the amount of the settlement is $5,000,000. BAC will pay up to $28 from the net settlement amount to each settlement class member who the settlement administrator determines has satisfied the requirements for payment or account credit and will pay the class representatives $5,000 each as a service award. Court approved attorneys' fees and costs and the costs of the settlement will also be paid out of the settlement amount. The net settlement amount is the amount remaining after payment of court approved fees, costs, service awards, and any other court-approved deductions. If money remains in the settlement amount after the required payments have been made, up to $450,000 of the money remaining will constitute a Cy Pres Fund for distribution to designated organizations.

The proposed settlement agreement also provides that all members of the settlement class who do not opt out of the class will be bound by the terms of the settlement agreement. After final settlement approval, the class representatives and each settlement class member will release BAC as is provided in the Settlement Agreement. The Settlement Agreement also provides for obtaining class certification, notice to class members, and other procedures necessary to resolve the case.

## Discussion

In their present motion, the plaintiffs ask the court to certify a settlement class and to give preliminary approval to the Settlement Agreement.

I. Settlement Class Certification

To certify a class, the parties must show that the proposed class meets all of the requirements of Federal Rule of Civil Procedure 23(a) and one of the three categories provided in Rule 23(b). Garcia-Rubiera v. Calderon, 570 F.3d 443, 460 (1st Cir. 2009); Smilow v. Southwestern Bell Mobile Sys., Inc., 323 F.3d 32, 38 (1st Cir. 2003). When certification is sought for purposes of settlement, the certification requirements designed to protect absentees require heightened scrutiny because the court will not have the opportunity to modify the class, if necessary, over the course of the litigation. Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1997); Hochstadt v. Boston Sci. Corp., 708 F. Supp. 2d 95, 102 (D. Mass. 2010)("[W]hen a settlement class is proposed, it is incumbent on the district court to give heightened scrutiny to the requirements of Rule 23 in order to protect absent class members.").

A. Requirements of Rule 23(a)

"Rule 23(a) requires that (1) there be numerosity, (2) there be common questions of law or fact, (3) the class representative's claims be typical of the class, and (4) the representative's representation of the class be adequate." In re New Motor Vehicles Can. Exp. Antitrust Litig., 522 F.3d 6, 18 (1st Cir. 2008).

1. Numerosity

The numerosity requirement is satisfied if the class is so large that joinder of all the class members would be impracticable. Fed. R. Civ. P. 23(a)(1). The plaintiffs estimate, and BAC does not dispute, that there are 391,108 potential class members. Based on the estimated number, the numerosity requirement is met.[3]

2. Commonality

A class must share common questions of law or fact. Fed. R. Civ. P. 23(a)(2). To satisfy the commonality requirement, the claims of the class "must depend upon a common contention . . .

---

[3] If the settlement amount, less estimated amounts for expenses, is divided by the proposed payments to class members, the calculation suggests the likely number of approved class members is about half of the potential class members.

[which] must be of such a nature that it is capable of classwide resolution--which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, Inc. v. Duke, 131 S. Ct. 2541, 2551 (2011).

Trombley and Sukaskas assert that the class shares the contention that BOA's practices and policies for credit card balance payments violate the implied covenant of good faith and fair dealing. More specifically, the class shares the contention that BAC's practices and policies violated the implied covenant of good faith and fair dealing by causing Trombley, Sukaskas, and class members to incur penalties, fees, or charges when they made payments on their BAC credit card accounts in person at a branch bank, by telephone, or electronically. For Trombley, Sukaskas, and the class, the claim that BAC violated the implied covenant of good faith and fair dealing is based on Delaware law. See Order, dkt. no. 47, Dec. 23, 2009, at 5 n.3 & 9.

The proposed class shares the same factual and legal contentions and therefore meets the commonality requirement.

### 3. Typicality and Adequacy

The requirements of typicality and adequacy focus on the class representatives. Fed. R. Civ. P. 23(a)(3) & 23(a)(4).

The claims of the class representatives must be typical of the class members' claims, meaning that the representatives' "injuries arise from the same events or course of conduct as do the injuries of the class and . . . [the representatives'] claims and those of the class are based on the same legal theory." Otte ex rel. Estate of Reynolds v. Life Ins. Co. of N. Am., --- F. Supp. 2d ---, 2011 2307404, at *4 (D. Mass. June 10, 2011) (internal quotation marks omitted). The class representatives must also be able to fairly and adequately protect the interests of the class, which requires a showing that "the interests of the representative part[ies] will not conflict with the interests of any of the class members, and . . . that counsel chosen by the representative part[ies] is qualified, experienced and able to vigorously conduct the proposed litigation." Id. at *6 (internal quotation marks omitted); see also Ortiz v. Fibreboard Corp., 527 U.S. 815, 856 (1999).

