UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF RHODE ISLAND

<u>Bruce J. Trombley and Ryan Sukaskas</u>

    v.                            Civil No. 08-cv-456-JD

<u>Bank of America Corporation</u>

O R D E R

The plaintiffs, Bruce J. Trombley and Ryan Sukaskas, sued
Bank of America Corporation ("BAC"), on their own behalf and on
behalf of a putative class, alleging, <u>inter alia</u>, breach of the
implied covenant of good faith and fair dealing.[1]  The parties
reached a settlement, and the court granted, in part, the
plaintiffs' unopposed motion for preliminary approval of the
settlement agreement and for preliminary certification of a
settlement class.  The plaintiffs filed an unopposed motion for
an award of attorneys' fees and for class certification and final
approval of the settlement.  The plaintiffs also filed an
unopposed revised request for approval of attorneys' fees and for
final approval.

---

[1]Trombley and Sukaskas also alleged breach of contract,
violation of the Truth in Lending Act, and unconscionability of
the credit card agreements.  The parties stipulated to the
dismissal of the unconscionability claim without prejudice.  The
court granted motions in favor of BAC on the breach of contract
and Truth in Lending Act claims.

Background

Trombley and Sukaskas alleged that BAC imposed fees and
other penalties when they made their credit card payments on or
close to the due date.  Trombley made a payment in person at a
BAC branch on the due date, but BAC did not credit the payment on
that date, imposed a late fee, and cancelled his promotional
interest rate.  Sukaskas attempted to make an online payment for
his credit card balance but was informed that BAC would not
credit the payment on that day because it was the due date.  To
avoid paying late, he paid by telephone, and BAC imposed a
telephone payment fee.  They further alleged that BAC has imposed
similar fees and charges on the putative class members for
timely-tendered payments.

Trombley and Sukaskas filed this case as a putative class
action on November 24, 2008, alleging breach of contract, breach
of the duty of good faith and fair dealing, violation of the
Truth in Lending Act, and unconscionability of the credit card
agreements.  The parties initially litigated whether the claims
were subject to arbitration, until BAC withdrew its motion for
arbitration.  The parties stipulated to the dismissal of the
unconscionability claim without prejudice.  The court granted
motions in favor of BAC on the breach of contract and Truth in
Lending Act claims, leaving only the claim that BAC violated the

2

duty of good faith and fair dealing by failing to post the plaintiffs' and the putative class members' payments on the day they were received, without imposing additional fees or charges.

The parties entered a Settlement Agreement that is dated June 27, 2011. For purposes of settlement, the parties have agreed to the following definition of the settlement class:

> all Persons who, at any time between August 1, 2006 and February 22, 2010: (x) had a credit card account with FIA[2] and (y) made a Qualifying Payment in connection with that account (I) in person at a Bank of America banking center; (ii) by phone using Bank of America's pay-by-phone service; or (iii) electronically using Bank of America's online banking services; and (z) who incurred a late payment fee, finance charge, or other fees, penalties or charges, in connection with the timing of such payment that was not waived or refunded.

Settlement Agreement § 2(bb). "Qualifying Payment" for purposes of the settlement class means:

> payment by a FIA cardholder on a FIA credit account where the payment is (x) equal to or in excess of the minimum payment due for the monthly billing cycle in which it is made (y) not determined by Defendant to be deficient for non-sufficient funds; and (z) made, or alleged by the cardholder to be made, on or before the same day as the "Payment Due Date" or other deadline stated in the operative cardholder agreement, cardholder statement or other disclosure to the cardholder.

Settlement Agreement § 2(u).

---

[2]FIA Card Services, N.A. is the successor-in-interest to Bank of America, N.A. and is a wholly-owned subsidiary of BAC. Settlement Agreement, § 1, Recitals.

Under the terms of the Agreement, the settlement amount is defined as $5,000,000, except that

> the Bank shall have no obligation to pay any difference between five million U.S. dollars ($5,000,000) and the amount necessary to pay: (1) all distributions to Approved Settlement Class Members; (2) Representative Plaintiffs' service award; (3) all attorneys' fees and costs; (4) Settlement Costs; (5) the Cy Pres amount (if any); and (6) any other deduction from the Settlement Amount that is approved by the Court, in the event that the sum of (1) through (6) is less than five million U.S. dollars ($5,000,000).

