# UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **BRUCE J. TROMBLEY and** | ) | |
| **RYAN SUKASKAS on behalf of** | ) | |
| **themselves and all others similarly** | ) | |
| **situated,** | ) | **C. A. NO. 08-456** |
| | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | |
| | ) | |
| **BANK OF AMERICA** | ) | |
| **CORPORATION** | ) | **CLASS ACTION** |
| | ) | |
| **Defendant** | ) | |

## PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS, AND SERVICE AWARDS TO NAMED PLAINTIFFS PURSUANT TO REVISED SETTLEMENT AGREEMENT

Plaintiffs, Bruce J. Trombley and Ryan Sukaskas ("Plaintiffs"), respectfully move this

Court for an Order awarding Class Counsel attorneys' fees and costs in the amount of

$1,200,000 and service payments of $5,000 to each of the Plaintiffs.  In support of their request,

Plaintiffs assert that the requested award of attorneys' fees and costs is reasonable in light of the

Revised Settlement reached in this case and that the service payments are appropriate given the

Plaintiffs' efforts in support of the litigation and the Class.  In further support of the Motion,

Plaintiffs refer the Court to the following documents submitted herewith:  (1) Plaintiffs'

Memorandum of Law in Support of Motion for Award of Attorneys' Fees, Reimbursement of

Costs, and Service Awards to Named Plaintiffs Pursuant to Revised Settlement Agreement; and

(2) the Declaration of Michael D. Donovan, Esquire in support of motion.

WHEREFORE, Plaintiffs request that the Court grant this motion and enter the proposed

awards on the form of Final Judgment submitted with the Motion for Final Approval of Revised

Settlement Agreement.

Dated:  April 4, 2013

Respectfully submitted,

For Plaintiffs

Bruce J. Trombley and Ryan Sukaskas

  /s/ Peter N. Wasylyk                           
Peter N. Wasylyk
Law Offices of Peter N. Wasylyk
1307 Chalkstone Avenue
Providence, Rhode Island 02903
Telephone:  (401) 831-7730
Facsimile:  (401) 861-6064
E-Mail:  pnwlaw@aol.com


**DONOVAN AXLER, LLC**
Michael D. Donovan
1845 Walnut Street, Suite 1100
Philadelphia, Pennsylvania 19103
Telephone:  (215) 732-6067
Facsimile:  (215) 732-8060


**BERNS WEISS LLP**
Michael J. Quirk
100 North 18th Street, Suite 300
Philadelphia, Pennsylvania 19103
Telephone:  (267) 202-0749
Facsimile:  (818) 999-1500


**The Law Office of Andrew Kierstead**
Andrew S. Kierstead
1001 SW 5th Avenue, Suite 1100
Portland, Oregon 97204
Telephone:  (508) 224-6246
Facsimile:  (508) 224-4356

2

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| BRUCE J. TROMBLEY and | ) | |
| RYAN SUKASKAS on behalf of | ) | |
| themselves and all others similarly | ) | |
| situated, | ) | C. A. NO. 08-456 |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| BANK OF AMERICA | ) | |
| CORPORATION | ) | CLASS ACTION |
| | ) | |
| Defendant | ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS, AND SERVICE AWARDS TO NAMED PLAINTIFFS PURSUANT TO REVISED SETTLEMENT AGREEMENT**

**I.    INTRODUCTION**

Class Counsel seek an award of attorneys' fees and reimbursement of costs in the amount of $1,200,000 as reasonable compensation for obtaining the Revised Settlement Agreement for which Plaintiffs seek final Court approval contemporaneously herewith.  The requested fee and cost award represents 30% of the common fund Settlement Amount of $4,000,000.  This percentage has been approved in class action cases by courts in the First Circuit and is appropriate in this case.

As detailed herein, Class Counsel's efforts in obtaining an excellent result for the Settlement Class, as well as the risks Class Counsel undertook in litigating this action, clearly justify the requested award.  The Revised Settlement Agreement is the product of more than two years of litigation and extensive arm's length settlement negotiations.  In support of their application for this award, Class Counsel rely upon the attached declaration of Michael D. Donovan, Esquire ("Donovan Decl."), summarizing Class Counsel's time and the costs incurred

on behalf of Plaintiffs and the Settlement Class. Class Counsel also seek approval of $5,000 service awards to Plaintiff Class Representatives Bruce J. Trombley and Ryan Sukaskas. Payments in this amount are appropriate based on the Class Representatives' service to the Class.

## II. PROCEDURAL HISTORY OF THE LITIGATION

On November 24, 2008, Plaintiffs Bruce J. Trombley and Ryan Sukaskas ("Plaintiffs") filed a complaint in the United States District Court, District of Rhode Island, on behalf of a nationwide class of consumers who had timely tendered credit card payments to Defendant Bank of America Corporation ("BOA") on or before the due date set by BOA and had late fees imposed by BOA. Plaintiffs asserted claims for breach of contract and violation of the federal Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"), seeking actual, statutory and punitive damages, together with restitution and injunctive relief. On January 23, 2009, Plaintiffs filed an Amended Complaint, adding a third count seeking a declaration of contractual unconscionability as to the arbitration clause in the cardholder agreements.

Plaintiffs successfully resisted BOA's motion to compel arbitration and prohibit Plaintiffs from proceeding through a class action. When BOA filed its motion, Plaintiffs responded by moving to enlarge time and take discovery pertaining to BOA's prohibition against class actions and its exclusive designation of the National Arbitration Forum ("NAF") as its arbitration service. After full briefing, oral argument, and submissions of supplemental authority detailing the grounds for Plaintiffs' contention that NAF had an institutional anti-consumer bias, the Court granted Plaintiffs' motion in a published opinion. *Trombley v. Bank of America*, 636 F. Supp. 2d 151 (D.R.I. 2009). BOA thereafter withdrew its motion to compel arbitration and prohibit class action proceedings.

Plaintiffs subsequently defeated BOA's motions for dismissal pursuant to Rule 12(b)(6) and for judgment on the pleadings on grounds of federal preemption under the National Bank Act, 12 U.S.C. §§ 1 *et seq.*, and regulations of the Office of Comptroller of the Currency ("OCC").  The Court again issued published decisions in rejecting both of BOA's motions for dismissal.  *See Trombley v. Bank of America*, 675 F. Supp. 2d 266 (D.R.I. 2009) (rejecting motion to dismiss); *Trombley v. Bank of America*, 715 F. Supp. 2d 290 (D.R.I. 2010) (rejecting motion for judgment on the pleadings based on federal preemption).

In December, 2010, following responses to each other's interrogatories, production of thousands of documents by BOA, and the scheduling of depositions, the parties agreed to commence settlement negotiations.  Those negotiations proceeded for several months and involved numerous telephone conference calls and the exchange of written memoranda.  On or about April 6, 2011, the parties ultimately reached the principal terms of the Original Settlement Agreement.  On July 29, 2011, the Court entered an Order preliminarily approving the parties' Original Settlement (Docket Entry 97).  The Court issued subsequent Orders preliminarily approving different facets of the Original Settlement Agreement on August 23, August 26, and September 28, 2011.  Pursuant to the Original Settlement Agreement and the Court's Order of Preliminary Approval, Notice was sent to approximately 391,108 Settlement Class Members.

After holding a final approval hearing on December 8, 2012 and accepting supplemental submissions by the parties, the Court issued an order denying final approval of the Original Settlement Agreement without prejudice to the parties' right to submit a revised settlement.  The Court found that it was impermissible for the settlement to provide indirect *cy pres* relief when class members who submitted claim forms were not fully compensated, and also that the

proposed attorneys' fee award was excessive in light of the small number of claims submitted. May 4, 2012 Order (D.E. 119) at 6, 9-10.

When the parties were unable to reach agreement on revised settlement terms, they resumed litigation and discovery pursuant to a Revised Scheduling Order (D.E. 125) for class certification, dispositive motions, and trial.  After Plaintiffs served additional discovery and began scheduling depositions, the parties re-started settlement negotiations and eventually reached agreement upon revised settlement terms.

## III.   ARGUMENT:  THE REQUESTED AWARD OF FEES AND COSTS IS REASONABLE AND SHOULD BE APPROVED

### A.   The Percentage-of-Fund Method for Awarding Attorneys' Fees Should Apply to this Common Fund Class Action Settlement Agreement.

Class Counsel seek a percentage award from the common fund Settlement Amount of $4,000,000.  *See* Revised Settlement Agreement §§ 2(cc) ($4,000,000 Settlement Amount), 9a (entire Settlement Amount to be paid).  Where, as here, a litigation settlement creates a common fund, the First Circuit has held that a district court may award attorneys' fees based on a percentage of the fund.  *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307-308 (1st Cir. 1995); *see also In re Fleet/Norstar Secs. Litig.*, 935 F. Supp. 99, 108 (D.R.I. 1996) (same).  In *In re Thirteen Appeals*, the First Circuit found that "common fund" cases are those "in which 'a litigant or lawyer who recovers a common fund for the benefit of persons other than himself is entitled to a reasonable attorney's fee from the fund as a whole.'"  56 F.3d at 305 (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)); *see also In re Volkswagen and Audi Warranty Extension Litig.*, 692 F.3d 4, 16 (1st Cir. 2012) ("The

common fund method should apply only where attorneys seek compensation from a discernible pot of money won by the plaintiffs."). This is such a case.[1]

The First Circuit's approval of percentage-of-fund ("POF") attorneys' fee awards in common fund cases "is driven both by our recognition that use of the POF method in common fund cases is the prevailing praxis and by the distinct advantages that the POF method can bring to bear in such cases." *In re Thirteen Appeals*, 56 F.3d at 307. The advantages of the POF method are that (1) in complex litigation, it is "often less burdensome to administer than the lodestar method"; (2) using the POF method in a common fund case enhances efficiency, or, put in the reverse, using the lodestar method in such a case encourages inefficiency"; and that (3) "because the POF technique is result-oriented rather than process-oriented, it better approximates the workings of the market place." Since "'the market in fact pays not for the individual hours but for the ensemble of services rendered in a case of this character[,]' [i]n fine, the market pays for the result achieved." *Id.* (quoting *In re Continental Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) (Posner, J.)). For all of these reasons, the Court should apply the POF method in assessing Class Counsel's proposed attorney's fee award based on the common fund created by the Revised Class Action Settlement Agreement.

---

[1] The First Circuit in *In re Volkswagon* held that state law governs the award of attorneys' fees in the settlement of class action litigation over which there is diversity jurisdiction and in which where there is no independent basis for applying federal law. 692 F.3d at 7. But it specified that the settlement before it did not create a "common fund or common benefit case, and so equitable powers to award attorneys' fees are unavailable under those theories." *Id.* at 16. Here, by contrast and as discussed below, the common fund doctrine applies based on the terms of the Settlement Agreement. Moreover, even if the Court looked to the most likely applicable state law, that of Delaware, which governs both Plaintiffs' claims and the Revised Settlement Agreement (§ 22), Delaware law likewise permits use of the percentage-of-fund method for awarding attorneys' fees in common fund cases. *See, e.g.*, *Americas Mining Corp. v. Theriault*, 51 A.3d 1213, 1255 (Del. 2012) ("When the efforts of a plaintiff on behalf of a corporation result in the creation of a common fund, the Court should award reasonable attorneys' fees and expenses incurred by the plaintiff in achieving the result. Typically a percentage-of-the-benefit approach is used if the benefit is quantifiable.").

Under the POF method, Class Counsel's request is for 30% ($1,200,000) of the $4,000,000 Settlement Amount. This is a lower percentage than has been approved by courts in this Circuit in common fund, class action cases. *See McCormick v. Festiva Dev. Group, LLC*, 2011 WL 2457883, at *1 (D. Me. June 20, 2011) (awarding attorneys' fees of one-third of common fund); *Bennett v. Roark Capital Group, Inc.*, 2011 WL 1703447, at *1-2 (D. Me. May 4, 2011) (same); *In re StockerYale, Inc. Secs. Litig.*, 2007 WL 4589772, at *6-7 (D.N.H. Dec. 18, 2007) (awarding class counsel fees of 33% of $3,400,000 gross settlement fund, with expenses in addition to fee award); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2005) (approving fee of 33 1/3%); *Malanka v. De Castro*, 1990 WL 253610, at *1 (D. Mass. Nov. 20, 1990) (awarding class counsel fees comprising 33% of settlement fund of $6 million, with expenses in addition to fee award); *see also Mazola v. May Dept. Stores Co.*, 1999 WL 1261312, at *4 (D. Mass. Jan. 27, 1999) (recognizing that, "in this circuit, percentage fee awards range from 20% to 35% of the fund"); *Pavlidis v. New England Patriots Football Club, Inc.*, 675 F. Supp. 707, 710 (D. Mass. 1987) (recognizing that fees in the 20%-50% range in common fund class actions are not uncommon). The proposed 30% award here thus is in line with prevailing authority within this Circuit and is appropriate based on the following considerations.

### B.  The Quality of the Settlement Supports Class Counsel's Requested Award

Although the First Circuit has not stated a definitive test for determining whether a common fund fee request is fair in a particular case, the most important factor is the quality of the result obtained for the class. *In re Fleet/Norstar, supra*, 935 F. Supp. at 109 (stating that the most important factor is "whether the settlement is beneficial to class members"); *see also* Manual for Complex Litigation 4th, §14.121, Federal Judicial Center (2004) (factor given the "greatest emphasis is the size of the fund created, because 'a common fund is itself a measure of

6

success...[and] represents the benchmark from which a reasonable fee will be awarded'") (citations omitted).  The excellent result obtained for the Settlement Class here supports Class Counsel's requested award of fees and costs.

The Revised Settlement encompasses a nationwide class of Bank of America credit card account holders who were charged a "late payment fee, finance charge, or other fees, penalties or charges, in connection with the timing" of payments on their accounts.  Revised Settlement Agreement, § 2(dd).  Pursuant to the Revised Settlement Agreement, Defendant will pay out the full Settlement Amount of $4,000,000.  *Id.* § 6(a).  Settlement Class Members who submitted claims will receive payments of $40 (more than the amount of a contested monthly late fee) from the Settlement Amount, based upon their signing and submission of a one-page Claim Form affirming his/her identity and membership in the Settlement Class.  *Id.* §§ 2(c), 6(a).  All Class members who did not submit claim forms will receive pro rata payments of the entire remainder of the $4,000,000 Settlement Amount after payment of claims submissions, attorneys' fees and costs, service awards to the representative Plaintiffs, and settlement administration costs.  *Id.* §§ 2(v), 6(a).  If any class member does not cash his or her settlement relief check within 180 days, any such amount from uncashed checks will be paid, subject to Court approval to the following *cy pres* recipients:  Consumer Federation of America-America Saves program and Consumer Action.  *Id.* § 6(h).  Thus, the entire $4,000,000 Settlement Amount will be paid and no part of it will revert to Bank of America.

