## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **BRUCE J. TROMBLEY and RYAN SUKASKAS** on behalf of themselves and all others similarly situated, | : : : : : | **C.A. No. 08-456** |
| Plaintiffs, | : : | |
| v. | : : | |
| **BANK OF AMERICA CORPORATION,** | : : | **CLASS ACTION** |
| Defendants. | : : | |

## PLAINTIFFS' MOTION FOR FINAL APPROVAL OF *REVISED* CLASS ACTION SETTLEMENT AGREEMENT AND CERTIFICATION OF SETTLEMENT CLASS

Plaintiffs, Bruce J. Trombley and Ryan Sukaskas ("Plaintiffs"), respectfully move the Court for final approval of the parties' Revised Class Action Settlement Agreement, a summary of which the parties filed under seal on February 1, 2013 (Docket Entry 129). The Court previously granted preliminary approval of the parties' original Settlement Agreement, the terms of which are a baseline for the Revised Settlement Agreement, by orders dated July 29 and August 24, 2011 (D.E. 97 and 100).

In support of their request, Plaintiffs assert that the proposed revised

settlement and notice are fair, reasonable, adequate, and in the best interests of the

class, and that the proposed class satisfies all applicable requirements of Fed. R.

Civ. P. 23(a) and (b)(3).   Defendant Bank of American Corporation assents to this

Motion.   In further support of the Motion, Plaintiffs refer the Court to their

accompanying Memorandum of Law and the Revised Settlement Agreement filed

herewith.   A proposed form of Final Approval Order is attached as Exhibit D to the

Revised Settlement Agreement.

WHEREFORE, Plaintiffs respectfully request that the Court grant this

Motion and enter the proposed Order finally approving the Revised Settlement

Agreement.

<u>Dated</u>:   April 4, 2013

Respectfully submitted,

For Plaintiffs

Bruce J. Trombley and Ryan Sukaskis

/s/ *Peter N. Wasylyk*
Peter N. Wasylyk
**LAW OFFICES OF PETER N. WASYLYK**
1307 Chalkstone Avenue
Providence, Rhode Island 02908
Telephone:  (401) 831-7730
Facsimile:  (401) 861-6064
E-Mail:       pnwlaw@aol.com

2

## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| **BRUCE J. TROMBLEY and RYAN SUKASKAS on behalf of themselves and all others similarly situated,** | : : : : : | |
| | : | **C.A. No. 08-456** |
| **Plaintiffs,** | : : | |
| **v.** | : : | |
| **BANK OF AMERICA CORPORATION,** | : : : | **CLASS ACTION** |
| **Defendants.** | : : : | |

### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF *REVISED* CLASS ACTION SETTLEMENT AGREEMENT AND CERTIFICATION OF SETTLEMENT CLASS

**DONOVAN AXLER, LLC**
Michael D. Donovan (*Pro Hac Vice*)
1845 Walnut Street, Suite 1100
Philadelphia, PA 19103
Telephone: (215) 732-6067
Facsimile: (215) 732-8060

**LAW OFFICES OF PETER N. WASYLYK**
Peter N. Wasylyk
1307 Chalkstone Avenue
Providence, RI 02908
Telephone: (401) 831-7730
Facsimile: (401) 861-6064

**BERNS WEISS, LLP**
Michael J. Quirk (*Pro Hac Vice*)
100 N. 18th Street, Suite 300
Philadelphia, PA 19103
Telephone: (267) 202-0749
Facsimile: (215) 557-0673

**LAW OFFICE OF ANDREW KIERSTEAD**
Andrew S. Kierstead (*Pro Hac Vice*)
1001 SW 5th Avenue, Suite 1100
Portland, OR 97204
Telephone: (508) 224-6246
Facsimile: (508) 224-4356

*Counsel for Plaintiffs and the Class*

# TABLE OF CONTENTS

**Page**

Nature of the Litigation..................................................................................1

History of the Litigation................................................................................3

    A.    Commencement of the Litigation ...........................................3

    B.    Proceedings on BOA's Motion to Compel Individual
            Arbitration .......................................................................5

    C.    Proceedings on BOA's Motions for Dismissal and Judgment ..............7

    D.    Class Certification and Merits Discovery by the Parties......................10

    E.    The Parties' Original Settlement Negotiations.....................................11

    F.    Post-Submission Actions By the Parties...............................................12

    G.    Order Denying Final Approval of Original Settlement Agreement.....13

    H.    Submission of Revised Settlement Agreement Terms ..........................14

Terms of the Revised Settlement Agreement ...............................................14

    A.    Economic Benefits ...............................................................................14

    B.    Notice and Administration ...................................................................16

    C.    Opt-Out Opportunity and Right to Object ...........................................17

    D.    *Cy Pres* Payment ...............................................................................18

    E.    Release of Claims.................................................................................18

i

F.    Attorneys' Fees and Named Plaintiffs' Individual
Service Awards ........................................................................... 19

Legal Argument ...................................................................................... 19

I.    The Proposed Settlement is Fair, Adequate, and Reasonable. ....................... 19

A.    Criteria for Final Settlement Approval ................................... 19

B.    Comparison of Settlement Terms With Litigation Prospects ............. 21

C.    Reaction of the Class ..................................................... 24

1.    The Lone Objection is Procedurally Deficient and
Substantively Meritless ......................................... 25

D.    Stage of Litigation ....................................................... 27

E.    Quality of Class Counsel .............................................. 28

F.    Conduct of Negotiations ............................................... 29

II.    The Notice Plan is Fair, Reasonable, and Adequate. ........................... 30

III.    The Settlement Administration Costs are Reasonable. ...................... 33

IV.    The Proposed Settlement Class Should Be Certified. ........................ 34

A.    Rule 23(a) ................................................................ 34

1.    Numerosity ......................................................... 34

2.    Commonality ....................................................... 36

3.    Typicality ........................................................... 36

4.      Adequacy of Representation ...........................................................37

B.      Rule 23(b)(3)...........................................................................................39

1.      Predominance ..................................................................................39

2.      Superiority........................................................................................40

CONCLUSION............................................................................................................43

# TABLE OF AUTHORITIES

**Page**

## Cases

*Advertising Specialty Nat'l Ass'n v. Federal Trade Comm'n*,
238 F.2d 108 (1st Cir. 1956) ..............................................................32

*Amchem Prod's, Inc. v. Windsor*, 521 U.S. 591 (1997) .................................31, 36, 38

*Carrier v. JPB Enterprises, Inc.*, 206 F.R.D. 332 (D. Me. 2002) ..............................32

*City Partn. Co. v. Atlantic Acquisition LP*, 100 F.3d 1041
(1st Cir. 1996) ..................................................................................18

*De Leon v. Bank of Am., N.A.*, No. 09-1251, 2009 U.S. Dist.
LEXIS 106845 (M.D. Fla. Nov. 16, 2009)................................................39, 40

*Denney v. Deutsche Bank AG*, 443 F.3d 253, 271 (2d. Cir. 2006) ...........................32

*Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54
(D. Mass. 1997) ............................................................................19, 33

*Durrett v. Housing Auth. of City of Providence*, 896 F.2d 600
(1st Cir. 1990)................................................................................17-18

*E.I. DuPont de Nemours & Co. v. Pressman*, 679 A.2d 436
(Del. 1996) ....................................................................................20

*Frasier v. Major League Soccer, LLC*, 180 F.R.D. 178 (D. Mass. 1998)................33

*Hilco Capital, LP v. Federal Ins. Co.*, 978 A.2d 174 (Del. 2009)............................20

*In re Compact Disc Min. Advertised Price Antitrust Litig.*,
216 F.R.D. 197 (D. Me. 2003)....................................................*passim*

*In re Compact Disc Min. Advertised Price Antitrust Litig.*,
292 F. Supp. 2d 184 (D. Me. 2003)....................................................32

*In re Fleet/Norstar Sec's Litig.*, 935 F. Supp. 99 (D.R.I. 1996)........................ 23, 26

*In re Integra Realty Resources, Inc.*, 262 F.3d 1089 (10th Cir. 2001) ..................... 32

*In re Lupron Marketing and Sales Pract's Litig.*, 677 F.3d 21 (1st Cir. 2012)........ 24

*In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493
  (S.D.N.Y. 1996)................................................................................................ 37

*In re Pharma. Ind. Avg. Wholesale Price Litig.*, 588 F.3d 24
  (1st Cir. 2009) ................................................................................................ 21-22

*In re Relafen Antitrust Litig.*, 218 F.R.D. 337 (D. Mass. 2003)......................... 32-33

*In re Sumitomo Copper Litig.*, 189 F.R.D. 274 (S.D.N.Y. 1999) ............................ 23

*In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231
  (D. Del. 2002) ..................................................................................................... 25

*Metropolitan Housing Dev. Corp. v. Village of Arlington Heights*,
  616 F.2d 1006 (7th Cir. 1980) .......................................................................... 18

*Murillo v. Texas A&M Univ. System*, 921 F. Supp. 443
  (S.D. Tex. 1996) ................................................................................................ 21

*Pierce v. Int'l Ins. Co. of Ill.*, 671 A.2d 1361 (Del. 1996)......................................... 25

*Ressler v. Jacobson*, 822 F. Supp. 1551 (M.D. Fla. 1992) ...................................... 26

*Rolland v. Cellucci*, 191 F.R.D. 3 (D. Mass. 2000)...................................... 19, 27, 28

*Santana v. Collazo*, 714 F.2d 1172 (1st Cir. 1983) .................................................. 19

*Smilow v. Southwestern Bell Mobile Sys.*, 323 F.3d 32 (1st Cir. 2003) ................... 39

*Trombley v. Bank of America Corp.*, 636 F. Supp. 2d 151
  (D.R.I. 2009) ........................................................................................................ 7

*Trombley v. Bank of America Corp.*, 675 F. Supp. 2d 266
    (D.R.I. 2009) ...................................................................................... 8

*Trombley v. Bank of America Corp.*, 715 F. Supp. 2d 290
    (D.R.I. 2010) ...................................................................................... 9

*Van Gemert v. Boeing Co.*, 573 F.2d 733 (2d Cir. 1978).......................... 22

### Statutes, Regulations, and Court Rules

12 C.F.R. § 7.4008 ..............................................................................8, 9

12 C.F.R. § 7.5002 ................................................................................. 8

12 U.S.C. §§ 1 *et seq.* (National Bank Act)................................................ 8

15 U.S.C. §§ 1601 *et seq.* (Truth in Lending Act).................................... 1, 4

Fed. R. Civ. P. 12(b)(6) ........................................................................... 7

Fed. R. Civ. P. 23..........................................................................*passim*

### Miscellaneous

Alba Conte & Herbert Newberg, *Newberg on Class Actions*
    (4th ed. 2002)..................................................................................... 18

Federal Judicial Center, *Judges' Class Action Notice and Claims Process
    Checklist and Plain Language Guide* (2010) ...................................... 29

National Association of Consumer Advocates, *Standards and Guidelines
    for Litigating and Settling Consumer Class Actions* (2d ed.),
    published at 255 F.R.D. 215 (2006) .......................................22, 29-30

## NATURE OF THE LITIGATION

This case arose from Defendant Bank of America Corporation's ("BOA's") practice of crediting monthly payments made by credit card holders in person, by telephone, or online, up to five days after they tendered payment, thereby causing them to incur late fees for payments that were timely tendered. Plaintiffs Bruce J. Trombley and Ryan Sukaskas ("Plaintiffs") filed suit on behalf of themselves and a nationwide class of persons similarly situated, alleging that BOA's practice of delayed crediting of timely tendered payments constituted a breach of contract under the BOA credit cardholder agreement and also violated the federal Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.*

Plaintiffs' contract claim for breach of the duty of good faith and fair dealing under Delaware law (made applicable by BOA's choice-of-law clause in its cardholder agreement) survived BOA's numerous motions seeking dismissal of the class action claims. After the Court's rulings upholding the viability of this claim, the parties undertook substantial class certification and merits discovery, exchanging written answers and producing over 7,000 pages of documents.

In December 2010, over two years after Plaintiffs commenced this action, the parties entered into negotiations for resolution of the proposed class's claims. The parties negotiated settlement terms for over six months, leading to their June 27,

2011 submission of the Original Settlement Agreement for preliminary approval, which the Court granted by orders issued July 29 and August 24, 2011.

Pursuant to the Court's preliminary approval orders, BOA issued direct mail notice of the settlement to all settlement class members who between August 1, 2006 and February 22, 2010 timely tendered a credit card payment to BOA in person, by telephone, or online, and incurred a late fee or charge in connection with the timing or manner of their payment. Notice was mailed to over 390,000 BOA cardholders who are potential class members. Of these, only 17 class members opted out of the class and settlement and only one (1) class member mailed an informal objection to counsel for the parties.

After holding a final approval hearing on December 8, 2011 and accepting additional submissions, the Court issued an Order on May 4, 2012 (Docket Entry 119) in which it denied final approval of the Original Settlement Agreement. The Court denied final approval because the Original Settlement Agreement did not fully compensate class members who submitted claims while also providing for indirect *cy pres* relief, *id.* at 9-10, and also found Plaintiffs' request for attorneys' fees excessive in light of the amount of relief claimed by the class. *Id.* at 6.

The parties thereafter resumed litigation and served additional discovery, before re-entering negotiation of revised settlement terms. The parties reached

2

agreement to revised terms under which all class members who submitted claim forms under the Original Settlement Agreement would be paid $40, more than the value of a month's late fee, and all other class members who did not submit claim forms would be paid a pro rata share of a reduced $4 million settlement fund after payment of settlement administration expenses, attorneys' fees and costs, and service awards to the named Plaintiffs, so that all of the new settlement fund amount would be paid out with no reversion to Defendants.

The parties' Revised Settlement Agreement provides a fair and just resolution of a legally complex case that has presented significant hurdles to the vindication of class members' claims. The Settlement offers cash relief representing over 100% of the value of a successful individual late fee claim to every class member who submitted a simple claim form either online or by mail, while also guaranteeing that the entire settlement fund amount is paid out by providing pro rata payments to class members who did not submit claim forms. Plaintiffs respectfully submit that the Settlement should be finally approved.

## HISTORY OF THE LITIGATION

### A.    Commencement of the Litigation

Plaintiffs commenced this action in November 2008. Both Plaintiffs have credit cards with BOA. In October 2007, Plaintiff Bruce J. Trombley made an in-

3

person payment at a BOA branch bank of more than his minimum required monthly payment amount on the date his payment was due.  Amended Class Action Complaint ("Complaint") (Docket Entry 2), ¶¶10-11.  Despite his timely tender of his required payment amount, BOA charged Trombley a $39.00 late fee penalty on his next monthly bill.  *Id.* ¶12.  In November 2007, Plaintiff Ryan Sukaskas tried to pay his required monthly credit card payment via BOA's online payment system on his payment due date, but was blocked from doing so.  *Id.* ¶14.  Instead, in order to timely tender his payment, Sukaskas had to pay by telephone, for which BOA imposed a $15.00 fee on his next monthly bill.  *Id.* ¶15.

On November 24, 2008, Plaintiffs filed a complaint in the United States District Court, District of Rhode Island, on behalf of a nationwide class of consumers who, like them, had timely tendered credit card payments to BOA on or before the due date set by BOA, but then had late fees or other payment-related charges imposed by BOA on their next monthly bills.  *See id.* ¶16 (class definition in amended complaint).  In their amended complaint, Plaintiffs asserted three causes of action.  First, they alleged that BOA's practice of refusing to credit timely tendered payments made by any means other than mailing on the date the payments were tendered constituted a breach of BOA's cardholder agreement with Plaintiffs and class members, including the agreement's implied covenant of good faith and

4

fair dealing.  *Id.* ¶¶22-27.  Next, they alleged that this practice violated the federal Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.* ("TILA").  *Id.* ¶¶28-38.  Finally, Plaintiffs alleged that the mandatory arbitration clause in BOA's cardholder agreement was unconscionable, for which declaratory relief was warranted, based in substantial part on its provisions that barred consumers from bringing or participating in a class action proceeding and required them instead to arbitrate individual claims before BOA's exclusively designated arbitration service, the National Arbitration Forum.  *Id.* ¶¶39-46.

### B.     Proceedings on BOA's Motion to Compel Individual Arbitration

On March 31, 2009, BOA filed a motion to compel arbitration, seeking to enforce the mandatory arbitration clause in its cardholder agreement against Plaintiffs and thereby prohibit them from representing any class of persons other than themselves in asserting their claims for $15 to $39 in individual damages.  *See* Motion to Compel Arbitration and Stay Proceedings (D.E. 10).

Plaintiffs responded by filing a motion to extend the time in which to oppose BOA's motion so that they could take discovery pertaining to the provisions of the mandatory arbitration clause that they alleged rendered it unconscionable, *i.e.* its express prohibition of class action proceedings and its exclusive designation of the National Arbitration Forum ("NAF") to administer individual consumer claims.

5

*See* Motion for Extension of Time to Complete Limited Discovery (D.E. 13).

Specifically, Plaintiffs argued that discovery was necessary to enable them to prove

their colorable allegations that (1) the express prohibition of class action

proceedings in BOA's arbitration clause would prevent them and other consumers

from effectively vindicating their claims; and (2) the clause's exclusive designation

of NAF to administer arbitration of consumer claims would function similarly

because of NAF's demonstrated bias against consumers and in favor of creditors

and other corporate parties.  *See id.*, Memo. of Law at 4-8.  As supplemental

support for the latter argument, Plaintiffs submitted a copy of a federal district court

complaint filed against NAF by one of its former employees that made detailed

allegations about how NAF showed favoritism towards corporate parties with cases

pending before it.  *See* Plaintiffs' Exhibit in Support of Response to Motion (D.E.

23).

The Court (Hon. William E. Smith) held oral argument on Plaintiffs' motion

for the right to take discovery on May 26, 2009.  *See* Minute Entry of Proceedings,

docketed 5/26/09.  Subsequent to the oral argument, Judge Smith and Chief Judge

Lisi of the U.S. District Court for the District of Rhode Island both recused

themselves from the case.  *See* D.E. 28-29.  The case thereafter was assigned to the

Hon. Joseph DiClerico, District Judge of the U.S. District Court for the District of

6

New Hampshire.  *See* D.E. 30-32.

On July 17, 2009, Plaintiffs submitted further support for their response seeking a right to take discovery about the National Arbitration Forum.  *See* Plaintiffs' Exhibit in Support of Response to Motion (D.E. 33).  This supplemental exhibit was an extraordinary state-court complaint that had been filed three days earlier by the Attorney General of the State of Minnesota against the National Arbitration Forum.  The Attorney General alleged and provided documentation showing that a New York-based hedge fund that owned a substantial governing interest in NAF also owned a large interests in one of the country's biggest consumer debt collection law firms, which initiated the majority of consumer arbitrations that NAF was then administering.  *See* Plaintiffs' Exhibit, Complaint in *State of Minnesota v. National Arbitration Forum*, No. 27-CV-09-18550 (Minn. Dist. Ct., County of Hennepin, filed July 14, 2009), ¶¶2-3, 32.[1]

On July 22, 2009, the Court issued its order granting Plaintiffs' motion for extension of time in which to take discovery on BOA's arbitration motion.  *See* D.E. 34, published as *Trombley v. Bank of America Corp.*, 636 F. Supp. 2d 151 (D.R.I. 2009).  Two days later, BOA filed a request to withdraw its motion to

---

[1]  Three days after the filing of this complaint, the Attorney General and NAF entered into a consent decree under which NAF agreed to immediately cease administering consumer arbitrations.

compel individual arbitration of Plaintiffs' claims.  *See* D.E. 35.

### C.   Proceedings on BOA's Motions for Dismissal and Judgment

BOA subsequently filed a motion to dismiss Plaintiffs' claims pursuant to

Fed. R. Civ. P. 12(b)(6) for failure to state actionable claims.  D.E. 39-41.  BOA

argued in its motion that Plaintiffs' TILA claims were not viable because the

federal act and regulations promulgated by the Federal Reserve Board allegedly

authorized the practice at issue of delaying the crediting of certain types of credit

card payments, and that their breach of contract claim was not viable because

BOA's cardholder agreement did not expressly prohibit and did allegedly authorize

this practice.  *See id.*, Memo. of Law at 8-16.

Plaintiffs opposed BOA's motion, arguing both that the practice of refusing

to credit timely-tendered payments for up to five days without justification for the

delay constituted a breach of the duty of good faith and fair dealing under Delaware

law, and that BOA violated TILA by failing to clearly and accurately disclose for

payments not made by mail the actual due date by which cardholders must make

their payment in order to avoid late fee charges.  *See* Plaintiffs' Response in

Opposition (D.E. 43), Memo. of Law at 8-16.

On December 23, 2009, the Court granted BOA's motion in part and denied

it in part.  The Court dismissed Plaintiffs' breach of express contract claim, but held

8

that Plaintiffs stated an actionable claim for breach of the contractual duty of good

faith and fair dealing under Delaware law, and that BOA had failed to address one

of Plaintiffs' alleged TILA violations.  *See* D.E. 47, published as *Trombley v. Bank*

*of America Corp.*, 675 F. Supp. 2d 266 (D.R.I. 2009).

BOA answered Plaintiffs' amended complaint on January 5, 2010.  One

month later, BOA filed a motion for judgment on the pleadings pursuant to Fed. R.

Civ. P. 12(c).  BOA's primary argument was that Plaintiffs' state-law breach of

contract claim allegedly was preempted by the National Bank Act, 12 U.S.C. §§ 1

*et seq.*, and regulations promulgated pursuant to the Act by the Office of the

Comptroller of the Currency (OCC), 12 C.F.R. §§ 7.4008 and 7.5002.  *See* Motion

for Judgment on the Pleadings (D.E. 51), Memo. of Law at 8-17.

Plaintiffs opposed BOA's motion on three distinct, though related, grounds.

First, Plaintiffs argued that the OCC regulations did not preempt their state-law

breach of contract claim because the OCC expressly saved from preemption state

laws relating to the enforcement of contracts.  *See* Plaintiffs' Response in

Opposition (D.E. 58), Memo. of Law at 8-13, discussing 12 C.F.R. § 7.4008(e)(1)

(savings clause).  Second, Plaintiffs argued that, even if the OCC had not saved

Plaintiffs' state contract law claims from preemption, BOA itself did so by

including in its cardholder agreement a provision stating that the agreement was

9

governed by Delaware state law. *See id.* at 13-14. Finally, Plaintiffs also argued

that the OCC's preemption regulations, to the extent they would abrogate basic state

contract law, were unlawful for exceeding the bounds of authority that Congress

delegated to the OCC under the National Bank Act. *See id.* at 14-17.

On June 3, 2010, the Court granted BOA's motion as to Plaintiffs' TILA

claim, but denied it as to their state-law claim for breach of the contractual duty of

good faith and fair dealing. The Court held that the OCC regulations did not

preempt state contract law of the type at issue for Plaintiffs' claim here, but rather

expressly saved it from federal preemption. *See* 6/3/10 Order (D.E. 62), published

as *Trombley v. Bank of America Corp.*, 715 F. Supp. 2d 290 (D.R.I. 2010).

### D.    Class Certification and Merits Discovery by the Parties

After BOA's motions for dismissal and judgment on the pleadings were

denied, the Court (Mag. Judge McCafferty) scheduled a case management

conference and ordered the parties to submit a joint discovery plan. The parties

submitted a plan on June 30, 2010 (D.E. 66), which reflected agreement as to

certain issues, but also disagreement over the amount of time to be required for

discovery and whether discovery would be taken on all issues (as Plaintiffs

proposed) or "bifurcated" between class certification and merits stages (as BOA

proposed). After ordering supplemental submissions by the parties on this dispute

over the scope of discovery, the Court issued an order on July 30, 2010 adopting

Plaintiffs' plan for simultaneous class certification and merits discovery, both to be

completed within eight months. *See* Court-Approved Discovery Plan (D.E. 71).

The parties exchanged initial disclosures, and BOA served initial responses

to Plaintiffs' written discovery requests. *See* Affidavit of Michael J. Quirk in

Support of Plaintiffs' First Final Approval Motion ("Quirk Aff.") (D.E. 108-3), ¶¶

3-4. The parties engaged in extensive negotiation over BOA's document

production and electronic discovery. On September 7, 2010, Plaintiffs served

detailed electronic discovery parameters and noticed the deposition of BOA's

corporate representative. *Id.* ¶¶ 5-7. On November 5, 2010, BOA served written

responses to Plaintiffs' discovery requests and almost 1,000 pages of responsive

documents, followed by service of an additional 6,000+ pages of documents on

November 23, 2010. *Id.* ¶¶ 8-9.

### E.   The Parties' Original Settlement Negotiations

In December 2010, the parties began discussion of possible settlement. To

facilitate these discussions, the parties moved jointly for a stay of the litigation

schedule on January 20, 2011. D.E. 84. The parties later moved for and obtained

two extensions of the stay as negotiations progressed. *See* D.E. 85-86, 88-89.

The settlement negotiations proceeded for several months, taking place

11

through frequent telephone conference calls among counsel and multiple exchanges of written memoranda. *See* Quirk Aff., ¶¶ 10-13. On or about April 6, 2011, the parties reached agreement on substantive settlement terms. The negotiations then proceeded for two and a half more months over a range of procedural issues and through numerous exchanges of drafts. *Id.* ¶ 14.

After over six months of settlement negotiations, Plaintiffs filed an unopposed motion for preliminary approval of the parties' Original Settlement Agreement on June 27, 2011. D.E. 90-93.

