**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| **BRUCE J. TROMBLEY and RYAN SUKASKAS, on behalf of themselves and all others similarly situated,**<br><br>      **Plaintiffs,**<br> **v.**<br><br>**BANK OF AMERICA CORPORATION,**<br><br>      **Defendant.** | **C.A. NO. 08-456 (JAD)** |

**BANK OF AMERICA'S RESPONSE TO PLAINTIFFS'**
**REQUEST FOR ATTORNEYS' FEES AND COSTS**

Pursuant to the Court's request at the February 12, 2013 telephone conference, Defendant Bank of America Corporation ("Bank of America" or the "Bank") hereby submits its Response to Plaintiff Bruce J. Trombley's and Plaintiff Ryan Sukaskas's (collectively, "Plaintiffs") Motion for Award of Attorneys' Fees, Reimbursement of Costs, and Service Awards to Named Plaintiffs Pursuant to Revised Settlement Agreement, dated April 10, 2013. (ECF No. 132 ("Plaintiffs' Fee Mot.")).

## INTRODUCTION

In connection with their motion for final approval of the class action settlement, Plaintiffs have sought Court approval for combined attorneys' fees and costs in the amount of $1.2 million, which represents 30% of the settlement's common fund of $4 million. For the reasons stated below, the Bank concurs that the percentage of the common fund requested by Plaintiffs—30%—is consistent with attorneys' fees awards based on a percentage of the common fund that other courts in the First Circuit have awarded, albeit at the high end of the range. However, after consideration of a "lodestar cross check," Plaintiffs' request actually falls at the low end of accepted multipliers. Given the significant motion practice in this case, the substantial efforts expended on discovery-related matters, the lengthy, hard-fought settlement negotiations, and the extended settlement approval process, the Bank submits that Plaintiffs' request for attorneys' fees and costs are within the acceptable range of awards for cases that settled at similar stages.

## RESPONSE TO PLAINTIFFS' REQUEST FOR ATTORNEYS' FEES AND COSTS

### I. SUMMARY OF THE LITIGATION.

Plaintiffs commenced this action on November 24, 2008 asserting claims on behalf of a nationwide class for breach of contract and violation of the federal Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA") and seeking actual, statutory, and punitive damages, together with restitution and injunctive relief. On January 23, 2009, Plaintiffs filed an Amended

1

Complaint, adding a third count seeking a declaration of contractual unconscionability as to the arbitration provision in the cardholder agreements.

The parties engaged in protracted motion practice, including motions to (1) compel arbitration, (2) dismiss the complaint, and (3) for judgment on the pleadings. Each of these motions was hard-fought by both parties, with only Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing surviving.

In December 2010, following the exchange of discovery requests, a number of meet-and-confer sessions, the production of thousands of documents by Bank of America, and the scheduling of depositions, the parties commenced settlement negotiations. On April 6, 2011, after multiple settlement conferences by telephone and the exchange of legal memoranda on various issues, the parties agreed on the principal terms of the settlement (the "Original Settlement"), and on June 27, 2011, Plaintiffs moved for preliminary approval of the Original Settlement agreement. The Court preliminarily approved the settlement in several orders dated July 29, 2011, August 24, 2011, and August 26, 2011.

On November 23, 2011, Plaintiffs moved for final approval of the settlement. On May 4, 2012, the Court issued an order denying, without prejudice, final approval of the settlement. The Court, at Plaintiffs' request, lifted the stay of discovery and the parties resumed discovery. After exchanging additional requests for documents, interrogatories, and notices for depositions, the parties engaged again in settlement discussions in an effort to revise the settlement to address the concerns raised by the Court in its decision denying final approval. The parties finalized a settlement agreement on April 3, 2013, and plaintiffs moved for final approval on April 10, 2013. In addition to seeking final approval, plaintiffs also moved for an award of attorneys' fees, reimbursement of costs, and service awards to named plaintiffs.

## II. BANK OF AMERICA'S RESPONSE TO PLAINTIFFS' REQUEST FOR ATTORNEYS' FEES AND COSTS.

The Bank agrees with class counsel's statement that courts in the First Circuit regularly employ a "percentage of the fund" methodology to calculate reasonable attorneys' fees. (Plaintiffs' Fee Mot. at 4); *see, e.g.*, *In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995); *Walsh v. Popular, Inc.*, 839 F. Supp. 2d 476, 483 (D.P.R. 2012); *Latorraca v. Centennial Techs., Inc.*, 834 F. Supp. 2d 25, 28 (D. Mass. 2011); *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 463 (D.P.R. 2011); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 79 (D. Mass. 2005).

