UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF RHODE ISLAND

Bruce J. Trombley
and Ryan Sukaskas

     v.                           Civil No. 08-cv-456-JD

Bank of America Corporation

O R D E R

     The plaintiffs, Bruce J. Trombley and Ryan Sukaskas, sued
Bank of America Corporation ("BAC"), on their own behalf and on
behalf of a nationwide putative class, alleging, inter alia,
breach of the implied covenant of good faith and fair dealing.[1]
The parties have entered into a revised class action settlement
agreement.  They now seek final approval of their agreement,
certification of the settlement class, awards to the named class
representatives, and an award of attorneys' fees and costs.

---

[1]Trombley and Sukaskas also alleged breach of contract,
violation of the Truth in Lending Act, and unconscionability of
the credit card agreements.  The parties stipulated to the
dismissal of the unconscionability claim without prejudice.  The
court granted motions in favor of BAC on the breach of contract
and Truth in Lending Act claims.

## Background

Trombley and Sukaskas alleged that BAC imposed fees and other penalties when they made their credit card payments on or close to the due date.  Trombley made a payment in person at a BAC branch on the due date, but BAC did not credit the payment on that date, imposed a late fee, and cancelled his promotional interest rate.  Sukaskas attempted to make an online payment for his credit card balance but was informed that BAC would not credit the payment on that day because it was the due date.  To avoid paying late, he paid by telephone, and BAC imposed a telephone payment fee.  They further alleged that BAC has imposed similar fees and charges on the putative class members for timely-tendered payments.

Trombley and Sukaskas filed this case as a putative class action on November 24, 2008, alleging breach of contract, breach of the duty of good faith and fair dealing, violation of the Truth in Lending Act, and unconscionability of the credit card agreements.  The parties initially litigated whether the claims were subject to arbitration, until BAC withdrew its motion for arbitration.  The parties stipulated to the dismissal of the unconscionability claim without prejudice.  The court granted motions in favor of BAC on the breach of contract and Truth in Lending Act claims, leaving only the claim that BAC violated the

2

duty of good faith and fair dealing by failing to post the

plaintiffs' and the putative class members' payments on the day

they were received, without imposing additional fees or charges.

The parties entered a Settlement Agreement that is dated

June 27, 2011.  For purposes of settlement, the parties agreed to

the following definition of the settlement class:

> all Persons who, at any time between August 1, 2006 and
> February 22, 2010: (x) had a credit card account with
> FIA[2] and (y) made a Qualifying Payment in connection
> with that account (i) in person at a Bank of America
> banking center; (ii) by phone using Bank of America's
> pay-by-phone service; or (iii) electronically using
> Bank of America's online banking services; and (z) who
> incurred a late payment fee, finance charge, or other
> fees, penalties or charges, in connection with the
> timing of such payment that was not waived or refunded.

Settlement Agreement § 2(bb).  "Qualifying Payment" for purposes

of the settlement class means:

> payment by a FIA cardholder on a FIA credit account
> where the payment is (x) equal to or in excess of the
> minimum payment due for the monthly billing cycle in
> which it is made (y) not determined by Defendant to be
> deficient for non-sufficient funds; and (z) made, or
> alleged by the cardholder to be made, on or before the
> same day as the "Payment Due Date" or other deadline
> stated in the operative cardholder agreement,
> cardholder statement or other disclosure to the
> cardholder.

Settlement Agreement § 2(u).

---

[2]FIA Card Services, N.A. is the successor-in-interest to
Bank of America, N.A. and is a wholly-owned subsidiary of BAC.
Revised Settlement Agreement, § 1, Recitals.

On July 29, 2011, the court granted preliminary approval of the settlement agreement and conditional certification of the settlement class.  The court also ordered notice to be sent to the potential class members.  After the parties provided additional briefings and revisions, the proposed short form notice was revised and certain additional findings were included in the approval order.