The claims alleged in this case are based on three payment methods that incurred fees, charges, or penalties imposed by BAC. Trombley made his payment in person at a branch bank, and Sukaskas paid by telephone after trying to pay electronically. Both incurred fees, charges, or other penalties as a result. As defined, each member of the class will also have made a payment in one or more of the three stated payment methods and will have

8

incurred fees, charges, or penalties.  Variations in the payment methods do not appear to be significant for purposes of the case. Nothing has been presented that shows or suggests that Trombley's and Sukaskas's claims are not typical of the claims of the class members.

This case presents a relatively simple class action that does not implicate the potential for conflicts of interest and other problems which have arisen in more complex cases.  See, e.g., Ortiz, 527 U.S. at 856-57.  The proposed settlement obligates BAC to pay up to $5,000,000 to provide distributions of $28 to each approved class member, distributions of $5,000 each to Trombley and Sukaskas as class representatives, attorneys' fees and costs, settlement costs, and a Cy Pres Fund.  Settlement Agreement, § 9(a).  Although the Settlement Agreement provides for payments to Trombley and Sukaskas in an amount that is much higher than the payments to other class members, that arrangement does not appear to jeopardize the payments that will be made to the remainder of the class.

With respect to the adequacy of counsel to represent the class, the plaintiffs' counsel, Peter N. Wasylyk, Michael D. Donovan, Michael J. Quirk, and Andrew S. Kierstead, represent that they are "active practitioners whose experience in consumer law and class action litigation is demonstrated by the

9

Declarations attached to this memorandum." Memorandum, dkt. no. 90, at 17. Unfortunately, the declarations were not filed with the memorandum. Counsel shall promptly file the declarations. The court has independently confirmed that each attorney, representing Trombley and Sukaskas, has represented plaintiffs in other class action litigation in federal court. The court has not found any indication that the plaintiffs' counsel would not meet the adequacy requirements.

B.  Requirements of Rule 23(b)

The class seeks certification under Rule 23(b)(3), which requires that the common questions of law or fact predominate over any individual questions and that a class action is the better means for adjudicating the case. To determine whether common questions of law or fact predominate, the court generally examines the elements of the claim. See Erica P. John Fund, Inc. v. Halliburton Co., 131 S. Ct. 2179, 2184 (2011). For purposes of a settlement class, however, any issues pertaining to management of the class during litigation need not be considered. Amchem, 521 U.S. at 620.

Because the parties have agreed to a settlement, the plaintiffs will not be required to prove the elements of the claim. BAC has agreed to make certain payments to approved class

members, without admitting liability.  The parties have also
agreed to the terms for administering the class for purposes of
the settlement.  In these circumstances, the common questions
predominate over any individual questions that might arise.

Each individual class member's claim in this case is for the
fees, charges, or penalties that BAC assessed when that
individual paid a credit card bill in person, by telephone, or
electronically.  The plaintiffs represent that individually the
amounts claimed on average would be $35, which is too small to
litigate in separate cases.  Therefore, a class action appears to
be superior to individual suits to resolve the claim raised here.
See Smilow, 323 F.3d at 40.

C. Certification

Solely for the purpose of settlement as provided in the
parties' Settlement Agreement and without prejudice to BAC's
reserved rights to pursue arbitration and to contest class
certification should the settlement fail, the following
settlement class is conditionally certified:

> All Persons who, at any time between August 1, 2006,
> and February 22, 2010: (a) had a credit card account
> with FIA; (b) made a Qualifying Payment in connection
> with that account (I) in person at a Bank of America
> banking center; (ii) by phone using Bank of America's
> pay-by-phone service; or (iii) electronically using
> Bank of America's online banking services; and (c) who

incurred a late payment fee, finance charge, or other
fees, penalties or charges, in connection with the
timing of such payment that was not waived or refunded.