Agreement, 2(aa). BAC agreed to pay up to $28 from the settlement amount to each settlement class member who the settlement administrator determines has satisfied the requirements and to pay Trombley and Sukaskas $5,000 each as a service award. If the total of all claims and other agreed distributions is less than $5,000,000, funds remaining of the settlement amount, up to $450,000, will constitute a cy pres fund for distribution to three designated organizations, as agreed in the Settlement Agreement. BAC is not obligated to pay any more than the agreed distributions.

The settlement agreement also addresses attorneys' fees and costs. BAC agreed not to oppose the plaintiffs' motion for fees and costs as long as the request did not exceed one third of $5,000,000 ($1,666,667), and the requested amount was approved by

4

the court.  The parties also agreed that the fees and costs would
be paid out of the settlement amount.

Although notice was sent to 393,792 potential class members,
only 3,591 claims were filed and approved.  Eighteen people
requested to be excluded from the class, and one objection was
filed.  The plaintiffs ask for service awards to Trombley and
Sukaskas in the amount of $5,000 each.  If approved, the total
disbursement for claims and service awards under the Settlement
Agreement would be $110,548.  The costs of administering the
class settlement, as submitted, are $218,052.71.

The plaintiffs initially requested $1,650,000 in fees and
costs as "reasonable compensation for obtaining the Settlement .
. . ."  As agreed, the motion was not opposed by BAC.  In April,
the plaintiffs filed a supplemental and amended motion for fees
and costs in which they reduced the requested amount to
$1,500,000.

### Discussion

The court's review of the plaintiffs' motions has raised
issues that must be addressed before final approval can be
considered.  The request for fees and costs is excessive in
comparison to the benefit to the class.  The benefit to the class

is particularly meager because the proposal for cy pres awards
does not meet the requirements for such awards.

A. Fees and Costs

"In a certified class action, the court may award reasonable
attorney's fees and nontaxable costs that are authorized by law
or by the parties' agreement." Fed. R. Civ. P. 23(h). Even when
the parties have agreed to an award of fees, however, "courts
have an independent obligation to ensure that the award, like the
settlement itself, is reasonable." In re Bluetooth Headset
Prods. Liability Litig., 654 F.3d 935, 941 (9th Cir. 2011).
Generally, the court should address the attorneys' fees and costs
before approving the settlement. Weinberger v. Great N. Nekoosa
Corp., 925 F.2d 518, 523 (1st Cir. 1991).

In the process of considering a class action settlement and
a request for fees and costs, the court must scrutinize the
agreement for indicia of collusion between class counsel and the
defendant. Weinberger, 925 F.2d at 524. The defendant's
"agreement not to contest fees up to a stated maximum
exacerbate[s] the potential conflict of interest between the
plaintiff class and class counsel." Id. A "clear sailing
agreement," not to contest fees, "by its nature deprives the
court of the advantages of the adversary process." Id. at 525.

6

The amount of class counsel's requested fees and costs, $1,500,000, dwarfs the recovery to be paid to the class members, which totals only $110,548.  If the proposed fees, distributions, and cy pres awards were approved, BAC would be obligated to pay only $2,278,600.71, which is less than half of the proposed settlement amount of $5,000,000.  The amount of requested fees and costs is nearly 66% of the actual settlement amount.  At that rate, the amount of requested fees and costs is excessive.[3]  The settlement terms, including the "clear sailing" provision for fees, are warning signs that require careful scrutiny of the settlement agreement.  See, e.g., In re Bluetooth, 654 F.3d at 947.