The value of the foregoing benefits should also be considered in light of the nature of the litigation as a whole.  Undertaking consumer litigation against one of the nation's largest financial institutions is a difficult task.  Individual BOA customers are unlikely to spend the time and money necessary to recover the improper late fees at issue here, which averaged

approximately $35.  Further, a significant number of class members are unlikely to be aware that

their rights have even been violated.  In sum, given all of the relevant considerations, the Revised

Settlement represents an outstanding result.

**C.** **Additional Fairness Factors Support Class Counsel's Requested Award**

In addition to the overall benefit conferred by a settlement, courts have applied other

factors in determining whether a common fund fee request is fair, including: "(1) the size of the

fund and the number of persons benefitted; (2) the skill, experience, and efficiency of the

attorneys involved; (3) the complexity and duration of the litigation; (4) the risks of the

litigation; (5) the amount of time devoted to the case by counsel; (6) awards in similar cases; and

(7) public policy considerations, if any."  *In re Lupron Marketing and Sales Practices Litig.*,

2005 WL 2006833, at *3 (D. Mass. March 16, 2005) (citing *Third Circuit Task Force, Court

Awarded Attorneys Fees*, 108 F.R.D. 237, 255-256 (1985)).  Each of these factors supports

approval of the requested award.

**1.** **The Requested Award Is Reasonable In Relation To The Size Of The
Fund And The Large Number of Class Members Who Will Benefit
From The Revised Settlement**

This factor is largely coextensive with the previously discussed (and primary)

consideration of the overall benefit conferred by a settlement.  Here, BOA will pay a Settlement

Amount of $4,000,000, from which each Settlement Class Member who submitted a claim form

will receive $40 (more than the value of a contested monthly late fee), and all other Class

members will receive pro rata payments from the remainder of the Settlement Amount after

payment of claims, attorneys' fees and costs, representative Plaintiff service awards, and

settlement administration costs.  Notice was sent to approximately 391,108 Settlement Class

Members.  Thus, both the Settlement Amount and the number of Settlement Class Members who will

benefit are substantial.  This conclusion holds assuming that Class Counsel's requested award of fees

8

and costs in the amount of $1,200,000 is paid from the Settlement Amount.  Consequently, Class

Counsel's requested award is reasonable when compared to the size of the Settlement Amount and

the number of Settlement Class Members.

> **2.     This Case Was Efficiently Litigated By Class Counsel With
> Substantial Experience**

As set forth in the attached Declaration, Class Counsel have extensive experience in both

consumer class actions generally and in class actions challenging the conduct of credit card

issuers specifically.  Donovan Decl. Exh. C.  That experience streamlined this case and allowed a

favorable result to be reached on behalf of the Settlement Class prior to Plaintiffs expending the

significant resources involved in seeking class certification and bringing the case to trial.

Class Counsel have maintained close communication throughout this case and functioned

at all times as a team, with the utmost care given to avoiding duplication of effort.  This

efficiency is reflected in the detailed records of time and costs set forth in the attached

Declaration.  *See* Exhibits to Donovan Decl.  These records demonstrate that the time and

resources expended by Class Counsel were appropriate, particularly when viewed in light of the

excellent result achieved for the Settlement Class.

Further, the attached Declaration shows that Class Counsel's hourly rates were

reasonable for this case.  *See* Exhibits to Donovan Decl.  The reasonableness of hourly rates is

determined by the experience, reputation, and skill of the attorneys.  *See Janney Montgomery

Scott LLC v. Tobin*, 692 F. Supp. 2d 192, 200 (D. Mass. 2010) (*citing Gay Officers Action

League v. Puerto Rico*, 247 F.3d 288, 295 (1st Cir. 2001)).  Class Counsel are among the most

experienced and skilled consumer class action attorneys in the country, having represented

plaintiffs in numerous successful and often prominent class action cases.  See Exhibits to

Donovan Decl.  Their hourly rates reflect the market hourly rates for national consumer class

action litigation, as well as the fine track records of the firms involved.  See id.  Based on these considerations, Class Counsel's hourly rates are reasonable.

**3.      The Requested Award Is Reasonable Relative To The Complexity And Duration Of The Litigation**

This case was filed in November, 2008 and has been vigorously litigated.  The complexity of the issues involved is reflected by the parties' extensive briefing on arbitration, as well as Defendant's motions to dismiss and for judgment on the pleadings based on federal preemption under facially broad federal agency regulations.  Following the denial of Defendant's motion for judgment on the pleadings, the parties conducted discovery, which included responding to interrogatories, the production of thousands of documents by BOA, and the scheduling of depositions.

Before depositions commenced, the parties agreed to enter into settlement negotiations, which also raised numerous complex issues.  The arm's length negotiations proceeded for several months, in the form of numerous telephone conference calls and the exchange of written memoranda.  The parties vigorously contested many of the provisions of the Original and Revised Settlement Agreements, including a wide range of procedural and administrative issues that took the parties an additional two and a half months to resolve after first reaching agreement on substantive terms.  Following the Court's order denying final approval of the Original Settlement without prejudice, the parties' negotiations broke down and the litigation resumed on a fast track towards class certification before the parties reached agreement on revised terms.

Given the duration of this case, as well as the complex issues addressed by the parties in both litigation and settlement negotiations, Class Counsel's requested award is reasonable.

### 4.    The Requested Award Is Reasonable Given The
### Risks Of The Litigation

The risks that Class Counsel have taken in pursuing this litigation justify the requested

award of fees and costs.  Class Counsel agreed to proceed on a purely contingent basis,

advancing all costs and expenses necessary for investigation and prosecution and devoting

1,863.05 hours to the litigation to date, without any compensation for their efforts.  Donovan

Decl., ¶¶ 24-26.  In doing so, the firms involved were necessarily hindered from spending time

and resources on other matters.

Moreover, it was far from certain that Plaintiffs would prevail in this litigation.

Defendant initially sought to compel arbitration of Plaintiffs' claims and thereby prohibit any

class action proceedings (effectively limiting the Plaintiffs' damages to double-digit dollar

amounts), and subsequently filed a motion to dismiss, which was granted in part, and then a

motion for judgment on the pleadings based on federal preemption.  Throughout, BOA has

contested its liability and made clear its intent to oppose class certification.  If a Settlement had

not been reached, Plaintiffs faced the risk failing to obtain class certification, plus the expense

and length of a trial against Defendant.  In sum, Class Counsel undertook this case against an

ably represented and extremely well-capitalized defendant without any guarantee of success.

Courts have consistently recognized that the risk of receiving little or no recovery

is a major factor in considering an award of attorneys' fees.  *See, e.g.*, *In re Washington Public

Power Supply Sys. Secs. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994); *In re Lupron,* 2005 WL

2006833, at *4 (stating that "[m]any cases recognize that the risk assumed by an attorney is

'perhaps the foremost' factor in determining an appropriate fee award.") (citations omitted).

While Class Counsel believed that Plaintiffs would ultimately prevail in this case, a successful

resolution was far from certain.

11

5.     **The Requested Award  Is Reasonable Compared To The Time And
Resources Devoted To The Case By Class Counsel**

While a court need not employ a lodestar analysis in a common fund case such as this, it

may choose to examine the attorneys' lodestar "to illuminate the attorneys' role in the creation of

the fund." *In re Thirteen Appeals*, 56 F.3d at 307.  That the Revised Settlement Agreement

creates a common fund from which all funds will be paid distinguishes the instant petition from

that addressed in *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 526 n.10 (1st Cir. 1991)

("Because the absence of any true common fund renders the percentage approach inapposite

here, we cannot fault the district court's implied premise that the lodestar is the soundest

available alternative.").  Unlike in *Weinberger*, where the absence of a common fund

necessitated a detailed lodestar analysis for an award of fees, the Revised Settlement

Agreement's creation of a common fund here makes the lodestar function as a cross-check on the

proposed percentage-based award rather than as the primary determinant.  *Compare Weinberger*,

925 F.2d at 527 ("We have painstakingly delineated the specific documentary preconditions to

fee awards, requiring litigants to submit a 'full and specific accounting' of the tasks performed,

the dates of performance, and the number of hours spent on each task."); *with In re Thirteen

Appeals*, *supra*, 56 F.3d at 307 ("While the time logged is still relevant to the court's inquiry—

even under the POF method, time records tend to illuminate the attorneys' role in the creation of

the fund, and, thus, inform the court's inquiry into the reasonableness of a particular

percentage—the shift in focus lessens the possibility of collateral disputes that might transform

the fee proceeding into a second major litigation.").

To facilitate this inquiry, Class Counsel submit herewith records setting forth the

numbers of hours they have devoted to this litigation to date, a division of these hours by

categories of work performed, the hourly billing rates of the lawyers who performed work in this

12

litigation for each of the respective firms, and their combined lodestars based on these hours worked and applicable hourly billing rates.  *See* Donovan Decl., ¶¶ 24-28 and Exhibits.[2]

Based on these submissions, the combined lodestar of Class Counsel is $1,095,829.39 and their combined out-of-pocket expenses are $11,426.39.  Donovan Decl., ¶¶ 24-29.  These submissions demonstrate Class Counsel's devotion of substantial time of over 1,860 hours towards advancing the litigation of the Class's claims and achieving their final resolution through the instant settlement.  Yet, their expenditure of just over $11,000 in case costs over four years plus of litigation also demonstrates their efficiency in advancing the Class's remaining common law claim for which reimbursement most likely would have to come from the fund obtained for the Class's benefit.

Class counsel also anticipate expending substantial additional time on seeking final approval and implementing the Revised Settlement Agreement.  As the lodestar already represents over 91% of the requested fees and costs, there will be at most a small multiplier (less than 1.1), if any, on Class Counsel's time once this case concludes.  Thus, an analysis of Class Counsel's time in this matter overwhelmingly supports the reasonableness of the requested award of fees and costs.

### 6.    The Requested Award Is In Line With Awards In Similar Cases

The request by Class Counsel for an award of 30% of the common fund is fully supported by awards in similar class actions involving common funds.  *See McCormick*, 2011 WL 2457883, at *1 (awarding attorneys' fees of one-third of common fund); *Bennett*, 2011 WL 1703447, at *1-2 (same); *In re StockerYale*, 2007 WL 4589772, at *7 (awarding class counsel fees constituting 33% of gross settlement fund of $3,400,000, with expenses in addition to fee

---

[2] To the extent the Court wishes to see a fuller reporting of Counsel's work broken down by dates and times of performance of individual tasks, Counsel are prepared to make such a submission.

award); *In re Relafen*, 231 F.R.D. at 82 (approving fee of 33 1/3%); *Malanka*, 1990 WL 253610, at *1 (awarding class counsel fees comprising 33% of settlement fund of $6 million, with expenses in addition to fee award); *see also Mazola*, 1999 WL 1261312, at *4 (recognizing that, "in this circuit, percentage fee awards range from 20% to 35% of the fund"); *Pavlidis*, 675 F. Supp. at 709, 712 (recognizing that fees in the 20%-50% range in common fund class actions are not uncommon).

Further, courts have made clear that the percentage is not the dispositive factor but, rather, whether the proposed fee fairly compensates attorneys for what they have accomplished on behalf of the class. *In re Thirteen Appeals*, 56 F.3d at 307 (stating that the percentage of fund "method permits the judge to focus on 'a showing that the fund conferring a benefit on the class resulted from' the lawyers' efforts") (citation omitted); *In re Fleet/Norstar,* 935 F. Supp. at 109 (D.R.I. 1996) (approving an analysis of the result achieved as "the most important factor in determining fees").  The substantial benefits achieved in this case for Settlement Class Members support Class Counsel's requested award of fees and costs.

### 7.     This Case Served An Important Public Interest

The improper late fees at issue in this case are precisely the type of damages that class actions are intended to remedy.  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617 (1997) ("The policy of the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights").  Given that the average late fee is approximately $35, Settlement Class Members lack incentive to bring individual claims outside of a class action.  Also, due to the nature of the late fees, many class members might not even be aware that these fees were

assessed.  As a result, the Notice sent to the Settlement Class provides a significant benefit and this action, as a whole, vindicates a primary policy interest underlying class action litigation.

**IV.**     **THE REQUESTED SERVICE AWARDS ARE APPROPRIATE.**

Service awards for class representatives have "an important function in promoting class action settlements." *Denney v. Jenkens & Gilchrist,* 230 F.R.D. 317, 355 (S.D.N.Y. 2005) (quoting *Sheppard v. Consol. Edison Co. of N.Y., Inc.*, 2002 WL 2003206 (S.D.N.Y. Aug. 1, 2002)).  As the Settlement Class was advised in the Notice, Plaintiffs propose service awards to the Class Representatives of $5,000 each (totaling $10,000), payable from the common fund. Mr. Trombley and Mr. Sukaskas reviewed the complaint prior to its filing, remained informed of the proceedings throughout the litigation, participated in responding to Defendant's interrogatories, and were available to answer questions or provide documentation as needed.  *See* Donovan Decl., ¶¶ 33-34.

The amount of these awards is consistent with those granted for class representatives in similar class action litigation.  *See*, *e.g.*, *In re Relafen,* 231 F.R.D. at 82 (approving incentive awards in the amount of $8,000 for each named consumer plaintiff); *Bussie v. Allmerica Fin. Corp.,* 1999 WL 342042, at *4 (D. Mass. May 19, 1999) (approving $5,000 incentive awards to named plaintiffs).  Accordingly, Class Counsel's request for $5,000 each to Mr. Trombley and Mr. Sukaskas is reasonable and should be approved.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Class Counsel respectfully request that their Motion for an

Award of Attorneys' Fees, Reimbursement of Costs, and Service Awards to Plaintiff Class

Representatives Pursuant to the Revised Settlement Agreement be granted in its entirety.