### F.   Post-Submission Actions by the Parties

After Plaintiffs submitted the proposed settlement for preliminary approval, BOA served the required notice of the settlement's submission upon appropriate federal and state officials pursuant to 28 U.S.C. § 1715. *See* BOA Declaration Regarding Compliance With the Class Action Fairness Act (D.E. 96). Shortly thereafter, class counsel were contacted by and held a telephone conference call with representatives of approximately 12 state attorney generals' offices on July 26, 2011. Quirk Aff. ¶¶ 15-16. Class counsel discussed the procedural history of this litigation and various aspects of the proposed settlement with the state attorney generals' representatives. *Id.* ¶ 16. After this conference call was completed, class counsel heard no further word are not aware of any other action taken by the state

attorney generals' group with respect to this case.  *Id.* ¶ 17.

On July 29, 2011, the Court granted preliminary approval of the Settlement

Agreement's substantive terms and afforded the parties an opportunity to make

additional submissions on certain procedural matters, *see* 7/29/11 Order (D.E. 97),

which the parties did in short order (*see* D.E. 98, 101), resulting in the Court's

issuance of supplemental preliminary approval orders on August 24 and 26, 2011.

*See* D.E. 100 and Endorsed Order of 8/26/11.

Plaintiffs thereafter filed their petition for awards of attorneys' fees and

service awards to the named representative Plaintiffs (D.E. 105, *as modified* D.E.

114) and motion for final approval of the Original Settlement Agreement (D.E.

108).  The Court held a final approval hearing on December 8, 2011.

### G.    Order Denying Final Approval of Original Settlement Agreement

On May 4, 2012, the Court issued its order denying final approval of the

Original Settlement Agreement for failing to fully compensate class members who

submitted claims for relief while also providing indirect *cy pres* relief.  D.E. 119 at

9-10.  The Court also found Plaintiffs' requested amount of attorneys' fees

excessive in light of the amounts claimed by class members.  *Id.* at 6.  The Court

denied final approval without prejudice to the parties' right to submit a revised

settlement agreement and fee petition accordance with its order.  *Id.* at 10-11.

13

### H.     Submission of Revised Settlement Agreement Terms

After the parties initially failed to reach agreement on revised settlement

terms, they resumed litigation and served additional discovery pursuant to a

Revised Scheduling Order (D.E. 125) for class certification and trial.

In December 2012, the parties resumed negotiation and reached agreement

on revised settlement terms.  The parties jointly requested a Rule 16 conference

(D.E. 127), which the Court granted, and in doing so asked for advance submission

of a summary of the revised settlement terms.  D.E. 128.  The parties submitted the

summary under seal (D.E. 129), and the Rule 16 conference was held by telephone

on February 12, 2013.

### TERMS OF THE REVISED SETTLEMENT AGREEMENT

### A.     Economic Benefits

The Revised Settlement Agreement (Exhibit __ hereto) calls for BOA to pay

a guaranteed four million dollars ($4,000,000.00) in cash to compensate for

allegedly improper late fees charged to Settlement Class members.  Settlement

Agreement § 6(a) (referencing § 2(bb)).  The Settlement Class is defined as:

> [A]ll persons who, at any time during the class period [August 1, 2006
> to February 22, 2010]: (w) had credit card account with FIA; (x) made
> a payment, in connection with that account on or before the same day
> as the "Payment Due Date" or other deadline stated in the operative
> cardholder agreement, cardholder statement or other disclosure to the
> cardholder; (y) made such payment (i) in person at a Bank of America

banking center; (ii) by phone using Bank of America's pay-by-phone service; or (iii) electronically using Bank of America's online banking services; and (z) who incurred a late payment fee, finance charge, or other fees, penalties or charges, in connection with the timing of such payment that was not waived or refunded

*Id.* § 2(dd).

In addition to compensating class members, the settlement amount also will be used to pay notice and administration costs, attorneys' fees and service awards to the two named representative Plaintiffs, to the extent approved by the Court. *Id.* § 6(a). Each class member who submitted a claim form under the Original Settlement Agreement will be paid $40.00. *Id.* § 6(b). All other class members will be paid an equal or pro rata share of the difference between the $4,000,000.00 Settlement amount and the amounts necessary to pay all distributions to class members who submitted claim forms, the Representative Plaintiffs' service awards as approved by the Court, all attorneys' fees and costs as approved by the Court, settlement administration costs, and any other deduction from the Settlement amount that is approved by the Court. *Id.* § 6(c). Only if any checks mailed to class members are uncashed after 180 days, the total value of such uncashed checks is to be paid in the form of a *cy pres* award to either or both of the following consumer advocacy organizations chosen by Plaintiffs, subject to the Court's approval: Consumer Federation of America-America Saves program and Consumer Action. *Id.* § 6(h).

15

### B.    Notice and Administration

Pursuant to the terms of the Original Settlement Agreement and the Court's

order of August 26, 2011, BOA mailed the approved revised short-form notice to

393,792 BOA current or former BOA credit cardholders identified as potential class

members on September 19, 2011.  *See* BOA Affidavit of Patricia Kaplan ("Kaplan

Aff.") (D.E. 107-2), ¶ 4.  The approved notice informed recipients that they may be

eligible for payment under the Settlement Agreement, and provided them with the

name and docket number of this action, the total and individual relief amounts

available under the settlement, the deadlines for submitting claims, objecting, or

opting out of the settlement, the date of the Court's final approval hearing, and how

to obtain more information or pertinent documents from the Settlement

Administrator by telephone, mail, or online.  *See* Kaplan Aff., Ex. 1 (short-form

Notice of Class Action Settlement mailed to class members).

The claim form approved by the Court (*see* 8/24/11 Order (D.E. 100) at 16

¶3) required a verification affirming the class member's identity and membership in

the class in order to receive a cash payment from the settlement.  No further

documentation was required of class members, who could submit their claim form

either by mail or electronically to the Settlement Administrator's website.  *See*

Original Settlement Agreement, Ex. A (D.E. 91-1, filed 6/27/11).

16

The Court approved Rust Consulting, Inc. as Settlement Administrator.  *See* 8/24/11 Order at 16 ¶ 4; *see also* Revised Settlement Agreement ¶¶ 2(bb) and 7. Rust established a settlement website (http://www.trombley-administrator.com) and toll-free telephone number (1-800-387-7158) through which class members may obtain and submit information pertaining to the settlement.  *See*Affidavit of Amy Lake, filed 11/8/11("Lake Aff.") (D.E. 107-1), ¶¶5-6.

## C.   <u>Opt-Out Opportunity and Right to Object</u>

The Settlement Agreement and Court approval orders gave class members almost six weeks from the mailing of notice in which they could either opt out of the class and settlement or object to the settlement's terms.  *See* Original Settlement Agreement, § 6(a) (opt-out provision); 8/24/11 Order at 17 ¶ 5 and 18 ¶ 10 (setting opt-out and objection deadline of October 28, 2011); *see also* Revised Settlement Agreement, § 3 (reaffirming Original Settlement provisions).

Of the 393,792 potential class members to whom notice was sent, 17 persons have chosen to opt out of the class and settlement.  *See* Lake Aff. (D.E. 107-1), ¶ 8.[2]

 Moreover, only one potential class member has submitted an objection by mail to

---

[2]  Ms. Lake reported that Rust received 16 opt-out requests on or before the October 28, 2011 deadline.  Rust received one additional opt-out request shortly after the deadline which appears to be timely since the Court required that such submissions be postmarked, not received, by the deadline.

class counsel.  See Certification of Peter N. Wasylyk, Esq., in Support of First Final

Approval Motion ("Wasylyk Cert.") (D.E. 108-2), <u>Ex. A</u> (letter of Norilyn and

Jeffry Roudebush to class counsel).[3]

### D.   *Cy Pres* **Payment**

Only if any class member does not cash his or her relief check within 180

days of its mailing, then the total value of any such uncashed checks shall be

distributed to the following *cy pres* recipients chosen by class counsel, subject to

the Court's approval: Consumer Federation of America-America Saves program

and Consumer Action.  Revised Settlement Agreement § 6(h).

### E.   **Release of Claims**

Any class member who does not opt out of the class and settlement will be

deemed to have released under § 2(w) of the Revised Settlement Agreement:

[A]ny and all Claims (i) that in whole or in part arise out of or relate to

any late payment or other fees or charges of any kind assessed by

[BOA] on Qualifying Payments up through the date of Preliminary

Approval, including, without limitation, any and all Claims based in

---

[3]  Although the Roudebush objection letter lists the Clerk of the Court for the United States District Court of Rhode Island as having been copied, the letter appears not to have been filed, as the Court has not posted it on the electronic docket for the case.  Thus, Plaintiffs are submitting the objection letter as part of their accompanying attorney certification so that the Court may consider it.

whole or in part on any act, omission, event, incident, matter, dispute,

facts, business practices, transactions or occurrences, or injury up

through the date of Preliminary Approval regarding [BOA's] crediting

of payments to credit card accounts, including, without limitation,

failure to credit such payments by a given date; or (ii) that are or could

have been asserted within the scope of the facts asserted in the

Litigation; or (iii) that arise out of or relate in any way to the

administration of the Settlement Agreement, other than claims for

breach of the Settlement Agreement.

### F.      **Attorneys' Fees and Named Plaintiffs' Individual Service Awards**

The Revised Settlement Agreement permits Plaintiffs to petition for awards

of attorneys' fees and costs to be paid from the $4 million Settlement Amount, but

not to exceed 30% of such amount, § 8, and service awards to the named

representative Plaintiffs not to exceed $5,000.00.  § 6(i).

## LEGAL ARGUMENT

### I.      **The Proposed Settlement is Fair, Adequate, and Reasonable.**

### A.      **Criteria for Final Settlement Approval**

The U.S. Court of Appeals for the First Circuit has recognized that, in

reviewing a proposed class action settlement for final approval under Fed. R. Civ.

19

P. 23(e), a "district court's discretion is restrained by 'the clear policy in favor of encouraging settlements.'" *Durrett v. Housing Auth. of City of Providence*, 896 F.2d 600, 604 (1st Cir. 1990) (quoting *Metropolitan Housing Dev. Corp. v. Village of Arlington Heights*, 616 F.2d 1006, 1014 (7th Cir. 1980)).  Subject to this restraint, a district court must determine in assessing final approval whether a proposed settlement is "fair, adequate, and reasonable." *Durrett*, 896 F.3d at 604. Moreover, "[w]hen sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement." *City Partn. Co. v. Atlantic Acquisition LP*, 100 F.3d 1041, 1043 (1st Cir. 1996).

In determining whether a proposed class action settlement merits final approval as fair, adequate, and reasonable, courts in the First Circuit and elsewhere consider some or all of the following factors:

> (1) comparison of the proposed settlement with the likely result of litigation; (2) reaction of the class to the settlement; (3) stage of the litigation and the amount of discovery completed; (4) quality of counsel; (5) conduct of the negotiations; and (6) prospects of the case, including risk, complexity, expense and duration.

*In re Compact Disc Min. Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 206 (D. Me. 2003); *see also* Alba Conte & Herbert Newberg, *Newberg on Class Actions* (4th ed. 2002), § 11.43 (identifying same settlement considerations as bearing on final court approval).

20

Here, each of these considerations weighs strongly in favor of granting final approval of the parties' Settlement Agreement.

## B.    Comparison of Settlement Terms With Litigation Prospects

The first and sixth factors–comparison of proposed settlement terms with likely results of litigation, and prospects of the case, including risk, complexity, expense and duration–overlap, and may be considered in tandem.  In assessing these, "the court cannot, and should not, use as a benchmark the highest award that could be made to the plaintiffs after full and successful litigation of the claims." *Rolland v. Cellucci*, 191 F.R.D. 3, 14-15 (D. Mass. 2000) (citation omitted). Instead, the question is "whether the plaintiffs' 'likelihood of success on the merits' balances appropriately against 'the amount and form of the relief offered in settlement.'" *Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 68 (D. Mass. 1997) (quoting *Santana v. Collazo*, 714 F.2d 1172, 1175 (1st Cir. 1983)).

This balancing analysis weighs strongly in favor of approving the revised settlement here.  Each settlement class member who submitted a valid claim form will receive a cash payment of $40.00, which amount represents over 100% of BOA's late-fee penalty of $35.00 to $39.00.  This result was achieved notwithstanding BOA's steadfast denial of any liability to the class.

Although BOA does not dispute that it engaged in a practice of charging late

21

fees to class members who tendered payment before the disclosed due date, it vigorously contests Plaintiffs' claim that this was done in bad faith. To prevail on their sole remaining claim for breach of the duty of good faith and fair dealing under Delaware law, Plaintiffs and the class would have to persuade a jury that BOA's practice deprived them of a benefit under and violated the spirit of the parties' cardholder agreement, *see*, *e.g.*, *Hilco Capital, LP v. Federal Ins. Co.*, 978 A.2d 174, 178 (Del. 2009), when BOA would have a substantial (though not insurmountable) defense that the agreement and/or Federal Reserve Board regulations under the Truth in Lending Act permitted this practice. Moreover, even if Plaintiffs were to prevail upon their claim before a jury, BOA would retain the right to appeal the Court's rulings rejecting its federal preemption defense under the National Bank Act and its other defenses to liability.

In light of these substantial risks, the revised settlement's provision of $40.00, over 100% of a monthly late fee, for any class member who submitted a claim form represents a significant recovery. Plaintiffs' and the class's sole remaining claim is for breach of the contractual duty of good faith and fair dealing, for which no statutory fee-shifting or multiple damages remedy is available under Delaware law. *See*, *e.g.*, *E.I DuPont de Nemours & Co. v. Pressman*, 679 A.2d 436, 445 (Del. 1996) ("[P]unitive damages are not available for breach of contract

22

unless the conduct also amounts independently to a tort."). If Plaintiffs were to

litigate this claim to judgment on behalf of the class, any payment of attorneys' fees

would be deducted from each class member's recovery. Thus, the revised

settlement's provision of over 100% of the value of a monthly late fee likely

exceeds the high-end value of a recovery by class members after successful

litigation.

Proceeding to trial also would entail significant expense, which may not be

recoverable absent any fee-shifting statute. *See generally Murillo v. Texas A&M*

*Univ. System*, 921 F. Supp. 443, 447 (S.D. Tex. 1996) ("[B]y settling, the parties

have conserved substantial time and expense that would have been required had the

case gone to trial."). Thus, by negotiating a settlement in advance of summary

judgment motions and trial, Plaintiffs likely will save class members considerable

expense and delay, while also securing a substantial monetary recovery.

The revised settlement's provision for pro rata payments to class members

who do not submit claims (Revised Settlement Agreement §§ 2(v), 6(a)) also

guarantees that the entire settlement fund amount will be paid, with no reversion to

Defendant. *Id.* § 6(a). If any check for an approved claim or pro rata amount is

uncashed after 180 days, the revised settlement provides for a *cy pres* award to be

paid to either or both of two national consumer advocacy organizations, subject to

23

Court approval, with any such unredeemed funds.  Revised Settlement Agreement § 6(h)).  *See generally In re Pharma. Ind. Avg. Wholesale Price Litig.*, 588 F.3d 24, 34 (1st Cir. 2009) ("[C]ourts have allowed parties to establish cy pres funds when money remained from the defendant's payout after money for damages had been distributed to class members."); *In re Lupron Marketing and Sales Pract's Litig.*, 677 F.3d 21, 38 (1st Cir. 2012) ("[T]he [*cy pres* designee] choice would have been better made by the parties initially and then tested by the court, against the principles we have identified."); *see also* National Association of Consumer Advocates, *Standards and Guidelines for Litigating and Settling Consumer Class Actions* (2d ed. 2006), published at 255 F.R.D. 215, 240 ("Guideline 7-Cy Pres") (discussing cases approving *cy pres* distributions in class action settlements).

In sum, when the benefits of the parties' proposed settlement are weighed against the difficulty of the legal and factual issues that would have to be litigated were this case to proceed to trial, the uncertain outcome of a trial, and the uncertainty and delay inherent in any appeal, it should be clear that the proposed settlement is fair, adequate, and reasonable, and is in the best interests of the class.

## C.   <u>Reaction of the Class</u>

The second final approval consideration, the class's reaction to the proposed settlement, also weighs strongly in favor of approval.  Out of 393,792 potential

class members to whom BOA mailed notice, just 17 persons opted out of the class

and only one sent an informal objection letter to class counsel.  *See* Kaplan Aff. ¶4

(number of notices mailed); Lake Affidavit ¶8 (number of opt-out requests

received); Wasylyk Cert. Ex. A (single informal objection letter received).

This paucity of opt-outs and objections should weigh strongly for final

approval.  *See*, *e.g.*, *In re Fleet/Norstar Sec's Litig.*, 935 F. Supp. 99, 107 (D.R.I.

1996) ("Of the over 40,000 potential . . . shareholders who may qualify to recover

under the proposed settlement agreement, only a handful – under ten – have

objected.  Such a small number of objectors should not interfere with the approval

of an otherwise fair and reasonable settlement agreement."); *In re Sumitomo*

*Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999) ("[T]he absence of substantial

objections and relative absence of opt-outs strongly favors approval.").

### 1.   The Lone Objection Was Procedurally Deficient and Substantively Meritless.

Although the very fact that there was only one objection weighs strongly in

favor of final approval, that objection should be rejected in any event because it was

procedurally deficient and substantively meritless.  The objection was in a letter

mailed to class counsel and copied to the Clerk of the Court.  Because the letter was

not on the docket, Plaintiffs submitted it with their first motion for final approval as

Exhibit A to the Certification of Peter N. Wasylyk, Esq. (D.E. 108-2).

Procedurally, the Court ordered that any objection must have documentary proof that the objector was a member of the Settlement Class and be filed with the Court in order to be considered. *See* 8/24/11 Order at 18 ¶10. But the objection letter contained no documentation, and did not provide a BOA account number or any identification other than names and home address. *See* Wasylyk Cert., Ex. A. Nor did the letter appear to have been filed with the Court, as was required.

Substantively, the objection letter only challenged the amount of the $28.00 relief payment (which the Revised Settlement Agreement raised to $40.00) that was available to each class member. The letter made this objection by referencing in-person payments the objector made at unspecified times in 2010. *See id.* ("Last year, I also made payments on my BOA credit card in cash at a BOA teller."). In fact, BOA has no record of such payments by the objector. *See* Affidavit of Cherie M. Rexroth (D.E. 109, filed by Defendant on 11/28/2011), ¶7. Rather, according to BOA's records, the only late fees charged to the objector's account in 2010 were for failure to make the required payment amount, *id.* ¶9, which was not a grounds for relief under the settlement or in this action. *See* Revised Settlement Agreement § 2(c). In any event, the substantial consequential damages that the objector claims resulted from the late-crediting of payments on an account with a large balance likely would not be compensable under applicable Delaware law. *See, e.g., Pierce*

26

*v. Int'l Ins. Co. of Ill.*, 671 A.2d 1361, 1367 (Del. 1996) ("The plaintiff in a contract action is normally limited to damages for breach ***and those consequential damages that were reasonably foreseeable at the time the contract was made.***") (emphasis added).

Finally, this type of objection challenging a class settlement's failure to recoup full damages is one that courts have roundly rejected, especially where, as here, an objector who claims large damages had the right to opt out to pursue that claim. *See, e.g., In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 258 (D. Del. 2002) ("To the extent that objectors argue the settlement is not high enough because it does not allow 100% recovery of claimants' losses, the court finds these objections without merit. A settlement is by nature a compromise between the maximum possible recovery and the inherent risks of litigation. . . . The court also notes that all class members had the opportunity to opt out of the settlement and preserve their right to independently seek full recovery of their alleged damages, if they believed they could achieve better results.") (citations omitted).

In sum, the reaction of the class, where just 17 out of 393,792 potential members who were sent notice opted out and only one submitted an informal, procedurally deficient, and substantively meritless objection, should be held to weigh strongly in favor of final approval of the settlement.

27

### D.    Stage of Litigation

The third factor, the stage of litigation and extent of discovery completed, further supports approval of the proposed settlement. Plaintiffs have litigated and prevailed in large part upon three substantial motions by BOA to dismiss all of theirs and/or the class's claims.  The parties thereafter engaged in substantial discovery, including the exchange of written discovery responses and production of over 7,000 pages of responsive documents by BOA.

The case thus has proceeded to a stage where settlement is appropriate.  The extensive merits litigation and substantial discovery undertaken is sufficient for plaintiffs "to be able to determine the probability of their success on the merits, the possible range of recovery, and the likely expense and duration of the litigation." *Ressler v. Jacobson*, 822 F. Supp. 1551, 1554-55 (M.D. Fla. 1992); *see also In re Fleet/Norstar*, 935 F. Supp. at 106 ("The timing of the agreement indicates that counsel for both sides were sufficiently apprised of all proffered theories and defenses . . .").  This factor thus likewise weighs in favor of final approval.

### E.    Quality of Class Counsel

The fourth factor, quality of class counsel, likewise supports final approval. Class counsel have extensive experience in local and national class action litigation, as documented in their Motion for Award of Attorneys' Fees (D.E. 105, 105-1,

28

105-2), filed on October 7, 2011.  "When the parties' attorneys are experienced and

knowledgeable about the facts and claims, their representations to the court that the

settlement provides class relief which is fair, reasonable and adequate should be

given significant weight."  *Rolland v. Cellucci*, *supra*, 191 F.R.D. at 10.  Thus, the

quality of class counsel and their recommendation herein should be deemed to

further support final settlement approval by the Court.

### F.   Conduct of Negotiations

The fifth factor, the conduct of settlement negotiations, likewise supports

final approval.  The parties did not begin to negotiate possible settlement until after

substantial litigation and discovery had been completed.  They then negotiated the

substantive and procedural terms of the settlement for over six months, which

negotiation took the form of extensive telephone conference calls among counsel

being held weekly and almost daily as the talks progressed, as well as the exchange

of multiple written memoranda setting forth the parties' settlement positions.  *See*

Quirk Aff. ¶¶10-14.  After the Court denied final approval of the Original

Settlement Agreement, the parties resumed litigation and discovery towards class

certification before they negotiated the Revised Settlement Agreement now before

the Court.  In these circumstances, the conduct of the settlement negotiations

likewise strongly support granting final settlement approval.  *See*, *e.g.*, *Rolland v.*

29

*Cellucci*, *supra*, 191 F.R.D. at 11 ("Only when discovery was complete were intensive arms-length settlement negotiations conducted, an approach which supports the strong initial presumption of the settlement's substantive fairness.") (citation omitted).

In sum, all of the factors considered by courts in this Circuit and elsewhere should be held to weigh strongly in favor of final approval of the parties proposed class action settlement agreement by the Court.

## II.   <u>The Notice Plan is Fair, Adequate, and Reasonable.</u>

Rule 23 requires for a class certified under Rule 23(b)(3) that a court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B); *see also* Fed. R. Civ. P. 23(e)(1) (for proposed class action settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal.").

Here, the parties proposed and the Court preliminarily approved an efficient and effective plan for notifying class members of the Original settlement.  In response to the Court's initial orders, the parties submitted a short-form Notice of Class Action Settlement (D.E. 101, Exhibit A, filed 8/24/11) that the Court approved by endorsed order on August 26, 2011.  BOA thereafter mailed the

30

approved notice to 393,792 identified potential class members.  Kaplan Aff. ¶4.

Mailing class members the short-form notice provided them with the best notice practicable in this case.  The short-form notice disclosed on a single, clearly readable page the essential information about this case, including a recipient's potential membership in the class, their rights under the proposed settlement, and the different ways that they can access the longer-form notice and other sources of information.  Since most class members would not have known about this lawsuit or settlement when they received the notice, the one-page summary offered a clear, concise, and cost-effective means for them to acquire the information they need to assess and assert their rights.  *See* Kaplan Aff. ¶5 (certifying that BOA spent a total of $109,054.92 to process, print, and mail the notice to class members).

It is precisely because of these types of considerations that the Federal Judicial Center and other authorities on class action practice recognize the value of more succinct forms of notice to class members.  *See* Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010) (available at http:www.fjc.gov/public/pdf.nsf/lookup/NotCheck.pdf/ $file/NotCheck.pdf); National Association of Consumer Advocates, *Standards and Guidelines for Litigating and Settling Consumer Class Actions*, 255 F.R.D. 215, 258 (2d ed. 2006) ("Guideline 11-Improved Notice of Settlement") ("[S]ummary

31

notice can be valuable and should be encouraged, provided that they remain detailed enough to be meaningful.").

Finally, the foregoing notice to the class of the terms of the Original Settlement Agreement satisfies all Rule 23 and Due Process requirements with respect to the increased relief provided in the Revised Settlement Agreement. Where, as here, settlement is revised to make the terms more favorable to the class, a second round of notice is not required as to such changes. *See*, *e.g.*, *In re Compact Disk Min. Advertised Price Antitrust Litig.*, 292 F. Supp. 2d 184, 185-86 (D. Me. 2003) (finding first round of notice sufficient, second round to be "costly and burdensome" in light of the "favorable" terms of amended settlement); *In re Integra Realty Resources, Inc.*, 262 F.3d 1089, 1111 (10th Cir. 2001) (no notice required of change expanding rights of class members); *see also Denney v. Deutsche Bank, AG*, 443 F.3d 253, 271 (2d Cir. 2006) (additional opt-out period not required with every shift in marginal attractiveness of settlement).  Here, since the Revised Settlement Agreement increases the relief to both class members who submitted claims (from $28 to $40) and those who do not (from $0 to pro rata share), the notice of the Original Settlement terms was adequate to apprise class members of their rights.

In sum, the notice plan was designed to make clear to class members the

existence and nature of this lawsuit, the terms of settlement, and their options under the settlement.  No class member has objected to any part of the notice.  The notice thus was fair, adequate, and reasonable, and should be finally approved.

## III.   **The Settlement Administration Costs are Reasonable.**

Plaintiffs further request that the Court approve payment of the notice and settlement administration costs out of the $4,000,000.00 settlement amount.  The notice and administration costs incurred by BOA and Rust Consulting are $218,052.71.  *See* Kaplan Aff., ¶ 5 (itemizing BOA's $109,054.92 cost of processing, printing, and mailing notice); April 3, 2012 Affidavit of Amy Lake (D.E. 116-3), ¶ 5 (stating and documenting Rust's $108,997.79 in invoiced expenses incurred through March 31, 2012).