"Courts in the First Circuit have recognized that fee awards in common fund cases typically range from 20 to 30 percent." *See In re Lupron Mktg. and Sales Practices Litig.*, MDL No. 1430, 2005 U.S. Dist. LEXIS 17456, at *18 (D. Mass. Aug. 17, 2005); *Latorraca*, 834 F. Supp. 2d at 27-28 ("[c]ourts in this circuit generally award attorneys' fees in the range of 20-30%, with 25% as the 'benchmark'") (citations omitted); *In re Puerto Rican Cabotage*, 815 F. Supp. 2d at 461 ("a fee in the range of 10.5% or 30.5% are reasonable when viewed against fee awards in comparable cases"). In addition, where courts use a lodestar calculation—*i.e.* a reasonable hourly billing rate times a reasonable number of hours worked—to "cross check" the percentage of the fund methodology, "[m]ultiples ranging from one to four are frequently awarded in common fund cases." *In re Puerto Rican Cabotage*, 815 F. Supp. 2d at 465 (citing *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998)).

Here, Plaintiffs' request for attorneys' fees and costs totaling 30% of the common fund falls within the range of acceptable attorneys' fees awards and costs in percentage of the fund

3

cases,[1] albeit at the higher end of the range of awards based on a percentage of the common fund.[2] However, based on Plaintiffs' counsel's hours on the case and the billing rates cited in the declaration in support of their fee request,[3] the request for fees and costs of $1.2 million is approximately 1.1 times the lodestar amount of approximately $1.1 million (including both fees and costs). This "low" lodestar multiplier of 1.1 indicates "that the fee [request of $1.2 million] closely approximates the fair market value for counsel's services." *See, e.g.*, *In re Puerto Rican Cabotage*, 815 F. Supp. 2d at 465.

While courts may reduce a requested award where "the parties engaged in limited discovery and no motion practice,"[4] that is not the case here where the parties: 1) engaged in significant motion practice; 2) participated in discovery proceedings, including several meet-and-confer sessions, resulting in the production of thousands of documents; 3) participated in extensive settlement discussions; and 4) moved for preliminary and final approval of the settlement. Thus, while Plaintiffs' fee request is at the high-end when measured purely on a percentage of the recovery, it is within the accepted range of fee requests for cases that settled at similar stages.

---

[1] *See In re Lupron*, 2005 U.S. Dist. LEXIS 17456, at *18 ("Courts in the First Circuit have recognized that fee awards in common fund cases typically range from 20 to 30 percent.")

[2] *See Latorraca*, 834 F. Supp. 2d at 27-28 (noting that 25% of the fund is considered to be the "benchmark"); *see also Walsh*, 839 F. Supp. 2d 476 at 485 ("the court notes that the 33 1/3% requested by Lead Counsel represents the ceiling on typical percentage of the fund awards in the First Circuit"); *see also In re Puerto Rican Cabotage*, 815 F. Supp. 2d at 461 ("[a] recent study analyzing eighteen years of available opinions involving settlements in class action litigation in state and federal courts found that the mean and median fees awarded in the First Circuit are 20%.") (citing Theodore Eisenberg and Geoffrey P. Miller, Attorneys' Fees & Expenses in Class Action Settlements: 1993-2008, 7 J. of Empirical Legal Stud. 248 (2010) (Table 4)).

[3] Declaration of Michael D. Donovan, Esq. at 16 (Apr. 10, 2013) (ECF No. 132).

[4] *See*, *e.g.*, *Odrick v. UnionBanCal Corp.*, No. C 10-5565, 2012 U.S. Dist. LEXIS 171413, at *16 n.1 (N.D. Cal. Dec. 3, 2012) (reducing requested fee award where "the parties engaged in limited discovery and no motion practice").

## **CONCLUSION**

For the foregoing reasons, Bank of America does not oppose Plaintiffs' request for attorneys' fees.

Dated May 8, 2013.                                Respectfully Submitted,

**HINCKLEY, ALLEN & SNYDER LLP**

*/s/ Robert G. Flanders, Jr.*
Robert G. Flanders, Jr.
Matthew H. Parker
50 Kennedy Plaza, Suite 1500
Providence, Rhode Island 02903
Telephone:  (401) 274-2000
Facsimile:  (401) 277-9600
E-Mail:  rflanders@haslaw.com

**MORRISON & FOERSTER LLP**
Mark P. Ladner (*pro hac vice*)
David J. Fioccola (*pro hac vice*)
1290 Avenue of the Americas
New York, New York 10104
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900