Notice was sent to 393,792 potential class members with a deadline of October 28, 2011, to opt out of or object to the proposed class action settlement.  Only one objection was filed. A final approval hearing was held on December 8, 2011.  There were 3,591 claims filed and approved.  The parties' motion for final approval and class certification and the plaintiffs' unopposed motion for representative awards, attorneys' fees, and costs were denied without prejudice on May 4, 2012, because the amount of attorneys' fees requested was unreasonable in relation to the benefit to the class members.

The parties' motion to return them to their status before the settlement and to reset the discovery deadlines was granted. On January 8, 2013, the parties notified the court that they had reached a revised settlement agreement.  A pretrial conference was held on February 12, 2013.  The parties filed a motion for approval of the Revised Settlement Agreement, dated April 4,

4

2013, and certification of the class; a motion for representative awards, attorneys' fees, and costs; and a proposed final order.

The Revised Settlement Agreement defines the settlement class as follows:

> all Persons who, at any time during the Class Period: (w) had a credit card account with FIA; (x) made a payment, in connection with that account, on or before the same day as the "Payment Due Date" or other deadline stated in the operative cardholder agreement, cardholder statement or other disclosure to the cardholder; (y) made such payment (i) in person at a Bank of America banking center; (ii) by phone using Bank of America's pay-by-phone service; or (iii) electronically using Bank of America's online banking services; and (z) who incurred a late payment fee, finance charge, or other fees, penalties or charges, in connection with the timing of such payment.

Revised Settlement Agreement § 2(cc).[3]  The Settlement Class does not include the individuals who submitted timely and valid requests for exclusion from the Class, who are listed on ATTACHMENT A.  The Class Period is August 1, 2006, through February 22, 2010.  Id. § 2(h).

---

[3]The proposed orders, filed on April 10, 2013, and August 21, 2013, and motion papers provide a slightly different settlement class definition that uses "(x)" instead of "(w)" following "Class Period:" and do not insert a subsection letter after "other disclosure to the cardholder;" where (y) is used in the settlement class definition in the agreement.  The parties also cite to section 2, part (dd), of the Revised Settlement Agreement for the definition when that definition pertains to "Settlement Class Counsel."  The differences in the definitions are not material.  The court uses the definition provided in the filed copy of the Revised Settlement Agreement, dated April 4, 2013, as the best expression of the parties' agreement.

Under the terms of the Revised Settlement Agreement, the total settlement fund is $4,000,000. The 3,591 class members who submitted approved claims will each receive $40, for a total of $143,640. Other BAC cardholders who received notice of the class action settlement but did not submit a claim or the claim was not approved will each receive a pro rata share of what is left of the settlement fund after the approved claims, the administrative costs, the representative awards, and attorneys' fees are paid. Any amount remaining in the settlement fund 180 days after all checks to the class members were mailed will be distributed through cy pres payments to the Consumer Federation of America - America Saves program and Consumer Action.

On April 4, 2013, BAC provided notification of the Revised Settlement Agreement as required by the Class Action Fairness Act of 2005.

## Discussion

The parties seek final approval of their revised class action settlement agreement and certification of the settlement class. The plaintiffs move for approval of payments to the class representatives and for an award of attorneys' fees and costs. BAC filed a response to the plaintiffs' motion for fees and costs and does not oppose the request.

6

I.  <u>Class Certification</u>

     The plaintiffs seek certification of a settlement class
under Federal Rule of Civil Procedure 23(b)(3).  "To obtain
certification of a class action for money damages under Rule
23(b)(3), a plaintiff must satisfy Rule 23(a)'s . . .
prerequisites of numerosity, commonality, typicality, and
adequacy of representation . . . and must also establish that
'the questions of law or fact common to class members predominate
over any questions affecting only individual members, and that a
class action is superior to other available methods for fairly
and efficiently adjudicating the controversy.'"  <u>Amgen Inc. v.</u>
<u>Conn. Retirement Plans & Tr. Funds</u>, 133 S. Ct. 1184, 1191 (2013)
(quoting Rule 23(b)(3)).  When certification is sought for
purposes of settlement, the certification requirements designed
to protect absentees require heightened scrutiny because the
court will not have the opportunity to modify the class, if
necessary, over the course of the litigation.  <u>Amchem Prods.,</u>
<u>Inc. v. Windsor</u>, 521 U.S. 591, 620 (1997); <u>Hochstadt v. Boston</u>
<u>Sci. Corp.</u>, 708 F. Supp. 2d 95, 102 (D. Mass. 2010) ("[W]hen a
settlement class is proposed, it is incumbent on the district
court to give heightened scrutiny to the requirements of Rule 23
in order to protect absent class members.").