Proposed Order at 2-3.  For purposes of the class definition, a

"Qualifying Payment" is

a payment by a FIA cardholder on a FIA credit account
where the payment is (x) equal to or in excess of the
minimum payment due for the monthly billing cycle in
which it is made (y) not determined by Defendant to be
deficient for non-sufficient funds; and (z) made, or
alleged by the cardholder to be made, on or before the
same day as the "Payment Due Date" or other deadline
stated in the operative cardholder agreement,
cardholder statement or other disclosure to the
cardholder.

Settlement Agreement, § 2(u).  Bruce J. Trombley and Ryan

Sukaskas will serve as the class representatives.  Pursuant to

Federal Rule of Civil Procedure 23(g), the following attorneys

are appointed to serve as class counsel:

Michael D. Donovan
Donovan Searles & Axler, LLC
1845 Walnut Street, Suite 1100
Philadelphia, Pennsylvania  19120


Michael J. Quirk
Williams Cuker Berezofsky, LLC
1515 Market Street, Suite 1300
Philadelphia, Pennsylvania  19102


Andrew S. Kierstead
The Law Office of Andrew S. Kierstead
1001 SW 5th Avenue, Suite 1100
Portland, Oregon  97204

Peter N. Wasylyk
The Law Offices of
Peter N. Wasylyk
1307 Chalkstone Avenue
Providence, Rhode Island 02903


II.  Preliminary Approval of Proposed Settlement

After a class has been certified in a case, a settlement that would be binding on class members requires the court's approval, following a hearing and based on a finding that the settlement is fair, reasonable, and adequate.  Fed. R. Civ. P. 12(e).  A proposed settlement of a class action may be given preliminary approval "where it is the result of serious, informed, and non-collusive negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies (such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys), and where the settlement appears to fall within the range of possible approval."  Passafiume v. NRA Group, LLC, --- F.R.D. —, 2010 WL 6641072, at *5 (E.D.N.Y. Nov. 30, 2010) (internal quotation marks omitted); see also In re Puerto Rican Cabotage Antitrust Litig., 269 F.R.D. 125, 140 (D.P.R. 2010).

The parties have thoroughly litigated this case since its inception in 2008.  The plaintiffs represent that the settlement provides $5,000,000 of economic relief to BOA customers.  The

13

plaintiffs also state that each class member on average paid $35 in improper late fees and that the settlement provides for payment of up to $28 to each approved class member. The plaintiffs contend that settlement will benefit the public interest, by avoiding delays and uncertainties in litigation.

The plaintiffs overstate the actual amount that will be available for awards to class members, which is the net settlement amount not $5,000,000. The proposed amount of the awards to Trombley and Sukaskas, $5,000 each, is greatly in excess of the awards to individual class members, which at most will be $28. For purposes of preliminary approval and in the absence of evidence of collusion, the awards alone do not undermine the fairness of the proposed settlement.[4] See, e.g., Staton v. Boeing Co., 327 F.3d 938, 976-77 (9th Cir. 2003). If the circumstances change or additional information suggests that the terms of the settlement are not fair, however, the court will not grant final approval.

Therefore, the Settlement Agreement is granted preliminary approval.

---

[4]For purposes of final approval, the parties will have to justify the amount of the awards and demonstrate that the awards are not unfair in light of the awards to the class members.

III. Administration and Procedures

Once a settlement class is conditionally certified and the proposed settlement receives preliminary approval, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). The procedure then moves forward with submission of claim forms, review of claim forms, exclusion from the class, a hearing on the settlement proposal, a motion for final approval, and a final decision and judgment. Fed. R. Civ. P. 23(c) & 23(e); see also, e.g., Andrews Farms v. Calcot, Ltd., 2011 WL 2923886, at *14 (E.D. Cal. July 18, 2011).

A. Notice

Notice to potential Rule 23(b)(3) class members must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. (c)(2)(B). The notice must include the following information, stated clearly and concisely in plain and easily understood language:

    (I)    the nature of the action;
    (ii)   the definition of the class certified;
    (iii)  the class claims, issues, or defenses;
    (iv)   that a class member may enter an appearance through an
           attorney if the member so desires;
    (v)    that the court will exclude from the class any member
           who requests exclusion;

>     (vi)  the time and manner for requesting exclusion; and
>     (vii) the binding effect of a class judgment on members
>           under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

In this case, the proposed notice is provided in a long form and a short form. The Settlement Agreement explains that notice will be provided by either the long or the short form and that the short form explains how to download or obtain the full notice by mail. The long form notice covers twelve pages, including an introduction, a table of contents, a section of basic information about the case and purpose of the notice, and sections explaining the settlement benefits, the process for exclusion from the settlement, counsel for the class, objections, the fairness hearing, and the risk of doing nothing. The long form notice describes the nature of the action, provides the class definition, explains the claim, states that a class member may hire his own attorney, the availability and process for exclusion, and the binding effect of a judgment.