B.   Benefit to the Class

To be binding on the class, a settlement in a class action must be approved by the court, following a hearing, and must be

---

[3]Higher percentage rates for attorneys' fees generally are reserved for cases that settle after the completion of formal discovery when the case is close to trial.  See, e.g., In re P.R. Cabotage Antitrust Litig., 815 F. Supp. 2d 448, 462, 465 (D.P.R. 2011); In re Tyco Int'l, Ltd. Multidistrict Litig., 535 F. Supp. 2d 249, 269-70 (D.N.H. 2007).  In this case, the discovery plan was not approved until July 30, 2010, and the motion to stay the case pending settlement negotiations was filed on January 20, 2011.  It is far from clear that the parties had completed discovery at that time; class certification had not been addressed; and a trial date had not been scheduled.

based on findings that the settlement is fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e); Nat'l Ass'n of Chain Drug Stores v. N. Eng. Carpenters Health Benefits Fund, 582 F.3d 30, 44 (1st Cir. 2009).  The court's assessment of whether the proposed settlement is fair, reasonable, and adequate requires consideration of a variety of factors, including the terms of the settlement, the risks of litigation, the negotiation process, the reaction of the class to the settlement, and the course of the litigation prior to settlement.  See, e.g., In re Tyco, 535 F. Supp. 2d at 259-60.  The approval process "involves balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement." Chain Drug Stores, 582 F.3d at 44.

When a settlement is reached before the class is certified, the settlement agreement is subject to heightened scrutiny for fairness.  In re Bluetooth, 654 F.3d at 946; D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001).  Provisions for reversion of unclaimed funds to the defendant and a "handsome fee for class lawyers" are warning signs that the proposed settlement may not be the result of arms length bargaining.  Mirfashihi v. Fleet Mtg. Corp., 450 F.3d 745, 747 (7th Cir. 2006).

As proposed, BAC agreed to pay distributions of $28 to each
approved class member.  Because of the small number of claims,
the total amount to be paid as compensation to the class,
including the representative awards, would be only $110,548 out
of a potential settlement amount of $5,000,000.  The parties
represent that the actual fees paid by each class member to BAC
were between $35 and $39.  The plaintiffs point to the cy pres
awards, which would total $450,000, as an additional benefit to
the class.

"In class actions, courts have approved creating cy pres
funds, to be used for a charitable purpose related to the class
plaintiffs' injury, when it is difficult for all class members to
receive individual shares of the recovery and, as a result, some
or all of the recovery remains."  In re Pharm. Ind. Average
Wholesale Price Litig., 588 F.3d 24, 33 (1st Cir. 2009).  Such cy
pres awards are used to augment the class's recovery through
indirect means and to deter misconduct by preventing a defendant
from benefitting when practical obstacles may result in a small
number of claims.  Id.  When participating class members will
receive less than 100% compensation under the terms of the
settlement, however, unclaimed funds should be used to augment
the class members' recovery before they are allocated to cy pres

9

distributions.[4]   In re Lupron Mktg. & Sales Practices Litig., ---
F.3d ---, 2012 WL 1413372, at *9 (1st Cir. Apr. 24, 2012).

The proposed payments to the class members here are less
than 100% compensation for the fees they paid.   At the same time,
$3,171,399 of the $5,000,000 settlement amount is unclaimed.
To meet the requirements of a reasonable settlement when there is
unclaimed money in the settlement amount, the class members must
receive compensation for at least 100% of their losses before
additional benefits of cy pres awards may be considered.   In this
case, it appears that each class member should receive at least
$39, which would total $150,049 including the representative
awards.   As proposed, however, the settlement provides too little
benefit to the class to be approved as fair, adequate, and
reasonable.

### Conclusion

For the foregoing reasons, the plaintiffs' motions for
attorneys' fees and costs (documents nos. 105 and 117) and for
class certification and final approval of the settlement
(documents nos. 108 and 116) are denied without prejudice to

---

[4]The plaintiffs addressed Lupron in a notice filed on May 2,
2012.   In their discussion, the plaintiffs did not address the
full compensation issue, which is pertinent to the decision here.
Lupron, 2012 WL 1413372 at *9.

filing motions to approve a revised settlement agreement and a revised request for an award of fees and costs that comply with the requirements for approval.

SO ORDERED.

Joseph A. DiClerico, Jr.
United States District Judge
(Sitting by designation.)

May 3, 2012

cc:  Michael D. Donovan, Esquire
     David J. Fioccola, Esquire
     Robert G. Flanders, Jr., Esquire
     Andrew S. Kierstead, Esquire
     Mark P. Ladner, Esquire
     Michael J. Quirk, Esquire
     Adam M. Ramos, Esquire
     Peter N. Wasylyk, Esquire

11