<u>Dated</u>:  April 4, 2013

Respectfully submitted,

For Plaintiffs

Bruce J. Trombley and Ryan Sukaskas

 */s/ Peter N. Wasylyk*
Peter N. Wasylyk
Law Offices of Peter N. Wasylyk
1307 Chalkstone Avenue
Providence, Rhode Island 02903
Telephone:  (401) 831-7730
Facsimile:  (401) 861-6064
E-Mail:  pnwlaw@aol.com

**DONOVAN AXLER, LLC**
Michael D. Donovan
1845 Walnut Street, Suite 1100
Philadelphia, Pennsylvania 19103
Telephone:  (215) 732-6067
Facsimile:  (215) 732-8060

**BERNS WEISS LLP**
Michael J. Quirk
100 North 18th Street, Suite 300
Philadelphia, Pennsylvania 19103
Telephone:  (267) 202-0749
Facsimile:  (818) 999-1500

**The Law Office of Andrew Kierstead**
Andrew S. Kierstead
1001 SW 5th Avenue, Suite 1100
Portland, Oregon 97204
Telephone:  (508) 224-6246
Facsimile:  (508) 224-4356

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| BRUCE J. TROMBLEY and<br>RYAN SUKASKAS on behalf of<br>themselves and all others similarly<br>situated,<br><br>        Plaintiffs,<br>    v.<br><br>BANK OF AMERICA<br>CORPORATION,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. NO.  08-456<br><br><br><br>CLASS ACTION |

**DECLARATION OF MICHAEL D. DONOVAN, ESQ. IN SUPPORT OF
MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS**

I, Michael D. Donovan, pursuant to 28 U.S.C. § 1746, declare and state as

follows:

1.      I am the managing principal at the law firm of Donovan Axler, LLC,

which has acted as co-lead counsel in connection with the litigation of this

consumer class action.  Together with co-counsel and other members of my firm, I

have worked actively on this case and have personal knowledge of the facts set

forth below.  If called as a witness, I could and would testify competently to the

matters stated herein.

**Introduction**

2.     This Declaration is provided in support of Plaintiffs' Motion for

Award of Attorneys' Fees, Reimbursement of Costs, and Service Awards to

Named Plaintiffs.  The law firms that have worked on this matter, and who have

been preliminarily approved as Class Counsel (see Order of Preliminary Approval

[docket 97] pp. 18-19) are:  Donovan Searles & Axler, LLC (now known as

"Donovan Axler"); Williams Cuker Berezofsky, LLC ("Williams Cuker"); the

Law Offices of Andrew Kierstead ("Kierstead") and the Law Offices of Peter N.

Wasylyk ("Wasylyk").  These firms have worked cooperatively together on this

and other cases and will share in the award of attorney fees in accordance with

their co-counseling agreement.

3.     As detailed below, Class Counsel have achieved a revised settlement

providing direct monetary relief of $4,000,000 to all Class members that will

reimburse all claiming Class members with $40 for late fees they incurred and will

distribute to all remaining Class members a pro rata allocation of the residual fund

after subtraction of notice costs and court awarded attorney fees and expenses.

The revised settlement is a paradigmatic common fund settlement for the benefit of

391,108 Settlement Class Members.  The $40 reimbursement will make claiming

Class members whole for at least one late fee, while distribution of the residual

2

fund will compensate all other Class members for the release of the claims being resolved by the Revised Settlement.

4.      Class Counsel are seeking a fee and expense award, consistent with First Circuit precedent, based on a percentage of the fund generated here for the Class.  The combined fee and expense petition seeks 30% of the Revised Settlement Fund, or $1,200,000, and is well within the range of awards approved by the courts in similar consumer class actions.  As a cross-check, this amount coincides almost precisely with the combined lodestars and expenses of Class Counsel, which doubly supports the fairness and propriety of the petition under all controlling law.  The requested award is, in Class Counsels' professional opinion based on our many years of experience litigating class actions of this nature, well-justified given the exceptional and relatively expeditious result achieved, the level of skill and experience of Plaintiffs' attorneys (particularly in the area of credit card class actions), the complexity of the case, the substantial risks assumed, and the absence of any objections to the proposed award.

5.      As noted, the requested award is also reasonable when "cross-checked" against Class Counsels' combined lodestar (hours x hourly rates).  Each of the firms is concurrently filing a separate declaration attesting to their attorneys' qualifications, record-keeping practices, and the basis for and accuracy of the

firm's lodestar.  The lodestar and expense data for Donovan Axler and for all firms

as a group are set forth in more detail below and in the Exhibits attached hereto.

      6.     Together with the costs and expenses incurred, Class Counsels'

cumulative lodestar amounts to $1,084,403.00 in fees for over 1,863 hours of

work, and $11,426.39 in expenses, for a total of $1,095,829.39.  The lodestar

cross-check thus supports the award of fees and costs in the amount requested.

**Narrative Summary of the Work Performed by Class Counsel**

      7.     The work performed by Class Counsel on behalf of and for the benefit

of the consumer Class here may be summarized as follows:

-     We investigated, researched and filed the Class Action Complaint and the First Amended Class Action Complaint;

-     We conferred and developed the basic claims and strategy of the case, including the important strategy of defeating or overcoming the anticipated motion to compel arbitration;

-     We researched, memorialized, and prepared to respond to defendant's motion to compel arbitration, which defendant later withdrew after Plaintiffs' motion to compel discovery was granted by the Court;

-     We participated in various assigned aspects of research, writing and editing the manifold briefs and motions filed in the case, including a motion for discovery to respond to defendant's motion to compel arbitration, which discovery

the Court granted; plaintiffs' opposition to defendant's motion to dismiss; plaintiffs' opposition to defendant's motion for judgment on the pleadings; plaintiffs' motion to designate lead counsel; plaintiffs' initial outlining and drafting of the motion for class certification (which was not filed); plaintiffs' responses to and service of discovery requests; plaintiffs' participation in numerous meet and confer discussions over the scope of defendant's document production; plaintiffs' review of thousands of documents produced by defendant; plaintiffs' case status, case management, settlement demand and meet and confer memoranda; the extensive settlement related documents which were negotiated over many months of conference calls and editing sessions; plaintiffs' motion to return the parties to the status quo after the Court denied, without prejudice, final approval of the initial settlement; plaintiffs' second set of discovery requests, including document requests, interrogatories and requests to admit; and the revised settlement documents, including the summary of the revised settlement terms requested by the Court.

- We researched and were prepared to respond to a renewed motion to compel arbitration;

- We researched and prepared for all facets of the Class Certification briefing – including but not limited to preparation, research, writing, correspondence, conflict resolution and exhibit production;

- We received and responded to a multitude of emails and phone calls discussing all aspects of the case;

- We conducted discovery, including responses to interrogatories, requests for documents/admissions, and review of thousands of documents and data produced by Defendant;

- We participated in all stages of the settlement process, including manifold conversations with defense counsel, and proposed structures for term sheets and agreements;

- We communicated with representatives of various states attorney general offices about the notice required by the Class Action Fairness Act and the critical terms of the settlement;

- We communicated extensively with Representative Plaintiffs and with numerous members of the Class;

- We prepared for and appeared before the Court in connection with the initial final settlement approval hearing and various conferences;

- After final approval of the initial settlement was refused, we worked with co-counsel on a second set of discovery requests that was served on defense counsel;

- More significantly, after being returned to the status quo, we retained and worked with an industry expert who was tasked with preparing a report for use in connection with the class certification motion we were preparing to file;

- In the midst of all of this work, we also re-commenced revised settlement negotiations with defense counsel, which included dozens of phone calls and exchanges of settlement drafts; and

- We prepared for the presentation and filing of the final Revised Settlement Agreement together with settlement briefs.

**Summary of the Litigation and Settlement Process**

8.    The settlement should be finally approved because the benefits conferred in view of the significant risks and efforts incurred in connection with the litigation demonstrate that the settlement is eminently fair, reasonable and more than adequate.  Representative Plaintiffs instituted the action to recover late fees imposed by defendant on credit card holders who timely paid their credit card bills either at one of defendant's bank branches, electronically through defendant's website, or telephonically through defendant's telephone bill paying system. Plaintiffs claimed defendant violated various laws, breached the cardholder agreement or, at a minimum, breached the duty of good faith and fair dealing by not crediting consumers' bill payments at the moment they were received and instead waiting days thereafter because the payments were not made by mail as

7

defendant had specified, which then caused an automatic late fee to be charged to consumers' accounts.

9.     As a result of extensive motion practice, the Court ultimately sustained just one count of Representative Plaintiffs' Amended Complaint – the claim that defendant allegedly had breached the implied covenant of good faith and fair dealing.  The Court's decisions resolving the various motions are reported at the following citations:  *Trombley v. Bank of America Corporation*, 636 F. Supp. 2d 151 (D.R.I. 2009) (granting Plaintiffs' motion for time in which to take discovery on defendant's motion to compel arbitration and prohibit class action proceedings); *Trombley v. Bank of America Corporation*, 675 F. Supp. 2d 266 (D.R.I. 2009) (granting in part and denying in part defendant's motion to dismiss); *Trombley v. Bank of America Corporation*, 715 F. Supp. 2d 290 (D.R.I. 2010) (granting in part and denying in part defendant's motion for judgment on the pleadings).

10.     In December 2010, following the responses to each other's interrogatories, the production of thousands of pages of documents by defendant, and the scheduling of depositions, the parties agreed to commence settlement negotiations.  Those negotiations proceeded for several months, in the form of numerous telephone conference calls and the exchange of written memoranda.  On or about April 6, 2011, the parties ultimately reached the principal terms of the

initial Settlement Agreement.  Virtually every issue underlying the initial

Settlement Agreement was vigorously contested, including a wide range of

procedural and administrative issues that took the parties an additional two months

to resolve after reaching agreement on substantive terms.

11.    The settlement discussions were long and arduous.  They were

conducted at all times at arm's length by experienced counsel who vigorously

represented the interests of their clients.  Each side was forced to make

compromises and concessions.  At the culmination of this multi-month negotiation,

the parties executed a detailed Settlement Agreement with extensive exhibits dated

June 27, 2011.

**Results Achieved**

12.    As discussed in Plaintiffs' supporting memorandum, the most

important factor in evaluating the reasonableness of the requested award is the

result achieved by the litigation.  Here, the settlement encompasses a nationwide

class of credit cardholders who, between the period August 1, 2006 through

February 22, 2010, timely tendered credit card payments to defendant on or before

the due date set for their monthly bill but who then had a late fee imposed by

defendant because the credit card payment was not credited on the date it was

tendered.

13.    The Revised Settlement Agreement calls for BOA to pay a guaranteed four million dollars ($4,000,000.00) in cash to compensate for the allegedly improper late fees charged to Settlement Class members. In addition to compensating class members, the settlement amount also will be used to pay notice and administration costs, attorneys' fees and service awards to the two named representative Plaintiffs, to the extent approved by the Court.

14.    Each class member who submitted a claim form under the Original Settlement Agreement will be paid $40.00. All other class members will be paid an equal or pro rata share of the difference between the $4,000,000.00 Settlement amount and the amounts necessary to pay all distributions to class members who submitted claim forms, the Representative Plaintiffs' service awards as approved by the Court, all attorneys' fees and costs as approved by the Court, settlement administration costs, and any other deduction from the Settlement amount that is approved by the Court. Only if any checks mailed to class members are uncashed after 180 days, the total value of such uncashed checks is to be paid in the form of a *cy pres* award to either or both of the following consumer advocacy organizations chosen by Plaintiffs, subject to the Court's approval: Consumer Federation of America-America Saves program and Consumer Action.

15.    In sum, the Revised Settlement creates a common fund of $4 million for the benefit of the Class without any reversion to the defendant.

**The Absence of Opt-outs or Objections**

16.    The Notice sent to the Class disclosed all of the proposed terms of the

settlement, including the amount of attorneys' fees and service awards proposed.

Class Notice at p. 7.  Not a single class member objected to the fees, costs or the

service payments.  A very small proportion of the Class opted-out of the action,

and only one cardholder, who had declared bankruptcy, objected to the substantive

terms of the original settlement.

**The Complexity and Duration of the Litigation**

17.    Both the factual and the legal issues presented by this case were

complex and disputed, and Plaintiffs did not enter into the litigation lightly.

Among the several complex and risky legal issues were whether defendant could

enforce the arbitration clause in its cardholder agreements to bar this action or

defeat class certification and whether some or all of the claims may be preempted

by federal banking laws.  While Representative Plaintiffs succeeded on many of

their arguments, their success was by no means assured.  In fact, subsequent

developments in the law of preemption and arbitration have only underscored the

wisdom of the current settlement.

17.    With respect to duration, the case was vigorously litigated for over

two years before the parties determined that settlement negotiations may be

worthwhile.  By that time, the parties had embarked on formal discovery and had

gained a detailed knowledge of the scope, strength and nature of the claims. As a matter of class action practice, the case was settled neither too soon (or too cheaply), nor too late (or too remotely from Class members' transactions). Given the size and definitive monetary component of the settlement, it is clear it was negotiated at the optimum time for resolution from the perspective of both Class members and the judicial system.

**The Experience and Efficiency of Counsel**

18.    These excellent results could not have been achieved without the experience and expertise of Class Counsel. As set forth in the accompanying exhibits and declarations, each of the attorneys in this case has extensive experience in consumer finance litigation and the class action process. Individually and together they have handled many other credit card class actions, including cases against Fleet Bank, Advanta, Chase, Providian, Greenwood Trust (Discover), Citibank and others. They have provided testimony before Senate and House committees with respect to credit card practices and legislation and with respect to the impact of mandatory arbitration clauses on small-value consumer claims. And, they have not just litigated but also actually tried multiple class actions as well as argued multiple appeals before state and federal courts, including the Supreme Court of the United States. This experience enabled Class Counsel to

efficiently and persuasively pursue the litigation and communicate their positions to defense counsel having similar experience and expertise.

19.    Class Counsel have at all times strived to work together as efficiently as possible to avoid duplication of effort by both the Plaintiffs and the Defendant, and to minimize the burden on the Court.  Because Class Counsel are or have been involved in other cases alleging similar unfair billing practices by credit card issuers, they were able to assign tasks to those most familiar with a particular subject area and avoid re-creating work and research that was already a matter of institutional memory.  By coordinating our efforts, we achieved significant economies which would not have been obtained had attorneys with lesser consumer or class action experience proceeded with the case.