These costs are modest in relation to the number of potential class members given direct-mail notice (over 390,000), and represent approximately 5.5% of the total settlement amount.  Moreover, these costs were necessary and appropriate in order to provide class members with the best practicable notice in light of the relatively modest size of their claims and damages, and to efficiently process their submissions of claims for relief.  These costs thus have been incurred for the direct benefit of class members, and therefore should be approved by the Court.

33

**IV.    The Proposed Settlement Class Should Be Certified.**

In addition to showing that the settlement is fair, adequate, and reasonable under Rule 23(e), Plaintiffs also must show that certification of the proposed settlement class is warranted under Rule 23.  *See Amchem Prod's, Inc. v. Windsor*, 521 U.S. 591, 621 (1997).  The settlement seeks to certify the following class:

> [A]ll Persons who, at any time between August 1, 2006 and February 22, 2010: (x) had a credit card account with [BOA] and (y) made a Qualifying Payment in connection with that account (i) in person at a Bank of America banking center; (ii) by phone using Bank of America's pay-by-phone service; or (iii) electronically using Bank of America's online banking services; and (z) who incurred a late payment fee, finance charge, or other fees, penalties or charges, in connection with the timing of such payment that was not waived or refunded.

Settlement Agreement § 2(bb).  Plaintiffs submit that the proposed settlement class meets the requirements of Rule 23(a) and (b)(3), and thus warrants certification.

**A.    Rule 23(a)**

Rule 23(a) sets forth "four prerequisites for class certification: numerosity; commonality; typicality; and adequacy of representation."  *In re Compact Disc*, *supra*, 216 F.R.D. at 204.  Each of these requirements is taken in turn.

**1.    Numerosity**

The first requirement of Rule 23(a) is that a class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).

34

"'Impracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." *Advertising Specialty Nat'l Ass'n v. Federal Trade Comm'n*, 238 F.2d 108, 119 (1st Cir. 1956).  Courts have held that a "class of more than 40 individuals raises a presumption" of numerosity. *Carrier v. JPB Enterprises, Inc.*, 206 F.R.D. 332, 334 (D. Me. 2002).

Here, the proposed class easily satisfies this requirement.  BOA identified 393,792 of its current and former cardholders across the country who are potential class members who timely tendered a payment and were charged a late fee during the class period.  *See* Kaplan Aff. ¶4.  Although not every one of these persons is a class member because some may have paid less than the minimum amount due or had their payment denied for insufficient funds, *see* Settlement Agreement § 2(u) (defining "Qualifying Payment"), the Court may infer that enough are class members so as to easily satisfy Rule 23(a)(1)'s minimal numerosity threshold.  *See*, *e.g.*, *In re Relafen Antitrust Litig.*, 218 F.R.D. 337, 342 (D. Mass. 2003) (finding numerosity based on showing of approximately 60 class members, finding that plaintiffs' "broadly drawn class definition . . . suggests that members of the class, once identified, will be so numerous and widely dispersed that joinder is impracticable.") (citation omitted).  The numerosity requirement thus is satisfied.

## 2.   **Commonality**

The second requirement under Rule 23(a) is that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  This is satisfied by "the allegation that the defendants engaged in uniformly deceptive and misleading practices."  *Duhaime*, *supra*, 177 F.R.D. at 63.  Where class members' claims arise out of a defendant's uniform contract, such as BOA's cardmember agreement here, the commonality requirement is generally found satisfied.  *See Frasier v. Major League Soccer, LLC*, 180 F.R.D. 178, 180 (D. Mass. 1998) (commonality found where claims arise from uniform agreements alleged to be anti-competitive).

Here, the class members' claims are unified by their common allegation that BOA's imposition of late fee charges for timely tendered payments pursuant to its standard-form cardholder agreements constitutes a breach of the duty of good faith and fair dealing under Delaware law.  This is sufficient to satisfy Rule 23(a)(2)'s requirement that a class's claims present common questions of law or fact.

## 3.   **Typicality**

The third requirement under Rule 23(a) is that the "claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The typicality requirement is satisfied "if the representative plaintiff's claims are based on the same legal theory and arise from the same

36

practice or course of conduct as the other class members." *In re Compact Disc*, *supra*, 216 F.R.D. at 204-05 (citation omitted).

Here, Plaintiffs satisfy this requirement because they both allege that they timely tendered a monthly payment on their BOA credit card by means other than through the mail, that BOA imposed charges against them for their payments despite their timeliness, and that these charges constitute a breach of BOA's duty of good faith and fair dealing under their standard-form cardholder agreements. *See* Complaint ¶¶10-15, 22-27. Since there is no meaningful difference between Plaintiffs' allegations and claims as to themselves and those asserted on behalf of the class, Plaintiffs satisfy Rule 23(a)(3)'s requirement that the representative plaintiffs be typical of the class they seek to represent.

### 4. Adequacy of Representation

Rule 23(a)'s final requirement is that the "representative parties will fairly and adequately protect the interest of the class." Fed. R. Civ. P.23(a)(4). This means both that "(i) the interests of the representative parties do not conflict with the interests of any class members; and (ii) the plaintiffs' counsel is qualified, experienced, and able to prosecute the action on behalf of the class vigorously." *In re Compact Disc*, *supra*, 216 F.R.D. at 205. Here, both of these are satisfied.

First, the named representative Plaintiffs do not have any interests that are

37

contrary to those of the rest of the class.  As discussed, Plaintiffs' factual allegations, claims, and alleged monetary injuries are substantively identical to those of the rest of the class.  This, coupled with the absence of any indication of conflicting interests with or among class members, suffices to demonstrate Plaintiffs' adequacy to represent the class.  *See id.* ("[T]he named plaintiffs' injuries are the same as those of the class members.  There has been no indication of any conflicts among class members.  I conclude, therefore, that the named plaintiffs are adequate representatives of the interests of the class.").

Second, the undersigned counsel have demonstrated their qualifications, experience, and ability to prosecute this case on behalf of the class.  As discussed, class counsel have represented Plaintiffs in prevailing on three separate motions aimed at dismissing Plaintiffs' and/or the class's claims in their entirety.  Counsel also engaged in substantial class certification and merits discovery, and negotiated the proposed settlement over the course of more than six months.  This vigorous representation of the class's interests coupled with counsel's extensive experience in other class action litigation set forth in their Motion for Award of Attorneys' Fees (D.E. 105, 105-1, 105-2, filed 10/7/11), more than satisfies Rule 23(a)(4)'s requirement for adequate representation of the class by counsel.  *See In re Compact Disc*, 216 F.R.D. at 205 ("With respect to class counsel, I find that the quality of

38

their pleadings, diligence in investigating and prosecuting this matter, and extensive

experience in class actions . . . demonstrate that they have protected the interests of

the class competently and adequately, and will continue to do so.").

In sum, Plaintiffs, their counsel, and the proposed settlement class satisfy all

of Rule 23(a)'s prerequisites for certification.

## B.   Rule 23(b)(3)

A class also must satisfy one of the subsections of Rule 23(b).  Here, the

proposed settlement class satisfies the requirements of Rule 23(b)(3), *i.e.* "(i) that

the questions of law or fact common to the members of the class predominate over

any questions affecting only individual members, and (ii) that a class action is

superior to other available methods for the fair and efficient adjudication of the

controversy."  Fed. R. Civ. P. 23(b)(3).  These requirements are taken in turn.

### 1.   Predominance

Rule 23(b)(3)'s requirement that common issues predominate the claims of

class members "is a test readily met in certain cases alleging consumer or securities

fraud or violations of the antitrust laws."  *Amchem*, *supra*, 521 U.S. at 625.  The

predominance inquiry "tests whether proposed classes are sufficiently cohesive to

warrant adjudication by representation."  *In re Compact Disc*, 216 F.R.D. at 205.

Courts in this Circuit and others have held that "[p]redominance is satisfied 'unless

39

it is clear that individual issues will overwhelm the common questions and render the class action valueless.'" *Id.* (quoting *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 517 (S.D.N.Y. 1996)).

Here, individual issues would not overwhelm the common questions of law or fact presented. The class consists of BOA credit cardholders who, during the class period, were charged a late fee or penalty after timely tendering a "qualifying payment" of at least the minimum amount due. *See* Settlement Agreement §§ 2(u) and 2(bb). Since the class definition eliminates out individual issues concerning the amounts class members paid or acceptance of their payments, the common question of whether BOA's late-fee charges for timely payments were imposed in bad faith predominates the claims of all class members. Although the class members' claims may entail more individualized issues concerning the amount of damages incurred, "[t]he fact that individual class members' damages may vary . . . does not defeat predominance." *In re Compact Disc*, 216 F.R.D. at 205.

Since individual issues do not overwhelm class members' claims, the Court should hold that common issues predominate.

### 2. <u>Superiority</u>

In assessing whether a class action is "superior to other available methods for the fair and efficient adjudication of the controversy," Rule 23(b)(3) requires courts

40

to weigh: "(A) the interests of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; [and] (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum[.]" Fed. R. Civ. P. 23(b)(3).[4] Here, each of these requirements weighs strongly in favor of finding the superiority of a class action and certifying the proposed settlement class.

First, class members have little to no interest in exerting individual control over their own litigation against Bank of America. This is demonstrated by the fact that only 17 out of 393,792 persons who were mailed notice of this class action and settlement chose to opt out to preserve their individual claims. *See* Lake Affidavit ¶ 8. Nor is this surprising since Plaintiffs' and class members' claims challenge BOA's imposition of late fee penalties and associated charges of up to $39.00. It is in this precise setting that the First Circuit has recognized that the "core purpose of Rule 23(b)(3) is to vindicate the claims of consumers and other groups of people whose individual claims would be too small to warrant litigation." *Smilow v.*

---

[4] In the context of certification of a class for settlement, Rule 23(b)(3)(D)'s requirement of consideration of "the likely difficulties in managing a class action" does not apply and need not be considered since the class action is not proposed in order to be litigated. *See Amchem*, *supra*, 521 U.S. at 620.

*Southwestern Bell Mobile Sys.*, 323 F.3d 32, 41 (1st Cir. 2003).  Since the only

realistic alternative to a class action is no action at all to vindicate these small-value

consumer claims, the interest of individual class members in vindicating their

claims weighs strongly in favor of finding a class action superior to any other

means of adjudication.

Second, class counsel know of no other litigation that encompasses the

claims covered within the proposed class definition and settlement.  Again, the fact

that just 17 out of 393,792 notice recipients have opted out and only one has

objected, while making no reference to separate litigation, should underscore the

conclusion that a class action is superior to other means of proceeding.  Although

the parties previously brought to the Court's attention the case of *De Leon v. Bank*

*of America, N.A.*, No. 09-1251 (M.D. Fla.), *see* BOA's Objection to Motion for

Appointment of Interim Class Counsel (D.E. 75, filed 11/08/10), Memo. of Law at

4-5, that case is being litigated based upon earlier versions of BOA's credit card

agreement that pre-date the August 1, 2006 starting date of the class period herein

and contain substantively different terms that support a breach of *express* contract

claim in that case that is different from the implied contract claim here.  *See De*

*Leon v. Bank of Am., N.A.*, 2009 U.S. Dist. LEXIS 106845, at *3-4 (M.D. Fla. Nov.

16, 2009) (discussing case filed January 4, 2006, based on plaintiff's payment made

in June 2005); *id.* at *5-6 (describing breach of express contract claim based on earlier cardholder agreement language promising to "credit upon receipt" payments made by credit cardholders).  Thus, there is no overlap between the class claims asserted in *De Leon* and those proposed to be settled here.

In light of the absence of overlapping cases and the clear infeasibility of individual proceedings on the small-value consumer claims asserted in this action, the Court should hold that certification of the proposed nationwide settlement class is the superior and likely the only means for vindicating its members' claims.  Since all applicable requirements of Rule 23(a) and (b)(3) are satisfied, the Court should certify the proposed settlement class.

## CONCLUSION

For all of the reasons set forth herein, the proposed settlement class should be certified pursuant to Fed. R. Civ. P. 23(b)(3) and the proposed class action settlement should be finally approved pursuant to Fed. R. Civ. P. 23(e).

Dated:  April 4, 2013

Respectfully submitted,

**LAW OFFICES OF PETER N. WASYLYK**

/s/ *Peter N. Wasylyk*
Peter N. Wasylyk, Esq.
1307 Chalkstone Avenue
Providence, RI 02908

43

Telephone: (401) 831-7730
Facsimile: (401) 861-6064

**DONOVAN AXLER, LLC**
Michael D. Donovan (*Pro Hac Vice*)
1845 Walnut Street, Suite 1100
Philadelphia, PA 19103
Telephone: (215) 732-6067
Facsimile: (215) 732-8060

**BERNS WEISS LLP**
Michael J. Quirk (*Pro Hac Vice*)
100 North 18th Street, Suite 300
Philadelphia, PA 19103
Telephone: (267) 202-0749
Facsimile: (818) 999-1500

**LAW OFFICE OF ANDREW KIERSTEAD**
Andrew S. Kierstead (*Pro Hac Vice*)
1001 SW 5th Avenue, Suite 1100
Portland, OR 97204
Telephone: (508) 224-6246
Facsimile: (508) 224-4356

*Counsel for Plaintiffs and the Class*

## REVISED SETTLEMENT AGREEMENT

### APRIL 4, 2013

# TABLE OF CONTENTS

**Page**

1.  Recitals ........................................................................................................... 1
2.  Definitions ...................................................................................................... 7
3.  Exclusion and Termination ........................................................................... 16
4.  Releases ......................................................................................................... 17
5.  Covenants Not to Sue .................................................................................... 17
6.  Monetary Payment ......................................................................................... 17
7.  Settlement Administrator ............................................................................... 20
8.  Attorneys' Fees and Costs ............................................................................. 20
9.  Publicity and Confidentiality ........................................................................ 21
10. Non-Disparagement ....................................................................................... 23
11. Notices ............................................................................................................ 23
12. No Admission of Liability .............................................................................. 24
13. Settlement Conditioned Upon Approval ........................................................ 24
14. Effect of Settlement ....................................................................................... 25
15. Evidentiary Preclusion .................................................................................. 25
16. Parties Authorized to Enter into Revised Settlement Agreement .................. 26
17. No Additional Persons with Financial Interest .............................................. 26
18. No Attempt by Parties to Object .................................................................... 27
19. Signatures ...................................................................................................... 27
20. Best Efforts .................................................................................................... 27
21. Governing Law ............................................................................................... 27
22. No Construction Against Drafter ................................................................... 27
23. Settlement Agreement Binding on Successors in Interest ............................. 28
24. Execution in Counterparts .............................................................................. 28
25. Entire Settlement Agreement ......................................................................... 28
26. Miscellaneous Provisions ............................................................................... 28

## REVISED SETTLEMENT AGREEMENT

**1.    Recitals.**

This Revised Settlement Agreement (including its exhibits, the "Revised Settlement Agreement") is made and entered into on April 4, 2013, and is submitted to the Court for its final approval as set forth below. The Revised Settlement Agreement is entered into on behalf of the Representative Plaintiffs and the Settlement Class Members, by and through the Representative Plaintiffs and Settlement Class Counsel, and the Defendant, by and through its authorized signatory (all of the above collectively referred to as the "Parties").

WHEREAS, Defendant FIA Card Services, N.A. is the successor-in-interest to Bank of America, N.A. (USA) and is a wholly owned subsidiary of Bank of America Corporation;

WHEREAS, Defendant is the subsidiary through which Bank of America Corporation issues credit cards under the "Bank of America" name;

WHEREAS, the Amended Complaint alleges that Defendant engaged in payments processing conduct that allegedly violated the Truth-in-Lending Act, breached the contract stated in the Cardholder Agreement, and breached Delaware's implied covenant of good faith and fair dealing;

WHEREAS, the Representative Plaintiffs contend that they have suffered damages as a result of Defendant's alleged conduct;

WHEREAS, the Defendant vigorously denies that it, its predecessors, or any entity affiliated with it was party to any improper or unlawful conduct, maintains that its conduct has been fair, reasonable and in accordance with applicable contractual terms, and denies that it has violated any federal or state statute, principle of common law or equity, rule or regulation whatever;

WHEREAS, by Order dated December 22, 2009, the Court granted in part and denied in part the Defendant's motion to dismiss the Action, leaving extant only the breach of the implied covenant of good faith and fair dealing claim and the Truth-in-Lending Act claim based on 15 U.S.C. §1637(b)(9) stated in the Amended Complaint;

WHEREAS, by Order dated June 2, 2010, the Court granted in part and denied in part the Defendant's motion for judgment on the pleadings, leaving extant only the breach of the implied covenant of good faith and fair dealing claim stated in the Amended Complaint;

WHEREAS, arm's length settlement negotiations have taken place between the Representative Plaintiffs and Settlement Class Counsel, and the Defendant;

WHEREAS, after substantial discovery and investigation of the facts and after carefully considering applicable law, the Representative Plaintiffs and Settlement Class Counsel have concluded that it would be in the best interests of the Settlement Class to enter into this Revised Settlement Agreement in order to avoid the uncertainties of litigation and to assure benefits to the Settlement Class; the terms and conditions of this Revised Settlement Agreement, and the settlement contemplated thereby, are fair, reasonable, and adequate and in the best interests of all members of the Settlement Class; the notice terms of the Revised Settlement Agreement satisfy the requirements of due process and Rule 23 of the Federal Rules of Civil Procedure; and the claims administration terms fairly and adequately address settlement administration, claims submission, and the allocation of monetary payments among members of the Settlement Class;

WHEREAS, the Defendant has concluded that despite its good faith belief that it is not liable for any of the Claims in the Action or otherwise constituting Released Claims and has good defenses thereto, it will enter into this Revised Settlement Agreement to avoid the further

expense, inconvenience and burden of this litigation, and the risk and uncertainty of continuing these proceedings;

WHEREAS, the Parties agree that this Revised Settlement Agreement shall not be deemed or construed to be an admission or evidence of any violation of any federal or state statute, rule or regulation, or principle of common law or equity, or of any liability or wrongdoing whatever, by the Defendant, or of the truth of any of the Claims asserted in the Amended Complaint, any prior complaints in the Litigation, or elsewhere;

WHEREAS, on June 27, 2011, Settlement Class Counsel submitted to the Court a motion for Preliminary Approval of the original Settlement Agreement ("Original Settlement Agreement", attached as Exhibit A) and the settlement contemplated thereby, including, *inter alia*, certification of the Settlement Class, and on July 14, 2011, Defendant submitted materials demonstrating compliance with the Class Action Fairness Act of 2005 ("CAFA");

WHEREAS, the Court granted the motion for Preliminary Approval of the Parties' Original Settlement Agreement by Orders issued on July 29, August 23, and August 26, 2011, which Orders provided that—

(a)     The following settlement class was conditionally certified:

All persons who, at any time between August 1, 2006, and February 22, 2010: (a) had a credit card account with FIA; (b) made a Qualifying Payment in connection with that account (I) in person at a Bank of America banking center; (ii) by phone using Bank of America's pay-by-phone service; or (iii) electronically using Bank of America's online banking services; and (c) who incurred a late payment fee, finance charge, or other fees, penalties or charges, in connection with the timing of such payment that was not waived or refunded.

For purposes of the class definition, a "Qualifying Payment" is:

a payment by a FIA cardholder on a FIA credit account where the payment is (x) equal to or in excess of the minimum payment due for the monthly billing cycle in which it is made (y) not determined by Defendant to be deficient for non-sufficient funds; and (z) made, or alleged by the cardholder to be made, on or before the same day as the "Payment Due Date" or other deadline stated in the

operative cardholder agreement, cardholder statement or other disclosure to the
card holder.;

(b)     Plaintiffs Bruce J. Trombley and Ryan Sukaskas were certified as the class

representatives;

(c)     the following attorneys were appointed to serve as class counsel:

Michael D. Donovan
Donovan Searles & Axler, LLC
1845 Walnut Street, Suite 1100
Philadelphia, Pennsylvania 19120

Michael J. Quirk
Williams Cuker Berezofsky, LLC
1515 Market Street, Suite 1300
Philadelphia, Pennsylvania 19102

Andrew S. Kierstead
The Law Office of Andrew S. Kierstead
1001 SW 5th Avenue, Suite 1100
Portland, Oregon 97204

Peter N. Wasylyk
Law Offices of Peter N. Wasylyk
1307 Chalkstone Avenue
Providence, RI 02908;

(d)     the parties' Original Settlement Agreement was preliminarily approved;

(e)     the parties' proposed long-form notice satisfied the requirements of Fed. R. Civ.

P. 23(c)(2)(B);

(f)     the proposed claim form was preliminarily approved;

(g)     Rust Consulting, Inc. was preliminarily approved as Settlement Administrator;

(h)     deduction of settlement administration costs from the Settlement Amount was

preliminarily approved, subject to the requirement that:

All Settlement Costs may be deducted from the Settlement Amount, provided that
not less frequently than once each quarter, the Settlement Administrator in
coordination with FIA shall file with the court a written report stating the nature,
amount, and recipients of the Settlement Costs that have been expended, paid, or

incurred, and also provided that preliminary approval is subject to challenge in the context of a motion for final approval.;

(i)     the deadline for class members to exclude themselves from the class action and Settlement Agreement was October 28, 2011;

(j)     the deadline for class members to submit claim forms for relief was December 23, 2011;

(k)     the deadline for Plaintiffs to file their motion for final approval of the Settlement Agreement was November 23, 2011;

(l)     the deadline for Class Counsel to file their petition for an award of attorneys' fees and expenses was October 7, 2011;

(m)     the deadline for class members to object to the Settlement Agreement was October 28, 2011;

(n)     the parties' revised short-form notice was preliminarily approved to be mailed to the Class;

WHEREAS notice to the Settlement Class was completed by September 19, 2011, in accordance with the Court's Orders and in the forms approved by the Court, specifically—

(a)     Defendant sent the Class Notice by mail ("Mailed Notice") to members of the Settlement Class who were reasonably identifiable and who, as of the calendar month in which the Preliminary Approval Orders were entered by the Court, were either (i) holders of current FIA credit card accounts who receive their periodic account statements from FIA by mail; or (ii) holders of closed FIA credit card accounts or past holders of FIA credit card accounts for whom FIA has a reasonably accessible mailing address. As authorized by the Court's August 26, 2011 Order, Mailed Notice did not contain the full Class Notice, but contained the short-form approved by the Court and described how recipients could download or obtain by mail the full

Class Notice and Claim Form. Mailed Notice was mailed to the then-current address reflected in FIA's computerized account records.

(b)    The Settlement Administrator established a Settlement Website (which is distinct from and not linked to any websites belonging to or otherwise associated with FIA, Settlement Class Counsel, or Representative Plaintiffs) which published, and made available a full-length, downloadable form of the Settlement Agreement, Class Notice and Claim Form. The domain name of the website—www.trombley-administrator.com—was selected by the Settlement Administrator in consultation with FIA and Settlement Class Counsel. The Settlement Website was established within forty-five (45) days after the Court's entry of the Preliminary Approval Orders and before the Mailed Notice was mailed or the Electronic Notice was sent, and shall remain active through at least twenty (20) days after Final Settlement Approval of this Revised Settlement Agreement.

(c)    On November 8, 2011, the Settlement Administrator served on Settlement Class Counsel one or more declarations stating that the Mailed Notice and Settlement Website Notice were provided in accordance with the requirements of the Preliminary Approval Orders.

WHEREAS, in accordance with the Court's Orders, the members of the Settlement Class were notified of their right to exclude themselves from the Settlement Class pursuant to the terms of the parties' Original Settlement Agreement; and the time for members of the Settlement Class to timely and properly opt out of the Settlement Class expired on October 28, 2011;

WHEREAS Settlement Class Counsel submitted to the Court a motion for Final Approval of the Original Settlement Agreement on November 23, 2011; the Court held a Fairness Hearing on December 8, 2011, at which no objectors appeared; and the Court on May 4, 2012 denied final approval without prejudice to the parties filing motions to approve a revised

settlement agreement and revised request for an award of fees and costs that comply with the requirements for approval;

WHEREAS, in light of the foregoing, Settlement Class Counsel shall submit to the Court a motion for Final Approval of this Revised Settlement Agreement and a revised request for an award of fees and costs, and for entry of a Final Judgment and Order of Dismissal;

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among the undersigned, on behalf of the Representative Plaintiffs, the Settlement Class and Defendant, that the Amended Complaint shall be dismissed on the merits and with prejudice as to the Defendant upon entry of the Final Judgment and Order of Dismissal, and the Action in its entirety and all other Released Claims shall be finally and fully compromised, settled, and released, subject to the approval of the Court as required by Rule 23 of the Federal Rules of Civil Procedure, on the following terms and conditions:

2.    **Definitions.**

Solely for purposes of this Revised Settlement Agreement, including the attached Exhibits, capitalized terms shall have the meanings specified in subsections (a) through (hh) below. Any capitalized terms used in this Settlement Agreement but not defined in subsections (aa) through (hh) below shall have the meaning ascribed to them in this Revised Settlement Agreement, including in the attached Exhibits:

(a)    "Action" means the action Bruce J. Trombley and Ryan Sukaskas v. Bank of America Corporation, C.A. No. 08-456 (D.R.I.).

(b)    "Amended Complaint" means the Amended Complaint and Demand for Jury Trial filed by Bruce J. Trombley and Ryan Sukaskas on January 23, 2009.