A.   <u>Requirements of Rule 23(a)</u>

"Rule 23(a) requires that (1) there be numerosity, (2) there be common questions of law or fact, (3) the class representative's claims be typical of the class, and (4) the representative's representation of the class be adequate."   <u>In re New Motor Vehicles Canadian Exp. Antitrust Litig.</u>, 522 F.3d 6, 18 (1st Cir. 2008).

1.   <u>Numerosity</u>

The numerosity requirement is satisfied if the class is so large that joinder of all the class members would be impracticable.   Fed. R. Civ. P. 23(a)(1).   Notice was sent to 393,792 potential class members.   The claims administrator approved 3,591 claims.   Therefore, the settlement class meets the numerosity requirement.

2.   <u>Commonality</u>

A class must share common questions of law or fact.   Fed. R. Civ. P. 23(a)(2).   To satisfy the commonality requirement, the claims of the class "must depend upon a common contention . . . [which] must be of such a nature that it is capable of classwide resolution--which means that determination of its truth or falsity will resolve an issue that is central to the validity of

8

each one of the claims in one stroke." <u>Wal-Mart Stores, Inc. v.</u>
<u>Dukes</u>, 131 S. Ct. 2541, 2550-51 (2011).

Trombley and Sukaskas assert that the class's claim shares
common questions of law and fact because the claim arises from
the same BAC cardholder agreement and would be determined based
on Delaware law pertaining to the breach of the duty of good
faith and fair dealing.  Claims based on form agreements or
contracts with a common application across the class are based on
uniform questions of law and fact.  <u>See, e.g.</u>, <u>McKinney v. U.S.</u>
<u>Postal Serv.</u>, 2013 WL 164283, at *6 (D.D.C. Jan. 16, 2013); <u>In re</u>
<u>Checking Account Overdraft Litig.</u>, 286 F.R.D. 645, 652 (S.D. Fla.
2012) <u>Walsh Chiropractic, Ltd. v. StrataCare, Inc.</u>, 2011 WL
4336727, at *5 (S.D. Ill. Sept. 14, 2011); <u>Campion v. Old</u>
<u>Republic Home Protection Co., Inc.</u>, 272 F.R.D. 517, 526 (S.D.
Cal. 2011).  The settlement class in this case satisfies the
commonality requirement.


   3.  <u>Typicality</u>

   To meet the requirement of typicality, the class
representatives' claims must "arise from the same event or
practice or course of conduct that gives rise to the claims of
other class members, and [be] based on the same legal theory."
<u>Garcia-Rubiera v. Calderon</u>, 570 F.3d 443, 460 (1st Cir. 2009)

(internal quotation marks omitted); <u>Martins v. 3PD, Inc.</u>, 2013 WL
1320454, at *7 (D. Mass. Mar. 28, 2013).  The remaining claim in
this case, breach of the duty of good faith and fair dealing,
arises from BAC's policy, under the cardholder's agreement, that
three payment methods would incur fees, charges, or penalties
imposed by BAC.

Trombley made his payment in person at a branch bank, and
Sukaskas paid by telephone after trying to pay electronically.
Both incurred fees, charges, or other penalties as a result.  As
defined, each member of the class also made a payment before or
on the same day as the payment deadline in one or more of the
three stated payment methods and incurred fees, charges, or
penalties.  The circumstances of Trombley's and Sukaskas's claims
are typical of the settlement class.