The short form notice is a summary of the notice provided in the long form. The short form states the nature of the action; explains the relief available from the settlement; provides the deadlines for claims, exclusions, objections, and the date of the hearing; and informs recipients how to obtain more information. Although the short form notice does not provide all of the

required information, it does notify recipients about how to obtain all of the information about the action, the class, the settlement, and a potential class member's rights.

The Settlement Agreement provides that BAC will mail notice to the members of the settlement class who are reasonably identifiable or it will provide notice electronically. The Settlement Agreement states that BAC can fulfill the notice by mail requirement by using billing inserts. The Agreement also states that BAC can use either the long or the short form notice.

Rule 23(c) requires the court to direct the best notice to class members that is practicable under the circumstances. The long form satisfies the requirements of Rule 23(c)(2)(B), while the short form does not. The plaintiffs do not explain why the short form would be the best notice that is practicable under all of the circumstances, including through individual mailings. Therefore, notice by the long form is approved. BAC must seek approval before using the short form for notice.

B. <u>Administration</u>

The plaintiffs' proposed order granting preliminary approval addresses many specific issues that were not included in the plaintiffs' unopposed motion seeking preliminary approval of the Settlement Agreement. The additional issues include

17

authorization for BAC to retain Rust Consulting, Inc. as
Settlement Administrator, approval of the claim form, preliminary
approval of settlement costs to allow quarterly deduction from
the Settlement Amount, and other matters.  Because those issues
were not addressed in the plaintiffs' motion, the court will not
incorporate the proposed rulings into the order on preliminary
approval of the Settlement Agreement.  If the parties seek
additional rulings from the court, they must seek relief by
filing a motion along with a supporting memorandum.

C.  <u>Preliminary Approval</u>

　　The court grants <u>preliminary</u> approval of the Settlement
Agreement.

<u>Conclusion</u>

　　For the foregoing reasons, the plaintiffs' unopposed motion
for preliminary approval (document no. 90) is granted as follows:

　　1.  A settlement class, as defined in the Settlement
Agreement, Section 2(bb) and Section 2(u), is conditionally
certified.

　　2.  Bruce J. Trombley and Ryan Sukaskas will serve as the
class representatives.  Pursuant to Federal Rule of Civil
Procedure 23(g), the following attorneys are appointed to serve

as class counsel:

Michael D. Donovan
Donovan Searles & Axler, LLC
1845 Walnut Street, Suite 1100
Philadelphia, Pennsylvania  19120

Michael J. Quirk
Williams Cuker Berezofsky, LLC
1515 Market Street, Suite 1300
Philadelphia, Pennsylvania  19102

Andrew S. Kierstead
The Law Office of Andrew S. Kierstead
1001 SW 5th Avenue, Suite 1100
Portland, Oregon  97204

Peter N. Wasylyk
The Law Offices of
Peter N. Wasylyk
1307 Chalkstone Avenue
Providence, Rhode Island 02903

  3. The Settlement Agreement is granted preliminary approval.

  4. BAC shall provide notice to class members as set forth in Section 5 of the Settlement Agreement, except that the long form notice, not the short form, shall be used.  The parties are granted the opportunity to file a motion, supported by a memorandum of law, seeking leave to use the short form notice.

5. The hearing for final approval of the Settlement Agreement is scheduled for Thursday, December 8, 2011, at 10:00 a.m. at the United States District Court for the District of Rhode Island in Providence, Rhode Island.

SO ORDERED.

/s/ Joseph A. DiClerico, Jr.
Joseph A. DiClerico, Jr.
United States District Judge
(Sitting by designation.)

July 28, 2011

cc: Peter N. Wasylyk, Esquire
Andrew S. Kierstead, Esquire
Michael D. Donovan, Esquire
Michael J. Quirk, Esquire
Robert G. Flanders, Jr., Esquire
David J. Fioccola, Esquire
Mark P. Ladner, Esquire
Matthew H. Parker, Esquire