**The Risk Undertaken**

20.    Each of the firms involved in this litigation agreed to proceed on a purely contingent basis, advancing all costs and expenses necessary for investigation and prosecution and devoting well over 1,860 hours to the litigation without any compensation for their efforts.  This level of effort precluded the attorneys from working on other cases, and given the nature of this litigation, represented a very significant risk for law firms of our sizes.  Given the novelty and complexity of the claims, there has been no guarantee that counsel would receive any payment for their work on these important issues.

21.    The economics of a contingent fee class action practice such as my firm's further supports the award of the requested fees in this case. Throughout this case, the receipt of any fees was wholly contingent on success. Regardless of the perceived or relative merits of a case, there are countless risks confronting contingent fee counsel. Among other things, there are the very substantial risks that a class may not be certified, that the law or regulatory interpretations may change to impair the case or limit damages, that the costs of notice and prosecution might outstrip any damages award, and that a defendant or group of defendants may declare bankruptcy or otherwise prevent collection of a satisfactory judgment. In our practice, we have encountered the practical effects of each of these risks.

22.    I know from personal experience that no case is so clear as to guarantee recovery. For example, notwithstanding favorable decisions by the New Jersey Supreme Court in the credit card late fee cases, Sherman v. Citibank (South Dakota), N.A., 668 A.2d 1036 (N.J. 1995) and Hunter v. Greenwood Trust Co., 668 A.2d 1067 (N.J. 1995), the federal bank regulators subsequently undermined these cases by issuing a preemptive regulatory interpretation upon which the U.S. Supreme Court relied to vacate our state court victories. As a result, class counsel, including myself, recovered nothing for the thousands of hours we devoted to those important cases. Of necessity, contingent fees must account for these types of risk of loss, compensating for both the cases that succeed and the cases that fail.

14

23.     Delay in payment or a significant reduction of a fee request can have a devastating impact on lawyers for consumers.  Firms like mine depend on such fees not only to pay firm overhead such as leases, staff salaries, taxes and benefits, but also to service credit lines and fund continuing cases.  The only way consumer lawyers can continue focusing on consumer issues is by receiving fair fee awards in those cases that succeed.  Otherwise, the necessity of taking hourly work from commercial clients will impair both the focus and the expertise of the available consumer lawyers, thus harming the public interest.

**The Value Of The Work Performed**

24.     In an effort to place a value on the work and in recognition that the Court may conduct a "lodestar cross-check" to evaluate the reasonableness of a percentage of the benefit award, Class Counsel have computed their respective lodestars and attest to the accuracy of the computations and the reasonableness of the rates charged.  Each of the exhibits filed herewith includes one or more documents reflecting the basis for the firm's lodestar and costs, which through March 31, 2013 totals about $1,084,403.00 in fees and $11,426.39 in out-of-pocket expenses.

25.     The lodestar calculation is based on the time recorded by each of the attorneys and staff who worked on the case, as edited in the exercise of billing judgment so as to delete any entries which seemed duplicative or excessive:

15

| Law Firm | Hours | Fees | Costs | Total |
|---|---|---|---|---|
| Donovan Axler | 653.75 | $374,820.50 | $6,494.96 | $381,315.46 |
| Williams Cuker | 447.85 | $233,676.25 | $1,531.51 | $235,207.76 |
| Kierstead | 410.05 | $256,281.25 | $276.12 | $256,557.37 |
| Wasylyk | 351.40 | $219,625.00 | $3,123.80 | $222,748.80 |
| **TOTAL** | **1,863.05** | **$1,084,403.00** | **$11,426.39** | **$1,095,829.39** |

26.    Attached hereto as Exhibit A is a more detailed chart reflecting – by work category, named attorney or paralegal and hourly rate – the lodestar incurred by my firm in connection with the litigation.  My firm expended a total of 653.75 hours in the litigation of this case.  Multiplying those hours by the reasonable and customary hourly rates charged by the firm, results in a total lodestar for my firm of $374,820.50.  This schedule was prepared based on time records regularly prepared and maintained by my firm, which are available at the request of the Court.

27.    The hourly rates for the attorneys and professional staff in my firm included in Exhibit A are the same as the regular, current rates charged for their services in other cases and have been accepted and approved by courts in many other cases.

28.    My firm's lodestar figures are based upon the firm's billing rates, which rates do not include charges for expense items.  Expense items are billed separately and such charges are not duplicated in my firm's billing rates.

29.    As detailed in Exhibit B, my firm has incurred a total of $6,494.96 in un-reimbursed expenses in connection with the prosecution of this litigation.  The bulk of the expenses are attributable to expert retainer costs, travel, document production, and research costs.

30.    The expenses incurred in this action are reflected on the books and records of my firm.  These books and records are prepared from expense vouchers, check records and other source materials and represent an accurate recordation of the expenses incurred.

31.    As background for the hourly rates and the experience of counsel, we have attached hereto as Exhibit C a brief biography of my firm and the attorneys in my firm who were principally involved in this litigation.

**Awards in Similar Cases**

32.    Based on Class Counsel's many years of experience as class action attorneys and as discussed in Plaintiffs' supporting memorandum filed herewith, the requested fee and expense award is reflective of the overall market for contingent fee litigation and is quite typical.  Under prevailing precedent, the percentage award requested, 30%, is well within the range of fee awards to counsel in similar class action cases in this District and throughout the country.

**Service Awards to Class Representatives**

33.    I also submit this Declaration in support of an incentive service award of $5,000 to each of the Representative Plaintiff's for the substantial time and effort they contributed to the successful prosecution of this litigation.

34.    Since the inception of this action, the Representative Plaintiffs have played a very active role in initiating, litigating and monitoring this case and working with counsel in the preparation of pleadings, discovery, class certification papers and related documents, deposition discovery and the negotiation of the settlement. In addition, they provided documentation and input to counsel in connection with discovery and the ultimate settlement of the litigation.

35.    The Representative Plaintiffs reviewed the Settlement Agreement with counsel and have approved it along with the application for an award of attorneys' fees and expenses. Given the extensive time and effort devoted by the Representative Plaintiffs on their own behalf and on behalf of over 390,000 other Class members, a service award of $5,000 each is more than justified.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 4th day of April 2013 at Philadelphia, PA.

s/ *Michael D. Donovan*
**MICHAEL D. DONOVAN, ESQ.**

# Exhibit A

# IN RE: Bank of America (Trombley) Litigation

## TIME PERIOD: INCEPTION - MARCH 1, 2013

## TIME REPORT

**DONOVAN AXLER, LLC**
1845 Walnut Street
SUITE 1100
Philadelphia, PA 19103

Catagories:

| | |
|---|---|
| A | Pre-Filing Investigation |
| B | Pleadings |
| C | Merits Discovery and Post-Filing Fact Investigation |
| D | Class Certification |
| E | Research, Briefs & Pretrial Motions |
| F | Settlement & Settlement Administration |
| G | Court Appearance & Preparations |
| H | Experts |
| I | Case Management, Conference, Interviews, Telephone Calls, Meetings, & Correspondence |
| J | Depositions |

| ATTORNEY NAME | Status | A | B | C | D | E | F | G | H | I | J | TOTAL HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Michael D. Donovan | P | 36.50 | 40.00 | 40.00 | 14.00 | 40.50 | 81.50 | 10.00 | 22.00 | 70.75 | | 315.25 | $700.00 | $220,675.00 |
| Noah Axler | P | | | | | | 24.50 | | | 4.10 | | 28.60 | $500.00 | $14,300.00 |
| David A. Searles | P | 1.30 | 39.10 | 22.90 | | 3.50 | 10.60 | | | 86.50 | 0.40 | 164.30 | $650.00 | $106,795.00 |
| Elise Garber | A | | 1.00 | | | 46.70 | | | | 2.20 | | 49.90 | $250.00 | $12,475.00 |
| Christian Koerner | PL | | | 28.10 | | 13.70 | 9.40 | | | 44.50 | | 95.70 | $215.00 | $20,575.50 |
| **TOTALS** | | 1.30 | 76.60 | 91.00 | 14.00 | 104.40 | 126.00 | 10.00 | 22.00 | 203.95 | 4.50 | 653.75 | | $374,820.50 |

*Status: P=Partner, A=Associate, PL=Paralegal

# Exhibit B

# IN RE: Bank of America (Trombley) LITIGATION

**TIME PERIOD: INCEPTION - MARCH 1, 2013**

## EXPENSE REPORT

**DONOVAN AXLER, LLC**

1845 Walnut Street
Suite 1100
Philadelphia, PA  19103

| Description | Cumulative Total |
| --- | --- |
| Reproduction/Copies | $162.50 |
| Express Mail | $14.48 |
| Postage | $19.15 |
| WestLaw | $2,775.00 |
| Travel, Food, Lodging | $1,472.20 |
| Research Materials | $251.63 |
| Filing Fee | $100.00 |
| Expert Fees | $1,700.00 |
|  |  |
|  |  |
| **TOTAL EXPENSES** | $6,494.96 |

# Exhibit C

# *DONOVAN SEARLES & AXLER, LLC*

1845 Walnut Street, Suite 1100
Philadelphia, PA 19103
Phone 215-732-6067
Fax 215-732-8060
www.donovansearles.com

Michael D. Donovan, Esquire                                 David A. Searles, Esquire
mdonovan@donovansearles.com                          dsearles@donovansearles.com

Noah Axler, Esquire
naxler@donovansearles.com

DONOVAN SEARLES & AXLER, LLC, located in Philadelphia, Pennsylvania, is a law firm dedicated to providing first class litigation services to investors, consumers and small businesses. The firm's principals have substantial trial and appellate court experience prosecuting complex commercial and consumer cases. The members of the firm have appeared or argued before the United States Supreme Court, various federal and state appellate courts, the state Supreme Courts of New Jersey and Pennsylvania and federal and state trial courts throughout the country. The firm's nationwide practice focuses on class actions, shareholders' rights, consumer and commercial litigation as well as employment-related disputes. The firm strives to provide consumers, investors and small businesses with the type of sophisticated, in-depth representation that is ordinarily available only to the largest corporate clients of money-center law firms.

MICHAEL D. DONOVAN, a founding member of the firm, is admitted to practice before the Supreme Court of the United States, the United States Courts of Appeals for the Second, Third, Eighth, Ninth and Tenth Circuits, the United States District Court for the Eastern District of Pennsylvania, the United States District Courts for the Southern and Eastern Districts of New York as well as the state courts of Pennsylvania and New York and the courts of Washington, D.C. He is a graduate of Vermont Law School (J.D. cum laude 1984) and Syracuse University (A.B. 1981). He was the Head Notes Editor and a staff member of the VERMONT LAW REVIEW from 1982 through 1984. While on the LAW REVIEW, he authored Note, Zoning Variance Administration in Vermont, 8 VT. L. REV. 370 (1984). Following graduation from law school, Mr. Donovan was an attorney with the Securities and Exchange Commission in Washington, D.C., where he prosecuted numerous securities cases and enforcement matters, including injunctive and disciplinary actions against public companies, broker/dealers and accounting firms. Mr. Donovan has authored "Rigorous Analysis of the Class Action Burden of Proof," ABA

Newsletter of the Class Action and Derivative Suits Committee, Spring 2007, and co-authored Preserving Judicial Recourse for Consumers: How to Combat Overreaching Arbitration Clauses, 10 LOYOLA CONSUMER L. REV. 269 (1998); "The Overlooked Victims of the Thrift Crisis," Miami Review, Feb. 13, 1990; and "Conspiracy of Silence: Why S&L Regulators Can't Always Be Trusted," Legal Times, Feb. 5, 1990.

Mr. Donovan has served as co-lead counsel in the following securities class actions: In re Sunterra Corp. Securities Litigation, No. 6:00-cv-79-Orl-28B (M.D. Fla. 2005) (settled for $5,450,000); In re: Worldport Communications, Inc. Securities Litigation, No. 1-99-CV-1817-CC (N.D. Ga. 2001) (settled for $5,100,000); Lines v. Marble Financial Corp., Nos. 90-23 and 90-100 (D. Vt. 1991)(settled for $2 million together with substantial changes to the company's loan loss reserve procedures); Jones v. Amdura Corp., No. 90-F-167 (D. Colo. 1991) (action against directors settled for $4,962,500 and against company after bankruptcy for $1.2 million); In re Columbia Shareholders Litigation (Del, Ch. 1991)(merger case settled for $2 per share increase in amount paid to shareholders); Rosen v. Fidelity Investments, [1995-1996] Fed. Sec. L. Rep. ¶ 98,949 (E.D. Pa. Nov. 28, 1995) (opinion certifying class of mutual fund purchasers); Selis v. KTI, Inc., No. 2:00 CV 1478 (JCL) (D.N.J. 2000) (settled for $3.8 million). In addition, Mr. Donovan has had a substantial role in the prosecution of the following cases, among others: In re Trustcorp Securities Litigation, No. 3:89-CV-7139 (N.D. Ohio 1990) (settled for $5,600,000); Moskowitz v. Lopp, 128 F.R.D. 624 (E.D. Pa. 1989) (opinion certifying class of stock and option purchasers in fraud on the market and insider trading case); In re Hercules Corporation Securities Litigation, No. 90-442 (D. Del. 1992) (settled for $17.25 million).

In the area of consumer justice, Mr. Donovan has argued before the Supreme Court of the United States in Smiley v. Citibank (South Dakota), N.A., No. 95-860, 116 S. Ct. 806 (argued Apr. 24, 1996) and obtained favorable appellate rulings from the New Jersey Supreme Court in Sherman v. Citibank (South Dakota), N.A., 668 A.2d 1036 (N.J. 1995) and Hunter v. Greenwood Trust Co., 668 A.2d 1067 (N.J. 1995) and from the Pennsylvania Superior Court in In re Citibank Credit Card Litigation, 653 A.2d 39 (Pa. Super. 1995) and Gadon v. Chase Manhattan Bank, N.A., 653 A.2d 43 (Pa. Super. 1995). Recently, Mr. Donovan obtained a landmark Truth in Lending Act decision from the Court of Appeals for the Third Circuit in Rossman v. Fleet Bank (R.I.), N.A., 280 F.3d 384 (3d Cir. 2002), holding that a bank may not change a credit card promise of no annual fee. He also obtained landmark decisions from the Appellate Division of the New Jersey Superior Court and the New Jersey Supreme Court in Lemelledo v. Beneficial Finance Co., 674 A.2d 582 (N.J.

App. Div. 1996), aff'd, 150 N.J. 255, 696 A.2d 546 (N.J. 1997), concerning loan and insurance packing.