(c)    "Approved Settlement Class Member" means any of the 3,591 Settlement Class Members who attested by returning a Claim Form during the Claim Period that they had made a

Qualifying Payment as defined in the parties' Original Settlement Agreement, and whose claim submissions under the Original Settlement Agreement submitted to the Court were approved to receive a $28.00 claim payment or account credit under the terms of the parties' Original Settlement Agreement. "Qualifying Payment" was defined in § 2(u) of the Original Settlement Agreement, as a "payment by a FIA cardholder on a FIA credit card account where the payment is (x) equal to or in excess of the minimum payment due for the monthly billing cycle in which it is made (y) not determined by Defendant to be deficient for non-sufficient funds; and (z) made, or alleged by the cardholder to be made, on or before the same day as the 'Payment Due Date' or other deadline stated in the operative cardholder agreement, cardholder statement or other disclosure to the cardholder."

(d)    "Claims" means any and all actual or potential claims, actions, causes of action, suits, counterclaims, cross claims, third party claims, contentions, allegations, and assertions of wrongdoing, and any demands for any and all debts, obligations, liabilities, damages (whether actual, punitive, exemplary, statutory, or otherwise), whenever incurred, attorneys' fees, costs, expenses, restitution, disgorgement, injunctive relief, any other type of equitable, legal or statutory relief, any other benefits, or any penalties of any type whatever, whether asserted in federal court, state court, arbitration or otherwise, and whether triable before a judge or jury or otherwise.

For avoidance of doubt, Claims includes any right or opportunity to claim, seek or obtain restitution, disgorgement, injunctive relief or any other benefit as a member of the general public, under California Business and Professions Code Section 17200 et seq. or otherwise.

(e)   "Claim Form" means the claim form approved by the Court by Order of August 23, 2011 and issued for the Settlement Class on September 19, 2011. Claim Forms were processed and Claims administered in this action pursuant to the terms of § 10 of the Original Settlement Agreement. A copy of the Claim Form is attached hereto as Exhibit B.

(f)   "Class Notice" means the forms of notice approved by the Court by Order of July 29, August 23, and August 26, 2011 and issued to the Settlement Class on September 19, 2011. A copy of the Class Notice is attached hereto as Exhibit C.

(g)   "Claim Period" means the period beginning with the date on which Mailed Notice was mailed to Settlement Class members pursuant to Section 5(b) of the Original Settlement Agreement through and including December 23, 2011, fifteen (15) days after the prior Final Approval Hearing that was held on December 8, 2011. This date was set forth in the Preliminary Approval Orders and in the final iterations of the Class Notices and Claim Form.

(h)   "Class Period" means the period beginning on August 1, 2006 through and including February 22, 2010.

(i)   "Confidential Information" means any documents, materials, or information that a party in good faith believes is not in the public domain or involves a trade secret or other personal, confidential, or proprietary information.

(j)   "Court" means the United States District Court for the District of Rhode Island.

(k)   "Defendant" means FIA Card Services, N.A. FIA Card Services, N.A. is the successor-in-interest to Bank of America, N.A. (USA) and is a wholly owned subsidiary of Bank of America Corporation. FIA Card Services, N.A. is the subsidiary through which Bank of America Corporation issues credit cards under the "Bank of America" name.

(l)     "Defendant Releasees" means Defendant and each of its predecessors, successors (including, without limitation, acquirers of all or substantially all of the assets, stock, or other ownership interests of the Defendant) and assigns; the past, present and future, direct and indirect, parents (including, but not limited to, holding companies), subsidiaries, affiliates and associates (as defined in SEC Rule 12b-2 promulgated pursuant to the Securities Exchange Act of 1934) of any of the above; financial institutions, corporations, trusts, or other entities that may hold or have held any interest in any account or any receivables relating to any account, or any receivables or group of receivables, or any interest in the operation or ownership of FIA; and the past, present and future principals, trustees, partners, contractual counterparties (including, without limitation, affinity, agent bank, and co-brand contractual parties), officers, directors, employees, agents, vendors (including processing facilities), attorneys, shareholders, advisors, predecessors, successors (including, without limitation, acquirers of all or substantially all of the assets, stock, or other ownership interests of any of the above), assigns, representatives, heirs, executors and administrators of any of the above.

(m)     "Effective Date" means the date on which the last party to the Revised Settlement Agreement executes the Revised Settlement Agreement.

(n)     "Final Settlement Approval" occurs when all three of the following conditions are met:

> (i)     final approval of this Revised Settlement Agreement, and the settlement contemplated hereby, in all respects by the Court;
>
> (ii)     entry of the Final Judgment and Order of Dismissal in all material respects in the form of Exhibit D; and
>
> (iii)     the Final Judgment and Order of Dismissal become final which for purposes of this Agreement is the later of (A) the day following the date on which the Final Judgment and Order of Dismissal is no longer subject to review by appeal, if no notice of appeal is filed, or, (B) if a notice of appeal is filed, on the day following the date on which the Final Judgment and Order of Dismissal is not

subject to further judicial review or appeal, either because a petition for certiorari is denied or by reason of affirmance by a court of last resort or by lapse of time or otherwise, provided that the Final Judgment and Order of Dismissal are not reversed or materially modified by the Court or any reviewing court.

(o)     "Final Judgment and Order of Dismissal" means the entry by the Court of an order and final judgment in all material respects in the form attached as Exhibit D.

(p)     "FIA" means FIA, N.A. (USA) and all predecessor and successor entities.

(q)     "Litigation" means the Action, including, without limitation, any appeals or requests for leave to appeal therefrom, and any matters asserted in any of the complaints, pleadings, filings, interrogatory responses, or other papers filed or served or consolidated in the Action.

(r)     "Net Settlement Amount" means the Settlement Amount less Court-approved attorneys' fees and costs, service award to the Representative Plaintiffs, Settlement Costs, and any other deduction approved by the Court.

(s)     "Person" includes without limitation, natural persons, firms, banks, corporations, businesses, limited liability companies, partnerships, savings and loan institutions, credit unions, depository institutions, federal, state and other governments and their political subdivisions, agencies and instrumentalities, and all other entities.

(t)     "Preliminary Approval Orders" means the Orders entered by the Court on July 29, August 23, and August 26, 2011 granting preliminary approval of the Parties' Original Settlement Agreement.

(u)     "Pro Rata Settlement Class Member" means any Settlement Class Member who is not an Approved Settlement Class Member.

(v)     "Released Claims" means any and all Claims (i) that in whole or in part arise out of or relate to any late payment or other fees or charges of any kind assessed by FIA on

Qualifying Payments up through the date of Preliminary Approval, including, without limitation,

any and all Claims based in whole or in part on any act, omission, event, incident, matter,

dispute, facts, business practices, transactions or occurrences, or injury up through the date of

Preliminary Approval regarding FIA's crediting of payments to credit card accounts, including,

without limitation, failure to credit such payments by a given date; or (ii) that are or could have

been asserted within the scope of the facts asserted in the Litigation; or (iii) that arise out of or

relate in any way to the administration of the Revised Settlement Agreement, other than claims

for breach of the Revised Settlement Agreement.

> Released Claims include, without limitation, all Claims described in the prior sentence that arise under, or which could arise under, any federal, state or other law relating to disclosure (*e.g.*, the Truth in Lending Act, 15 U.S.C. sec. 1601 et seq., Regulation Z, 12 C.F.R. pt. 226, Article 10 of the New York Personal Property Law, or the Song-Beverly Credit Card Act, Section 1747 et seq. of the California Civil Code), or consumer protection or unfair or deceptive acts or practices (*e.g.*, the Fair Credit Billing Act, 15 U.S.C. 1666C et seq., 12 C.F.R. 226.10, Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. sec. 501.201 et seq., Section 17200 et seq. of the California Business and Professions Code, Section 17500 et seq. of the California Business and Professions Code, Section 1750 et seq. of the California Civil Code, Section 349 of the New York General Business Law, or Sections 3724-6 and 37-24-31 of the South Dakota Codified Laws), or any principle of common law or equity, including, but not limited to, breach of contract, breach of duty, fraud, conversion, good faith and fair dealing, negligent misrepresentation, unconscionability or unjust enrichment, without regard to whether or not any of the Representative Plaintiffs or any of the Settlement Class Members knows or suspects such Claim to exist in his, her or its favor at the time of the Releases, and without regard to the subsequent discovery or existence of other, different or additional facts, which, if known by him, her or it, might have affected his, her or its decision(s) with respect to opting out of the Settlement Class or with respect to this Revised Settlement Agreement.

> Without in any way limiting the foregoing, the Released Claims specifically extend to and include claims that Representative Plaintiffs and the Settlement Class Members do not know or suspect to exist in their favor at the time of Final Settlement Approval. This paragraph constitutes a release and waiver of, without limitation as to any other applicable law, section 1542 of the California Civil Code, and any and all similar laws of other states. Section 1542 of the California Civil Code provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE

CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Representative Plaintiffs understand and acknowledge, and each member of the Settlement Class shall be deemed to understand and acknowledge, the significance of these releases and of this waiver of California Civil Code section 1542 and of any and all similar laws of other states relating to limitations on releases, including, without limitation, limitations on releases of unknown or unliquidated claims.  In connection with such releases, waiver and relinquishment, Representative Plaintiffs acknowledge, and all members of the Settlement Class shall be deemed to acknowledge, that they are aware that they may hereafter discover facts in addition to, or different from, those facts which they now know or believe to be true with respect to the subject matter of the Settlement and releases, but that it is their intention to release fully, finally and forever all Released Claims, and in furtherance of such intention, the releases of the Released Claims will be and will remain in effect notwithstanding the discovery or existence of any such additional or different facts.

(w)     "Releases" shall have the meaning set forth in Section 4 below.

(x)     "Releasors" means each Representative Plaintiff and each Settlement Class Member, for themselves and on behalf of their respective spouses, heirs, executors, administrators, representatives, agents, attorneys, insurers, partners, successors, predecessors in interest, assigns and any authorized users of their FIA credit card accounts.

(y)     "Representative Plaintiffs" mean the named plaintiffs in the Amended Complaint, Bruce J. Trombley and Ryan Sukaskas.

(z)     "Revised Settlement Agreement" means the currently operative agreement between the Parties, as embodied herein, which became effective on  April 4, 2013.

(aa)     "Settlement Administrator" means Rust Consulting, Inc., the settlement administrator retained by FIA pursuant to §11 of the Original Settlement Agreement and approved by the Court pursuant to the Preliminary Approval Orders.

(bb)     "Settlement Amount" means four million U.S. dollars ($4,000,000).

(cc)    "Settlement Class" means all Persons who, at any time during the Class Period: (w) had a credit card account with FIA; (x) made a payment, in connection with that account, on or before the same day as the "Payment Due Date" or other deadline stated in the operative cardholder agreement, cardholder statement or other disclosure to the cardholder;  (y) made such payment (i) in person at a Bank of America banking center; (ii) by phone using Bank of America's pay-by-phone service; or (iii) electronically using Bank of America's online banking services; and (z) who incurred a late payment fee, finance charge, or other fees, penalties or charges, in connection with the timing of such payment.  The Class Notice was provided by September 19, 2011 to all putative Class Members meeting all four conditions (w) through (z).

(dd)    "Settlement Class Counsel" means Donovan Axler, LLC, 1845 Walnut Street, Suite 1100, Philadelphia, Pennsylvania 19103; the Law Office of Andrew Kierstead, 1001 SW 5th Avenue, Suit 1100, Portland, Oregon 97204; Berns Weiss LLP, 100 N. 18th Street, Suite 300, Philadelphia, Pennsylvania 19103; and the Law Offices of Peter N. Wasylyk, 1307 Chalkstone Avenue, Providence, Rhode Island 02908.

(ee)    "Settlement Class Member(s)" means all members of the Settlement Class to whom the Class Notice was provided and who did not timely and properly opt out of the Settlement Class as permitted by the Court.

(ff)    "Settlement Costs" means all costs of providing Class Notice to the Settlement Class as ordered by the Court plus all fees, costs and expenses of settlement administration, including costs that were incurred when the Settlement Administrator provided Notice to the Class by September 19, 2011.  This includes, but is not limited to, the fees, costs and expenses associated with:  preparing, printing and mailing Class Notices and/or Claim Forms; retaining the Settlement Administrator; preparing and transmitting the Electronic Notice; creating, hosting and

maintaining the Settlement Website; establishing, operating and maintaining the Settlement 1-800 number; receiving, processing and verifying Claim Forms; data storage; establishing and maintaining the designated post office boxes for receiving Claim Forms and opt-out requests; opt-out processing costs; preparing, disseminating and filing any data or reports required by the original or Revised Settlement Agreement or the Court; printing, preparing and transmitting payments and account credits to Settlement Class Members and Pro Rata Class Members (excepting the amounts of the payments themselves); account reconciliation; preparation of the final accounting of the Settlement Administrator; administration and labor incidental or related to the foregoing; and any and all other actions reasonably necessary to the performance, approval and effectuation of the Settlement; provided that Settlement Costs will not include the labor costs of Bank of America employees or outside counsel.

(gg)    "Settlement Website" means a website to be created and maintained by the Settlement Administrator relating to the original or Revised Settlement Agreement.

(hh)    "Settlement 1-800 number" means a 1-800 number to be created and maintained by the Settlement Administrator for purposes of receiving and responding to requests for Class Notice, Claim Forms and questions about the Settlement

3.    **Exclusion and Termination.**

(a)    Members of the Settlement Class were afforded the right to exclude themselves from the Settlement Class by sending a written request to an address designated by the Settlement Administrator in accordance with the terms stated in the Class Notice and the Preliminary Approval Order. Any such written requests for exclusion must have been postmarked by the date, specified in the Class Notice and the Preliminary Approval Orders, that was at least forty (40) days prior to the date set for the Final Approval Hearing, *i.e.*, October 28, 2011. On November 8, 2011, within three (3) court days after the deadline for the submission of

requests for exclusion, the Settlement Administrator served on Settlement Class Counsel a declaration stating that eighteen members of the Settlement Class had delivered timely requests for exclusion.

(b)     Exclusion requests were required to comport with certain requirements and restrictions set out in § 6(b) of the parties' Original Settlement Agreement, which is attached hereto as Exhibit A.  If a timely and valid request for exclusion was made by a member of the Settlement Class, then no payment shall be made with respect to any account(s) of such Person.

(c)     All members of the Settlement Class who did not opt out of the Settlement Class in accordance with the terms set forth will be bound by this Revised Settlement Agreement, the settlement contemplated hereby, and all determinations and judgments concerning the Revised Settlement Agreement.

**4.     Releases.**

Upon Final Settlement Approval, each of the Releasors unconditionally, fully and finally releases and forever discharges each of the Defendant Releasees from each of the Released Claims.  For avoidance of doubt, these Releases do not apply to claims for breach of this Revised Settlement Agreement.

**5.     Covenants Not to Sue.**

Upon Final Settlement Approval, each of the Releasors hereby covenants and agrees that he, she or it shall not take any step whatsoever to commence, institute, continue, pursue, maintain, prosecute or enforce any Released Claim(s), on behalf of itself or any other Person, against any of the Defendant Releasees.  Upon Final Settlement Approval, each of the Releasors hereby warrants and represents that he, she or it has not assigned, sold or otherwise transferred any Claim that he, she, or it previously had that otherwise would fall within the scope of Sections 4 or 5.

6.    **Monetary Payment.**

(a)    In complete and final settlement of the Litigation, Defendant agrees to pay the Settlement Amount.  In no event shall Defendant pay any part of the Settlement Amount before Final Settlement Approval, except for Settlement Costs incurred prior to that date.  The Settlement Amount shall be inclusive of all distributions to Approved Settlement Class Members, Pro Rata Settlement Class Members, Representative Plaintiffs' service award, all attorneys' fees and costs, Settlement Costs, the Cy Pres Amount (if any), and any other deduction from the Settlement Amount that is approved by the Court.  Defendant shall have no liability for any amount beyond the Settlement Amount.  Under no circumstances will any portion of the Settlement Amount revert to Defendants.

(b)    Within ten (10) days of the Final Settlement Approval, the Defendant shall pay the Settlement Amount into a Distribution Account.  The Class Plaintiffs and the Defendants agree that the Distribution Account is intended to be and shall be treated as a Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B-1 and any analogous local, state, and/or foreign statute, law, regulation, or rule.

(c)    Within ninety (90) days of Final Settlement Approval, the Settlement Administrator shall pay, from the Distribution Account, each Approved Settlement Class Member $40 in full satisfaction of their Claims.  Only one valid Claim will be paid per Approved Settlement Class Member, regardless of the number of Qualifying Payments made or late or other fees assessed.

(c)    Within ninety (90) days of Final Settlement Approval, the Settlement Administrator, shall pay, from the Distribution Account, each Pro Rata Settlement Class Member an amount representing an equal or pro rata share of the difference between the Settlement Amount ($4,000,000.00) and the amounts necessary to pay: (1) all distributions to Approved

Settlement Class Members; (2) Representative Plaintiffs' service awards; (3) all attorneys' fees

and costs; (4) Settlement Costs; and (5) any other deduction from the Settlement Amount that is

approved by the Court.

(d)    At FIA's discretion, any Approved Settlement Class Member or Pro Rata

Settlement Class Member associated with a credit card account that has been written or charged

off by Defendant shall not receive a payment from Defendant but will instead have their liability

owing to Defendant offset by $40 or the Pro Rata Amount or the amount written or charged off,

whichever is the least amount.

(e)    At FIA's discretion, distributions to Approved Settlement Class Members or Pro

Rata Settlement Class Members who have an open and active FIA credit card account in good

standing at the time of payment will be made by a check mailed to the address stated in each

Approved Settlement Class Member's Claim Form or by a credit to a FIA credit card account of

each such Approved Settlement Class Member or Pro Rata Settlement Class Member.

(f)    Distributions to Approved Settlement Class Members or Pro Rata Settlement

Class Members who do not have an open and active FIA credit card account in good standing at

the time of payment and who do not fall within the scope of 6(d) above, will be made by mailed

check to each such Approved Settlement Class Member at the address stated in her, his or its

Claim Form, or at the last known address for the Pro Rata Settlement Class Member.  No skip

trace or re-mailing of returned mail will be required.  Any check sent pursuant to Section 6(e) or

Section 6(f) that is not cashed within one-hundred and eighty (180) days shall be voided and of

no effect and the Bank shall have no obligation to reissue such checks or pay such funds to the

Class Member through a credit or otherwise.

(g)    No interest shall accrue at any time on payments to be made under the Settlement

Agreement, whether those payments are to Approved Settlement Class Members, Pro Rata

Settlement Class Members, Representative Plaintiffs, Settlement Class Counsel or any other

Person.

(h)    If, 180 days after mailing of checks to Approved Settlement Class Members and

Pro Rata Settlement Class Members, there are funds remaining in the Net Settlement Amount

due to either un-cashed or undeliverable checks, such funds shall be distributed through *cy pres*

payments to one or more of the following organizations, as approved by the Court:  Consumer

Federation of America-America Saves program; and Consumer Action.

(i)    Defendant shall not oppose an application by Class Counsel for Court approval

for a payment of not more than $5,000 (out of the $4 million) to each of the Representative

Plaintiffs for their service as the representatives of the Settlement Class in the Action.  Except as

specified in this subparagraph and Paragraph 6(b), Defendant shall have no other further

obligation to make any payment to the Representative Plaintiffs or any Settlement Class

Member.

**7.    Settlement Administrator.**

(a)    The Settlement Administrator approved by the Court is Rust Consulting, Inc.  The

Settlement Administrator was appointed by the Court in the Preliminary Approval Orders and,

subject to Court approval, shall be paid from the Settlement Fund for the duties described in this

section 7 and elsewhere in the Original Settlement Agreement and the Revised Settlement

Agreement, including any Exhibit.

(b)    In addition to the duties described elsewhere in this Revised Settlement

Agreement, including any Exhibit, the Settlement Administrator shall have an ongoing

obligation to:

(i)     Prepare and distribute checks to Approved Settlement Class Members and Pro Rata Settlement Class Members pursuant to Section 6; and

(ii)    Maintain and oversee data storage relating to the Settlement Agreement and claims process, and engage in account reconciliation, and general administration incidental to the foregoing.

(iii)   Not less frequently than once a quarter, the Settlement Administrator, shall file with the Court a written report stating the nature, amount, and recipients of Settlement Cost expenses expended, paid, or incurred.

8.      **Attorneys' Fees and Costs.**

Settlement Class Counsel shall submit to the court a revised request for attorneys' fees and costs in an amount not to exceed 30% of the $4 million Settlement Amount. The Revised Settlement Agreement and settlement contemplated hereby is not conditioned upon the Court's approval of the fees or costs sought by Class Counsel. No interest will accrue on such amounts at any time. The attorneys' fees and costs awarded by the Court shall be paid out of the Settlement Amount, and FIA shall have no other or further liability for attorneys' fees and costs, whether of the Representative Plaintiffs, any member of the Settlement Class, or any Settlement Class Counsel. No such attorneys' fees or costs will be paid until Final Settlement Approval at the earliest. Attorney fees and costs awarded by the Court shall be paid by wire transfer to an account specified by Settlement Class Counsel within five (5) business days of Final Settlement Approval or the Court's award of attorney fees, whichever occurs later.

9.      **Publicity and Confidentiality.**

(a)     Neither Class Counsel nor Representative Plaintiffs will issue press releases or make other public statements regarding the Settlement unless FIA agrees to such press releases or public statements in advance. Neither Settlement Class Counsel nor the Representative Plaintiffs will make a statement of any kind to any third party regarding the Revised Settlement Agreement or the settlement contemplated hereby prior to applying for preliminary approval.

The Parties may make public statements to the Court as necessary to obtain preliminary or final approval of the Settlement. A Party, Class Counsel, or Defendant's counsel may say only some or all of the following or substantially the following in response to inquiries by the press or otherwise without seeking prior approval from the other Party: that the Settlement was arrived at after extensive negotiations; the Settlement is fair and reasonable and in the best interest of all Parties and Settlement Class Members; the Settlement was entered into in order to end costly, burdensome and lengthy litigation; and/or the Settlement does not constitute any admission of any wrongdoing by Defendant, which continues to assert that it acted lawfully at all times. In addition, in response to inquiries or requests by the press or otherwise, Class Counsel and Defendant's Counsel may provide copies of the Complaint and executed settlement documents. This subsection shall not prohibit Settlement Class Counsel from communicating with any Settlement Class Member or from communicating with any state or federal authority by whom Settlement Class Counsel are contacted regarding the Litigation or the Settlement Agreement; provided, however, that Settlement Class Counsel must comply with all confidentiality agreements and protective orders in the Litigation in communicating with such persons and will not disclose information that it obtained from Defendant in any form (hardcopy or electronic documents or through representations of counsel or otherwise) during discovery or through negotiations to settle and resolve this case.

(b)     Settlement Class Counsel, on behalf of themselves and their expert witnesses and consultants as well as others retained by them, acknowledge that during the course of the Litigation, they have received Confidential Information. It is agreed that, within thirty (30) days after the Final Settlement Approval, the originals and all copies of all confidential documents and/or information subject to any confidentiality agreements and/or any protective orders in the

Litigation shall either be returned to the designating party or destroyed, and each counsel who received such protected documents and/or information shall furnish a certification attesting to such return or destruction. Within the same time period, Settlement Class Counsel will identify for FIA any expert witnesses, outside consultants, or other individuals or entities to whom they provided Confidential Information, and will obtain from those persons all copies of Confidential Information and will return those copies to FIA or, not later than thirty (30) days after Final Settlement Approval, certify that Settlement Class Counsel have destroyed such copies.

**10.   Non-Disparagement.**

The Representative Plaintiffs and Settlement Class Counsel agree to refrain from disparaging FIA and the other Released Parties in the media (including, without limitation, descriptions on the websites of Settlement Class Counsel) regarding any issue related to this case. FIA agrees to refrain from disparaging the Representative Plaintiffs and Settlement Class Counsel in the media regarding any issue related to this case. Failure to abide by this provision will constitute a breach of this Settlement Agreement.

**11.   Notices.**

Any communication, verification, or notice sent by any Party in connection with this Settlement shall be given by email or overnight mail as follows:

To Representative Plaintiffs and/or Settlement Class Counsel:

> Michael D. Donovan
> Donovan Axler, LLC
> 1845 Walnut Street, Suite 1100
> Philadelphia, Pennsylvania 19103
> mdonovan@donovanaxler.com
>
> -and-
>
> Andrew S. Kierstead
> The Law Office of Andrew S. Kierstead
> 1001 SW 5th Avenue, Suite 1100

Portland, Oregon 97204
AJKIER@aol.com

-and-

Michael J. Quirk
Berns Weiss LLP
100 N. 18th Street, Suite 300
Philadelphia, Pennsylvania 19103
mquirk@bernsweiss.com

-and-

Peter N. Wasylyk
Law Offices of Peter N. Wasylyk
1307 Chalkstone Avenue
Providence, Rhode Island 02903
PNWLAW@aol.com

To FIA:

Mark P. Ladner
David J. Fioccola
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, New York
mladner@mofo.com
dfioccola@mofo.com

**12.    No Admission of Liability.**

It is expressly declared and acknowledged that Defendant denies any liability for the

wrongdoings alleged in the Litigation and is settling solely to avoid the cost, uncertainties, and

inconvenience of litigation.

**13.    Settlement Conditioned Upon Approval.**

The settlement reflected by this Revised Settlement Agreement is expressly conditioned

on entry of the Final Judgment and Order of Dismissal with Prejudice without material

modification by the Court.  In the event of a failure to obtain any of the required provisions of

such orders, including, but not limited to, the denial of any motion seeking final approval of the

Settlement or a substantive modification of the Preliminary Approval Orders and the Final

Judgment and Order of Dismissal with Prejudice by the Court or as a result of any appeal, this

Revised Settlement Agreement and settlement contemplated hereby will become null and void,

and all Parties will return, without prejudice, to the status quo *ante* as of the date of this

Settlement Agreement as if this Settlement Agreement had not been executed. In such event,

certification of the Settlement Class will be void, no doctrine of waiver, estoppel or preclusion

shall be asserted in any litigated certification proceedings in the Litigation, and this Revised

Settlement Agreement and its negotiation, terms and existence shall be inadmissible to establish

any fact relevant to class certification or any alleged liability of FIA for the matters alleged in the

Litigation or for any other purpose whatsoever.