    4.  <u>Adequacy</u>

The class representatives must also be able to fairly and
adequately protect the interests of the class.  Fed. R. Civ. P.
23(a)(4).  To satisfy the adequacy requirement, the plaintiffs
must show that the representatives' interests will not conflict
with the class members' interests and that plaintiffs' counsel is
qualified and able to represent the class.  <u>Martins</u>, 2013 WL
1320454, at *7; <u>see also</u> <u>Ortiz v. Fibreboard Corp.</u>, 527 U.S. 815,

10

856 (1999); cf. George v. Nat'l Water Main Cleaning Co., 286
F.R.D. 168, 178 n.6 (D. Mass. 2012) (noting that commentators
have suggested that adequacy of class counsel is addressed under
Rule 23(g)).  A potential for conflict between class
representatives and other class members, however, does not defeat
the adequacy requirement because "perfect symmetry of interest is
not required and not every discrepancy among the interests of
class members renders a putative class untenable."  Matamoros v.
Starbucks Corp., 699 F.3d 129, 138 (1st Cir. 2012).

The plaintiffs state that the representatives have no
interests that conflict with the rest of the class.  Although
Trombley and Sukaskas will each receive $5,000, if allowed,
instead of the $40 recovery by each of the approved class
members, the award to the representative parties will not affect
the amount paid to the approved class members.  Therefore, there
are no conflicts that undermine the adequacy of Trombley and
Sukaskas as class representatives.

Plaintiffs' counsel, Peter N. Wasylyk, Michael D. Donovan,
Michael J. Quirk, and Andrew S. Kierstead, were appointed as
class counsel pursuant to Federal Rule of Civil Procedure 23(g)
for purposes of the conditional certification of the settlement
class.  Counsel satisfy the requirements of Rule 23(a)(4).

B.   Requirements of Rule 23(b)(3)

The plaintiffs seek certification of the settlement class under Rule 23(b)(3) on the grounds that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  The court considers the class members' separate interests in controlling the case, other litigation by class members, the desirability of this forum, and the likely difficulties of managing the class action in determining the applicability of Rule 23(b)(3).  For purposes of a settlement class, whether common questions of law or fact exist must be considered in the context of the case prior to settlement, Ortiz, 527 U.S. at 858, but any issues pertaining to class management litigation need not be considered.  Amchem, 521 U.S. at 620.

In this case, the claim of breach of the duty of good faith and fair dealing would have been decided under Delaware law for all of the class members.  Therefore, common legal questions existed among the class.  Further, because BAC used cardholder agreements with the same terms and the class definition specified the circumstances underlying the claim, the class shared common questions of fact.

12

The settlement class as defined in the Revised Settlement Agreement, which was filed on April 10, 2013, with document number 133, at Section 2(cc) is certified under Rule 23(a) and Rule 23(b)(3).

II.  Revised Settlement Agreement

A settlement in a class action must be approved by the court, following a hearing, and must be based on findings that the settlement is fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e); Nat'l Ass'n of Chain Drug Stores v. N. Eng. Carpenters Health Benefits Fund, 582 F.3d 30, 44 (1st Cir. 2009).  The court's assessment of whether the proposed settlement is fair, reasonable, and adequate requires consideration of a variety of factors, including the terms of the settlement, the risks of litigation, the negotiation process, the reaction of the class to the settlement, and the course of the litigation prior to settlement.  See, e.g., Baptista v. Mutual of Omaha Ins. Co., 859 F. Supp. 2d 236, 240-41 (D.R.I. 2012); In re Tyco Int'l, Ltd. Multidistrict Litig., 535 F. Supp. 2d 249, 259-60 (D.N.H. 2007). The approval process "involves balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps

13

unattainable variations on the proffered settlement." <u>Chain Drug Stores</u>, 582 F.3d at 44.

A.   <u>Benefit to the Class</u>

Under the terms of the Revised Settlement Agreement, the approved class members each will receive $40.00, which is more than full reimbursement for a late fee paid to BAC under the circumstances described in the class definition.  The other potential class members will receive a pro rata share of the remainder of the fund, which will be considerably less than $40.00 each, but provides some compensation nevertheless.[4]

Litigation of the remaining issue of whether BAC breached the implied duty of good faith and fair dealing in its late fees practices would require additional expense with a far from certain outcome.  The Revised Settlement Agreement provides more compensation to class members than was proposed under the original settlement agreement.  Under the Revised Settlement Agreement, each class member with an approved claim will receive more than the amount of a late fee or penalty.  The recovery to the class provided by the Revised Settlement Agreement is

---

[4]The the pro rata share to the unapproved class members is likely to be around $6.00 each.