In May 2005, Mr. Donovan tried to jury verdict a Pennsylvania statewide consumer class action against Kia Motors America, Inc., concerning the defective brake system on the 1997-2000 models of the Kia Sephia automobile. After a two-week trial, the jury returned a verdict of $600 per class member, for an aggregate classwide verdict of $5.4 million. Samuel-Bassett v. Kia Motors America, Inc., 2006 WL 3949458 (Pa. Com. Pl. Dec. 28, 2006) (denying post-trial motions of defendant). In October 2007, the Pennsylvania Superior Court affirmed the judgment, and in February 2008 it affirmed the award of $4.4 million in attorney fees and expenses.

In September and October 2006, Mr. Donovan tried to jury verdict a Pennsylvania statewide employee class action against Wal-Mart Stores, Inc., concerning Wal-Mart's failure to pay its hourly employees for missed breaks and off-the-clock work. After a six-week trial, the jury returned a verdict for the Class in the amount of $78.4 million. In October 2007, the Court awarded an additional $62 million in liquidated damages under the Pennsylvania Wage Payment and Collection Law, $10.2 million in prejudgment interest and approximately $46 million in attorney fees and costs. See Braun v. Wal-Mart Stores, Inc., 2005 WL 3623389 at *5 - *7 (Pa. Com. Pl. Dec. 27, 2005)(opinion certifying class).

In May and June 2008, Mr. Donovan tried to jury verdict a New Jersey statewide class action against Kia Motors America, Inc., concerning the defective brake system on the 1997-2000 models of the Kia Sephia automobile. After a five-week trial, the jury returned a verdict of $750 per class member, for an aggregate classwide verdict of approximately $6.0 million. Little v. Kia Motors America, Inc., No. UNN-L-0800-01006 (N.J. Super. (Union Cty.) verdict entered June 6, 2008).

Mr. Donovan has provided testimony before the United States Senate Committee on Banking, Housing and Urban Affairs (Jan. 25, 2007) concerning the CARD Act and before the House of Representatives Subcommittee on Commercial and Administrative Law, Committee on the Judiciary, concerning the Arbitration Fairness Act (Apr. 29, 2009). He also has appeared as a panel speaker and presenter at the American Bar Association's National Class Action Institute, the Pennsylvania Bar Institute's Banking Law Update, the Practicing Law Institute's Financial Services Litigation Forum, the Consumer Credit Regulation Forum of the New Jersey Bar Association, and the National Consumer Rights Litigation Conference sponsored by the National Consumer Law Center. Mr. Donovan is a member of the American Bar

Association (Litigation and Business Law Sections), the Pennsylvania Bar Association, the New York Bar Association, and the District of Columbia Bar Association. He is the Chair of the Consumer Law Subcommittee of the ABA Litigation Section's Class Actions and Derivative Suits Committee. He is also the former Vice Chair of the National Association of Consumer Advocates and an active member of Public Justice. He received the 2009 Vern Countryman Award for Excellence in Consumer Law awarded by the National Consumer Law Center and was a 2007 Trial Lawyer of the Year Finalist recognized by Public Justice.

DAVID A. SEARLES, a former founding member of the firm, is admitted to practice before the Supreme Court of the United States, the United States Courts of Appeals for the Third Circuit and the Fourth Circuit, and the United States District Court for the Eastern District of Pennsylvania, as well as the state courts of Pennsylvania. He is a 1975 graduate of the American University School of Law, Washington, D.C., where he served on law review. Following graduation from law school, Mr. Searles was an attorney for Community Legal Services of Philadelphia, where he specialized in consumer and bankruptcy law. In 1990, he successfully argued the first consumer reorganization bankruptcy case considered by the U.S. Supreme Court, Pennsylvania v. Davenport, 495 U.S. 552 (1990), and has served as lead counsel and presented argument in numerous consumer law cases before the United States Court of Appeals for the Third Circuit, including Piper v. Portnoff Law Associates, Ltd., 396 F.3d 227 (3d Cir. 2005); Colbert v. Dymacol, Inc., 344 F.3d 334 (3d Cir. 2003); In re Colon, 941 F.2d 242 (3d Cir. 1991); Smith v. Fidelity Consumer Discount Company, 898 F.2d 896 (3d Cir. 1990); In re Szostek, 886 F. 2d 1405 (3d Cir. 1989); Whittaker v. Philadelphia Electric Company, 882 F.2d 791 (3d Cir. 1989); Watts v. Pennsylvania Housing Finance Agency, 876 F.2d 1090 (3d Cir. 1989); Crossley v. Lieberman, 868 F. 2d 566 (3d Cir. 1989); Abele v. Mid-Penn Consumer Discount Company, 77 B.R. 460 (E.D. Pa. 1987), aff'd 845 F.2d 1009 (3d Cir. 1988); Washington v. Heckler, 756 F.2d 959 (3d Cir. 1985). From 1992 through 1997, Mr. Searles was associated with the Philadelphia law firm of Drinker Biddle & Reath LLP, where his practice focused on Chapter 11 bankruptcy and creditor's rights.

In September 2007, Mr. Searles co-counseled a bench trial to verdict in a Pennsylvania statewide consumer class action against a real estate tax collection law firm and its owner for their improper collection of attorneys' fees, charges and interest. After a ten day trial, the court returned a verdict for the class in the amount of $5.2 million. Roethlein v. Portnoff Law Associates and Michelle R. Portnoff, Esq., Nov. Term 2002, No. 3888 (C.P. Phila. March 11, 2008).

In June 2005, Mr. Searles was awarded the Equal Justice Award at the Community Legal Services Breakfast of Champions for his role in directing funding for legal assistance for low-income residents of Philadelphia.

Mr. Searles was the Managing Editor, Survey of State Class Action Law (ABA Section on Litigation), 2009, and is a contributing author of Pennsylvania Consumer Law (2009).  Along with Mr. Donovan, he co-authored Preserving Judicial Recourse for Consumers:  How to Combat Overreaching Arbitration Clauses, 10 LOYOLA CONSUMER L. REV. 269 (1998). He is the author of "Tips In Handling Individual Bankruptcy Cases," Pennsylvania Bar Association Quarterly, January 1997.  He has taught advanced bankruptcy law at Rutgers University School of Law - Camden, business law at Widener University and bankruptcy law at Pierce Junior College, Philadelphia.  He is a past co-chairperson of the Education Committee of the Eastern District of Pennsylvania Bankruptcy Conference.

Among other cases, Donovan Searles has been approved as class counsel in the following recent class actions: Chakejian v Equifax Information Services, LLC, 256 F.R.D. 492 (E.D. Pa. 2009); Barel v. Bank of America, 255 F.R.D. 393 (E.D. Pa. 2009);  Markocki v. Old Republic National Title Ins. Co., 254 F.R.D. 242 (E.D. Pa. 2008); Strausser v. ACB Receivables Management, Inc., 2008 WL 859224 (E.D. Pa. Mar. 28, 2008); Allen v. Holiday Universal, Inc., 249 F.R.D. 166 (E.D. Pa. 2008); Cohen v. Chicago Title Insurance Company, 242 F.R.D. 295 (E.D. Pa. 2007);  Jordan v. Commonwealth Financial Systems, Inc., 237 F.R.D. 132 (E.D. Pa. 2006); Braun v. Wal-Mart Stores, Inc., 2005 WL 3623389 (Pa.Com.Pl. Dec. 27, 2005); Perry v. FleetBoston Financial Corp., 229 F.R.D. 105 (E.D. Pa. 2005); Beck v. Maximus, Inc., 2005 WL 589749 (E.D. Pa. March 11, 2005); Stoner v. CBA Information Services, 352 F.Supp.2d 549 (E.D. Pa. 2005); Orloff v. Syndicated Office Systems, Inc., 2004 WL 870691 (E.D. Pa. April 22, 2004); Petrolito v. Arrow Financial Services, LLC, 221 F.R.D. 303 (D. Conn. 2004); Piper v. Portnoff Law Associates, Ltd., 216 F.R.D. 325 (E.D. Pa. 2003); Bonett v. Education Debt Services, Inc., 2003 WL 21658267 (E.D. Pa. 2003); Samuel-Bassett v. Kia Motors America, Inc., 212 F.R.D. 271 (E.D. Pa. 2000), vacated on other grounds; Oslan v. Law Offices of Mitchell N. Kay, 232 F. Supp. 2d 436 (E.D. Pa. 2002); Oslan v. Collection Bureau of Hudson Valley, 206 F.R.D. 109 (E.D. Pa. 2002); Saunders v. Berks Credit & Collections, 2002 WL 1497374 (E.D. Pa. 2002); Schilling v. Let's Talk Cellular and Wireless, 2002 U.S. Dist. LEXIS 3352 (E.D. Pa. 2002); Fry v. Hayt, Hayt and Landau, 198 F.R.D. 461 (E.D. Pa. 2000); Smith v. First Union Mortgage Corporation, 1999 WL 509967 (E.D. Pa. 1999).

NOAH AXLER joined the firm in 2011, after serving as the principal in the Law Office of Noah Axler, LLC.  He is admitted to practice before the United States District Courts for the Eastern District of Pennsylvania and the District of New Jersey, as well as in the states of Pennsylvania, New Jersey, and Ohio.  He has represented plaintiffs in recent large antitrust class actions, including In re Polyester Staple Antitrust Litigation, In re Processed Egg Products Antitrust Litigation, In re Cotton Yarn Antitrust Litigation, *and In re BP Propane Antitrust Litigation*.

He currently represents Pennsylvania and Illinois plaintiffs in class actions which have been consolidated in MDL 2193, In re Bank of America HAMP Litigation, as well as in Craddock v. Hayt, Hayt & Landau, LLC, et al., No. 09-595 (D.N.J.); Newton v. Savit Collection Agency, No. 09-4911 (D.N.J.); Allen, et al. v. Holiday Universal, Inc., No. 05-5726 (E.D. Pa.); King, et al. v. Advance America, et al., No. 07-237 (E.D. Pa.); Smith, et al. v. National Corrective Group, Inc., C.A. No. 10-10 (N.D. Cal.); Shouse, et al. v. National Corrective Group, Inc., C.A. No. 10-175 (M.D. Pa.), among others.

Mr. Axler is a 1999 graduate of the University of Pennsylvania Law School. In 2007 and 2010, *Super Lawyers* and *Philadelphia Magazine* named him, a "Rising Star."  He has also authored a number of articles on litigation topics, including several published in *The Explosion & Evolution of Class Action Law* (PBI 2004).

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| BRUCE J. TROMBLEY and<br>RYAN SUKASKAS on behalf of<br>themselves and all others similarly<br>situated,<br><br>            Plaintiffs,<br><br>       v.<br><br>BANK OF AMERICA<br>CORPORATION,<br><br>            Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. NO. 08-456<br><br><br><br><br><br>CLASS ACTION |

## DECLARATION OF ANDREW S. KIERSTEAD, ESQ. IN SUPPORT OF PETITION FOR AN AWARD OF ATTORNEY FEES AND REIMBURSEMENT OF EXPENSES

I, Andrew S. Kierstead, pursuant to 28 U.S.C. § 1746, declare and state as follows:

1.      I respectfully submit this declaration in support of the motion for an award of attorneys' fees in connection with services rendered in this case, as well as the reimbursement of expenses incurred in connection with this litigation. I have personal knowledge of the facts referred to herein, and if called as a witness, I could and would testify competently to the matters stated herein.

2.      I am class co-lead counsel in this class action. My services in this case included: investigating and analyzing the facts and circumstances pertinent to the claims, researching the legal claims arising from the facts, developing litigation strategies, and with co-lead counsel, preparing the complaint and amended complaint, preparing the motion for discovery in response to defendant's motion to compel arbitration, preparing the opposition to motion to dismiss, preparing the opposition to the motion for judgement on the pleadings, preparing the opposition to motion for stay, preparing the motion for appointment as interim class counsel, preparing the motion for class certification, negotiating the scope of discovery with defendant, preparing discovery requests to

defendant, reviewing and analyzing defendant's discovery responses, including thousands of pages of documents produced, negotiating and preparing supplemental responses to defendant's discovery requests, negotiating the class settlement over a five month period, including drafting MOUs, preparing the settlement agreement, preparing the motion for preliminary approval and supplemental motions, preparing class notice and claims forms, preparing the settlement web site, coordinating settlement/notice administration with defendant and the class administrator.

3.      I have practiced complex litigation in federal and state courts for 24 years practiced class action litigation in federal and state courts for 15 years. During that time, I have been class counsel in many federal and state class action lawsuits (a brief biography is attached as Exhibit A). As a result, I am familiar with the reasonable, necessary and customary attorneys' fees in these cases. Also, as a result, I have knowledge of the tasks required to reasonably litigate such cases and the amount of time that reasonably must be incurred in performing such tasks.

4.      During my work on this case, I kept accurate, contemporaneous records of all my time expended. Calculated from these records over 4 years, I have expended a total of 410.05 hours in attorney time on this litigation.  I believe that all of my hours were reasonably and necessarily expended. My total lodestar is $256,281.25, based on my current hourly billing rate. Attached as Exhibit B is a detailed summary of the amount of time I spent in this litigation and the lodestar calculation based on my current billing rate. Time expended in preparing this application for fees and reimbursement of expenses has not been included in this request. My detailed daily time records showing the work I performed in this case and the hours expended are available for review by the Court upon request.

5.      Based on my knowledge of the billing rates of other firms with similar experience and doing similar work, I believe that my rates are fair and reasonable, and are in line with the rates charged by other firms that do similar work.

6.      My lodestar figures are based on my billing rates, which do not include charges for expense items. Expense items are billed separately and are not duplicated in my billing rates. As detailed in Exhibit C, I have incurred a total of $276.12 in un-

reimbursed expenses in connection with the prosecution of this litigation.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on this 3rd day of April 2013 at Plymouth, Massachusetts.


/s/ Andrew S. Kierstead

Andrew S. Kierstead

# Exhibit A

Exhibit A

**ANDREW S. KIERSTEAD**
1001 SW Fifth Ave., Suite 1100
Portland, OR 97204
(503) 220-1822

ANDREW S. KIERSTEAD is a graduate of Johns Hopkins University (B.A. in History, 1984; Dip. International Relations, School of Advanced International Studies) and the University of Southern California (J.D. 1987), where he was awarded a full tuition merit scholarship and received the Am Jur prize in both Torts and Torts II.   Mr. Kierstead is admitted to practice in the states of California and Oregon as well as the federal Central District of California, Northern District of California, District of Oregon and before the Ninth Circuit Court of Appeals.