**14.     Effect of Settlement.**

Neither the Revised Settlement Agreement, nor any act performed or document

exchanged or executed pursuant to or in negotiation of or in furtherance of the Revised

Settlement Agreement: (i) is or may be deemed to be or may be used as an admission of, or

evidence of, the validity of any Released Claim, or of any alleged wrongdoing or liability of the

Released Parties; (ii) is or may be deemed to be or may be used as an admission of, or evidence

of, any fault or omission of the Released Parties in any civil, criminal or administrative

proceeding in any court, administrative agency or other tribunal; or (iii) is or may be deemed to

be a waiver of FIA's right to seek to enforce any arbitration provision in other cases or against

any members of the Settlement Class who opt out. The Released Parties may file the Revised

Settlement Agreement and/or the Preliminary Approval Orders and the Final Judgment and

Order of Dismissal with Prejudice in any action or proceeding that may be brought against them

in order to enforce the provisions of the Revised Settlement Agreement or to support a defense or

counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith

settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

**15.    Evidentiary Preclusion.**

In the event that the Revised Settlement Agreement is not approved as presented, or FIA withdraws from the Revised Settlement Agreement as set forth herein, the Parties agree that neither the settlement terms nor any publicly disseminated information regarding the Revised Settlement Agreement, including, without limitation, the Mailed, Electronic, or Settlement Website Notices, or any court filings, orders and public statements, may be used as evidence for any purpose whatsoever.  In addition, neither the fact of, nor any documents relating to, FIA's withdrawal from the Revised Settlement Agreement, any failure of the Court (or on appeal) to approve the settlement and/or any objections or interventions may be used as evidence for any purpose whatsoever.

**16.    Parties Authorized to Enter into Revised Settlement Agreement.**

The individual(s) executing this Revised Settlement Agreement on behalf of a Party represent and warrant that he, she, or it is fully authorized to execute this Revised Settlement Agreement on such party's behalf and to carry out the obligations provided for therein.  Each person executing this Revised Settlement Agreement on behalf of a Party covenants, warrants and represents that he or she is and has been fully authorized to do so by such Party.  Each Party represents and warrants that he, she, or it intends to be bound fully by the terms of this Revised Settlement Agreement.

**17.    No Additional Persons with Financial Interest.**

Representative Plaintiffs and Settlement Class Counsel warrant and represent that they are not aware of any Persons having any interest in any award of attorneys' fees, costs, and litigation expenses in connection with the Litigation other than Settlement Class Counsel.

Representative Plaintiffs and Settlement Class Counsel agree to indemnify and hold FIA

harmless from any claim by any Person for an award of attorneys' fees, costs, and litigation

expenses in connection with the Litigation.

**18.     No Attempt by Parties to Object.**

Representative Plaintiffs, Settlement Class Counsel, and FIA each represent and warrant

that they have not attempted to, nor will they, solicit, encourage, or assist in any fashion any

effort by any Person to object to the Revised Settlement Agreement or the settlement

contemplated hereby.

**19.     Signatures.**

The Parties and their counsel may sign separate copies of this Revised Settlement

Agreement, which together will constitute one Revised Settlement Agreement.  In addition,

signatures sent in pdf format, by email, or by facsimile constitute sufficient execution of the

Revised Settlement Agreement.

**20.     Best Efforts.**

The Parties agree to cooperate in preparing and reviewing the documents and performing

all other acts contemplated herein in a timely manner.  Settlement Class Counsel and FIA

consider the settlement described herein to be fair and reasonable and will use their best efforts to

seek final approval of the settlement by the Court, and, if the settlement is granted final approval,

to effectuate the settlement's terms.

**21.     Governing Law.**

The Revised Settlement Agreement is governed by the laws of the State of Delaware.

**22.     No Construction Against Drafter.**

The Revised Settlement Agreement is deemed to have been drafted by all Parties, and any rule that a document shall be interpreted against the drafter will not apply to this Revised Settlement Agreement.

**23.     Settlement Agreement Binding on Successors in Interest.**

This Revised Settlement Agreement is binding on and shall inure to the benefit of the respective heirs, successors, and assigns of the Parties.  The Defendant Releasees other than the Defendant are third-party beneficiaries authorized to enforce the Releases in Section 4 (and all waiver of rights therein), the Covenant Not to Sue in Section 5, the Preliminary Approval Order, and the Final Judgment and Order of Dismissal, as applicable to them.

**24.     Execution in Counterparts.**

This Revised Settlement Agreement is effective upon its execution by all Parties.  The Parties may execute the Revised Settlement Agreement in counterparts.  Each counterpart shall be deemed to be an original, and execution of counterparts shall have the same force and effect as if all Parties had signed the same instrument.

**25.     Entire Settlement Agreement.**

This Revised Settlement Agreement, including the exhibits hereto, contains the entire Settlement Agreement between the Parties and supersedes all prior understandings, Settlement Agreements, negotiations or writings regarding the subject matter of this Settlement Agreement. This Revised Settlement Agreement may be amended or modified only by a written instrument signed by all Parties or their successors in interest or their duly authorized representatives.

**26.     Miscellaneous Provisions.**

(a)     Each and every exhibit to this Revised Settlement Agreement is incorporated herein by this reference as though fully set forth herein.

(b)     The waiver by one party of any breach of this Revised Settlement Agreement by any other Party shall not be deemed a waiver, by that Party or by any other Party, of any other prior or subsequent breach of this Revised Settlement Agreement.

(c)     Each Party to this Revised Settlement Agreement warrants that he, she or it is acting upon his, her or its independent judgment and upon the advice of his, her or its own counsel and not in reliance upon any warranty or representation, express or implied, of any nature or kind by any other Party, other than the warranties and representations expressly made in this Revised Settlement Agreement.

(d)     This Revised Settlement Agreement has been carefully read by each of the Parties, or their responsible officers thereof, and its contents are known and understood by each of the Parties. This Revised Settlement Agreement is signed freely by each party executing it.

(e)     No party to this Revised Settlement Agreement has heretofore assigned, transferred or granted, or purported to assign, transfer or grant, any of the claims, demands, or cause or causes of action disposed of or released by this Settlement Agreement.

(f)     The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Revised Settlement Agreement, and all Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in this Revised Settlement Agreement.

SUBJECT TO RULE 408 AND STATE LAW ANALOGS
PRIVILEGED AND CONFIDENTIAL
MF DRAFT 1/22/2013

IN WITNESS WHEREOF, the Parties hereto have caused this Revised Settlement

Agreement to be executed:

Dated: 3/29 , 2013

PLAINTIFF BRUCE J. TROMBLEY

_____
Bruce J. Trombley

Dated: 3/31 , 2013

PLAINTIFF RYAN SUKASKAS

_____
Ryan Sukaskas

Dated: ___, 2013

FIA CARD SERVICES, N.A.

By:_____
[]

SUBJECT TO RULE 408 AND STATE LAW ANALOGS
PRIVILEGED AND CONFIDENTIAL
MF DRAFT 1/22/2013

IN WITNESS WHEREOF, the Parties hereto have caused this Revised Settlement

Agreement to be executed:


Dated: __, 2013                     PLAINTIFF BRUCE J. TROMBLEY


                                    _____

                                    Bruce J. Trombley


Dated: __, 2013                     PLAINTIFF RYAN SUKASKAS


                                    _____

                                    Ryan Sukaskas


Dated: 4/3, 2013                    FIA CARD SERVICES, N.A.

                                    By: _____
                                        TITI COLE

SUBJECT TO RULE 408 AND STATE LAW ANALOGS
PRIVILEGED AND CONFIDENTIAL
MF DRAFT 1/22/2013

APPROVED AS TO FORM:

Dated: 4/4, 2013

Donovan Axler, LLC

Michael D. Donovan
CO-COUNSEL FOR REPRESENTATIVE PLAINTIFFS

Dated: 4-1, 2013

The Law Office of Andrew S. Kierstead

Andrew S. Kierstead
CO-COUNSEL FOR REPRESENTATIVE PLAINTIFFS

Dated: __, 2013

Berns Weiss LLP

Michael J. Quirk
CO-COUNSEL FOR REPRESENTATIVE PLAINTIFFS

Dated: 4/1, 2013

The Law Offices of Peter N. Wasylyk

Peter N. Wasylyk
CO-COUNSEL FOR REPRESENTATIVE PLAINTIFFS

31

APPROVED AS TO FORM:

Dated: __, 2013

                    Donovan Axler, LLC


_____

Michael D. Donovan
CO-COUNSEL FOR REPRESENTATIVE PLAINTIFFS

Dated: __, 2013

                    The Law Office of Andrew S. Kierstead


_____

Andrew S. Kierstead
CO-COUNSEL FOR REPRESENTATIVE PLAINTIFFS

Dated: 4/2/2013

                    Berns Weiss LLP


_____

Michael J. Quirk
CO-COUNSEL FOR REPRESENTATIVE PLAINTIFFS

Dated: __, 2013

                    The Law Offices of Peter N. Wasylyk


_____

Peter N. Wasylyk
CO-COUNSEL FOR REPRESENTATIVE PLAINTIFFS

APPROVED AS TO FORM:

Dated: __, 2013                    MORRISON & FOERSTER, LLP

                                   _____
                                   Mark P. Ladner
                                   David J. Fioccola
                                   COUNSEL FOR DEFENDANT
                                   FIA CARD SERVICES, N.A.

# Exhibit A

## SETTLEMENT AGREEMENT

### JUNE 27, 2011

# TABLE OF CONTENTS

**Page**

| | | |
|---|---|---:|
| 1. | Recitals | 1 |
| 2. | Definitions | 3 |
| 3. | Certification of Settlement Class and Preliminary Approval of Settlement | 12 |
| 4. | Motion for Entry of Final Judgment | 14 |
| 5. | Class Notice and Claim Form | 16 |
| 6. | Exclusion and Termination | 18 |
| 7. | Releases | 19 |
| 8. | Covenants Not to Sue | 20 |
| 9. | Monetary Payment | 20 |
| 10. | Claims Process and Claims Administration | 22 |
| 11. | Settlement Administrator | 24 |
| 12. | Attorneys' Fees and Costs | 24 |
| 13. | Publicity and Confidentiality | 25 |
| 14. | Non-Disparagement | 26 |
| 15. | Notices | 27 |
| 16. | No Admission of Liability | 28 |
| 17. | Settlement Conditioned Upon Approval | 28 |
| 18. | Effect of Settlement | 29 |
| 19. | Evidentiary Preclusion | 29 |
| 20. | Parties Authorized to Enter into Settlement Agreement | 30 |
| 21. | No Additional Persons with Financial Interest | 30 |
| 22. | No Attempt by Parties to Object | 30 |
| 23. | Signatures | 30 |
| 24. | Best Efforts | 31 |
| 25. | Time Periods | 31 |
| 26. | Governing Law | 31 |
| 27. | No Construction Against Drafter | 31 |
| 28. | Settlement Agreement Binding on Successors in Interest | 31 |
| 29. | Execution in Counterparts | 32 |

## TABLE OF CONTENTS
(continued)

Page

30.   Entire Settlement Agreement ........................................................................................ 32

31.   Miscellaneous Provisions ............................................................................................. 32

## SETTLEMENT AGREEMENT

**1.     Recitals.**

This Settlement Agreement (including its exhibits, the "Settlement Agreement") is made

and entered into on June __, 2011, and is submitted to the Court for its approval as set forth

below. The Settlement Agreement is entered into on behalf of the Representative Plaintiffs and

the Settlement Class, by and through the Representative Plaintiffs and Settlement Class Counsel,

and the Defendant, by and through its authorized signatory (all of the above collectively referred

to as the "Parties").

WHEREAS, Defendant FIA Card Services, N.A. is the successor-in-interest to Bank of

America, N.A. (USA) and is a wholly owned subsidiary of Bank of America Corporation;

WHEREAS, Defendant is the subsidiary through which Bank of America Corporation

issues credit cards under the "Bank of America" name;

WHEREAS, by Order dated December 22, 2009, the Court granted in part and denied in

part the Defendant's motion to dismiss the Action, leaving extant only the breach of the implied

covenant of good faith and fair dealing claim and the Truth-in-Lending Act claim based on 15

U.S.C. §1637(b)(9) stated in the Amended Complaint;

WHEREAS, by Order dated June 2, 2010, the Court granted in part and denied in part the

Defendant's motion for judgment on the pleadings, leaving extant only the breach of the implied

covenant of good faith and fair dealing claim stated in the Amended Complaint;

WHEREAS, the Amended Complaint alleges that Defendant engaged in payments

processing conduct that allegedly violated the Truth-in-Lending Act, breached the contract stated

in the Cardholder Agreement, and breached Delaware's implied covenant of good faith and fair

dealing;

WHEREAS, the Representative Plaintiffs contend that they have suffered damages as a result of Defendant's alleged conduct;

WHEREAS, the Defendant vigorously denies that it, its predecessors, or any entity affiliated with it was party to any improper or unlawful conduct, maintains that its conduct has been fair, reasonable and in accordance with applicable contractual terms, and denies that it has violated any federal or state statute, principle of common law or equity, rule or regulation whatever;

WHEREAS, arm's length settlement negotiations have taken place between the Representative Plaintiffs and Settlement Class Counsel, and the Defendant;

WHEREAS, after substantial discovery and investigation of the facts and after carefully considering applicable law, the Representative Plaintiffs and Settlement Class Counsel have concluded that it would be in the best interests of the Settlement Class to enter into this Settlement Agreement in order avoid the uncertainties of litigation and to assure benefits to the Settlement Class; the terms and conditions of this Settlement Agreement, and the settlement contemplated thereby, are fair, reasonable, and adequate and in the best interests of all members of the Settlement Class; the notice terms of the Settlement Agreement satisfy the requirements of due process and Rule 23 of the Federal Rules of Civil Procedure; and the claims administration terms fairly and adequately address settlement administration, claims submission, and the allocation of monetary payments among members of the Settlement Class;

WHEREAS, the Defendant has concluded that despite its good faith belief that it is not liable for any of the Claims in the Action or otherwise constituting Released Claims and has good defenses thereto, it will enter into this Settlement Agreement to avoid the further expense,

2

inconvenience and burden of this litigation, and the risk and uncertainty of continuing these proceedings;

WHEREAS, the Parties agree that this Settlement Agreement shall not be deemed or construed to be an admission or evidence of any violation of any federal or state statute, rule or regulation, or principle of common law or equity, or of any liability or wrongdoing whatever, by the Defendant, or of the truth of any of the Claims asserted in the Amended Complaint, any prior complaints in the Litigation, or elsewhere;

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among the undersigned, on behalf of the Representative Plaintiffs, the Settlement Class and Defendant, that the Amended Complaint shall be dismissed on the merits and with prejudice as to the Defendant upon entry of the Final Judgment and Order of Dismissal, and the Action in its entirety and all other Released Claims shall be finally and fully compromised, settled, and released, subject to the approval of the Court as required by Rule 23 of the Federal Rules of Civil Procedure, on the following terms and conditions:

### 2. Definitions.

Solely for purposes of this Settlement Agreement, including the attached Exhibits, capitalized terms shall have the meanings specified in subsections (a) through (gg) below. Any capitalized terms used in this Settlement Agreement but not defined in subsections (aa) through (gg) below shall have the meaning ascribed to them in this Settlement Agreement, including in the attached Exhibits:

(a) "Action" means the action *Bruce J. Trombley and Ryan Sukaskas v. Bank of America Corporation*, C.A. No. 08-456 (D.R.I.).

(b) "Amended Complaint" means the Amended Complaint and Demand for Jury Trial filed by Bruce J. Trombley and Ryan Sukaskas on January 23, 2009.

(c)     "Approved Settlement Class Member" means a Settlement Class Member determined by the Settlement Administrator to satisfy the requirements to receive a payment or account credit under the terms of this Settlement Agreement.

(d)     "Claims" means any and all actual or potential claims, actions, causes of action, suits, counterclaims, cross claims, third party claims, contentions, allegations, and assertions of wrongdoing, and any demands for any and all debts, obligations, liabilities, damages (whether actual, punitive, exemplary, statutory, or otherwise), whenever incurred, attorneys' fees, costs, expenses, restitution, disgorgement, injunctive relief, any other type of equitable, legal or statutory relief, any other benefits, or any penalties of any type whatever, whether asserted in federal court, state court, arbitration or otherwise, and whether triable before a judge or jury or otherwise.

(e)     For avoidance of doubt, Claims includes any right or opportunity to claim, seek or obtain restitution, disgorgement, injunctive relief or any other benefit as a member of the general public, under California Business and Professions Code Section 17200 et seq. or otherwise.

(f)     "Claim Form" means the claim form attached hereto as Exhibit A.

(g)     "Class Notice" means a form of notice that contains, in material part, the text stated at Exhibits B and/or B.1.

(h)     "Claim Period" means the period beginning with the date on which Mailed Notice is mailed to Settlement Class members pursuant to Section 5(b) herein through and including fifteen (15) days after the date of the Final Approval Hearing.  This date shall be set forth in the Preliminary Approval Order and in the final iterations of Exhibits A, B, and B.1, hereto.

(i)     "Confidential Information" means any documents, materials, or information that a party in good faith believes is not in the public domain or involves a trade secret or other personal, confidential, or proprietary information.

(j)     "Court" means the United States District Court for the District of Rhode Island.

(k)     "Defendant" means FIA Card Services, N.A. FIA Card Services, N.A. is the successor-in-interest to Bank of America, N.A. (USA) and is a wholly owned subsidiary of Bank of America Corporation. FIA Card Services, N.A. is the subsidiary through which Bank of America Corporation issues credit cards under the "Bank of America" name.

(l)     "Defendant Releasees" means Defendant and each of its predecessors, successors (including, without limitation, acquirers of all or substantially all of the assets, stock, or other ownership interests of the Defendant) and assigns; the past, present and future, direct and indirect, parents (including, but not limited to, holding companies), subsidiaries, affiliates and associates (as defined in SEC Rule 12b-2 promulgated pursuant to the Securities Exchange Act of 1934) of any of the above; financial institutions, corporations, trusts, or other entities that may hold or have held any interest in any account or any receivables relating to any account, or any receivables or group of receivables, or any interest in the operation or ownership of FIA; and the past, present and future principals, trustees, partners, contractual counterparties (including, without limitation, affinity, agent bank, and co-brand contractual parties), officers, directors, employees, agents, vendors (including processing facilities), attorneys, shareholders, advisors, predecessors, successors (including, without limitation, acquirers of all or substantially all of the assets, stock, or other ownership interests of any of the above), assigns, representatives, heirs, executors and administrators of any of the above.

(m)  "Effective Date" means the date on which the last party to the Settlement Agreement executes the Settlement Agreement.

(n)  "Final Settlement Approval" occurs when all four of the following conditions are met:

(i)  entry of the Preliminary Approval Order in all material respects in the form of Exhibit C;

(ii)  final approval of this Settlement Agreement, and the settlement contemplated hereby, in all respects by the Court;

(iii)  entry of the Final Judgment and Order of Dismissal in all material respects in the form of Exhibit D; and

(iv)  the Final Judgment and Order of Dismissal become final which for purposes of this Agreement is the later of (A) the day following the date on which the Final Judgment and Order of Dismissal is no longer subject to review by appeal, if no notice of appeal is filed, or, (B) if a notice of appeal is filed, on the day following the date on which the Final Judgment and Order of Dismissal is not subject to further judicial review or appeal, either because a petition for certiorari is denied or by reason of affirmance by a court of last resort or by lapse of time or otherwise, provided that the Final Judgment and Order of Dismissal are not reversed or materially modified by the Court or any reviewing court.

(o)  "Final Judgment and Order of Dismissal" means the entry by the Court of an order and final judgment in all material respects in the form attached as Exhibit D.  For avoidance of doubt, and without limitation, each of the items listed in Section 4(a)(i) through 4(a)(x) shall be considered material.

(p)  "FIA" means FIA Card Services, N.A. and all predecessor and successor entities.

(q)  "Litigation" means the Action, including, without limitation, any appeals or requests for leave to appeal therefrom, and any matters asserted in any of the complaints, pleadings, filings, interrogatory responses, or other papers filed or served or consolidated in the Action.

(r)     "Net Settlement Amount" means the Settlement Amount less Court-approved attorneys' fees and costs, service award to the Representative Plaintiffs, Settlement Costs, and any other deduction approved by the Court; excepting that the Cy Pres Amount, if any, shall not be deducted from the Settlement Amount in calculating the Net Settlement Amount.

(s)     "Person" includes without limitation, natural persons, firms, banks, corporations, businesses, limited liability companies, partnerships, savings and loan institutions, credit unions, depository institutions, federal, state and other governments and their political subdivisions, agencies and instrumentalities, and all other entities.

(t)     "Preliminary Approval Order" means the entry by the Court of an order preliminarily approving the settlement in all material respects in the form attached at Exhibit C. For avoidance of doubt, and without limitation, each of the items listed in Section 3(b)(i) through 3(b)(xiii) shall be considered material.

(u)     "Qualifying Payment" means payment by a FIA cardholder on a FIA credit card account where the payment is (x) equal to or in excess of the minimum payment due for the monthly billing cycle in which it is made (y) not determined by Defendant to be deficient for non-sufficient funds; and (z) made, or alleged by the cardholder to be made, on or before the same day as the "Payment Due Date" or other deadline stated in the operative cardholder agreement, cardholder statement or other disclosure to the cardholder.

(v)     "Released Claims" means any and all Claims (i) that in whole or in part arise out of or relate to any late payment or other fees or charges of any kind assessed by FIA on Qualifying Payments up through the date of Preliminary Approval, including, without limitation, any and all Claims based in whole or in part on any act, omission, event, incident, matter,

dispute, facts, business practices, transactions or occurrences, or injury up through the date of

Preliminary Approval regarding FIA's crediting of payments to credit card accounts, including,

without limitation, failure to credit such payments by a given date; or (ii) that are or could have

been asserted within the scope of the facts asserted in the Litigation; or (iii) that arise out of or

relate in any way to the administration of the Settlement Agreement, other than claims for breach

of the Settlement Agreement.

Released Claims include, without limitation, all Claims described in the prior sentence

that arise under, or which could arise under, any federal, state or other law relating to disclosure

(*e.g.*, the Truth in Lending Act, 15 U.S.C. sec. 1601 et seq., Regulation Z, 12 C.F.R. pt. 226,

Article 10 of the New York Personal Property Law, or the Song-Beverly Credit Card Act,

Section 1747 et seq. of the California Civil Code), or consumer protection or unfair or deceptive

acts or practices (*e.g.*, the Fair Credit Billing Act, 15 U.S.C. 1666C et seq., 12 C.F.R. 226.10,

Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. sec. 501.201 et seq., Section

17200 et seq. of the California Business and Professions Code, Section 17500 et seq. of the

California Business and Professions Code, Section 1750 et seq. of the California Civil Code,

Section 349 of the New York General Business Law, or Sections 3724-6 and 37-24-31 of the

South Dakota Codified Laws), or any principle of common law or equity, including, but not

limited to, breach of contract, breach of duty, fraud, conversion, good faith and fair dealing,

negligent misrepresentation, unconscionability or unjust enrichment, without regard to whether

or not any of the Representative Plaintiffs or any of the Settlement Class Members knows or

suspects such Claim to exist in his, her or its favor at the time of the Releases, and without regard

to the subsequent discovery or existence of other, different or additional facts, which, if known

by him, her or it, might have affected his, her or its decision(s) with respect to opting out of the Settlement Class or with respect to this Settlement Agreement.

Without in any way limiting the foregoing, the Released Claims specifically extend to and include claims that Representative Plaintiffs and the Settlement Class Members do not know or suspect to exist in their favor at the time of Final Settlement Approval. This paragraph constitutes a release and waiver of, without limitation as to any other applicable law, section 1542 of the California Civil Code, and any and all similar laws of other states. Section 1542 of the California Civil Code provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
> WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT
> TO EXIST IN HIS OR HER FAVOR AT THE TIME OF
> EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM
> OR HER MUST HAVE MATERIALLY AFFECTED HIS OR
> HER SETTLEMENT WITH THE DEBTOR.

Representative Plaintiffs understand and acknowledge, and each member of the Settlement Class shall be deemed to understand and acknowledge, the significance of these releases and of this waiver of California Civil Code section 1542 and of any and all similar laws of other states relating to limitations on releases, including, without limitation, limitations on releases of unknown or unliquidated claims. In connection with such releases, waiver and relinquishment, Representative Plaintiffs acknowledge, and all members of the Settlement Class shall be deemed to acknowledge, that they are aware that they may hereafter discover facts in addition to, or different from, those facts which they now know or believe to be true with respect to the subject matter of the Settlement and releases, but that it is their intention to release fully, finally and forever all Released Claims, and in furtherance of such intention, the releases of the Released Claims will be and will remain in effect notwithstanding the discovery or existence of any such additional or different facts.

(w)   "Releases" shall have the meaning set forth in Section 7 below.

(x)   "Releasors" means each Representative Plaintiff and each Settlement Class Member, for themselves and on behalf of their respective spouses, heirs, executors, administrators, representatives, agents, attorneys, insurers, partners, successors, predecessors in interest, assigns and any authorized users of their FIA credit card accounts.

(y)   "Representative Plaintiffs" mean the named plaintiffs in the Amended Complaint, Bruce J. Trombley and Ryan Sukaskas.