14

preferable to the original settlement agreement and to continued litigation.

     B.  <u>Notice and Hearing</u>

As is explained above in the Background section, notice, as approved by the court, was sent to 393,792 potential class members with October 28, 2011, as the deadline for opting out of the class.  A final approval hearing was held on December 8, 2011.  The class defined in the Revised Settlement Agreement is the same as the class defined in the original settlement agreement.

Because the compensation provided by the Revised Settlement Agreement is more beneficial to the class than the compensation offered by the original settlement agreement, no additional notice nor a second hearing is necessary.  In addition, a total of $218,052.71 has been spent on notice and administration costs. Notice of the Revised Settlement Agreement, a second approval hearing, and a second claims process would substantially increase the administrative costs.

     C.  <u>Reaction of the Class</u>

Only 3,591 individuals, a small percentage of those notified of the class action settlement, filed claims that were approved.

However, only sixteen people opted out of the class and only one person objected to the proposed settlement.[5]  The single objector, Jeffrey L. Roudebush, would not qualify as a class member.

Roudebush did not have a BAC account in 2010 when he claimed to have made in-person payments and incurred a late fee and raised interest rates, although Norilyn L. Roudebush did have a BAC account.  Further, BAC records establish that, contrary to the representations in Roudebush's objection, no in-person payments were made to that account in 2010, that payments were made in amounts less than the required minimum payments, that no payments have been made since July of 2010, and that BAC wrote off the account in December of 2010.  Roudebush did not attend the approval hearing on December 8, 2011.

Given the background provided by BAC, Roudebush does not raise a valid objection to the class action settlement.  The lack of objection and the small number of potential class members who opted out of the class weigh in favor of approving the settlement.

---

[5]One person has two different claimant identification numbers and is listed twice.

16

D.  Costs of Administration

As part of the Revised Settlement Agreement, the parties agreed that the costs of notice to potential class members and administration of the settlement would be paid from the settlement fund.  The court granted preliminary approval to the parties' original settlement agreement for appointment of Rust Consulting, Inc. as Settlement Administrator.  Rust Consulting has served as the settlement administrator since September of 2011.

The plaintiffs represent that the cost of notice and administration of the settlement to date is $218,052.71, which is supported by affidavits and invoices.  The amount of the costs is reasonable, and the agreement to pay the costs from the settlement fund is also reasonable.

There will be additional costs of administration incurred in the process of sending payments to the class members with approved claims and sending pro rata shares to class members who did not file claims or whose claims were not approved.  Going forward, Rust Consulting shall file a written report at least every three months showing the nature, amount, and proposed recipients of expenses for administering the settlement.

17

E. <u>Fair, Reasonable, and Adequate</u>

The Revised Settlement Agreement provides adequate compensation to approved class members and some compensation for BAC account holders who did not file claims or were not approved. The Agreement does not provide for reversion of part of the fund to BAC. The cy pres provision is funded, if at all, by the amount of uncashed checks after a reasonable waiting period.

The Revised Settlement Agreement provides significant benefits to class members that weigh in favor of approval while further litigation would entail substantial costs and risk. Therefore, the Revised Settlement Agreement is a fair, reasonable, and adequate resolution of the case for the class.

III. <u>Representative Payment, Attorneys' Fees, and Costs</u>

Under the terms of the Revised Settlement Agreement, the parties agreed to payments to the representative parties and to an award of attorneys' fees and costs.