Mr. Kierstead primarily litigates on behalf of consumers in class actions and other complex cases before state and federal courts, class co-counsel in the putative California class action *Lopez v. American Express* (Central District of California), class co-counsel in the putative national class action *Cappalli v. BJ's Wholesale Club* (District of Rhode Island), class co-counsel in the putative national class action *Locke v. Quibids* (Western District of Oklahoma), class co-counsel in the putative national class action *Trombley v. Bank of America* (District of Rhode Island), class co-counsel in the putative California class action *Big 5 Sporting Goods Song-Beverly Cases-Coordination Proceeding* (Superior Court for the County of Los Angeles), class co-counsel in the putative national class action *Vought v. Bank of America* (Central District of Illinois), class co-counsel in the putative national class action *Blankenship v. RBS Citizens* (Southern District of Florida), class co-counsel in several of the putative state class actions coordinated as *In Re:   Motor Fuel Temperature Sales Practices Litigation* (District of Kansas), and class co-counsel in the putative California class action *In Re:   Late Fee And Over-Limit Fee Litigation* (Northern District of California).

He has been co-lead class counsel in the settled (2003) national class action *Rossman v. Fleet Bank* (Eastern District of Pennsylvania), a member of the plaintiffs' counsel executive committee in the certified national class action *In Re:   Universal Service Fund Telephone Billing Practices Litigation* (District of Kansas), co-lead class counsel in the settled (2003) Oregon class action *Bruce v. EarthLink, Inc.* (Multnomah County (Oregon) Circuit Court), co-lead class counsel in the settled (2001) national class action *Rosted v. First USA Bank* (Western District of Washington), class co-counsel in the settled (2011) national class action *Hibnick/Souvalian v. Google, Inc.* (Northern District of California), class co-counsel in the settled (2010) national class action *In Re:   Ameriquest Mortgage Company Mortgage Lending Practices Litigation* (Northern District of Illinois), class co-counsel in the settled (2009) national

class action *Montaquilla v. Countrywide Home Loans* (Central District of California), co-lead class counsel in the settled (2005) western states' class action *Egger v. Duke Energy* (San Diego Superior Court), class co-counsel in the settled (2009) national class action *Carr v. Nationwide* (Franklin County (Ohio) Court of Common Pleas), class co-counsel in the settled (2005) national class action *Kruss v. Banner Life Insurance Co.* (Montgomery County (Maryland) Circuit Court), class co-counsel in the settled (2004) national class action *Jones v. The Midland Life Insurance Company* (Franklin County (Ohio) Court of Common Pleas), class co-counsel in the settled (2003) national class action *Schoenwald v. Travelers Insurance Company* (Alameda County (California) Superior Court), class co-counsel in the settled (2003) national class action *Feldman v. Jefferson Pilot Financial Insurance Company* (Central District of California), class co-counsel in the putative national class action *In Re: National Security Agency Telecommunications Records Litigation* (Northern District of California), class co-counsel in the putative national class action *Murphy v. Citibank* (District of Rhode Island) and class co-counsel in the putative California class action *Gabriel v. Chase* (Central District of California).

Mr. Kierstead was a speaker at the 2003 annual national conference of the National Consumer Law Center/National Association of Consumer Advocates.

# Exhibit B

**Exhibit B**

**Trombley v. Bank of America**

**LODESTAR REPORT**

FIRM NAME: **LAW OFFICE OF ANDREW S. KIERSTEAD**
REPORTING PERIOD: October 2008 – March 2013

| NAME (STATUS) | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | HOURLY RATE | CUMULATIVE HOURS | CUMULATIVE LODESTAR |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Andrew Kierstead (P) | 94.75 | 90.5 | | | 64.5 | 10.6 | 95 | | 54.7 | | | $625 | 410.05 | $256,281.25 |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| TOTALS | | | | | | | | | | | | $625 | 410.05 | $256,281.25 |

P = Partner      A = Associate      PL = Paralegal      LC = Law Clerk

1. Pleadings and Motions re Pleadings
2. Legal and Other Research and Investigation
3. Depositions, including Preparation
4. Experts – Retention, Preparation and Discovery (For any purposes, e.g. consultation, class certification, summary judgment, damage analysis, trial)
5. Non-deposition Merits, Arbitration and/or Class Discovery, e.g. Interrogatories, Document Requests, Subpoenas, Negotiations and Motions re same, and Document Review and Analysis

7. Settlement
8. Other Court Appearances and Preparation
9. Case management, planning, organization and strategy
10. Trial including trial preparation
11. Client Communications and/or meetings
12. Miscellaneous (please describe here)

# Exhibit C

## Exhibit C

### *Trombley v. Bank of America*

#### EXPENSE REPORT

FIRM NAME: Law Office of Andrew S. Kierstead

| DESCRIPTION | | |
|---|---|---|
| Phone/fax | $86.50 | |
| Copying | $127 | |
| Pro hac vice fee | $50 | |
| Postage | $12.62 | |
| | | |
| Total | $276.12 | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **BRUCE J. TROMBLEY and** | ) | |
| **RYAN SUKASKAS on behalf of** | ) | |
| **themselves and all others similarly** | ) | |
| **situated,** | ) | **Case NO. 08-456 (JAD)** |
| | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | |
| | ) | |
| **BANK OF AMERICA** | ) | |
| **CORPORATION** | ) | **CLASS ACTION** |
| | ) | |
| **Defendant** | ) | |

**CERTIFICATION OF MARK R. CUKER, ESQUIRE FILED ON BEHALF OF
WILLIAMS CUKER BEREZOFSKY, LLC IN SUPPORT OF PLAINTIFFS'
UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT
OF COSTS, AND SERVICE AWARDS TO NAMED PLAINTIFFS**

I, Mark R. Cuker, pursuant to 28 U.S.C. § 1746, hereby certify as follows:

1.      I am one of the named partners in the law firm of Williams Cuker Berezofsky,

LLC ("WCB").  I submit this Certification in support of Plaintiffs' Unopposed Motion for

Award of Attorneys' Fees, Reimbursement of Costs, and Service Awards to Named Plaintiffs, in

connection with services rendered in this litigation.

2.      WCB has served as co-counsel of record for Plaintiffs Bruce J. Trombley and

Ryan Sukaskas and the Class since shortly after the Complaints were filed in this litigation.

3.      The worked performed by my firm appears in the WCB Time Report, attached as

Exhibit A, which is a detailed and specific documentation of the amount of time, by category,

spent by each attorney of my firm in connection with this litigation.  Exhibit A includes the

lodestar calculation based on WCB's current billing rates.

4.      By way of background and explanation, the overwhelming majority of WCB's

work in this litigation was performed by Michael J. Quirk, Esquire, who was admitted *pro hac vice* to practice in this Court.

5.      Mr. Quirk's experience and qualifications, as well as a biography of WCB, are summarized in Exhibit B.

6.      Mr. Quirk was an associate attorney with WCB from 2006 until October 2012, at which time he joined Berns Weiss, LLP as a partner in the firm. Because Mr. Quirk continued to perform work in this litigation after departing from WCB, a separate 'Berns Weiss Time Report' has been prepared and attached as Exhibit C. The data provided in Exhibit A and Exhibit C are mutually exclusive, and are being provided under the same Certification for convenience of the Court.

7.      Regarding Exhibit A, I certify that WCB performed the following services, among others, in connection with this litigation:

- investigated, researched, drafted, and prepared Plaintiffs' responses to Defendant's motion to compel arbitration and preclude Plaintiffs from proceeding through a class action;

- traveled to Rhode Island for oral argument before the Court on Plaintiffs' motion for enlargement of time in which to take discovery in response to Defendant's motion to compel arbitration and preclude Plaintiffs from proceeding through a class action;

- investigated, researched, drafted Plaintiffs' supplemental authority submissions concerning the National Arbitration Forum, Defendant's exclusively designated arbitral forum, and its partial ownership by consumer credit card debt collection entities, which resulted in a consent decree under which the National Arbitration Forum was barred from conducting consumer arbitrations like those sought by Defendants in this case;

- researched, drafted, and prepared Plaintiffs' opposition to Defendant's motion to dismiss the First Amended Complaint for failure to state claims under applicable federal or state law;

2

- researched, drafted, and prepared Plaintiffs' opposition to Defendant's motion for judgment on the pleadings on the grounds that Plaintiffs' state-law claims allegedly were preempted by the National Bank Act and regulations promulgated by the Office of Comptroller of the Currency (OCC), which opposition included an administrative law challenge to the validity of the OCC's preemption regulation at issue;

- worked on all aspects of discovery, from writing and editing interrogatories and document requests, to drafting electronic discovery search queries, to reviewing thousands of pages of documents produced by Defendant;

- researched, reviewed, and edited Plaintiffs' motion for appointment of counsel as interim class counsel in light of potentially competing litigation addressing similar claims against same defendant in another jurisdiction;

- participated in all aspects of settlement negotiation from initial discussions with opposing counsel through final agreement on principal settlement agreement terms, during which time we were in weekly and sometimes daily communication with co-counsel and/or opposing counsel;

- researched, drafted, reviewed, and/or edited all settlement agreement documents submitted to the Court;

- researched, drafted, reviewed and/or edited all settlement preliminary approval motion papers, including initial motion papers and supplemental papers focused on notice, objection, opt-out, and administration issues highlighted by the Court in its approval orders;

- investigated and researched appropriate consumer advocacy organizations to ensure alignment of interests with those of the class for the *cy pres* component of the settlement agreement;

- maintained daily communication with co-counsel and/or opposing counsel during four-month period after parties reached agreement on principal settlement terms through the Court's issuance of four separate orders on preliminary approval issues;

- participated in telephone, in-person, and email communications with settlement administrator starting prior to finalization of settlement agreement and continuing through post-preliminary approval implementation of the agreement;

- after preliminary approval of settlement, reviewed all settlement web site pages

3

created by Rust Consulting, coordinated revisions, edits, deletions, and additions with co-counsel and opposing counsel, and communicated same to Rust personnel responsible for website;

- reviewed, edited, compiled supporting data and information for application for award of attorneys' fees and incentive payment to class representative Plaintiffs; and

- coordinated and began research of final settlement approval motion and supporting papers for submission prior to final approval hearing.

8.      The total number of hours expended on this litigation by my firm is 447.85 hours. The total attorney lodestar for my firm is $233,676.25, consisting entirely of attorneys' time spent on this litigation. The hourly rates set out in Exhibit A are the same rates that federal and state courts have approved in the past for WCB in similar class action cases.

9.      Regarding Exhibit C, I certify that it is a true and correct copy of the Time Report provided to me by Mr. Quirk for the time he worked on this litigation as a partner in the firm of Berns Weiss, LLP.  Exhibit C reflects 25.5 total hours expended by Mr. Quirk.  Exhibit D also reflects a total attorney lodestar for Berns Weiss, LLP of $13,413.75, consisting entirely of Mr. Quirk's time spent on this litigation.

10.      Furthermore, I certify that my firm's unreimbursed expenses relative to this litigation—totaling $1,531.51—are outlined in Exhibit D, attached hereto.

11.      The expenses incurred in this action are reflected on the books and records of WCB.  These books and records are prepared from expense vouchers, check records, and other source materials and are an accurate recordation of the expenses.

12.      Finally, I certify that the economics of a class action and plaintiff's representation practice such as my firm, and that of Berns Weiss, lends additional support to the award of the requested fees in this case.  Through this litigation, the receipt of any fee was wholly contingent

4

wholly contingent on success.  Regardless of the perceived or relative merits of a case, there are countless risks confronting class action counsel.  Among others, there are the very substantial risks that a defendant's mandatory arbitration clause that bans class action proceedings (like the one invoked in this case) will be enforced; that the law or regulatory provisions in the area of law at issue (like those invoked by defendant in this case) will be held to preempt and thereby extinguish state-law claims; that the class may not be certified, or may be severely reduced in size to a single state; that a defendant might conduct a reverse auction with parallel class counsel, or that a defendant might declare bankruptcy or otherwise prevent collection of a satisfactory judgment.  In our practice, we have encountered the practical effects of each of these risks, and indeed squarely faced several of these risks in this litigation.

13.     I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.


Dated: March 25, 2013
       Philadelphia, Pennsylvania

                                                     _____
                                                     Mark R. Cuker, Esq.

# EXHIBIT A

Trombley v. Bank of America, Dist. Rhode Island Case No. 08-cv-456

**TIME REPORT**
**WILLIAMS CUKER BEREZOFSKY, LLC**
1515 Market Street
Suite 1300
Philadelphia, PA 19102

## Reporting Period: Inception through

Categories:

A  Pre-Filing Investigation
B  Pleadings
C  Merits Discovery and Post-Filing Fact Investigation
D  Class Certification
E  Research, Briefs & Pretrial Motions
F  Settlement

G  Court Appearance & Preparations
H  Experts
I  Case Management, Conference, Interviews, Telephone Calls, Meetings, & Correspondence
J  Depositions

| ATTORNEY NAME | Status | A | B | C | D | E | F | G | H | I | J | TOTAL HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Gerald J. Williams | P | | | | | | | | | 3.00 | | 3.00 | $625.00 | $1,875.00 |
| Mark R. Cuker | P | | | 0.50 | | | 108.20 | 38.50 | | 4.15 | | 4.65 | $625.00 | $2,906.25 |
| Michael J. Quirk | A | | | 41.80 | | 150.90 | 108.20 | 38.50 | | 94.00 | | 433.40 | $525.00 | $227,535.00 |
| Joseph A. Venti | A | | | 6.00 | | | | | | 0.80 | | 6.80 | $200.00 | $1,360.00 |
| | | | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | | | $0.00 |
| **TOTALS** | | 0.00 | 0.00 | 48.30 | 0.00 | 150.90 | 108.20 | 38.50 | 0.00 | 101.95 | 0.00 | **447.85** | | **$233,676.25** |

*Status: P=Partner, A=Associate, PL=Paralegal

# EXHIBIT B

# WILLIAMS CUKER BEREZOFSKY, LLC
## FIRM BIOGRAPHY

Williams Cuker Berezofsky, LLC ("WCB") maintains offices in Philadelphia,

Pennsylvania and Cherry Hill, New Jersey. The firm has extensive experience handling complex

plaintiff litigation, in both class action and individual contexts, in a variety of practice areas.