(z)   "Settlement Administrator" means the settlement administrator retained by FIA pursuant to Section 11 and approved by the Court pursuant to the Preliminary Approval Order.

(aa)   "Settlement Amount" means five million U.S. dollars ($5,000,000). For the avoidance of doubt, the Bank shall have no obligation to pay any difference between five million U.S. dollars ($5,000,000) and the amount necessary to pay: (1) all distributions to Approved Settlement Class Members; (2) Representative Plaintiffs' service award; (3) all attorneys' fees and costs; (4) Settlement Costs; (5) the Cy Pres amount (if any); and (6) any other deduction from the Settlement Amount that is approved by the Court, in the event that the sum of (1) through (6) is less than five million U.S. dollars ($5,000,000).

(bb)   "Settlement Class" means all Persons who, at any time between August 1, 2006 and February 22, 2010: (x) had a credit card account with FIA and (y) made a Qualifying Payment in connection with that account (i) in person at a Bank of America banking center; (ii) by phone using Bank of America's pay-by-phone service; or (iii) electronically using Bank of America's online banking services; and (z) who incurred a late payment fee, finance charge, or other fees, penalties or charges, in connection with the timing of such payment that was not waived

or refunded.  For avoidance of doubt, all three conditions (x) through (z) must be satisfied to be

eligible for Settlement Class membership.

(cc)    "Settlement Class Counsel" means Donovan Searles & Axler, LLC, 1845

Walnut Street, Suite 1100, Philadelphia, Pennsylvania 19103; the Law Office of Andrew

Kierstead, 1001 SW 5th Avenue, Suit 1100, Portland, Oregon 97204; Williams Cuker

Berezofsky, LLC, 1515 Market Street, Suite 1300, Philadelphia, Pennsylvania 19102; and the

Law Offices of Peter N. Wasylyk, 1307 Chalkstone Avenue, Providence, Rhode Island 02908.

(dd)    "Settlement Class Member(s)" means all members of the Settlement Class

who or which have not timely and properly opted out of the Settlement Class as permitted by the

Court.

(ee)    "Settlement Costs" means all costs of providing Class Notice to the

Settlement Class as ordered by the Court plus all fees, costs and expenses of settlement

administration.  This includes, but is not limited to, the fees, costs and expenses associated with:

preparing, printing and mailing Class Notices and/or Claim Forms; retaining the Settlement

Administrator; preparing and transmitting the Electronic Notice; creating, hosting and

maintaining the Settlement Website; establishing, operating and maintaining the Settlement 1-

800 number; receiving, processing and verifying Claim Forms; data storage; establishing and

maintaining the designated post office boxes for receiving Claim Forms and opt-out requests;

opt-out processing costs; preparing, disseminating and filing any data or reports required by the

Settlement Agreement or the Court; printing, preparing and transmitting payments and account

credits to Settlement Class Members (excepting the amounts of the payments themselves);

account reconciliation; preparation of the final accounting of the Settlement Administrator;

administration and labor incidental or related to the foregoing; and any and all other actions

reasonably necessary to the performance, approval and effectuation of the Settlement; provided that Settlement Costs will not include the labor costs of Bank of America employees or outside counsel.

(ff) "Settlement Website" means a website to be created and maintained by the Settlement Administrator relating to the Settlement Agreement.

(gg) "Settlement 1-800 number" means a 1-800 number to be created and maintained by the Settlement Administrator for purposes of receiving and responding to requests for Class Notice, Claim Forms and questions about the Settlement

**3.** **Certification of Settlement Class and Preliminary Approval of Settlement.**

(a) Within thirty (30) days after the Effective Date, Settlement Class Counsel shall submit to the Court a motion for Preliminary Approval of this Settlement Agreement, and the settlement contemplated hereby, including, *inter alia*, certification of the Settlement Class. No later than fifteen (15) days thereafter, Defendant shall submit any additional filings or materials pertaining to the motion for Preliminary Approval, including, but not limited to, any materials demonstrating compliance with the Class Action Fairness Act of 2005 ("CAFA").

(b) A copy of a proposed form of order certifying the Settlement Class and granting preliminary approval of the Settlement Agreement and the settlement contemplated hereby, which Class Counsel shall submit to the Court for its approval in connection with the motion described in Section 3(a) above, is attached hereto as Exhibit C. Among other things, it:

(i) preliminarily certifies that any applicable requirements of CAFA have been met;

(ii) certifies, for settlement purposes only, the Settlement Class pursuant to Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure in lieu of the proposed class stated in the Amended Complaint; provided that neither such certification for settlement purposes only, nor any other act relating to the negotiation, execution or implementation of this Settlement Agreement, shall, (A) be considered as a factor in connection with any class certification issue(s) if the Settlement Agreement terminates or Final Settlement

Approval does not occur, or (B) result in the waiver of rights, if any, that Defendant may have to require or seek to require arbitration of any Claim with respect to any Person who timely and properly opts out of the Settlement Damages Class, as permitted by the Court, or (C) in the event there is no Final Settlement Approval or this Settlement Agreement terminates, result in any waiver of the rights of any Defendant to enforce or seek to enforce applicable arbitration rights, if any;

(iii)   appoints Class Counsel as counsel for the Settlement Class for settlement purposes only;

(iv)   preliminarily approves this Settlement Agreement and the settlement contemplated hereby as being a fair, reasonable and adequate settlement as to all members of the Settlement Class within the meaning of Rule 23 of the Federal Rules of Civil Procedure;

(v)   approves the form of Class Notice and Claim Form and finds that the notice program set forth in Section 5 below constitutes the best notice practicable under the circumstances, is due and sufficient notice to the Settlement Class and fully satisfies the requirements of due process and Federal Rule of Civil Procedure 23;

(vi)   directs that notice be provided to the Settlement Class, in accordance with the terms of Section 5 below;

(vii)   establishes a procedure for members of the Settlement Class to object to the settlement or exclude themselves from the Settlement Class, and sets a date, not later than forty (40) days prior to the date set for the final settlement approval hearing, after which no one shall be allowed to object to the settlement or exclude himself or herself from the Settlement Class or seek to intervene in the Action or either action thereunder;

(viii)   appoints the Settlement Administrator;

(ix)   preliminarily approves the claims administration and distribution program described at Sections 9 and 10 below, and the resulting allocation of monetary payments to Settlement Class Members, as fair and adequate;

(x)   stays further proceedings in the Litigation (including any existing discovery obligations) pending Final Settlement Approval or termination of this Settlement Agreement, whichever occurs earlier, except for those matters necessary to obtain and/or effectuate Final Settlement Approval;

(xi)   stays and enjoins all Settlement Class Members, and any Person actually or purportedly acting on behalf of any Settlement Class Member(s), from commencing, instituting, continuing, pursuing, maintaining, prosecuting or enforcing any Released Claim, directly or indirectly, in any judicial, administrative, arbitral, or other forum, against any of the Defendant Releasees pending Final Settlement Approval or termination of this Settlement Agreement, whichever occurs earlier;

(xii)    schedules a hearing on final approval of the Settlement Agreement, which shall be no less than forty (40) days after the deadline set for opt-outs and objections; and

(xiii)    reserves to the Court exclusive personal and subject matter jurisdiction with respect to the resolution of all matters relating to the implementation or enforcement of the Preliminary Approval Order. In the event that any of the provisions of the Preliminary Approval Order is asserted by any Defendant Releasee as a defense in whole or in part to any Claim or otherwise asserted in any other suit, action or other proceeding brought by a Settlement Class Member or any Person actually or purportedly acting on behalf of any Settlement Damages Class Member(s), that Defendant Releasee shall be entitled to an immediate stay and injunction of that suit, action or other proceeding until the Court has entered an order or judgment finally determining any issues relating to such defense or assertion and no further judicial review of such order or judgment is possible.

**4.    Motion for Entry of Final Judgment.**

(a)    If the Court enters a Preliminary Approval Order and the Settlement Agreement has not otherwise terminated, then, after notice to the Settlement Class (as described below in Section 5), and after the expiration of the time for members of the Settlement Class to timely and properly opt out from the Settlement Class, Settlement Class Counsel shall submit to the Court a motion for entry of an order and final judgment. A copy of a proposed form of order and final judgment, which Settlement Class Counsel shall, at the time set forth by the Court in the Preliminary Approval Order, submit to the Court for its approval in connection with the motion described in this Section, is attached hereto as Exhibit D. Among other things, it:

(i)    certifies that any applicable requirements of CAFA have been met;

(ii)    approves the claims administration and distribution program described at Sections 9 and 10 below, and the resulting allocation of monetary payments to Settlement Class Members, as fair and adequate;

(iii)    determines that the Class Notice and Claim Form were disseminated to the members of the Settlement Classes in compliance with the Court's Preliminary Approval Order, and in full satisfaction of Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process;

(iv)    finally approves the Settlement Agreement, and the settlement contemplated hereby, as fair, reasonable and adequate and in the best interests of the Settlement Class;

        (v)      lists in a sealed appendix all Persons who or which have timely and properly opted out of the Settlement Class as permitted by the Court;

        (vi)      dismisses the Amended Complaint with prejudice, and (except as provided for in this Settlement Agreement) without costs, in favor of the Defendant and against all Settlement Class Members;

        (vii)      provides that each of the Releasors unconditionally, fully and finally releases and forever discharges each of the Defendant Releasees from the Released Claims, and expressly terminates any rights of Settlement Class Members to the protections afforded under Section 1542 of the California Civil Code, Section 20-7-11 of the South Dakota Codified Laws, and/or any other similar, comparable, or equivalent laws;

        (viii)      permanently bars and enjoins all Settlement Class Members, and any Person actually or purportedly acting on behalf of any Settlement Class Member(s), from commencing, instituting, continuing, pursuing, maintaining, prosecuting or enforcing any Released Claim, directly or indirectly, in any judicial, administrative, arbitral, or other forum, against any of the Defendant Releasees;

        (ix)      finds and orders that no act relating to the negotiation, execution or implementation of this Settlement Agreement, shall, (A) result in the waiver of rights, if any, that Defendant may have to require or seek to require arbitration of any Claim with respect to any Person who has timely and properly opted out of the Settlement Class, as permitted by the Court, or (B) in the event there is no Final Settlement Approval or this Settlement Agreement terminates, result in any waiver of the rights of any Defendant to enforce or seek to enforce applicable arbitration rights, if any, or prejudice any Person's ability, if any, to oppose or challenge any claim of arbitration rights on any grounds other than any claim of waiver relating to certification of the Settlement Classes or any other act relating to the negotiation, execution or implementation of this Settlement Agreement; and

        (x)      reserves to the Court exclusive personal and subject matter jurisdiction with respect to the resolution of all matters relating to the implementation or enforcement of this Settlement Agreement and the Final Judgment and Order of Dismissal, including, but not limited to, any disputes relating to or arising out of the Releases, the Covenant Not to Sue or Continue Suit, or any Claim Form submitted for payment from the Net Settlement Amount. In the event that any of the provisions of this Settlement Agreement or the Final Judgment and Order of Dismissal is asserted by any Defendant Releasee as a defense in whole or in part to any Claim or otherwise asserted in any other suit, action or other proceeding brought by a Settlement Class Member or any Person actually or purportedly acting on behalf of any Settlement Class Member(s), that Defendant Releasee shall be entitled to an immediate stay and injunction of that suit, action or other proceeding until the Court has entered an order or judgment finally determining any issues relating to such defense or assertion and no further judicial review of such order or judgment is possible.

5.      **Class Notice and Claim Form.**

(a)      Timing of Class Notice.  Notice to the Settlement Class shall be accomplished within sixty (60) days after the Court's entry of the Preliminary Approval Order and shall be in the forms provided for herein and approved by the Court.

(b)      Mailed Notice.  Defendant will send the Class Notice by mail ("Mailed Notice") to members of the Settlement Class who are reasonably identifiable and who, as of the calendar month in which the Preliminary Approval Order is entered by the Court, are either (i) holders of current FIA credit card accounts who receive their periodic account statements from FIA by mail; or (ii) holders of closed FIA credit card accounts or past holders of FIA credit card accounts for whom FIA has a reasonably accessible mailing address; provided that FIA may, in its discretion and pursuant to Section 5(c) herein, instead of or in addition to Mailed Notice, cause Electronic Notice to be sent to any such members of the Settlement Class who, as of the end of the calendar month in which the Preliminary Approval Order is entered by the Court, are holders of current FIA credit card accounts who receive their periodic account statements from FIA by email.  At FIA's sole discretion, Mailed Notice may be provided through a billing insert accompanying the statement, a standalone mailing, or a combination thereof, and the form of Mailed Notice can vary across different members of the Settlement Class provided such Notice is in either the form of Exhibit B or Exhibit B.1 hereto.  At FIA's discretion, Mailed Notice may not contain the full Class Notice, so long as the Mailed Notice takes the form of Exhibit B.1 and describes how recipients can download or obtain by mail the full Class Notice and Claim Form.  Mailed Notice shall be mailed to the then-current address reflected in FIA's computerized account records.

(c)      Electronic Notice.  Defendant will send the Class Notice and Claim Form by email or other electronic means ("Electronic Notice") to members of the Settlement Class

who are reasonably identifiable and who, as of the  calendar month in which the Preliminary

Approval Order is entered by the Court, are holders of current FIA credit card accounts who

receive their periodic account statements from FIA by email or other electronic means.  In

addition, FIA may, in its discretion, cause Electronic Notice to be sent to any such members of

the Settlement Class for whom FIA has an email address on file.  At FIA's discretion, Electronic

Notice may not contain the full Class Notice and Claim Form, so long as the Electronic Notice

takes the form of Exhibit B.1 and describes how recipients can download the full Class Notice

and Claim Form.  No re-mailing of returned emailed Electronic Notice will be required, but

where Defendant receives notification that Electronic Notice was not received by the intended

recipient Settlement Class members, Defendant shall send Mailed Notice to such Settlement

Class members who are reasonably identifiable and for whom FIA has a reasonably accessible

mailing address.

   (d) <u>Settlement Website Notice</u>.  The Settlement Administrator will establish a

Settlement Website (which shall be distinct from and not linked to any websites belonging to or

otherwise associated with FIA, Settlement Class Counsel, or Representative Plaintiffs) which

will publish, and make available a full-length, downloadable form of the Settlement Agreement,

Class Notice and Claim Form.  The domain name of the website shall be selected by the

Settlement Administrator in consultation with FIA and Settlement Class Counsel.  The

Settlement Website will be established within forty-five (45) days after the  Court's entry of the

Preliminary Approval Order and before the Mailed Notice is mailed or the Electronic Notice is

sent, and shall remain active through at least twenty (20) days after Final Settlement Approval.

   (e) <u>Notice Certification</u>.  Prior to Settlement Class Counsel submitting to the

Court a motion for entry of an order and final judgment, Defendant or the Settlement

Administrator shall serve on Settlement Class Counsel one or more declarations stating that the Mailed Notice, Electronic Notice, and Settlement Website Notice was provided in accordance with the requirements of the Preliminary Approval Order.

6.     **Exclusion and Termination.**

(a)     Members of the Settlement Class will possess the right to exclude themselves from the Settlement Class by sending a written request to an address designated by the Settlement Administrator in accordance with the terms stated in the Class Notice and the Preliminary Approval Order. Any such written requests for exclusion must be postmarked by the date, specified in the Class Notice and the Preliminary Approval Order, that is at least forty (40) days prior to the date set for the Final Approval Hearing. Within three (3) court days after the deadline for the submission of requests for exclusion, the Settlement Administrator shall serve on Settlement Class Counsel a declaration stating the number of, and identifying, the members of the Settlement Class who have delivered timely requests for exclusion.

(b)     Exclusion requests must: (i) include the full name, current mailing address and e-mail address (if any) of the Person(s) requesting exclusion; (ii) be personally signed by the member of the Settlement Class who seeks to opt out; (iii) list the account number(s) for the credit card account on which a late fee or other charges were assessed in connection with Qualifying Payments; and (iv) include the following statement: "I/we request to be excluded from the class settlement in *Trombley v. Bank of America Corporation*, C.A. No. 08-456." In addition, if there are joint account holders for any of the account(s) included in respect of subsection 6(b)(iii) above, the exclusion request must also include an affirmation that the person requesting exclusion has advised any and all joint account holders that they will be excluded from the settlement class as a result of the request for exclusion. No request for exclusion will be valid unless all of the information described above is included. No member of

the Settlement Class may opt out through an actual or purported agent or attorney. No opt out

request may be made on behalf of a group of persons. Settlement Class Counsel, the Settlement

Administrator, and Defendant shall use such opt-out information only for purposes of

determining and/or establishing whether a Person has timely and properly opted out of the

Settlement Class.

        (c)     If a timely and valid request for exclusion is made by a member of the

Settlement Class, then no payment shall be made with respect to any account(s) of such Person.

        (d)     All members of the Settlement Class who do not opt out of the Settlement

Class in accordance with the terms set forth herein will be bound by this Settlement Agreement,

the settlement contemplated hereby, and all determinations and judgments concerning the

Settlement Agreement.

        (e)     If the number of Persons in the Settlement Class who opt out exceeds by a

percentage amount agreed to by the Parties in a confidential side-letter dated June 24, 2011, the

number of Mailed and Electronic Notices sent out by Defendant and/or the Settlement

Administrator, Defendant, in its sole discretion, may terminate the Settlement Agreement by

serving on Settlement Class Counsel and filing with the Court a notice of termination within

twenty one (21) days after the opt-out deadline. In the event that the Settlement is terminated

pursuant to this provision, the Parties will be returned to the status quo *ante* as if no Settlement

Agreement had been negotiated or executed.

      **7.**     **Releases.**

     Upon Final Settlement Approval, each of the Releasors unconditionally, fully and finally

releases and forever discharges each of the Defendant Releasees from each of the Released Claims.

For avoidance of doubt, these Releases do not apply to claims for breach of this Settlement

Agreement.

### 8.    Covenants Not to Sue.

Upon Final Settlement Approval, each of the Releasors hereby covenants and agrees that he, she or it shall not take any step whatsoever to commence, institute, continue, pursue, maintain, prosecute or enforce any Released Claim(s), on behalf of itself or any other Person, against any of the Defendant Releasees.  Upon Final Settlement Approval, each of the Releasors hereby warrants and represents that he, she or it has not assigned, sold or otherwise transferred any Claim that he, she, or it previously had that otherwise would fall within the scope of Sections 7 or 8.

### 9.    Monetary Payment.

(a)    In complete and final settlement of the Litigation, Defendant agrees to pay up to the Settlement Amount.  In no event shall Defendant pay any part of the Settlement Amount before Final Settlement Approval, except for Settlement Costs incurred prior to that date.  The Settlement Amount shall be inclusive of all distributions to Approved Settlement Class Members, Representative Plaintiffs' service award, all attorneys' fees and costs, Settlement Costs, the Cy Pres Amount (if any), and any other deduction from the Settlement Amount that is approved by the Court.  Defendant shall have no liability for any amount beyond the amount set forth above.  Nor shall the Defendant have any obligation to pay any difference between the Settlement Amount and the amount necessary to pay:  (1) all distributions to Approved Settlement Class Members; (2) Representative Plaintiffs' service award; (3) all attorneys' fees and costs: (4) Settlement Costs; (5) the Cy Pres amount (if any); and (6) any other deduction from the Settlement Amount that is approved by the Court, in the event that the sum of (1) through (6) is less than the Settlement Amount.

(b)    Subject to Section 9(c) below, within ninety (90) days of Final Settlement Approval, Defendant shall pay each Approved Settlement Class Member $28 in full satisfaction

of their Claims, provided that if the Net Settlement Amount is insufficient to provide each Approved Settlement Class Member with such $28 payment, Defendant will pay each Approved Settlement Class Member an amount equal to the Net Settlement Amount divided by the number of Approved Settlement Class Members (the "Pro Rata Amount"). Only one valid Claim will be paid per Approved Settlement Class Member, regardless of the number of Qualifying Payments made or late or other fees assessed.

(c)    No Settlement Class Member will receive any payment under this Settlement Agreement unless he, she, or it has been determined to be an Approved Settlement Class Member by the Settlement Administrator in accordance with the terms of this Settlement Agreement.

(d)    Any Approved Settlement Class Member associated with a credit card account that has been written or charged off by Defendant shall not receive a payment from Defendant but will instead have their liability owing to Defendant offset by $28 or the Pro Rata Amount or the amount written or charged off, whichever is the least amount.

(e)    At FIA's discretion, distributions to Approved Settlement Class Members who have an open and active FIA credit card account in good standing at the time of payment will be made by a check mailed to the address stated in each Approved Settlement Class Member's Claim Form or by a credit to a FIA credit card account of each such Approved Settlement Class Member.

(f)    Distributions to Approved Settlement Class Members who do not have an open and active FIA credit card account in good standing at the time of payment and who do not fall within the scope of Section 9(d) above, will be made by mailed check to each such Approved Settlement Class Member at the address stated in her, his or its Claim Form. No skip trace or re-

mailing of returned mail will be required.  Any check sent pursuant to Section 9(e) or Section

9(f) that is not cashed within one-hundred and eighty (180) days shall be voided and of no effect

and the Bank shall have no obligation to reissue such checks or pay such funds through a credit

or otherwise.

      (g)     No interest shall accrue at any time on payments to be made under the

Settlement Agreement, whether those payments are to Approved Settlement Class Members,

Representative Plaintiffs, Settlement Class Counsel or any other Person.

      (h)     After the total cost of distributions to Approved Settlement Class

Members has been determined by the Settlement Administrator, a maximum of $450,000 of any

funds remaining of the Net Settlement Amount shall constitute the Cy Pres Fund and shall be

distributed proportionately to one or more of the following organizations:  Consumer Federation

of America-America Saves program; Consumer Action; and Army Emergency Relief.

      (i)     Defendant shall not oppose an application by Class Counsel for Court

approval for a payment of not more than $5,000 (out of the $5 million) to each of the

Representative Plaintiffs for their service as the representatives of the Settlement Class in the

Action.  Except as specified in this subparagraph and Paragraph 9(b), Defendant shall have no

other further obligation to make any payment to the Representative Plaintiffs or any Settlement

Class Member.

      **10.**   .  **Claims Process and Claims Administration.**

      (a)     To become an Approved Settlement Class Member, a Settlement Class

Member must complete and send an accurate, complete, and truthful Claim Form to the

Settlement Administrator, by first class mail, at the designated Post Office box address stated on

the Claim Form, postmarked no later than the last day of the Claim Period or by submission

through an on-line claim form to be made available by the Settlement Administrator on the

Settlement Website. The Settlement Administrator and FIA will have no obligation to honor any Claim Forms received by mail with a postmark dated after the end of the Claim Period or submitted on-line after the end of the Claim Period, even if such Claim Form otherwise would be valid, or any Claim Form that is not complete, accurate, and truthful. FIA will have no obligation to honor any Claim Form mailed to an address other than the designated Post Office box.

      (b)     The Settlement Administrator shall review each Claim Form timely submitted to determine whether the claimant is an Approved Settlement Class Member. FIA may take such steps as it deems necessary and appropriate in its sole discretion to verify the information provided on Claim Forms by Settlement Class Members and to prevent fraudulent claims. In doing so, FIA shall be entitled to rely on information contained in its business records relating to the Settlement Class Members' accounts. FIA may review any Claim Form at any time, and shall receive on a regular basis reports from the Settlement Administrator stating the number of Approved Settlement Class Members as well as the number of invalid Claim Forms received. Nothing herein is intended or shall be construed to obligate FIA or the Settlement Administrator to verify each or any Claim Form submitted.

      (c)     Claim Forms will be subject to verification by the Settlement Administrator, in consultation with FIA, for sixty (60) days after the last day of the Claim Period. The Settlement Administrator will provide notice of denials to Settlement Class Counsel on a monthly basis beginning one month after the last day of the Claim Period. Settlement Class Counsel will have ten (10) days after receiving a claims report from FIA to dispute any denied claims. Denied claims that are not disputed will remain denied. The Parties will attempt in good faith to resolve any disputed denied claims and, should they fail to resolve any dispute,

Settlement Class Counsel may seek judicial resolution before the Court of any denied claims within twenty (20) days after receiving the operative claims report; otherwise, the claims will remain denied.

    **11.**    **Settlement Administrator.**

    (a)    The Settlement Administrator will be Rust Consulting, Inc.  The Settlement Administrator shall be appointed by the Court in the Preliminary Approval Order and, subject to Court approval, paid from the Settlement Fund for the duties described in this section 11 and elsewhere in the Settlement Agreement, including any Exhibit.

    (b)    In addition to the duties described elsewhere in this Settlement Agreement, including any Exhibit, the Settlement Administrator shall:

    (i)    Establish and operate the Settlement 1-800 Number;

    (ii)    Create, host and maintain the Settlement Website;

    (iii)    If requested by FIA, prepare, print and mail some or all Mailed Notices and Claim Forms, and/or prepare and transmit some or all the Electronic Notices;

    (iv)    Establish and maintain a Post Office box for Claim Form submission, establish and maintain an on-line electronic claim submission system, and compile and process all Claim Forms submitted by mail or on-line;

    (v)    Establish and maintain a Post Office box for requests for exclusion from the Settlement Class and process and compile all requests for exclusion;

    (vi)    If requested by FIA, prepare and distribute checks to Approved Settlement Class Members pursuant to Section 9; and

    (vii)    Maintain and oversee data storage relating to the Settlement Agreement and claims process, and engage in account reconciliation, and general administration incidental to the foregoing.