A. <u>Representative Payments</u>

Named plaintiffs in a class action may be awarded an amount greater than the other class members as an incentive to encourage participation in the class action and to compensate for the services provided in that capacity. <u>Baptista</u>, 859 F. Supp. 2d at

18

244; see also Sullivan v. DB Investments, Inc., 667 F.3d 273, 333 n.65 (3d Cir. 2011).  Such awards are reasonable if they are proportional to the named plaintiffs' time and effort and in the context of the case as a whole.  See, e.g., Vassalle v. Midland Funding LLC, 708 F.3d 747, 756 (6th Cir. 2013); Baptista, 859 F. Supp. 2d at 244; In re New Motor Vehicles Canadian Exp. Antitrust Litig., 2011 WL 1398485, at *4 (D. Me. Apr. 13, 2011).

The plaintiffs seek payments of $5,000.00 each to Trombley and Sukaskas as the representative plaintiffs in this case.  They have served as the representative plaintiffs in this case from its inception in 2008.  Counsel represents that Trombley and Sukaskas were actively involved in the case from assisting with the preparation of the complaint, participation in discovery preparation and depositions, and negotiation of the settlement. The plaintiffs cite other cases where similar amounts have been awarded.

Although the plaintiffs do not provide the number of hours expended by Trombley and Sukaskas as representative plaintiffs, their activities combined with the age of the case suggest a significant amount of time.  The requested award of $5,000 each is in line with other similar awards.  See, e.g., In re Ins. Brokerage Antitrust Litig., --- F.R.D. ---, 2013 WL 3956378, at *21 (D.N.J. Aug. 1, 2013); Barbosa v. Cargill Meat Solutions

Corp., --- F.R.D. ---, 2013 WL 3340939, at *22-*23 (E.D. Cal.
July 2, 2013); In re Nissan Radiator/Transmission Cooler Litig.,
2013 WL 4080946, at *15 (S.D.N.Y. May 30, 2013).  The
representative payments of $5,000 each are reasonable.

B.  Attorneys' Fees and Costs

    The parties agreed that class counsel would submit a request
for fees and costs in an amount that did not exceed 30% of the
settlement fund of $4,000,000.  Class counsel request an award of
$1,200,000 in fees and costs.

    "In a certified class action, the court may award reasonable
attorney's fees and nontaxable costs that are authorized by law
or by the parties' agreement."  Fed. R. Civ. P. 23(h).  The court
may award attorneys' fees based on a percentage of the fund or on
a lodestar calculation method in common fund cases.  In re
Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire
Litig., 56 F.3d 295, 307 (1st Cir. 1995).  Here, the parties
agree that an award of class counsels' fees should be made and
that a percentage of the fund is the appropriate method.  Cf.  In
re Volkswagen & Audi Warranty Extension Litig., 692 F.3d 4, 7-15
(1st Cir. 2012) (holding that in diversity class action suit
where parties did not agree to the award of fees state law
controls the award).  Pursuant to Rule 23(h), "courts have an

independent obligation to ensure that the award, like the settlement itself, is reasonable." In re Bluetooth Headset Prods. Liability Litig., 654 F.3d 935, 941 (9th Cir. 2011).

Under the original settlement agreement, the settlement fund could have been as much as $5,000,000. Based on the small number of approved claims, the actual payments to class members would only have been $110,548. As proposed, BAC would have been obligated to pay $2,278,600.71, which was less than half of the proposed settlement amount of $5,000,000. Class counsel were seeking $1,500,000 in fees and costs. The settlement agreement was not approved because the amount of the agreed attorneys' fees and costs was disproportionate to the benefit to the class and the actual amount to be paid by BAC.

The settlement fund under the Revised Settlement Agreement is $4,000,000. As provided in the Revised Settlement Agreement, payments to approved class members will total $143,640.00. The costs of notice and claim administration are $218,052.71. Class counsel seek 30% of the fund, which is $1,200,000.00. The remainder of the fund, after those amounts are paid, is to be divided in pro rata shares to the potential class members who did not opt out but either did not make claims or whose claims were not approved, which is 390,183 individuals. Any checks that are not cashed after 180 days will be distributed through cy pres

payments to the Consumer Federation of America - America Saves program and Consumer Action.