These areas include consumer protection, products liability, environmental, pharmaceutical and

toxic tort litigation, employment discrimination and civil rights.

WCB has served as lead or co-lead counsel in a wide variety of class action and mass tort

cases that have led to developments or changes in existing substantive law, including cases:

- granting class certification for consumer claims challenging lender fraud and deception in the issuance of negative amortization "Option ARM" home mortgage loans, *Plascencia v. Lending 1st Mortg. Corp.,* 259 F.R.D. 437 (N.D. Cal. 2009), and granting settlement class certification and final settlement approval for the same types of claims, *In re Wachovia Corp. 'Pick-a-Payment' Mortgage Marketing and Sales Practices Litig., 2011* U.S. Dist. LEXIS 55351 (N.D. Cal. May 17, 2011);

- reinstating a jury's compensatory damages award and reversing a trial court's grant of judgment notwithstanding the verdict on the availability of punitive damages to a plaintiff who suffered from breast cancer after taking hormone replacement therapy drugs, and proved that the manufacturer's failure to study or adequately warn of this risk caused her injury, *Daniel v. Wyeth Pharmaceuticals, Inc.,* 15 A.3d 909 (Pa. Super. Ct. 2011);

- granting collective action certification under federal Fair Labor Standards Act in case on behalf of "civilian on base" employees playing the role of foreign nationals in military-occupied zones for training of U.S. troops, challenging private contractor employers' practice of deducting hours from their pay for time when they were not allowed to

leave employment site, *Manning v. Goldbelt falcon, LLC,*
No. 08-3427, 2010 U.S. Dist. LEXIS 104029 (D.N.J. Sept.
29, 2010);

- recognizing a party's right to discovery pertaining to a
  motion to compel arbitration and bar class action
  proceedings, *Trombley v. Bank of America Corp.,* 636 F.
  Supp. 2d 151 (D. R.I. 2009); upholding the viability of the
  same party's claims challenging a national bank's practice
  of delaying credit for receipt of credit card payments as a
  breach of the contractual duty of good faith and fair
  dealing, 675 F. Supp. 2d 266 (D. R.I. 2009); and holding
  that the National Bank Act does not preempt these claims,
  715 F. Supp. 2d 290 (D. R.I. 2010);

- invalidating mandatory arbitration clause terms prohibiting
  consumer class actions and stripping consumers of other
  legal remedies in *Anderson* v. *Comcast Corp.,* 500 F.3d 66
  (1ˢᵗ Cir. 2007), *Thibodeau v. Comcast Corp., 912* A.2d 874
  (Pa. Super. Ct. 2006), and *Muhammad* v. *County Bank of
  Rehoboth Beach-Del.,* 912 A.2d 88 (N.J. 2006);

- recognizing application of a state's usury limits to interest
  charged in "rent-to-own" sales of household goods to low-
  income consumers, *Perez* v. *Rent-A-Center, Inc.,* 892 A.2d
  1255 (N.J. 2006), a ruling that resulted in a statewide class
  action settlement for $109 million distributed through
  direct payments to class members;

- the right of Vietnam Veterans to collaterally challenge a
  class action settlement that purported to settle "future
  injury" claims by Vietnam veterans whose illness from
  exposure to Agent Orange had not manifested at the time of
  settlement, *Stephenson* v. *Dow Chemical,* 273 F.3d 249 (2d
  Cir. 2001), *aff'd by evenly divided court,* 539 U.S. 111
  (2003);

- the responsibility of real estate developers to advise New
  Jersey residential purchasers of the proximity of landfills to
  the homes they purchase, *Strawn* v. *Canuso,* 140 N.J. 43
  (1995);

- the existence of a private cause of action under the Pennsylvania Hazardous Sites Cleanup Act, *Toole* v. *Gould, Inc.*, 764 F. Supp. 985 (M.D. Pa. 1991); and

- establishing the cognizability of medical monitoring damages under Pennsylvania law, *Merry* v. *Westinghouse*, 684 F. Supp. 847 (M.D. Pa. 1988).

A sampling of other cases the firm has had a lead role in follows:

*Merry* v. *Westinghouse*, 697 F. Supp. 180 (M.D. Pa. 1988) (Superfund); *Merry* v. *Westinghouse*, 684 F. Supp. 847 (medical monitoring/water contamination)(M.D. Pa. 1988); *Lutz* v. *Chromatex*, 718 F. Supp. 413 (water contamination)(M.D. Pa. 1989); *Lutz v. Chromatex*, 725 F. Supp. 258, (M.D. Pa. 1989); *Lutz* v. *Chromatex*, 730 F. Supp. 1328, (M.D. Pa. 1990); *Toole* v. *Gould, Inc.*, 750 F. Supp. 1233, (M.D. Pa. 1991) (lead poisoning); *Toole v. Gould, Inc.*, 764 F. Supp. 985, (M.D. Pa. 1991) (lead poisoning); *Flick* v. *Borg-Warner Corp.*, 892 F.2d 285 (3d Cir. 1990) (ERISA); *Dean v. Handy & Harman*, 961 F. Supp. 798 (MD. Pa 1997)(workplace toxic exposure); *Pestinger* v. *Pennsylvania Office of Vocational Rehabilitation*, 11 Nat'l Dis. Law Rptr. 60 (Ed. Pa. 1997); *Smith* v. *Holtz, et al.*, 87 F.3d 108 (3d Cir. 1996) (civil rights); *Hawkins v. Leslie's Poolmart*, 184 F.3d 244 (3d Cir. 1999); *Incollingo* v. *RCA, et at.*, D.N.J. No. 87-4263 (Real Estate Fraud); *Goodman* v. *Pearlstein*, Phila., CCP; Dec. Term, 1985; No. 553 (consumer protection); *Dubo JJ v. Smith-Kline*, Phila., CCP; Dec. Term, 1990; No. 5004 (consumer protection); *Arbogast* v. *Owens*, U.S.D.C., Mid. Dist. Pennsylvania, c.x. No. 1:CY-91-1403, Rambo, J. (Eighth Amendment; prisoners' rights]; *Tracy* v. *Aamco*, Phila., CCP; Oct. Term, 1990; No. 4840 (consumer protection); *Snodgrass* v. *Mayerfeld, et al.*, Salem Cty (N.J.) Sup. Ct. No. SLM-L-250-91; *Kulp* v. *Hrivnak*, 765 A.2d 796 (2000) (environmental contamination); [Real Estate Fraud/Toxic Tort]; *Mauger v. Home Shopping Network*, Bucks Cty (Pa.) CP No. 91-9698-14-1 [Consumer Protection]; *Fry v. Leech Tool & Dye Co.*, Crawford County (PA) CP No. A.D. 1990 - 403 [Water Well Contamination/Toxic Tort]; Toms River Children's Cancer Cluster; *Brewer* v. *Ravan*, 680 F. Supp. 1176 (M.D. Tenn. 1988) (Superfund); *Strawn v. Canuso*, 271 N.J. Super. 88 *(1994), aff'd,*

140 N.J. 43 (1995) (real estate fraud); *Piccolini v. Simons* (Superfund) (at least 30 corporate defendants), 686 F. Supp. 1063 (M.D. Pa. *1988); Fried v. Sungard,* 900 F. Supp. 758 (Clean Air Act) (E.D. Pa. 1995); *Brewer* v. *Monsanto,* 644 F. Supp. 1267 (toxic exposure) (M.D. Tenn. *1986); Vadino, et at.* v. *American Home Products Corp., et al.,* Docket No. MID-L-425-98 (MT)(product liability) (Law Division, Middlesex County); *Schorr* v. *Borough of Lemoyne,* 265 F. Supp. 2d 488 (M.D. Pa. 2003)(civil rights); *Schorr* v. *Borough of Lemoyne,* 243 F. Supp. 2d 232 (M.D. Pa. 2003) (civil rights); *Bianchi* v. *City of Philadelphia,* 183 F. Supp. 2d 726 (E.D. Pa. 2002).

The firm has been rated "AV" (highest rating) by Martindale Hubbell. The qualifications and experience of the individual attorney moving for appointment as class counsel are set forth below.

*Michael J. Quirk*

Mr. Quirk was an associate attorney with the law firm of Williams Cuker Berezofsky, LLC ("WCB") between 2006 and 2012, working on complex plaintiffs litigation with a principal focus of practice in the areas of consumer rights, class action and complex litigation, and appellate litigation. He joined the law firm of Berns Weiss, LLP, as a partner, in October 2012, where his practice is substantially similar to that while he was with WCB.

Mr. Quirk received his J.D. *cum laude* from the University of Michigan Law School in 1999. He is admitted to practice before the United States Supreme Court, the United States Courts of Appeals for the First, Third, Ninth, and Eleventh Circuits, and the United States District Courts for the District of Columbia and the Eastern District of Pennsylvania. He is a member of the State of New York, District of Columbia, and Commonwealth of Pennsylvania Bars.

Mr. Quirk and WCB partner Mark R. Cuker were certified as class counsel to represent a nationwide consumer class challenging lenders' deceptive practices in issuing negative amortization "Option ARM" loans in *Plascencia* v. *Lending 1st Mortgage Corp.,* 259 F.R.D. 437 (N.D. Cal. 2009), and in *In re Wachovia Corp. 'Pick-a-Payment' Mortgage Marketing and Sales Practices Litig.,* 2011 U.S. Dist. LEXIS 55351 (N.D. Cal. May 17, 2011) (final approval of class action settlement); and to represent a class of New Jersey consumers challenging usurious interest charges in short-term "payday loans" in *Muhammad* v. *County Bank of Rehoboth Beach, Del.,* National Arbitration Form Case No. FA0707001045136 (Order of Arbitrator, The Hon. Herman D. Michels, October 9, 2009).

Mr. Quirk also was lead counsel who briefed and/or argued for prevailing plaintiffs in the following cases:

- *Daniel* v. *Wyeth Pharmaceuticals, Inc.,* 15 A.3d 909 (Pa. Super. Ct. 2011);

- *Trombley* v. *Bank of America Corp.,* 636 F. Supp. 2d 151 (D.R.I. 2009),675 F. supp. 2d 266 (O.R.1. 2009), and 715 F. Supp. 2d 290 (O.R.I. 2010)

- *Anderson* v. *Comcast Corp.,* 500 F.3d 66 (1st Cir. 2007);

- *Nagrampa* v. *Mailcoups, Inc.,* 469 F.3d 1257 (9th Cir. 2006) *(en banc);*

- *Muhammad* v. *County Bank of Rehoboth Beach, Del.,* 189 N.J. 1 (2006);

- *Tamayo* v. *Brainstorm USA,* 154 Fed. Appx. 564 (9th Cir. Sept. 21, 2005);

- *Sanderson Farms, Inc.* v. *Gatlin,* 828 So. 2d 848 (Miss. 2003);

- *Dotson* v. *Bell Atlantic-Md., Inc.,* 2003 WL 23508048 (Md. Cir. Ct. Nov. 13, 2003);

- *Boghos* v. *Certain Underwriters at Lloyd's,* 109 Cal. App. 4th 1728 (2003); *rev'd,* 115 P.3d 68 (Cal. 2005).

In addition, Mr. Quirk represented plaintiffs as co-counsel or was *amicus* counsel in the following reported cases:

- *Wyeth* v. *Levine,* 129 S. Ct. 1887 (2009);

- *Watson* v. *Philip Morris Companies, Inc.,* 127 S. Ct. 2301 (2007);

- *Buckeye Check Cashing. Inc.* v. *Cardegna,* 546 U.S. 440 (2006);

- *Green Tree Fin. Corp.* v. *Bazzle,* 539 U.S. 444 (2003);

- *Sprietsma* v. *Mercury Marine,* 537 U.S. 51 (2002);

- *Reeves* v. *Sanderson Plumbing Products, Inc.,* 530 U.S. 133 (2000);

- *Lewallen v. Green Tree Servicing. LLC,* 487 F.3d 1085 (8th Cir. 2007);

- *In re Orthopedic Bone Screw Prod. Liab. Litig.,* 246 F.3d 315 (3d Cir. 2001);

- *Federal Elections Comm 'n* v. *Public Citizen,* 268 F.3d 1283 (11th Cir. 2001);

- *Ting* v. *AT&T,* 182 F. Supp. 2d 902 (N.D. Cal. 2002), *aff'd in part and rev'd in part,* 319 F.3d 1126 (91h Cir. 2003);

- *Boyd v. Bell Atlantic-Md., Inc.,* 887 A.2d 637 (Md. 2005);

- *Harvey* v. *Kaiser Found. Health Plan,* 805 A.2d 1061 (Md. 2002);

- *Wells v. Chevy Chase Bank,* 768 A.2d 620 (Md. 2001);

Mr. Quirk is co-author of the first five editions and annual supplements of *Consumer Arbitration Agreements: Enforceability and Other Topics* (NCLC and Public Justice Foundation, 5th ed. 2007), which is part of the National Consumer Law Center's Consumer Credit and Sales Practice Series. He was a contributor to the National Association of Consumer Advocates-*Revised Standards and Guidelines for Litigating and Settling Consumer Class Actions* (2006). He also has authored or co-authored articles published in Trial magazine, Clearinghouse Review, and various state bar and trial lawyer association publications. In addition, he has delivered speeches on consumer and worker rights issues at conferences of the Association of Trial Lawyers of America, National Consumer Law Center, National Employment Lawyers Association, Hispanic National Bar Association, Equal Justice Works, National Association of Consumer Agency Administrators, West Virginia Judicial Education Conference, Legal Services of New Jersey, and various state trial lawyer associations.

Prior to working at the firms of Berns Weiss, LLP and WCB, Mr. Quirk was a staff attorney with Public Justice (formerly Trial Lawyers for Public Justice), a national public interest law firm, in Washington, D.C. He was previously an Equal Justice Works Fellow with Public Justice. Prior to that and immediately after graduating from law school, he was the Supreme Court Assistance Project Fellow with the Public Citizen Litigation Group, also in Washington, D.C., where a principal focus of his work was on helping prevailing plaintiffs in federal and state appeals courts in opposing petitions for review by the United States Supreme Court.