    **12.**    **Attorneys' Fees and Costs.**

Defendant agrees not to oppose an application by Settlement Class Counsel for attorneys' fees and costs in an amount not to exceed 33-1/3% of the $5 million Settlement Amount, subject to the Court's approval.  The Settlement Agreement and settlement contemplated hereby is not

conditioned upon the Court's approval of the fees or costs sought by Class Counsel. No interest

will accrue on such amounts at any time. The attorneys' fees and costs awarded by the Court

shall be paid out of the Settlement Amount, and FIA shall have no other or further liability for

attorneys' fees and costs, whether of the Representative Plaintiffs, any member of the Settlement

Class, or any Settlement Class Counsel. No such attorneys' fees or costs will be paid until Final

Settlement Approval at the earliest. Attorney fees and costs awarded by the Court shall be paid

by wire transfer to an account specified by Settlement Class Counsel within five (5) business

days of Final Settlement Approval or the Court's award of attorney fees, whichever occurs later.

      **13.**     **Publicity and Confidentiality.**

      (a)     Neither Class Counsel nor Representative Plaintiffs will issue press

releases or make other public statements regarding the Settlement unless FIA agrees to such

press releases or public statements in advance. Neither Settlement Class Counsel nor the

Representative Plaintiffs will make a statement of any kind to any third party regarding the

Settlement Agreement or the settlement contemplated hereby prior to applying for preliminary

approval. The Parties may make public statements to the Court as necessary to obtain

preliminary or final approval of the Settlement. After Preliminary Approval, a Party, Class

Counsel, or Defendant's counsel may say only some or all of the following or substantially the

following in response to inquiries by the press or otherwise without seeking prior approval from

the other Party: that the Settlement was arrived at after extensive negotiations; the Settlement is

fair and reasonable and in the best interest of all Parties and Settlement Class Members; the

Settlement was entered into in order to end costly, burdensome and lengthy litigation; and/or the

Settlement does not constitute any admission of any wrongdoing by Defendant, which continues

to assert that it acted lawfully at all times. In addition, in response to inquiries or requests by the

press or otherwise, Class Counsel and Defendant's Counsel may provide copies of the Complaint

and executed settlement documents. This subsection shall not prohibit Settlement Class Counsel from communicating with any Settlement Class Member or from communicating with any state or federal authority by whom Settlement Class Counsel are contacted regarding the Litigation or the Settlement Agreement; provided, however, that Settlement Class Counsel must comply with all confidentiality agreements and protective orders in the Litigation in communicating with such persons and will not disclose information that it obtained from Defendant in any form (hardcopy or electronic documents or through representations of counsel or otherwise) during discovery or through negotiations to settle and resolve this case.

(b)     Settlement Class Counsel, on behalf of themselves and their expert witnesses and consultants as well as others retained by them, acknowledge that during the course of the Litigation, they have received Confidential Information. It is agreed that, within thirty (30) days after the Final Settlement Approval, the originals and all copies of all confidential documents and/or information subject to any confidentiality agreements and/or any protective orders in the Litigation shall either be returned to the designating party or destroyed, and each counsel who received such protected documents and/or information shall furnish a certification attesting to such return or destruction. Within the same time period, Settlement Class Counsel will identify for FIA any expert witnesses, outside consultants, or other individuals or entities to whom they provided Confidential Information, and will obtain from those persons all copies of Confidential Information and will return those copies to FIA or, not later than thirty (30) days after Final Settlement Approval, certify that Settlement Class Counsel have destroyed such copies.

**14.     Non-Disparagement.**

The Representative Plaintiffs and Settlement Class Counsel agree to refrain from disparaging FIA and the other Released Parties in the media (including, without limitation,

descriptions on the websites of Settlement Class Counsel) regarding any issue related to this case. FIA agrees to refrain from disparaging the Representative Plaintiffs and Settlement Class Counsel in the media regarding any issue related to this case. Failure to abide by this provision will constitute a breach of this Settlement Agreement.

### 15.    Notices.

Any communication, verification, or notice sent by any Party in connection with this Settlement shall be given by email or overnight mail as follows:

To Representative Plaintiffs and/or Settlement Class Counsel:

Michael D. Donovan
Donovan Searles & Axler, LLC
1845 Walnut Street, Suite 1100
Philadelphia, Pennsylvania 19103
mdonovan@donovansearles.com

-and-

Andrew S. Kierstead
The Law Office of Andrew S. Kierstead
1001 SW 5th Avenue, Suite 1100
Portland, Oregon 97204
AJKIER@aol.com

-and-

Michael J. Quirk
Williams Cuker Berezofsky, LLC
1515 Market Street, Suite 1300
Philadelphia, Pennsylvania 19102
mquirk@wcblegal.com

-and-

Peter N. Wasylyk
Law Offices of Peter N. Wasylyk
1307 Chalkstone Avenue
Providence, Rhode Island 02903
PNWLAW@aol.com

To FIA:

Mark P. Ladner
David J. Fioccola
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, New York
mladner@mofo.com
dfioccola@mofo.com

**16.     No Admission of Liability.**

It is expressly declared and acknowledged that Defendant denies any liability for the

wrongdoings alleged in the Litigation and is settling solely to avoid the cost, uncertainties, and

inconvenience of litigation.

**17.     Settlement Conditioned Upon Approval.**

The settlement reflected by this Settlement Agreement is expressly conditioned on entry

of the Preliminary Approval Order and the Final Judgment and Order of Dismissal with

Prejudice without material modification by the Court.  In the event of a failure to obtain any of

the required provisions of such orders, including, but not limited to, the denial of any motion

seeking preliminary or final approval of the Settlement or a substantive modification of the

Preliminary Approval Order and the Final Judgment and Order of Dismissal with Prejudice by

the Court or as a result of any appeal, this Settlement Agreement and settlement contemplated

hereby will become null and void, and all Parties will return, without prejudice, to the status quo

*ante* as of the date of this Settlement Agreement as if this Settlement Agreement had not been

executed.  In such event, certification of the Settlement Class will be void, no doctrine of waiver,

estoppel or preclusion shall be asserted in any litigated certification proceedings in the Litigation,

and this Settlement Agreement and its negotiation, terms and existence shall be inadmissible to

establish any fact relevant to class certification or any alleged liability of FIA for the matters

alleged in the Litigation or for any other purpose whatsoever.

### 18.    Effect of Settlement.

Neither the Settlement Agreement, nor any act performed or document exchanged or executed pursuant to or in negotiation of or in furtherance of the Settlement Agreement: (i) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, or of any alleged wrongdoing or liability of the Released Parties; (ii) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of the Released Parties in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal; or (iii) is or may be deemed to be a waiver of FIA's right to seek to enforce any arbitration provision in other cases or against any members of the Settlement Class who opt out. The Released Parties may file the Settlement Agreement and/or the Preliminary Approval Order and the Final Judgment and Order of Dismissal with Prejudice in any action or proceeding that may be brought against them in order to enforce the provisions of the Settlement Agreement or to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

### 19.    Evidentiary Preclusion.

In the event that the Settlement Agreement is not approved as presented, or FIA withdraws from the Settlement Agreement as set forth herein, the Parties agree that neither the settlement terms nor any publicly disseminated information regarding the Settlement Agreement, including, without limitation, the Mailed, Electronic, or Settlement Website Notices, or any court filings, orders and public statements, may be used as evidence for any purpose whatsoever. In addition, neither the fact of, nor any documents relating to, FIA's withdrawal from the Settlement Agreement, any failure of the Court (or on appeal) to approve the settlement and/or any objections or interventions may be used as evidence for any purpose whatsoever.

**20.    Parties Authorized to Enter into Settlement Agreement.**

The individual(s) executing this Settlement Agreement on behalf of a Party represent and warrant that he, she, or it is fully authorized to execute this Settlement Agreement on such party's behalf and to carry out the obligations provided for therein. Each person executing this Settlement Agreement on behalf of a Party covenants, warrants and represents that he or she is and has been fully authorized to do so by such Party. Each Party represents and warrants that he, she, or it intends to be bound fully by the terms of this Settlement Agreement.

**21.    No Additional Persons with Financial Interest.**

Representative Plaintiffs and Settlement Class Counsel warrant and represent that they are not aware of any Persons having any interest in any award of attorneys' fees, costs, and litigation expenses in connection with the Litigation other than Settlement Class Counsel. Representative Plaintiffs and Settlement Class Counsel agree to indemnify and hold FIA harmless from any claim by any Person for an award of attorneys' fees, costs, and litigation expenses in connection with the Litigation.

**22.    No Attempt by Parties to Object.**

Representative Plaintiffs, Settlement Class Counsel, and FIA each represent and warrant that they have not attempted to, nor will they, solicit, encourage, or assist in any fashion any effort by any Person to object to the Settlement Agreement or the settlement contemplated hereby.

**23.    Signatures.**

The Parties and their counsel may sign separate copies of this Settlement Agreement, which together will constitute one Settlement Agreement. In addition, signatures sent in pdf format, by email, or by facsimile constitute sufficient execution of the Settlement Agreement.

### 24. Best Efforts.

The Parties agree to cooperate in preparing and reviewing the documents and performing all other acts contemplated herein in a timely manner. Settlement Class Counsel and FIA consider the settlement described herein to be fair and reasonable and will use their best efforts to seek approval of the settlement by the Court, including by responding to any objectors, intervenors or other persons or entities seeking to preclude entry of the Final Judgment and Order, and, if the settlement is granted final approval, to effectuate the settlement's terms. Notwithstanding the foregoing, FIA shall have no obligation to join in any motions for preliminary or final approval.

### 25. Time Periods.

The time periods and dates described in this Settlement Agreement with respect to the giving of Class Notice and hearings will be subject to Court approval and modification by the Court or by written stipulation of counsel.

### 26. Governing Law.

The Settlement Agreement is governed by the laws of the State of Delaware.

### 27. No Construction Against Drafter.

The Settlement Agreement is deemed to have been drafted by all Parties, and any rule that a document shall be interpreted against the drafter will not apply to this Settlement Agreement.

### 28. Settlement Agreement Binding on Successors in Interest.

This Settlement Agreement is binding on and shall inure to the benefit of the respective heirs, successors, and assigns of the Parties. The Defendant Releasees other than the Defendant are third-party beneficiaries authorized to enforce the Releases in Section 7 (and all waiver of rights therein), the Covenant Not to Sue in Section 8, the Preliminary Approval Order, and the Final Judgment and Order of Dismissal, as applicable to them.

### 29.    Execution in Counterparts.

This Settlement Agreement is effective upon its execution by all Parties. The Parties may execute the Settlement Agreement in counterparts.  Each counterpart shall be deemed to be an original, and execution of counterparts shall have the same force and effect as if all Parties had signed the same instrument.

### 30.    Entire Settlement Agreement.

This Settlement Agreement, including the exhibits hereto and the confidential side-letter dated June 24, 2011 (referred to in Section 6(e)), contains the entire Settlement Agreement between the Parties and supersedes all prior understandings, Settlement Agreements, negotiations or writings regarding the subject matter of this Settlement Agreement.  This Settlement Agreement may be amended or modified only by a written instrument signed by all Parties or their successors in interest or their duly authorized representatives.

### 31.    Miscellaneous Provisions.

(a)    Each and every exhibit to this Settlement Agreement is incorporated herein by this reference as though fully set forth herein.

(b)    The waiver by one party of any breach of this Settlement Agreement by any other Party shall not be deemed a waiver, by that Party or by any other Party, of any other prior or subsequent breach of this Settlement Agreement.

(c)    Each Party to this Settlement Agreement warrants that he, she or it is acting upon his, her or its independent judgment and upon the advice of his, her or its own counsel and not in reliance upon any warranty or representation, express or implied, of any nature or kind by any other Party, other than the warranties and representations expressly made in this Settlement Agreement.

(d)     This Settlement Agreement has been carefully read by each of the Parties, or their responsible officers thereof, and its contents are known and understood by each of the Parties. This Settlement Agreement is signed freely by each party executing it.

(e)     No party to this Settlement Agreement has heretofore assigned, transferred or granted, or purported to assign, transfer or grant, any of the claims, demands, or cause or causes of action disposed of or released by this Settlement Agreement.

(f)     The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Settlement Agreement, and all Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in this Settlement Agreement.

IN WITNESS WHEREOF, the Parties hereto have caused this Settlement Agreement to be executed:

Dated: 6/25 __, 2011          PLAINTIFF BRUCE J. TROMBLEY

                              _____
                              Bruce J. Trombley

Dated: 6/26 __, 2011          PLAINTIFF RYAN SUKASKAS

                              _____
                              Ryan Sukaskas

Dated: __, 2011               FIA CARD SERVICES, N.A.


                              By:_____
                                 Gail C. Kilmer
                                 Senior Card Marketing Product Executive

ny-971162                     34

IN WITNESS WHEREOF, the Parties hereto have caused this Settlement Agreement to be executed:

Dated: ___, 2011                    PLAINTIFF BRUCE J. TROMBLEY


_____
Bruce J. Trombley


Dated: ___, 2011                    PLAINTIFF RYAN SUKASKAS


_____
Ryan Sukaskas


Dated: _June 27,_ 2011               FIA CARD SERVICES, N.A.


By: _____
Salvatore J. Rossi
Unsecured Borrowing & Small Business Products
Executive

APPROVED AS TO FORM:

Dated: 6/23/11 , 2011

Donovan Searles, LLC

Michael D. Donovan
CO-COUNSEL FOR REPRESENTATIVE PLAINTIFFS

Dated: __, 2011

The Law Office of Andrew S. Kierstead

Andrew S. Kierstead
CO-COUNSEL FOR REPRESENTATIVE PLAINTIFFS

Dated: __, 2011

Williams Cuker Berezofsky, LLC

Michael J. Quirk
CO-COUNSEL FOR REPRESENTATIVE PLAINTIFFS

Dated: __, 2011

The Law Offices of Peter N. Wasylyk

Peter N. Wasylyk
CO-COUNSEL FOR REPRESENTATIVE PLAINTIFFS

ny-971162

35

APPROVED AS TO FORM:

Dated: __, 2011

Donovan Searles, LLC

_____
Michael D. Donovan
CO-COUNSEL FOR REPRESENTATIVE PLAINTIFFS

Dated: 6-24/2011

The Law Office of Andrew S. Kierstead

_____
Andrew S. Kierstead
CO-COUNSEL FOR REPRESENTATIVE PLAINTIFFS

Dated: __, 2011

Williams Cuker Berezofsky, LLC

_____
Michael J. Quirk
CO-COUNSEL FOR REPRESENTATIVE PLAINTIFFS

Dated: __, 2011

The Law Offices of Peter N. Wasylyk

_____
Peter N. Wasylyk
CO-COUNSEL FOR REPRESENTATIVE PLAINTIFFS

ny-971162                                    35

APPROVED AS TO FORM:

Dated: __, 2011

                         Donovan Searles, LLC


                         _____
                         Michael D. Donovan
                         CO-COUNSEL FOR REPRESENTATIVE PLAINTIFFS

Dated: __, 2011             The Law Office of Andrew S. Kierstead


                         _____
                         Andrew S. Kierstead
                         CO-COUNSEL FOR REPRESENTATIVE PLAINTIFFS

Dated: June 23, 2011        Williams Cuker Berezofsky, LLC


                         _____
                         Michael J. Quirk
                         CO-COUNSEL FOR REPRESENTATIVE PLAINTIFFS

Dated: __, 2011             The Law Offices of Peter N. Wasylyk


                         _____
                         Peter N. Wasylyk
                         CO-COUNSEL FOR REPRESENTATIVE PLAINTIFFS

APPROVED AS TO FORM:

Dated: __, 2011

Donovan Searles, LLC

_____
Michael D. Donovan
CO-COUNSEL FOR REPRESENTATIVE PLAINTIFFS

Dated: __, 2011

The Law Office of Andrew S. Kierstead

_____
Andrew S. Kierstead
CO-COUNSEL FOR REPRESENTATIVE PLAINTIFFS

Dated: __, 2011

Williams Cuker Berezofsky, LLC

_____
Michael J. Quirk
CO-COUNSEL FOR REPRESENTATIVE PLAINTIFFS

*6/27*

Dated: __, 2011

The Law Offices of Peter N. Wasylyk

_____
Peter N. Wasylyk
CO-COUNSEL FOR REPRESENTATIVE PLAINTIFFS

ny-971162

35

APPROVED AS TO FORM:

June
Dated: 27, 2011

MORRISON & FOERSTER, LLP

Mark P. Ladner
David J. Fioccola
COUNSEL FOR DEFENDANT
FIA CARD SERVICES, N.A.

**Exhibit B**

## CLAIM FORM

This form is being sent to you as a result of the settlement of a class action titled *Bruce J. Trombley and Ryan Sukaskas v. Bank of America Corporation.* FIA Card Services, N.A. ("FIA") is the successor-in-interest to Bank of America, N.A. (USA) and is a wholly owned subsidiary of Bank of America Corporation. FIA is the subsidiary through which Bank of America Corporation issues credit cards. FIA's records show that you had a credit card account with FIA or its predecessor, Bank of America, N.A. (USA), between August 1, 2006 and February 22, 2010.

If you made a payment to your account on or before your payment due date, and were assessed a late payment fee, finance charge, or other fees, penalties or charges in connection with that payment, you may have the right to a payment in the amount of up to $28. Under the terms of the settlement, you are only eligible to receive a single payment of up to $28, regardless of how many payments you made during the relevant time period that meet the above criteria. Any benefit you receive will be paid to you by credit to your active FIA credit card account or by a check, which will be mailed to you at the address stated on this Claim Form. The deadline to file a claim is [DATE = 15 days after the Final Approval Hearing].

To evaluate whether you are entitled to receive a benefit, please fill out this form and mail it to:
[Address]

Your name, as it appears on your credit card(s):

_____
*First*                                *Middle*                                *Last*

Address:

_____
*Street*                                *City*                                *State*                *Zip Code*

Daytime Phone: (____) _____   Email: _____

Bank of America Credit Card Account Number: ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐
The last 4 digits of your Social Security Number: ☐☐☐☐

*Between August 1, 2006 and February 22, 2010,*

*I made a payment equal to or in excess of the minimum payment due:*

   ☐ in person at a Bank of America banking center
   ☐ by phone using Bank of America's pay-by-phone service
   ☐ electronically using Bank of America's online banking services

*on or before my payment due date and was assessed a late payment fee, finance charge, or other fees, penalties or charges that were not refunded or reversed.*

*I declare under penalty of perjury under the laws of the United States of America that the information provided on this form is true to the best of my knowledge.*

Signature: _____

Name (please print): _____
Claim form Identification Number:

**Exhibit C**
**Notice – Long Form**

## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

### Notice of Bank of America Fee Litigation Settlement

If you received this Notice by mail or electronically, you could be eligible for a cash payment or account credit related to a payment made to your account on or before your payment due date for which you were assessed a late payment fee, finance charge or other fees, penalties or charges in connection with that payment

*A federal court authorized this Notice. This is not a solicitation from a lawyer.*

- Your legal rights are affected whether you act or don't act. Read this Notice carefully.
- **For a full statement of your rights and options as a member of the Settlement Class, you should refer to the complete Settlement Agreement. The terms of the Settlement Agreement trump in case of any discrepancies between this Settlement Notice and the Settlement Agreement.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS LAWSUIT | |
|---|---|
| **SUBMIT A CLAIM FORM** | **The only way to get payment.** If you timely submit a valid Claim Form (enclosed). |
| **ASK TO BE EXCLUDED** | **Receive no payment. Get out of this lawsuit. Keep rights.** If you ask to be excluded you are not eligible to receive payment from this lawsuit, but you will maintain the right to bring a lawsuit against Bank of America for the same or similar legal claims in this lawsuit. |
| **COMMENT OR OBJECT** | **Write the Court about why you like or don't like the Settlement.** You may write the Court indicating why you like or dislike the Settlement. You must remain a member of the lawsuit (*i.e.,* you cannot ask to be excluded) in order to object to the Settlement. |
| **DO NOTHING** | **Get no payment. Give up rights.** By doing nothing, you will not recover money from the class action Settlement. You will also give up any rights to sue Bank of America separately about the same or similar legal claims in this lawsuit. |

- These rights and options—and the deadlines to exercise them—are explained in this Notice.
- The Court in charge of this case still has to decide whether to approve the Settlement. Payments will be made if the Court approves the Settlement and after appeals, if any, are resolved.

## CONTENTS

### Basic Information

1.  What is the purpose of this Notice?
2.  What is this class action lawsuit about?
3.  What is a class action lawsuit and who is involved?
4.  Why is there a Settlement?

### Who Is In The Settlement?

5.  Am I part of this Class?
6.  I'm still not sure if I am included.

### Settlement Benefits—What You Get

7.  Who gets paid?
8.  How much will I get?
9.  How do I get paid?
10. What if I don't timely mail a completed Claim Form and documentation?
11. When do I get my payment?
12. What am I giving up to get a payment and stay in the Class?

### Excluding Yourself From The Settlement

13. How do I get out of this Settlement?
14. If I don't exclude myself, can I sue Bank of America later?
15. If I exclude myself, can I get money from this Settlement?

### The Lawyers Representing You

16. Do I have a lawyer in this case?
17. Should I get my own lawyer?
18. How will the lawyers be paid and will there be incentive payments?

### Supporting Or Objecting To The Settlement

19. How do I tell the Court that I like or do not like the Settlement?
20. What is the difference between objecting and excluding?

### Fairness Hearing

21. When and where will the Court decide to approve the Settlement?
22. Do I have to come to the hearing?
23. May I speak at the hearing?

### If You Do Nothing

24. What happens if I do nothing at all?

### Additional Information

25. Are there more details available?

### Appendix - Release

## BASIC INFORMATION

### 1. What is the purpose of this Notice?

You have been identified as a current or former Bank of America credit card account holder between August 1, 2006 and February 22, 2010.

A class action lawsuit is pending in the United States District Court for the District of Rhode Island known as *Bruce J. Trombley and Ryan Sukaskas v. Bank of America Corporation*, C.A. No. 08-456 (D.R.I.). Judge Joseph DiClerico, who is overseeing this case, authorized this Notice. You have a right to know about the class action lawsuit and proposed Settlement. As a Class Member you have various options that you may exercise before the Court decides whether to approve the Settlement. If the Court approves the Settlement, and after appeals are resolved, if any, Bank of America will make payments pursuant to the Settlement to Class Members that submit timely and valid Claims.

This Notice explains the lawsuit, the Settlement, your legal rights, the available benefits, who is eligible for them, and how to get them.

### 2. What is this class action lawsuit about?

The plaintiffs in this case are Bruce J. Trombley and Ryan Sukaskas. They allege, on behalf of themselves and other similarly situated Bank of America credit cardholders, that Bank of America failed to apply same-day credit to payments made by the plaintiffs to their Bank of America credit card accounts on or before the payment due date, resulting in an assessment of a late payment fee, finance charge, or other fees, penalties or charges to plaintiffs' accounts. Plaintiffs allege that this assessment of fees is in violation of Bank of America's Cardholder Agreement. Bank of America denies that it did anything wrong.

You can read the Class Action Complaint at www._____.com.

### 3. What is a class action lawsuit and who is involved?

In a class action lawsuit, one or more persons called "Class Representatives" sue on behalf of other people who have similar claims. All of these people together are called a "Class" or "Class Members." The Class Representatives - and all Class Members like them - are called the Plaintiffs. The company they sued (in this case Bank of America) is called the Defendant. The lawyers who represent the Class are called "Class Counsel." In a class action lawsuit, all factual questions and legal issues are resolved for everyone in the Class - except for those people who choose to exclude themselves from the Class.

### 4. Why is there a Settlement?

The Court did not decide in favor of Plaintiffs or Defendant. Instead, both sides agreed to a Settlement. That way, they avoid the cost of a trial, and the people affected will get compensation quickly. The Class Representatives and Class Counsel think the Settlement is best for everyone who has held a credit card account with Bank of America.

## WHO IS IN THE SETTLEMENT?

### 5. Am I part of this Class?

According to Bank of America's records, you have or had a Bank of America credit card account, and were assessed a late payment fee, finance charge or other fees, penalties or charges in conjunction with a payment made on or before the payment due date, between August 1, 2006 and February 22, 2010. If this is true about you, you are a member of the Settlement Class.

The Class includes all residents of the United States, including the Commonwealth of Puerto Rico, U.S. Virgin Islands, and Guam, who are current or former credit card account holders with Bank of America. The Class includes the following:

- All Persons who, at any time between August 1, 2006 and February 22, 2010: (a) had a credit card account with FIA; (b) made a Qualifying Payment in connection with that account (i) in person at a Bank of America banking center; (ii) by phone using Bank of America's pay-by-phone service; or (iii) electronically using Bank of America's online banking services; and (c) incurred a late payment fee, finance charge, or other fees, penalties or charges, in connection with the timing of such payment that FIA did not subsequently waive or refund.
- A Qualifying Payment is a payment by the holder of a FIA-issued credit card account on that FIA-issued credit card account where the payment is (x) equal to or in excess of the minimum payment due for the monthly billing cycle in which it is made; (y) not determined by Defendant to be deficient for non-sufficient funds; and (z) made, or alleged by the cardholder to be made, on or before the same day as the payment due date or other deadline stated in the operative cardholder agreement, cardholder statement or other disclosure to the cardholder.

### 6. I'm still not sure if I am included.

If this notice was mailed or electronically transmitted to you, Bank of America's records reflect that you may be a member of the Settlement Class. If you are still not sure whether you are included, you can get free help at Insert Claims Administrator www, or by writing Class Counsel at the addresses listed in question 19, below.

## SETTLEMENT BENEFITS – WHAT YOU GET

### 7. Who gets paid?

Settlement Class Members who submit a valid Claim Form, in accordance with the procedure described below, will receive a distribution of up to $28 in full satisfaction of their claims. Distribution will be made by crediting active credit card accounts or mailing checks to Settlement Class Members at the addresses stated on their respective Claim Forms.

### 8. How much will I get?

Class Members can get **cash payment or account credit of up to $28** for fees or penalties imposed on their credit card accounts.