As structured in the Revised Settlement Agreement, the potential dollar amount of the benefit to the class, those whose claims were approved and the others entitled to pro rata shares, is $2,428,307.29.  Any checks that are sent but not cashed within 180 days will be distributed through cy pres payments.  Because the class members with approved claims will receive 100% of the late fee or penalty charged by BAC, the cy pres payments in the Revised Settlement Agreement properly augment the benefit to the class.  In re Pharm. Ind. Average Wholesale Price Litig., 588 F.3d 24, 33 (1st Cir. 2009).

While the requested attorneys' fees and costs are 30% of the entire settlement fund, they are slightly less than 50% of the benefit to the class.  In the circumstances of this case, however, where the individual loss to each class member was small and the case has consumed nearly five years in litigation, the amount of fees and costs requested is reasonable.

IV.  Summary

Based on the analysis provided above, the court makes the following findings and rulings.

Notice of this action, of the proposed settlement, and of the claim and opt-out processes was provided to all persons who were reasonably identifiable as potential class members.  No additional notice or hearing is necessary because the Revised Settlement Agreement provides greater benefits to the class than were available under the original settlement.  The notice provided was proper and adequate.

BAC provided notice of the settlement in this case to the appropriate officials as required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

The settlement class as defined in the Revised Settlement Agreement dated April 4, 2013, and filed on April 10, 2013, document number 133, is certified for purposes of settlement only.

The Revised Settlement Agreement, dated April 4, 2013, and filed on April 10, 2013, document number 133, is fair, adequate, and reasonable and is approved.  The parties shall perform as required under the terms of the Revised Settlement Agreement.

The plaintiffs' request for costs and attorneys' fees in the amount of $1,200,000 is approved.

The representative awards of $5,000 each are approved.

As determined previously, Rust Consulting is the Settlement Administrator, and the reasonable costs of administration shall

23

be paid from the settlement fund.  The costs of notice and administration to date, $218,052.71, are reasonable and shall be paid from the settlement fund.  At least every three months, the Settlement Administrator shall file with the court a written report of the nature, amount, and proposed recipients of administration costs that are to be paid from the settlement fund.

All claims in this case are dismissed with prejudice in accord with the Revised Settlement Agreement.  The court shall retain jurisdiction to resolve any disputes or challenges about the performance or administration of the Revised Settlement Agreement and challenges to the notice provided, this order, and the Revised Settlement Agreement.  As provided in the Revised Settlement Agreement, if the Agreement is terminated or the judgment in this case is reversed on appeal, this order and related orders will be vacated and will no longer have any force or effect.

The parties have agreed that the Revised Settlement Agreement, the settlement of this case, and the proceedings in this case do not constitute admissions or evidence supporting liability or the validity of any claim or defense in this case.

24

<u>Conclusion</u>

For the foregoing reasons, the plaintiffs' motion for final approval of the class action settlement (document no. 133) and the plaintiffs' motion for an award of attorneys' fees (document no. 132) are granted as provided in this order.

All claims in this case are dismissed with prejudice.  The clerk of court shall enter judgment accordingly.


SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge
(Sitting by designation.)

September 12, 2013

cc:  Michael D. Donovan, Esquire
     David J. Fioccola, Esquire
     Robert G. Flanders, Jr., Esquire
     Andrew S. Kierstead, Esquire
     Mark P. Ladner, Esquire
     Michael J. Quirk, Esquire
     Adam M. Ramos, Esquire
     Peter N. Wasylyk, Esquire

25

<u>ATTACHMENT A</u>

Class Members Who Opted Out of the Class

Claimant ID Number                           Name

6220808                          Catherine M. Gyeski
6572198                          Catherine M. Gyeski
5668649                          Cheryl K. Van Ingen
4724148                          Claudia Ugalde
5708055                          Dr. Barbara J. Lozano
5145331                          Edward C. Gyeski
5841103                          Frank Wolland
7313073                          Hernando A. Dumaop
5498024                          Jennifer L. Beralas
6795566                          Joaquin Amador
5677511                          Maryanne Taylor
7875946                          Martha L. Solomon
6400613                          Mary L. Holmes
5011070                          Michelle Keating
8041661                          Nick Goutchkoff
4912040                          Virginia Schneegans
7748974                          William L. Bohan