# EXHIBIT C

Trombley v. Bank of America, Dist. Rhode Island Case No. 08-cv-456

**TIME REPORT**
**BERNS WEISS LLP**
100 N. 18th Street
Suite 300
Philadelphia, PA 19103

**Reporting Period: Inception through**

Catagories:

| | |
|---|---|
| A | Pre-Filing Investigation |
| B | Pleadings |
| C | Merits Discovery and Post-Filing Fact Investigation |
| D | Class Certification |
| E | Research, Briefs & Pretrial Motions |
| F | Settlement |

| | |
|---|---|
| G | Court Appearance & Preparations |
| H | Experts |
| I | Case Management, Conference, Interviews, Telephone Calls, Meetings, & Correspondence |
| J | Depositions |

| ATTORNEY NAME | Status | A | B | C | D | E | F | G | H | I | J | TOTAL HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Michael J. Quirk | P | | | 6.75 | | | 14.75 | | | 4.05 | | 25.55 | $525.00 | $13,413.75 |
| **TOTALS** | | 0.00 | 0.00 | 6.75 | 0.00 | 0.00 | 14.75 | 0.00 | 0.00 | 4.05 | 0.00 | **25.55** | | **$13,413.75** |

*Status: P=Partner, A=Associate, PL=Paralegal

# EXHIBIT D

**Re: Trombley v. Bank of America, Dist. Rhode Island Case No. 08-cv-456**

**EXPENSE REPORT**
## WILLIAMS CUKER BEREZOFSKY, LLC
1515 Market Street Suite 1300
Philadelphia, PA 19102

## REPORTING PERIOD: Inception through

| Description | Cumulative Total |
|---|---:|
| Reproduction/Copies (includes PACER) | $126.99 |
| Notice Fees | |
| Courier | |
| Express Mail (FedEx) | |
| Postage | |
| Telephone | |
| Toll Phone | |
| Legal Research (Lexis-Nexis) | $583.42 |
| Expert Fees | |
| Meals, Hotels, Transportation | $771.10 |
| Facsimile Charces | |
| Business Wire Notice | |
| Miscellaneous (Pennsylvania Bar, certificate of good standing) | $50.00 |
| | |
| **TOTAL EXPENSES** | **$1,531.51** |

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| BRUCE J. TROMBLEY and | ) | |
| RYAN SUKASKAS on behalf of | ) | |
| themselves and all others similarly | ) | |
| situated, | ) | C.A. NO. 08-456 |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| BANK OF AMERICA | ) | |
| CORPORATION, | ) | CLASS ACTION |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DECLARATION OF PETER N. WASYLYK, ESQ. IN SUPPORT OF PETITION FOR AN AWARD OF ATTORNEY FEES AND REIMBURSEMENT OF EXPENSES

I, Peter N. Wasylyk, declare as follows:

1.      My name is Peter N. Wasylyk and I am a principal with the Law Offices of Peter N. Wasylyk and respectfully submit this declaration in support of plaintiffs' joint petition for an award of attorneys' fees as well as the reimbursement of expenses reasonably incurred in connection with services rendered in the above-captioned litigation.

2.      I am over twenty-one years of age, of sound mind, have never been convicted of a felony, have personal knowledge of all the facts stated herein and am fully competent to make this declaration .

3.      I am a member in good standing of the bar of the State of Rhode Island. I have been practicing law for the past 28 years and have practiced class action litigation before federal and state courts for the past 17 years. I have been class counsel in numerous class action lawsuits in federal and state courts. A sampling, but not an exhaustive listing of those cases is

cited in the true and correct copy of my resume attached as Exhibit A.

4. Since before the filing of this consumer class action, I have played a very active role in the initiating and litigating of this case with co-counsel. Together with co-counsel, I have acted as co-lead counsel and have been actively involved in all aspects of the litigation, including but not limited to: interviewing, consulting and communications with named plaintiffs and other prospective clients and class members through in person meetings, the United States postal service mail, telephone, facsimile, and e-mail; legal and factual research and investigation of the claims; contacting co-counsel and coordinating the structure of the co-counsel litigation team and conferring with co-counsel in the development of the claims and strategy of the case; drafting and filing of the class action complaint; received and responded to a multitude of emails and phone calls from both co-counsel, named plaintiffs and numerous members of the class as well as other consumers who were inquiring as to their membership in the class; assisting in various aspects of the research and editing of pleadings, briefs and motions filed in the case, including the amended complaint, a motion for discovery to respond to defendant's motion to compel arbitration, plaintiffs' opposition to defendant's motion to dismiss, plaintiffs' opposition to defendant's motion for judgment on the pleadings, plaintiffs' motion to designate lead counsel, plaintiffs' responses to and service of discovery requests, including responses to interrogatories, requests for documents/admissions, and review of documents and data produced by defendant, final settlement approval; and, participation in all stages of the settlement negotiations.

5. The total number of hours I have expended on this litigation is 351.40 hours. Based on an hourly billing rate of $625.00, my total lodestar is $219,625.00. The chart attached hereto as Exhibit B is a summary of my time spent and the lodestar calculation based on my current billing rate. The time expended in preparing this declaration is not included in this

request. In my opinion, all of the hours I expended in connection with this litigation were reasonably and necessarily incurred. My current rates are appropriate in light of prevailing rates for similar legal services provided by lawyers of reasonably comparable skill, experience, and reputation. Legal services contracts between myself and the plaintiff clients are primarily contingency fee agreements and the nature of contingency fees are that they are inherently uncertain and require counsel to assume more risk than cases where compensation is based on billable hours. Based on my knowledge of other attorneys with similar experience and doing similar work, I also believe that my rate is fair and reasonable, and in line with the rates charged by other attorneys that do such work. Accordingly, I am of the opinion that my lodestar of $229,625.00 was reasonably and necessarily incurred in connection with this litigation.

6.     In connection with the prosecution of this litigation, I incurred a total of $3,123.80 in unreimbursed expenses. The chart attached hereto as Exhibit C provides a summary of the unreimbursed expenses I incurred during the course of this litigation. In my opinion all of these expenses and their amounts were reasonably and necessarily incurred in the prosecution of this litigation.

7.     I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: April 1, 2013
Providence, Rhode Island

                              /s/ Peter N. Wasylyk
                              Peter N. Wasylyk

3

# Exhibit A

**Law Offices of**
# Peter N. Wasylyk
1307 Chalkstone Avenue
Providence, Rhode Island 02908
Email: pnwlaw@aol.com

Phone 401-831-7730                                                                 Fax 401-861-6064

PETER N. WASYLYK is a graduate of Providence College (B.S. 1979) and Suffolk University Law School (J.D. 1984). He served as both member and editor of the Suffolk University Law Review. Mr. Wasylyk is admitted to practice in the state of Rhode Island as well as the Federal District Court for the District of Rhode Island, and the First Circuit Court of Appeals.

Mr. Wasylyk practices consumer class action litigation before state and federal courts. He has served as co-counsel, including but not limited to the following class actions:

Tyler Chavers v. Fleet Bank, N.A., C.A. No. 00-5237, SUPERIOR COURT OF RHODE ISLAND, PROVIDENCE.

In re NSA Telcoms. Records Litig., MDL Docket No 06-179 1 VRW, UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA.

Yemin Ji v. Kits Van Heyningen, CA 05-273ML, UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND.

Mahoney v. AT&T Communs., Inc., CA No. 06-223-T , UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND, 2006 U.S. Dist. LEXIS 34274.

In re Bausch & Lomb. Inc., DOCKET NO. 178, JUDICIAL PANEL ON MULTIDISTRICT LITIGATION.

Hanoian v. Blue Cross & Blue Shield of R.I., C.A. No. 96-2579, RHODE ISLAND SUPERIOR COURT, 2002 R.I. Super. LEXIS 122, September 18, 2002, Filed

Bickley v. Caremark, RX. Inc., Case No.: CV-02-VEH-2 197-S , UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA, SOUTHERN DIVISION.

Singleton v. Wells Fargo Bank, N.A. (In re Singleton), C.A. No. 02-137ML, UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND.

Tancredi v. Metro. Life Ins. Co.. 00 Civ. 5780 (LAK) , UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK.

In re TJX Cos., Case No. 07-1853-KHV, UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS.

Smith v. United Healthcare Servs., Civil No. 00-1163 ADM/AJB, UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA.

Calise v. Norwest Fin. R.I., Inc., No. 4-97-CV-80823, UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF IOWA, CENTRAL DIVISION.

In re Fedex Ground Package Sys., Cause No. 3:05-MD-527 RM, (MDL-1700) , UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF INDIANA, SOUTH BEND DIVISION.

Bond v. Fleet Bank, N.A., C.A. No. 0 1-177 L , UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND.

In re Pet Food Prods. Liab. Litig., MDL Docket No. 1850 (All Cases), Civil Action No. 07-2867 (NLH), UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY.

Rein v. Providian Fin. Corp., No. C 98-4044 CRB, UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA.

Corsini v. United Healthcare Corp., C.A. No. 96-608-T, UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND.

Caranci v. Blue Cross & Blue Shield, C.A. No. 96-275-L, UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND.

Lefaivre v. KV Pharmaceutical, C.A. 09-588, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI.

Trombley v. Bank of America Corporation, C.A. No. 08-456-S, UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND.

In re Sears Retiree Group Life Insurance Litigation, C.A. 94-7453, UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS.

Connie Mason v. Delhaize America, Inc. d/b/a/Sweetbay, and Hannaford Bros. Co., No. 08-00118, DISTRICT OF MAINE (PORTLAND)

Montaquila v. Countrywide Home Loans, Inc. and Countrywide Bank, C.A. 07-07094, UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA.

Bedi v. Hewlett-Packard Company, and Staples, Inc., C.A. 07-12318-RWZ, UNITED STATES

DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS.

Nash v. CVS Caremark Corporation, Holiday CVS, LLC, C.A. 09-079, UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND.

Peterson v. Exon Mobil Corporation, C.A. 07-00 130, UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF UTAH, CENTRAL DIVISION.

Schmidt v. Consumerinfo.com, Inc., and Experian Information Solutions, Inc., C.A. 05-9 12, UNITED
STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA.

Benetti v. Bertucci's Corp., C.A. 07-40159 FDS, UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS, CENTRAL DIVISION.

Driscoll v. Family Dollar, C.A. 07-180 ML, UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF RHODE ISLAND.

Harrocks v. Sears, Roebuck & Co., C.A. 09-164, UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF WISCONSIN.

Perryv. Restaurants of America, C.A. 07-03328, UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MINNESOTA.

Burke v. Washington Mutual Home Loans, C.A. 02-000885, CIRCUIT COURT FOR
MILWAUKEE COUNTY, WISCONSIN.

Murphyv. Citibank, C.A. 09-541, UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF RHODE ISLAND

Savage v. Verizon, CA10-122, UNITED STATES DISTRICT COURT DISTRICT OF RHODE
ISLAND

Hunt v. Citizens, CA 09-377, UNITED STATES DISTRICT OCURT DISTRICT OF RHODE
ISLAND

Lopez v. American Express, CV 09-7335, UNITED STATES DISTRICT COURT CENTRAL
DISTRICT OF CALIFORNIA WESTERN DIVISION

Hibnick v Google, 10-CV-00672, UNITED STATES DISTRICT COURT FOR THE NORTHERN
DISTRICT OF CALIFORNIA SAN JOSE DIVISION

Cappalli v. BJ's Wholesale Club, 10-CV-407 UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

Fiorenzano v. LVNV Funding LLC, Solomon & Solomon, P.C., and Julie B. Solomon, 11-CV-178, UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND

Lagasse v. Flextronics, 11-CV-445, UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND

Martin v. Schiff, 11-CA-484, UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND

Mena v. Boudreau, 12-CA-238, UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND

Santilli v. NCO Financial Systems, Inc., 13-CA-149 UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND

# Exhibit B

Trombley v. Bank of America

**TIME REPORT**
**Law Offices of Peter N. Wasylyk**
1307 Chalkstone Avenue
Providence, RI 02908

## Reporting Period: Inception through March 28, 2013

Categories:

A  Pre-Filing Investigation
B  Pleadings
C  Merits Discovery and Post-Filing Fact Investigation
D  Class Certification
E  Research, Briefs & Pretrial Motions
F  Settlement

G  Court Appearance & Preparations
H  Experts
I  Case Management, Conference, Interviews, Telephone Calls, Meetings, & Correspondence
J  Depositions

| ATTORNEY NAME | Status | A | B | C | D | E | F | G | H | I | J | TOTAL HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Peter N. Wasylyk | P | 81.60 | 42.60 | 0.00 | 0.00 | 60.90 | 27.90 | 25.60 | 0.00 | 112.80 | 0.00 | 351.40 | 625 | $0.00 |
| | | | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | | | $0.00 |
| TOTALS | | 81.60 | 42.60 | 0.00 | 0.00 | 60.90 | 27.90 | 25.60 | 0.00 | 112.80 | 0.00 | 351.40 | 625 | $219,625.00 |

*Status: P=Partner, A=Associate, PL=Paralegal

# Exhibit C

**Re: Trombley v. Bank of America**

**EXPENSE REPORT**

**Law Offices of Peter N. Wasylyk**

1307 Chalkstone Avenue
Providence, RI 02908

| Description | Cumulative Total |
|---|---|
| Reproduction/Copies | $297.00 |
| Notice Fees | |
| Courier | |
| Postage/Express Mail | $234.30 |
| Telephone/Facsimile | $187.50 |
| Toll Phone | |
| Legal Research (West Law and Lexis) | $1,935.00 |
| Expert Fees | |
| Meals, Hotels, Trans. | |
| Miscellaneous | |
| Filing Fees/Service Fees/Pro Hac Fees | $470.00 |
| **TOTAL EXPENSES** | $3,123.80 |

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed Plaintiffs' Motion for Award of Attorneys'

Fees, Reimbursement of Costs, and Service Awards to Named Plaintiffs Pursuant to Revised

Settlement Agreement. This document is available for viewing and downloading from the

Court's Electronic Case Filing System. Accordingly, service by electronic means has been made

upon the following Attorneys of Record:

Robert G. Flanders, Jr.
HINCKLEY, ALLEN & SNYDER LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903

Mark P. Ladner
David J. Fioccola
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, NY 10104
Attorneys for Defendant Bank of America


Dated: April 10, 2013

                                              */s/ Michael D. Donovan*
                                              Michael D. Donovan
                                              Donovan Axler, LLC
                                              1845 Walnut St., Suite 1100
                                              Philadelphia, PA  19103
                                              Telephone:  (215) 732-6067
                                              Facsimile:  (215) 732-8060
                                              E-Mail:  mdonovan@donovanaxler.com

3