### 9. How do I get paid? To get paid, you have to do 4 things:

(1) Complete the Claim Form;

(2) Provide your account number and the last four digits of your social security number;

(3) On the Claim Form, **sign and date** at the bottom; and

(4) **Timely Submit the Claim Form**: Claims Forms must be submitted to the Settlement Administrator, via First Class Mail, at the address stated on the Claim Form, post-marked no later that [DATE – 15 days after the Final Approval Hearing]. You may also submit a claim through an online claim form available at _____, submitted no later than [DATE – 15 days after the Final Approval Hearing].

As part of the Claim Form, you will attest under penalty of perjury that you had a credit card with Bank of America and that between August 1, 2006 and February 22, 2010 you made a payment to your account on or before your payment due date, and that you were assessed a late payment fee, finance charge, or other fees, penalties or charges in connection with that payment.

The Claims Deadline, along with the Claim Form, will be posted at **www._____.com**.

### 10. What if I don't timely submit a completed Claim Form?
If you fail to mail or electronically submit a completed Claim Form by the required deadline, you will not get paid. Sending in a Claim Form late or without all the information will be the same as doing nothing (see question 24).

### 11. When do I get my payment?
The Court will hold a fairness hearing on **DATE** to decide whether to approve the Settlement as fair, reasonable, and adequate. If Judge DiClerico approves the Settlement, there may be appeals which may delay the conclusion of the case. It is always uncertain whether these appeals can be resolved, and resolving them can take time, perhaps more than a year. Information about the progress of the case will be available at **www._____.com**.

### 12. What am I giving up to get a payment and stay in the Class?
Unless you exclude yourself, you will be part of the Settlement Class. The Court orders approving the Settlement and the judgment in the case will apply to you and legally bind you.

Upon Final Settlement Approval, you unconditionally, fully and finally release and forever discharge each of the Defendant Releasees from each of the Released Claims, as defined in Section 2(w) of the Settlement Agreement, and agree to abide by the terms of the Release and Covenants Not To Sue contained in Sections 7 and 8 of the Settlement Agreement. In so doing, you are agreed not to sue Bank of America ever again about any past, present or future claims based on or related to the conduct covered by the class action. You can read the full text of the

definition of Released Claims, the Release, and the Covenant Not To Sue in Appendix A to this Notice.

If you want the right to sue Bank of America on your own about its crediting of payments to credit card accounts, including without limitation, failure to credit such payments by a given date, you must exclude yourself from the Settlement Class in this case. If you exclude yourself, you will not be eligible to recover any benefits as a result of the settlement of the action.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

### 13. How do I get out of this Settlement?

To exclude yourself from the Settlement, you must send a letter by U.S. mail saying that you want to be excluded from *Bruce J. Trombley and. Ryan Sukaskas v. Bank of America Corporation*, C.A. No. 08-456 (D.R.I.). To be valid, your exclusion request must include:

- Your full name, current mailing address, and e-mail address (if any);

- The account number(s) for the credit card account on which a late payment fee, finance charge, or other fees, penalties or charges were assessed;

- Identification of any joint account holders for any of the account(s) listed, and if there are any, an affirmation that you have advised any and all joint account holders that they will be excluded from the settlement class as a result of your request for exclusion;

- The following statement "I/we request to be excluded from the class settlement in *Bruce J. Trombley and Ryan Sukaskas v. Bank of America Corporation*"; and

- Your signature.

You must mail your exclusion request to the following address so that it is received no later than [DATE – 40 days prior to the Final Approval Hearing]:

## ADDRESS NEEDED

Requests for exclusion form the Settlement Class that are not received on or before [DATE – 40 days prior to the Final Approval Hearing] will not be honored. You cannot exclude yourself from the Settlement Class by telephone or e-mail. You cannot exclude yourself by mailing a request to any other location, or after the deadline. You cannot exclude yourself by having an actual or purported agent or attorney acting on behalf of you or a group of Settlement Class members sign the letter. You must personally sign the letter to be excluded from the class.

### 14. If I don't exclude myself, can I sue Bank of America later?

ny-974741                                      7

No, not for the same or similar legal claims at issue here.

### 15. If I exclude myself, can I get money from this Settlement?
No. If you exclude yourself from the Class you won't get any money or benefits from this
Settlement. If you exclude yourself, you should not submit a Claim Form to ask for money from
the class action Settlement. You cannot do both.

## THE LAWYERS REPRESENTING YOU

### 16. Do I have a lawyer in this case?
The Court has decided that the law firms Donovan Searles & Axler LLC of Philadelphia, PA,
Williams Cuker Berezofsky, LLC of Philadelphia, PA, Law Offices of Andrew Kierstead of
Portland, OR, and Law Offices of Peter Wasylyk of Providence, RI, are qualified to represent
you and all Class Members. Together these law firms are called "Class Counsel." They are
experienced in handling similar cases against other credit card issuers and banks. More
information about these law firms, their practices, and their lawyers' experience is available at
www.donovansearles.com and www.[].com.

### 17. Should I get my own lawyer?
You do not need to hire your own lawyer because Class Counsel is working on your behalf. If
you want your own lawyer, you may hire one at your own cost.

### 18. How will the lawyers be paid and will there be incentive payments?
Class Counsel has not received any fees or reimbursement for any of the expenses associated
with this case and will ask the Court for an award of attorneys' fees and expenses that does not
exceed $1,650,000. In addition, Class Counsel will ask that the Court award each of the Class
Representatives a $5,000 service award in recognition of their efforts on behalf of the Class.
Any fees, expenses or incentive awards that Class Counsel request must be approved by the
Court. Class Counsel will request that their fees and expenses, and the incentive awards, be paid
directly by Bank of America, which means they will not reduce the recovery to you and other
members of the Class.

## SUPPORTING OR OBJECTING TO THE SETTLEMENT

### 19. How do I tell the Court that I like or do not like the Settlement?
If you are a Class Member, you can tell the Court you like the Settlement and it should be
approved, **or** that you object to the Settlement if you do not like a part of it. The Court will
consider all comments from Class Members.

To object, you must send a letter saying that you are commenting on the Settlement in *Bruce J.
Trombley and. Ryan Sukaskas v. Bank of America Corporation*, C.A. No. 08-456 (D.R.I.), and
you must include your full name, current address, telephone number, credit account number and
documents sufficient to show you are a Class member, your factual and legal grounds for
objecting, any documents supporting your objection, and your signature. Any Class Member
objecting to the Settlement must provide a detailed list of any other objections submitted by the

objector, or the objector's counsel, to any class action settlements submitted in any court in the previous five (5) years. If the Class Member or his or her counsel has not objected to any other class action settlement in any court in the United States in the previous five (5) years, he, she or it shall affirmatively so state in the written materials provided with the objection. If you intend to appear at the fairness hearing through counsel, your comment must also state the identity of all attorneys representing you who will appear at the fairness hearing. Be sure to send your objection to the three different places set forth below such that it is received no later than [DATE – 40 days prior to the Final Approval Hearing]:

| No. 1 Court | No. 2 Class Counsel | No. 3 Defense Counsel |
|---|---|---|
| **Clerk of the Court** **United States District Court of Rhode Island** **Federal Building and Courthouse** **One Exchange Terrace** **Providence, RI 02903** | **Law offices of Peter N. Wasylyk** c/o Peter Wasylyk 1307 Chalkstone Avenue Providence, RI 02903 <br><br> or <br><br> **Donovan Searles & Axler, LLC** c/o Michael Donovan 1845 Walnut Street, Suite 1100 Philadelphia, PA 19103 | **MORRISON & FOERSTER LLP** c/o Mark P. Ladner 1290 Avenue of the Americas New York, New York 10104 |

If you file an objection, Class Counsel or Counsel for Bank of America are allowed to notice and take your deposition consistent with the Federal Rules of Civil Procedure at an agreed-upon location before the fairness hearing, and to seek any documentary evidence or other tangible things that are relevant to the objection. Failure by an objector to comply with discovery requests may result in the Court striking the objector's objection and otherwise denying that person the opportunity to make an objection or be further heard. The Court reserves the right to tax the costs of any such discovery to the objector or the objector's counsel should the Court determine that the objection is frivolous or is made for an improper purpose.

If you do not submit a written comment on the proposed Settlement or the application of Class Counsel for Incentive Awards, attorneys' fees and expenses in accordance with the deadline and procedure set forth above, you will waive your right to be heard at the fairness hearing and to appeal from any order or judgment of the Court concerning the matter.

### 20. What is the difference between objecting and excluding?
Objecting is simply telling the Court that you do not like something about the Settlement. You can object only if you stay in the Class. Excluding yourself is telling the Court that you do not want to be part of the Class. If you exclude yourself, you have no basis to object because the case no longer affects you.

## FAIRNESS HEARING

### 21. When and where will the Court decide to approve the Settlement?

The Court will hold a fairness hearing at 10:00 a.m. on **DATE in courtroom # United States District Court of Rhode Island, Federal Building and Courthouse, One Exchange Terrace, Providence, RI 02903.** At this hearing the Court will consider whether the Settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. Judge DiClerico may listen to people who have asked to speak at the hearing. The Court may also decide how much to pay Class Counsel or whether to approve incentive awards. After the hearing, the Court will decide whether to approve the Settlement. We do not know how long it will take for the Court to make its decision.

### 22. Do I have to come to the hearing?

No; Class Counsel will answer questions Judge DiClerico may have, but you are welcome to come at your own expense. If you send an objection, you do not have to come to Court to talk about it. As long as you sent your written objection such that it is received on time, the Court will consider it. You may also pay your own lawyer to attend, but it is not necessary.

### 23. May I speak at the hearing?

If you do not exclude yourself, you may ask the Court's permission to speak at the hearing concerning the proposed Settlement or the application of Class Counsel for attorneys' fees and expenses. To do so, you must send in a letter saying that it is your notice of your intention to appear at the fairness hearing in *Bruce J. Trombley and. Ryan Sukaskas v. Bank of America Corporation*, C.A. No. 08-456 (D.R.I.). The letter must state the position you intend to present at the hearing, state the identities of all attorneys who will represent you (if any), and must include your full name, current address, telephone number, and the last four digits of your credit card account. You must send your notice to the Clerk of the Court, Class Counsel, and defense counsel at the three addresses listed under question 19 above, such that it is *received* no later than **DATE.** You may combine this notice and your comment (described under question 19) in a single letter. You cannot speak at the hearing if you excluded yourself.

## IF YOU DO NOTHING

### 24. What happens if I do nothing at all?

If you do nothing, you will remain a member of the Settlement Class but you will get no money from this Settlement. Unless you exclude yourself, you won't be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Bank of America about the legal issues in this case, ever again.

## ADDITIONAL INFORMATION

### 25. Are there more details available? Visit the website www._____.com, where you can

find Claim Forms, information on the litigation and Settlement, and documents such as the Class Action Complaint filed by the Plaintiffs.

Updates regarding the case will be available at the website.

You may also call Class Counsel at 1- or write them at the addresses in 19 above.

## APPENDIX A

## RELEASED CLAIMS, RELEASES, AND COVENANTS NOT TO SUE

As indicated in the Settlement Notice section titled **12. What am I giving up to get a payment and stay in the Class?** the following text has been excerpted from the Settlement Agreement and included here for your reference. All capitalized terms have the meaning provided in the Settlement Agreement.

### Definition of Released Claims

"Released Claims" means any and all Claims (i) that in whole or in part arise out of or relate to any late payment or other fees or charges of any kind assessed by FIA on Qualifying Payments up through the date of Preliminary Approval, including, without limitation, any and all Claims based in whole or in part on any act, omission, event, incident, matter, dispute, fact, business practice, transaction or occurrence, or injury up through the date of Preliminary Approval regarding FIA's crediting of payments to credit card accounts, including, without limitation, failure to credit such payments by a given date; or (ii) that are or could have been asserted within the scope of the facts asserted in the Litigation; or (iii) that arise out of or relate in any way to the administration of the Settlement Agreement, other than claims for breach of the Settlement Agreement.

Released Claims include, without limitation, all Claims described in the prior sentence that arise under, or which could arise under, any federal, state or other law relating to disclosure (e.g., the Truth in Lending Act, 15 U.S.C. sec. 1601 et seq., Regulation Z, 12 C.F.R. pt. 226, Article 10 of the New York Personal Property Law, or the Song-Beverly Credit Card Act, Section 1747 et seq. of the California Civil Code), or consumer protection or unfair or deceptive acts or practices (e.g., the Fair Credit Billing Act, 15 U.S.C. 1666C et seq., 12 C.F.R. 226.10, Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. sec. 501.201 et seq., Section 17200 et seq. of the California Business and Professions Code, Section 17500 et seq. of the California Business and Professions Code, Section 1750 et seq. of the California Civil Code, Section 349 of the New York General Business Law, or Sections 37¬24-6 and 37-24-31 of the South Dakota Codified Laws), or any principle of common law or equity, including, but not limited to, breach of contract, breach of duty, fraud, conversion, good faith and fair dealing, negligent misrepresentation, unconscionability or unjust enrichment, without regard to whether or not any of the Representative Plaintiffs or any of the Settlement Class Members knows or suspects such Claim to exist in his, her or its favor at the time of the Releases, and without regard to the subsequent discovery or existence of other, different or additional facts, which, if known by him, her or it, might have affected his, her or its decision(s) with respect to opting out of the Settlement Class or with respect to this Settlement Agreement.

Without in any way limiting the foregoing, the Released Claims specifically extend to and include claims that Representative Plaintiffs and the Settlement Class Members do not know or

suspect to exist in their favor at the time of Final Settlement Approval. This paragraph constitutes a release and waiver of, without limitation as to any other applicable law, section 1542 of the California Civil Code, and any and all similar laws of other states. Section 1542 of the California Civil Code provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Representative Plaintiffs understand and acknowledge, and each member of the Settlement Class shall be deemed to understand and acknowledge, the significance of these releases and of this waiver of California Civil Code section 1542 and of any and all similar laws of other states relating to limitations on releases, including, without limitation, limitations on releases of unknown or unliquidated claims. In connection with such releases, waiver and relinquishment, Representative Plaintiffs acknowledge, and all members of the Settlement Class shall be deemed to acknowledge, that they are aware that they may hereafter discover facts in addition to, or different from, those facts which they now know or believe to be true with respect to the subject matter of the Settlement and releases, but that it is their intention to release fully, finally and forever all Released Claims, and in furtherance of such intention, the releases of the Released Claims will be and will remain in effect notwithstanding the discovery or existence of any such additional or different facts.

## Releasees

Upon Final Settlement Approval, each of the Releasors unconditionally, fully and finally releases and forever discharges each of the Defendant Releasees from each of the Released Claims. For avoidance of doubt, these Releases do not apply to claims for breach of this Settlement Agreement.

## Covenants Not To Sue

Upon Final Settlement Approval, each of the Releasors hereby covenants and agrees that he, she or it shall not take any step whatsoever to commence, institute, continue, pursue, maintain, prosecute or enforce any Released Claim(s), on behalf of itself or any other Person, against any of the Defendant Releasees. Upon Final Settlement Approval, each of the Releasors hereby warrants and represents that he, she or it has not assigned, sold or otherwise transferred any Claim that he, she, or it previously had that otherwise would fall within the scope of Sections 7 or 8.

**Exhibit C**
**Notice – Short Form**

## NOTICE OF CLASS ACTION SETTLEMENT

**If you had a credit card account with FIA Card Services, N.A. or its predecessor, Bank of America, N.A. (USA), between August 1, 2006, and February 22, 2010, and you made a payment to your account on or before the payment due date and were assessed a late payment fee, finance charge, or other fees, penalties or charges in connection with that payment, you may be eligible for a payment from a class action settlement.**

### THIS NOTICE MAY AFFECT YOUR RIGHTS. PLEASE READ IT CAREFULLY.

A settlement has been reached in a class action alleging that FIA Card Services, N.A. and its predecessor, Bank of America, N.A. (USA), failed to apply same-day credit to payments made on FIA Card Services, N.A. or Bank of America, N.A. (USA) credit card accounts. The name of the case is *Bruce J. Trombley and Ryan Sukaskas v. Bank of America Corporation*, U.S. District Court, District of Rhode Island, C.A. No. 08-456.

Relief Available Under Settlement

- Total Settlement Amount: $5,000,000 for total payments to class, less award of attorneys' fees to Class Counsel and incentive awards to Class Representatives.

- Individual Class Member Recovery: Every eligible Class member who submits a claim will be paid up to $28 in cash or as a credit to their existing FIA Card Services, N.A. account.

Important Deadlines and Dates

- Claims Deadline: To be eligible for payment, you must submit a claim form postmarked by **December 23, 2011**.

- Exclusion Deadline: You have the right to exclude yourself from the Class. If you exclude yourself, you cannot recover any payment under the Settlement. To exclude yourself from the Class, you must do so on or before **October 28, 2011**.

- Objection Deadline: You have the right to object to the Settlement. To object to the Settlement, you must file and serve objections on or before **October 28, 2011**.

- Final Approval and Fairness Hearing: The Court will hold a final approval and fairness hearing on **December 8, 2011**.

**To obtain or file a claim form, obtain the long-form Notice of Class Action Settlement, exclude yourself from the Settlement, object to the Settlement, or obtain more information about your rights under the Settlement, please go to www.trombley-administrator.com, call the settlement administrator toll-free at 1.800.387.7158, or write to Settlement Administrator, P.O. Box 8003, Faribault, MN 55021-9403.**

**Exhibit D**

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| BRUCE J. TROMBLEY AND RYAN SUKASKAS, on behalf of themselves and all others similarly situated,<br><br>     Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA CORPORATION,<br><br>    Defendant. | C.A. No. 08-456-JD |

## [PROPOSED] FINAL ORDER AND JUDGMENT

Upon review and consideration of the terms and conditions of the Revised Settlement Agreement[1], including its exhibits, dated April 4, 2013, between and among the Representative Plaintiffs and the Settlement Class, by and through the Representative Plaintiffs and Settlement Class Counsel (collectively, "Plaintiffs"), and the Defendant,[2] by and through its authorized signatory;

Due and adequate notice having been given to members of the Settlement Class, as required in the Preliminary Approval Order, and following such notice, a hearing having been held before this Court on December 8, 2011 (the "Settlement Hearing") to determine the matters contemplated herein;

Upon consideration of all prior proceedings in the Action; and

---

[1] This Order incorporates by reference the definitions in the Revised Settlement Agreement filed with the Court on April 4, 2013, and all capitalized terms used in this Order will have the same meanings as set forth in the Revised Settlement Agreement, unless specifically noted otherwise in this Order.

[2] The wholly-owned subsidiary through which Defendant Bank of America Corporation issues and services credit cards under the Bank of America brand is FIA Card Services, N.A., which is the successor-in-interest to Bank of America, N.A. (USA). Pursuant to Rule 25 of the Federal Rules of Civil Procedure, FIA Card Services, N.A. is the deemed defendant herein and shall be bound hereby.

2

Upon consideration of the motion for Final Order and Judgment, and the settlement contemplated thereby, and all memoranda, affidavits, and other papers and arguments submitted with respect thereto;

**IT IS ORDERED THAT:**

1.     This Court has jurisdiction over the subject matter of the Consolidated Action and over all Parties to the Consolidated Action, including, without limitation, the members of the Settlement Class.

2.     The Court finds that the Class preliminarily certified in the Preliminary Approval Order meets all of the requirements of Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure.  The Court therefore finally certifies the following Settlement Class:

> All Persons who, at any time during the Class Period: (x) had a credit card account with FIA; (y) made a payment in connection with that account on or before the same day as the "Payment Due Date" or other deadline state in the operative cardholder agreement, cardholder statement or other disclosure t the cardholder: (i) in person at a Bank of America banking center; (ii) by phone using Bank of America's pay-by-phone service; or (iii) electronically using Bank of America's online banking services; and (z) incurred a late payment fee, finance charge, or other fees, penalties or charges, in connection with the timing of such payment that was not waived or refunded.

Settlement Class Members do not include the persons who submitted timely and valid requests for exclusion from the Class, as listed on Exhibit A, attached hereto.

3.     Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the Court hereby approves and confirms the settlement embodied in the Revised Settlement Agreement as being a fair, reasonable, and adequate settlement and compromised of the Claims asserted in the Action against Defendants, and orders that the Revised Settlement Agreement shall be consummated and implemented in accordance with its terms and conditions.

4.     Notice of the pendency of this Action as a class action, of the proposed Settlement, and of the request for certification of the Settlement Class was given to all persons reasonably identifiable as members of the Settlement Class, as shown by the records of FIA Card Services, N.A., at the respective addresses set forth in such records.  The Court finds that the form, content, and method of dissemination of the notice given to the Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The notice, as given, provided valid, due, and sufficient notice of these proceedings, of the proposed Settlement, and of the terms and conditions set forth in the Original Settlement Agreement that were a baseline for the increased class relief in the Revised Settlement Agreement, and the notice fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, Constitutional due process, and all other applicable laws.

5.     The Court hereby finds and orders that, by not objecting to the certification of the Settlement Class, and by taking other steps to negotiate, execute and implement the Revised Settlement Agreement, Defendant is not in any way waiving any other rights it may have to require arbitration of any Claims, including, but not limited to rights, if any, it may have (a) to require arbitration of any of the Released Claims if Final Settlement Approval does not occur or if the Revised Settlement Agreement terminates prior to Final Settlement Approval, or (b) as to any Person who timely and properly opts out of the Settlement Class as permitted by the Court. In addition, neither certification of the Settlement Class for settlement purposes only, nor any other act relating to the negotiation, execution or implementation of the Revised Settlement Agreement, shall be considered as a factor in connection with any class certification issue(s) if the Revised Settlement Agreement terminates or Final Settlement Approval does not occur.

6.      Defendants have timely filed notifications of this settlement with the appropriate officials pursuant to the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4, 7-8 (2005), effective February 18, 2005, codified at 28 U.S.C. §§ 1711-1715.  These notifications apprised the appropriate officials that, in connection with the approval of this settlement, Defendants would seek certification from this Court that their respective notifications complied with any applicable CAFA requirements.  The Court has reviewed such notifications and accompanying materials and finds that Defendants' notifications comply fully with any applicable requirements of CAFA.

7.      Subject only to the provisions of Paragraph 12 below, the Action is hereby dismissed with prejudice, with each party to bear its own costs, except as expressly provided in the Revised Settlement Agreement.

8.      Subject only to the provisions of Paragraph 12 below, by operation of this judgment, Releasors are deemed to have absolutely and unconditionally released and forever discharged the Released Parties from all Claims, and are forever barred and enjoined from commencing, instituting, or maintaining any Released Claims against the Released Parties in any action in this or any other forum.  The Releasors are further deemed to have waived the protections afforded under Section 1542 of the California Civil Code, Section 20-7-11 of the South Dakota Codified Laws, and/or any other similar, comparable, or equivalent laws.

9.      The Court hereby approves the Revised Settlement Agreement and the payments and credits pursuant thereto as fair and adequate, and the Settlement Administrator is directed to administer the Revised Settlement Agreement in accordance with its terms and provisions.

10.     The Court awards Class Counsel attorneys' fees and expenses in the amount of

$_____ and approves the incentive payment of $_____ to each of the

Representative Plaintiffs, Bruce J. Trombley and Ryan Sukaskas.

11.     Not less frequently than once a quarter, the Settlement Administrator, shall submit

to the Court a written report stating the nature, amount, and proposed recipients of Settlement

Cost expenses expended, paid, or incurred to be paid from the Settlement Amount.

12.     The Court shall retain exclusive jurisdiction to resolve any disputes or challenges

that may arise as to the performance or administration of the Revised Settlement Agreement, or

any challenges to the performance, validity, interpretation, administration, enforcement, or

enforceability of the notice, this Final Order and Judgment, or the Revised Settlement

Agreement.

13.     In the event that the Revised Settlement Agreement is terminated in accordance

with its terms or with the terms of any other agreement between the Parties, or this Final Order

and Judgment is reversed on appeal or otherwise does not become Final, (i) this Final Order and

Judgment shall be rendered null and void and shall be vacated *nunc pro tunc*; (ii) as specified in

the Revised Settlement Agreement, the Revised Settlement Agreement and other related orders

shall be rendered null and void and shall be vacated *nunc pro tunc*; and (iii) the Action shall

proceed as provided in the Revised Settlement Agreement.

14.     Neither the Revised Settlement Agreement, the settlement contained therein, the

negotiation nor any proceeding or document executed pursuant to or in furtherance thereof, (i) is

or shall be construed as an admission of, or evidence of, the truth of any allegation or of any

liability or the validity (or lack thereof) of any claim or defense on the part of any party in any

respect; or (ii) is or shall be admissible in any action or proceeding for any reason, other than an

action or proceeding to enforce the terms of the Revised Settlement Agreement or of this Final

Order and Judgment.


SO ORDERED:

Dated: _____


_____
JOSEPH A. DICLERICO, JR.
UNITED STATES DISTRICT JUDGE

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed this Motion for Final Approval of *Revised Class Action Settlement and Certification of Settlement Class*, as well as the accompanying proposed Order, Memorandum of Law, Affidavit of Counsel, and Certification of Counsel. These documents are available for viewing and downloading from the Court's Electronic Case Filing System.   Accordingly, service by electronic means has been made upon the following Attorneys of Record:

Robert G. Flanders, Jr.
HINCKLEY, ALLEN & SNYDER LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903

Mark P. Ladner
David J. Fioccola
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, NY 10104
Attorneys for Defendant Bank of America

Dated: April 10, 2013

    /s/ Michael D. Donovan
Michael D. Donovan
Donovan Axler, LLC
1845 Walnut St., Suite 1100
Philadelphia, PA  19103
Telephone:  (215) 732-6067
Facsimile:  (215) 732-8060
E-Mail:  mdonovan@donovanaxler.com